**The relief described hereinbelow is SO ORDERED**

**Done this 5th of February, 2025**

**Christopher L. Hawkins**
**United States Bankruptcy**
**Judge**



## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re: | Chapter 11 |
| JACKSON HOSPITAL & CLINIC, INC., *et al.*,[1] | Case No. 25-30256 |
| Debtors. | Jointly Administered |

**INTERIM ORDER (I) AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION SECURED FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, (B) USE CASH COLLATERAL, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) GRANTING ADEQUATE PROTECTION, (IV) MODIFYING THE AUTOMATIC STAY, (V) SCHEDULING A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of Jackson Hospital & Clinic, Inc. and its affiliated debtors, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), seeking entry of an order (the "Interim Order"), pursuant to sections 105, 361, 362(d), 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 503(b), 506, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable are: Jackson Hospital & Clinic, Inc. and JHC Pharmacy, LLC.

(the "Bankruptcy Rules"), and rules 4001-1 and 9013-1 of the Bankruptcy Local Rules for the

Middle District of Alabama (the "Local Rules"), seeking entry of an interim order (together with

all exhibits hereto, this "Interim Order") that, among other things:

i. authorizes the Debtors, jointly and severally, to obtain a non-amortizing priming super-priority senior secured postpetition credit facility ("DIP Facility," and the loans issued thereunder, the "DIP Loans") in an aggregate principal amount of up to $24,500,000 (the "DIP Commitment") of which, upon entry of this Interim Order and satisfaction or waiver of the borrowing conditions set forth in the DIP Term Sheet (as defined below) and this Interim Order, $10,000,000 (the "Interim Amount") shall be made available to the Debtors and may be drawn in one or more draws (in an aggregate minimum amount of $500,000 or multiples thereof), and the remainder of the DIP Commitment will, subject to and upon the date of entry of the Final Order (as defined below), be available through additional draws, in each case subject to the terms and conditions set forth in the DIP Term Sheet or, as applicable, a Debtor-in-Possession Loan and Security Agreement (as amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "DIP Credit Agreement" and, together with any ancillary, collateral or related documents and agreements, including this Interim Order, the "DIP Documents"),[2] among the Debtors, as Borrowers, and Jackson Investment Group, LLC or its designees or assignees, as Lender (the "DIP Lender"), which DIP Credit Agreement shall be consistent with the terms set forth in the attached Debtor-in-Possession Term Loan Facility Summary of Terms and Conditions attached hereto as Exhibit 1 (as amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof and this Interim Order, the "DIP Term Sheet");[3]

ii. approves the terms of the DIP Term Sheet, and authorizes the Debtors to execute, deliver, and perform under the DIP Term Sheet and any other DIP Documents;

iii. authorizes the Debtors, on an interim basis, to issue, incur, and guarantee all loans, notes, advances, extensions of credit, financial accommodations, reimbursement obligations, fees and premiums (including the Commitment Fee, the Exit Fee, and any other fees payable pursuant to the DIP Term Sheet), and all other obligations due or payable to or for the benefit of the DIP Lender under the DIP Term Sheet and the other DIP Documents (collectively, the "DIP Obligations"), and to perform such other acts as may be required or appropriate in connection therewith;

iv. authorizes and directs the Debtors, on an interim basis, to use the proceeds of the DIP Facility and the Cash Collateral (as defined below) solely in accordance with

---

[2] Capitalized terms used but not otherwise defined herein have the meaning set forth in the Motion or the DIP Term Sheet, as applicable.

[3] References to the "DIP Term Sheet" herein shall be construed to encompass the other DIP Documents, if any, that the DIP Lender and the Debtors execute, deliver, or otherwise enter into before the entry of the Final Order.

2

the DIP Term Sheet and this Interim Order to (a) fund the postpetition working capital needs of the Debtors pending the Final Hearing (as defined below); (b) pay fees, costs and expenses of the DIP Facility on the terms and conditions described in this Interim Order and the DIP Term Sheet; and (c) pay the allowed administrative costs and expenses of the Chapter 11 Cases, in each case, solely in accordance with the DIP Term Sheet, the Approved Budget (as defined below), and this Interim Order;

v.     authorizes the Debtors to grant to the DIP Lender, on an interim basis, valid, enforceable, non-avoidable, and automatically and fully perfected and priming security interests, liens, and superpriority claims, including (a) allowed superpriority administrative expense claims pursuant to sections 364(c)(1) of the Bankruptcy Code, subject only to the Carve Out (as defined below) and the Permitted Prior Liens (as defined below), and (b) liens in the DIP Collateral (as defined below) and all proceeds thereof, including, without limitation, all property constituting "cash collateral," as defined in section 363(a) of the Bankruptcy Code, ("Cash Collateral"), pursuant to sections 364(c)(2), 364(c)(3), and 364(d)(1) of the Bankruptcy Code, to secure all DIP Obligations, subject only to the Carve Out and the Permitted Prior Liens;

vi.     authorizes the Debtors to grant to the Prepetition Secured Parties (as defined below), as adequate protection of their respective interest in the Prepetition Collateral (as defined below), valid, enforceable, non-avoidable, and automatically and fully perfected security interests and replacement liens in the DIP Collateral and allowed superpriority administrative expense claims pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, solely to the extent of any Diminution (as defined below) of the Prepetition Secured Parties' respective interest in the Prepetition Collateral, as more fully set forth in this Interim Order, subject and subordinate only to the Carve Out, the Permitted Prior Liens, the DIP Liens (as defined below), and DIP Superpriority Claims (as defined below), without waiver of the Debtors' right to assert any and all challenges, causes of action, and claims against the Prepetition Secured Parties;

vii.     authorizes the DIP Lender to take all commercially reasonable actions to implement and effectuate the terms of this Interim Order and the DIP Term Sheet;

viii.     authorizes payment of the DIP Fees (as defined below) at the times and in the amounts set forth in the DIP Term Sheet;

ix.     upon entry of the Final Order, a waiver of (a) the Debtors' right to surcharge any collateral pursuant to sections 105(a) and 506(c) of the Bankruptcy Code or otherwise; and (b) the equitable doctrine of "marshaling" and other similar doctrines with respect to any collateral;

x.     modifies the automatic stay imposed by section 362(a) of the Bankruptcy Code to the extent set forth herein and as necessary to permit the Debtors and the DIP Lender to implement and effectuate the terms and provisions of the DIP Term Sheet

3

and this Interim Order, and authorizes the DIP Lender, upon the occurrence and continuation of an Event of Default (as set forth herein and in the DIP Term Sheet, including section 25 thereof), to deliver any notices and exercise rights and remedies, as contemplated in this Interim Order and the DIP Term Sheet;

xi. waives any applicable stay (including under Bankruptcy Rule 6004) and provides for immediate effectiveness of this Interim Order; and

xii. schedules a final hearing (the "Final Hearing") to consider final approval of the DIP Facility pursuant to a proposed final order (the "Final Order"), as set forth in the Motion and the DIP Term Sheet.

This Court, having considered the relief requested in the Motion, the exhibits attached thereto, the First Day Declaration (as defined in the Motion), the (the "Wilen Declaration"), the DIP Term Sheet, the other papers filed with this Court, the evidence submitted and arguments made at the interim hearing held before this Court on February 5, 2025 (the "Interim Hearing"); and due and sufficient notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002 and 4001(b), (c), and (d) and all applicable Local Rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and it appearing that the interim relief requested in the Motion is fair and reasonable and in the best interests of the Debtors and their estates, necessary to avoid immediate and irreparable harm to the Debtors and their estates, and essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Term Sheet and the other DIP Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor,

**THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW BASED UPON THE MOTION, THE REPRESENTATIONS OF COUNSEL AND THE EVIDENCE SUBMITTED DURING THE HEARING:[4]**

a. **Petition Date**. Commencing on February 3, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court, commencing these Chapter 11 Cases.

b. **Debtors in Possession**. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in any of the Chapter 11 Cases.

c. **Jurisdiction and Venue**. The Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 and the *General Order of Reference Bankruptcy Matters from the United States District Court for the Middle District of Alabama*, dated and filed April 25, 1985. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

d. **Notice**. The Interim Hearing was held pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2). Notice of the Motion has been provided in a manner sufficient under the circumstances and no other or further notice of the Motion or the entry of this Interim Order shall be required. The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing.

e. **Committee Formation**. As of the date hereof, the Bankruptcy Administrator for the Middle District of Alabama (the "Bankruptcy Administrator") has not appointed an official

---

[4] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014, and shall take effect and be fully enforceable nunc pro tunc to the Petition Date immediately upon entry hereof. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

5

committee of unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (a "Creditors' Committee").

f. **No Credit Available on More Favorable Terms**. Given their current financial condition, financing arrangements, and capital structure, and the circumstances of the Chapter 11 Cases as demonstrated at the Interim Hearing, the Debtors are unable to obtain financing from sources other than the DIP Lender on terms more favorable than the DIP Facility. The Debtors are unable to procure sufficient financing in the form of unsecured credit allowable as an administrative expense. The Debtors are also unable to obtain sufficient secured credit without (i) granting to the DIP Lender the DIP Liens and the DIP Superpriority Claims and (ii) granting the Adequate Protection Liens (as defined below), in each case subject and subordinate to the Carve Out and the Permitted Prior Liens, as set forth herein and in the DIP Term Sheet.

g. **Good Faith**. Based upon the papers filed and the proceedings of record in these Chapter 11 Cases, (i) the extension of credit and financial accommodations (including the use of Cash Collateral) under the DIP Facility, as provided by the DIP Term Sheet, are fair, reasonable, in good faith, negotiated at arm's length, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration; (ii) the DIP Facility and the DIP Loans thereunder are being provided by the DIP Lender in "good faith" within the meaning of section 364(e) of the Bankruptcy Code in express reliance on the protections offered thereby; (iii) the liens, claims, and other covenants and payments as set forth in the DIP Term Sheet or this Interim Order, as well as the protections afforded parties acting in "good faith" under section 364(e) of the Bankruptcy Code are integral, critical and essential components of the DIP Facility provided by the DIP Lender to the Debtors; and (iv) the DIP Facility, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection

6

Liens, and the Adequate Protection Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

h. **Good Cause**. Good cause has been shown for the entry of this Interim Order, and the entry of this Interim Order is in the best interests of the Debtors, their estates, their creditors, and other parties in interest. The relief requested in the Motion is in the best interest of the Debtors and their estates.

i. **Need for Postpetition Financing and Use of Cash Collateral**. The Debtors do not have sufficient and reliable sources of working capital to continue to operate their business in the ordinary course without the financing requested in the Motion. The financing provided pursuant to this Interim Order and the DIP Term Sheet and the authority to use Cash Collateral granted herein will permit the Debtors to, among other things, (i) pay the fees, costs, and expenses incurred in connection with the Chapter 11 Cases; (ii) fund any obligations benefiting from the Carve Out; (iii) continue the orderly continuation of the operation of their businesses, in an effort to maintain the health and safety of their patients; (iv) maintain business relationships with customers, vendors, and suppliers; (v) make payroll for their employees, including providers essential for patient care; and (vi) satisfy other working capital and operational needs.

j. **Willingness to Provide Financing**. The DIP Lender has committed to provide financing to the Debtors subject to: (i) entry of this Interim Order; (ii) approval of the terms and conditions of the DIP Facility, the DIP Term Sheet, and the other DIP Documents; (iii) satisfaction of the closing conditions set forth in the DIP Term Sheet; and (iv) findings by this Court that the DIP Lender is extending credit to the Debtors pursuant to this Interim Order and the DIP Term Sheet in good faith, and that the DIP Lender's claims, superpriority claims, security interests and

liens and other protections granted pursuant to this Interim Order and the DIP Term Sheet will have the protections provided by section 364(e) of the Bankruptcy Code.

k. **Priming of Prepetition Liens; Adequate Protection**. As of the Petition Date, the Debtors were indebted to the Prepetition Secured Parties under the Prepetition Credit Documents or other applicable law, and such obligations were secured by liens and security interests granted by the Debtors or otherwise arising under applicable law, including the "Existing Liens" and "Real Property Encumbrances" identified in Schedule 2 of the DIP Term Sheet, (all such liens and security interests, the "Prepetition Liens") on and in the assets of the Debtors to the extent set forth under the Prepetition Credit Documents or such applicable law (all such assets, the "Prepetition Collateral," and notwithstanding anything to the contrary herein or in the DIP Term Sheet, Prepetition Collateral as used herein and the DIP Term Sheet includes only the collateral that constitutes property of the Debtors' estates (as defined in 11 U.S.C. § 541)). The priming of the security interests in and liens on the Prepetition Collateral and any other interests of the Debtors in property under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Term Sheet and as further described below, will enable the Debtors to obtain the DIP Facility and to continue to operate their business for the benefit of their estates and creditors, and the Debtors would not be able to obtain postpetition financing in a sufficient amount without granting such priming liens. Consistent with the requirements of section 364(d) of the Bankruptcy Code, and without waiving the Debtors' or any other parties' right to assert any and all challenges, causes of action, and claims against the Prepetition Secured Parties, the Prepetition Secured Parties shall receive adequate protection as set forth in this Interim Order, pursuant to sections 361, 363, and 364 of the Bankruptcy Code, solely to the extent of any decrease in the value of its interest, if any, in the Prepetition Collateral resulting from (i) the use, sale, or lease by the Debtors of the Prepetition

8

Collateral during the pendency of the Chapter 11 Cases; (ii) the DIP Liens and the Carve Out pursuant to this Interim Order and the DIP Term Sheet; or (iii) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such actual diminution, collectively, "Diminution").

l.      **DIP Budget**.  The Debtors have prepared and delivered to the DIP Lender and its advisors an initial budget attached hereto as Exhibit 2 (together with any additional line-item or other detail and supplements as may be provided pursuant to the terms of the DIP Term Sheet, the "Initial DIP Budget").  The Initial DIP Budget reflects, among other things, for the 13-week period commencing on or about the Petition Date, the Debtors' projected operating receipts, operating disbursements, non-operating disbursements, net operating cash flow and liquidity for each one-week period covered thereby.  The Initial DIP Budget may be modified, amended, extended, and updated from time to time in accordance with the DIP Term Sheet or the other DIP Documents, and such modified, amended, extended and/or updated budget, once approved (or deemed approved) by the Debtors and the DIP Lender, shall modify, replace, supplement or supersede, as applicable, the Initial DIP Budget for the periods covered thereby (the Initial DIP Budget and each subsequent approved budget (including any additional line-item or other detail and supplements as may be provided pursuant to the terms of the DIP Term Sheet) shall constitute, without duplication, an "Approved Budget").  The Initial DIP Budget has been prepared by the Debtors, their management and their advisors, and the Debtors believe that the Initial DIP Budget is reasonable under the circumstances.  The DIP Lender is relying, in part, upon the Debtors' agreement to comply with the Approved Budget (subject only to Permitted Variances) and the terms of the DIP Term Sheet in determining to enter into the DIP Facility and to consent to the use of Cash Collateral provided for in this Interim Order.

Case 25-30256   Doc 69   Filed 02/06/25   Entered 02/06/25 14:30:47   Desc Main
Document    Page 9 of 38

m.     **Use of Cash Collateral and Proceeds of DIP Facility**.  As a condition to the Debtors' entry into the DIP Term Sheet and the other DIP Documents and the extension of credit under the DIP Facility, including the use of Cash Collateral, the Debtors have agreed that the proceeds of the DIP Facility and Cash Collateral shall be used solely in accordance with the terms and conditions of this Interim Order, the DIP Term Sheet, and the Approved Budget (subject to Permitted Variances).  Upon entry of this Interim Order, all of the Debtors' cash, including the Debtors' cash and other amounts on deposit or maintained in any banking, checking, or other deposit accounts by the Debtors, any amounts generated by the collection of accounts receivable or other disposition of the DIP Collateral or deposited into the Debtors' banking, checking, or other deposit accounts as of the Petition Date, and the proceeds of any of the foregoing, wherever located, is the DIP Lender's Cash Collateral.

n.     **Section 506(c) and Marshaling**.  As material inducement to the DIP Lender's agreement that its liens and superpriority claims shall be subject to payment of the Carve Out and the Permitted Prior Liens, upon entry of the Final Order, the DIP Lender is entitled to (i) a waiver of the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral and the DIP Obligations in favor of the DIP Lender; and (ii) a waiver of the provisions of section 506(c) of the Bankruptcy Code with respect to the DIP Collateral.

o.     **Requisite Authority**.  Subject to entry of this Interim Order, each Debtor has all requisite corporate or entity power and authority to execute and deliver the DIP Term Sheet and the other DIP Documents to which it is a party and to perform its obligations thereunder.

p.     **Immediate Entry**.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).  Absent granting the relief set forth in this Interim Order, the Debtors' estates will be immediately and irreparably harmed.  Consummation of the

10

DIP Facility and the permitted use of Prepetition Collateral in accordance with this Interim Order and the DIP Term Sheet, are therefore in the best interests of the Debtors' estates and consistent with the Debtors' exercise of their fiduciary duties.

NOW, THEREFORE, based upon the foregoing findings and conclusions, the Motion, and the record before this Court, and after due consideration, and this Court having found good and sufficient cause therefor,

**IT IS HEREBY ORDERED THAT:**

1.      **Motion Granted**.  The relief sought in the Motion is GRANTED on an interim basis as set forth herein. Entry into the DIP Term Sheet and, as applicable, the other DIP Documents is authorized and approved, and the use of Cash Collateral on an interim basis is authorized, in each case, subject to the terms and conditions set forth in this Interim Order and in the DIP Term Sheet, including the Approved Budget (subject to Permitted Variances). All objections to the Motion to the extent not withdrawn, waived, settled, or resolved are hereby denied and overruled on the merits.

2.      **Authorization of the DIP Facility**. The Debtors are expressly and immediately authorized and empowered to execute and deliver the DIP Term Sheet and the other DIP Documents (as applicable), and to incur and perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Term Sheet, and to execute, deliver, and perform (and to cause the DIP Loan Parties to execute, deliver, and perform) under all instruments, certificates, agreements, and documents which may be required or necessary for their performance under the DIP Term Sheet, and the creation and perfection of the DIP Liens described in and provided for by this Interim Order and the DIP Term Sheet.  Each of the Debtors is hereby authorized to pay any principal, interest, fees, expenses, and other amounts subject to and in

11

accordance with the DIP Term Sheet and this Interim Order, as such amounts become due and owing, without further Court approval (except as otherwise provided herein or in the DIP Term Sheet), including, without limitation, the Commitment Fee and the Exit Fee, as well as any reasonable and documented fees and expenses of counsel to the DIP Lender, as set forth herein and in the DIP Term Sheet, subject to paragraph 26 of this Interim Order, and to take any other actions that may be necessary or appropriate, all to the extent provided in this Interim Order and the DIP Term Sheet. Upon execution and delivery, the DIP Term Sheet and, as applicable, the other DIP Documents shall represent legal, valid, and binding obligations of the Debtors, enforceable against the Debtors and their estates in accordance with their terms. All provisions of the DIP Term Sheet are incorporated herein and approved in their entirety. Each officer of the Debtors acting individually is hereby authorized to execute and deliver each of the DIP Term Sheet and the other DIP Documents.

3. **DIP Obligations**. The DIP Term Sheet and this Interim Order shall constitute and evidence the validity and binding effect of the DIP Obligations. All DIP Obligations shall be enforceable against the Debtors, their respective estates, and any successors thereto, including without limitation, any trustee appointed in the Chapter 11 Cases, or in any case under chapter 7 of the Bankruptcy Code upon the conversion of the Chapter 11 Cases, or in any other proceeding superseding or related to any of the foregoing (the "Successor Case"). Upon entry of this Interim Order, the DIP Obligations shall include, but not be limited to, (a) the payment by the Debtors of (i) the unpaid principal amount of and interest on the DIP Loans, as and when due, whether at maturity, by acceleration, or otherwise, and (ii) all other monetary obligations of the Debtors to the DIP Lender under the DIP Term Sheet and this Interim Order, and (b) the payment and performance of all covenants, duties, agreements, obligations and liabilities of the Debtors to the

12

DIP Lender under the DIP Term Sheet and this Interim Order. The Debtors and their successors shall be jointly and severally liable for repayment of any funds advanced pursuant to the DIP Term Sheet and the DIP Obligations. The DIP Obligations shall become due and payable, without notice or demand, on the Maturity Date (as set forth in section 7 of the DIP Term Sheet) or as otherwise set forth in the DIP Term Sheet. No obligation, payment, transfer, or grant of collateral as security hereunder or under the DIP Term Sheet (including any DIP Obligation or DIP Liens) to the DIP Lender shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law, or be subject to any disgorgement, avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination, claim, counterclaim, charge, assessment, cross-claim, defense, or any other liability or challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity for any reason.

4. **Authorization to Borrow**. The Debtors are hereby authorized to execute, deliver, enter into and, as applicable, comply with and perform all of their obligations, and to pay all fees, costs, expenses, indemnities, and other amounts contemplated, under the DIP Term Sheet (and any other DIP Documents) and to take such other and further acts as may be necessary, appropriate or desirable in connection therewith. Upon entry of this Interim Order, the Debtors are authorized to borrow up to aggregate amount of the Interim Amount, in each case, in accordance with the DIP Term Sheet, and the DIP Obligations are hereby approved (as and when such amounts become earned, due, and payable in accordance with the DIP Term Sheet) without the need to seek further Court approval. The borrowing of DIP Loans under this Interim Order and the DIP Term Sheet shall permanently decrease the DIP Commitment and, once repaid, the DIP Loans incurred may not be re-borrowed.

5. **DIP Collateral**. The term "DIP Collateral" means, collectively, each Debtor's right, title, and interest in, to and under all such Debtor's assets, including, but not limited to the following, in each case, whether now owned or existing or hereafter acquired, created or arising and wherever located: all assets and property of such Debtor and its estate, real or personal, tangible or intangible, now owned or hereafter acquired, whether arising before or after the Petition Date, including, without limitation, all contracts, contract rights, licenses, general intangibles, instruments, equipment, accounts, documents, goods, inventory, fixtures, documents, cash, cash equivalents, accounts receivables, chattel paper, letters of credit and letter of credit rights, investment property (including, without limitation, all equity interests owned by such Debtor in its current and future subsidiaries), commercial tort claims, arbitration awards, money, insurance, receivables, receivables records, deposit accounts, collateral support, supporting obligations and instruments, fixtures, all interests in leaseholds and real properties, all patents, copyrights, trademarks, all trade names and other intellectual property (whether such intellectual property is registered in the United States or in any foreign jurisdiction), together with all books and records relating to the foregoing, all proceeds, products, accessions, rents and profits of or in respect of any of the foregoing (as such terms are defined in the Uniform Commercial Code as in effect from time to time in the State of Georgia) and (i) effective upon entry of the Interim Order, all causes of actions under section 549 of the Bankruptcy Code to recover any postpetition transfer of DIP Collateral and any proceeds thereof and (ii) effective upon entry of the Final Order, all Avoidance Actions[5] and the proceeds thereof.

---

[5] For the purposes of this Interim Order, "Avoidance Actions" means any and all avoidance, recovery, subordination or other claims, actions or remedies that may be brought by or on behalf of the Loan Parties or their estates or other authorized parties in interest under the Bankruptcy Code or other applicable law, including actions or remedies under sections 544, 545, 547, 548, and 550 of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

6.      **Disposition of Collateral**.  Notwithstanding anything otherwise provided herein, it shall be deemed an Event of Default under the DIP Term Sheet and, as applicable, the other DIP Documents if the Debtors sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, other than in the ordinary course of business or in connection with the payments contemplated under this Interim Order or the Approved Budget (subject to the Permitted Variances), without the prior written consent of the DIP Lender, which consent shall not unreasonably be withheld or delayed.  Notwithstanding anything otherwise provided herein, 100% of any net cash proceeds of any sale of DIP Collateral outside of the ordinary course of business shall, subject to the satisfaction of the Carve Out and the lien priorities set forth herein and in the DIP Term Sheet, be used to immediately satisfy the DIP Obligations.

7.      **DIP Liens**.  To secure the DIP Obligations, immediately upon and effective as of entry of this Interim Order, the DIP Lender is hereby granted, on an interim basis, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected security interests in and liens on the DIP Collateral (the "DIP Liens") as follows, in each case subject to the Carve Out and Permitted Prior Liens:

a.  **Liens Priming the Prepetition Liens**.  Pursuant to section 364(d)(1) of the Bankruptcy Code, valid, binding, continuing, enforceable, non-avoidable and automatically and fully perfected first-priority senior priming liens and security interests in all assets and interests in property of the Debtors that are subject to Prepetition Liens (including the Prepetition Collateral), regardless of where located, which senior priming liens and security interests in favor of the DIP Lender shall be senior to the Prepetition Liens;

15

b. **Liens on Unencumbered Property**. Pursuant to section 364(c)(2) of the Bankruptcy Code, valid, binding, continuing, enforceable, non-avoidable, and automatically and fully perfected first-priority liens on and security interests in all DIP Collateral that is not otherwise subject to any valid, enforceable, and non-avoidable liens or security interests; and

c. **Liens Junior to Certain Other Liens**. Pursuant to section 364(c)(3) of the Bankruptcy Code, valid, enforceable, non-avoidable, and automatically and fully perfected junior liens on and security interests in all DIP Collateral (other than as set forth in clauses 7(a) and 7(b)), junior only to the "Permitted Prior Liens" (as defined in Schedule 2 of the DIP Term Sheet).

For the avoidance of doubt, the liens and security interests granted in paragraphs a. through c. above are only with respect to property of the Debtors' estates (as defined in 11 U.S.C. § 541), which for the avoidance of doubt includes all cash, cash equivalents and receivables owned by and/or owed to the Debtors. Other than as set forth herein or in the DIP Term Sheet, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Case, and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases or any Successor Case, upon the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Chapter 11 Cases or Successor Case. The DIP Liens shall not be subject to section 510, 549, or 550 of the Bankruptcy Code.

8. **DIP Superpriority Claims**. Subject to the Carve Out, immediately upon entry of this Interim Order, the DIP Lender is hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, allowed superpriority administrative expense claims in the Chapter 11 Cases

and any Successor Case (collectively, the "DIP Superpriority Claims") for all DIP Obligations with priority over any and all administrative expense claims and unsecured claims against the Debtors' or their estates in the Chapter 11 Cases and any Successor Case, as provided under section 364(c)(1) of the Bankruptcy Code, and which shall be senior to the rights of the Debtors, their estates, and their successors or other representatives to the extent permitted by law. The DIP Superpriority Claims shall have recourse to and be payable from all prepetition and postpetition property and assets of the Debtors and the estates and all DIP Collateral and all proceeds thereof.

9. **No Obligation to Extend Credit**. The DIP Lender shall have no obligation to make any loan or advance under the DIP Term Sheet unless (a) all of the conditions precedent and other terms under the DIP Term Sheet and this Interim Order have been satisfied in full or waived by the DIP Lender (in its sole discretion), and (b) no Event of Default under the DIP Term Sheet or the other DIP Documents (including this Interim Order) has occurred and is continuing.

10. **Use of DIP Facility Proceeds**. The Debtors shall be permitted to use DIP Loans under the DIP Facility only for the purposes specifically set forth in this Interim Order and the DIP Term Sheet. Notwithstanding anything herein, the extensions of credit under the DIP Facility shall not constitute Cash Collateral of the Prepetition Secured Parties.

11. **No Monitoring Obligation**. The DIP Lender shall not have any obligation or responsibility to monitor any Debtor's use of the DIP Facility, and the DIP Lender may rely upon each Debtor's representation that the use of the DIP Facility at any time is in accordance with the requirements of this Interim Order and the DIP Term Sheet, including the Approved Budget (subject to the Permitted Variances).

12. **Authorization to Use Cash Collateral**. Subject to the terms and conditions of this Interim Order and the DIP Term Sheet, and in accordance with the Approved Budget (subject to

Case 25-30256   Doc 69   Filed 02/06/25   Entered 02/06/25 14:30:47   Desc Main
Document     Page 17 of 38

the Permitted Variances), the Debtors are authorized to use Cash Collateral until the DIP Termination Declaration Date.

13. **Adequate Protection for Prepetition Secured Parties**. As adequate protection:

a. solely to the extent of any Diminution of the Prepetition Secured Parties' asserted interest in the Prepetition Collateral resulting from the subordination of the Prepetition Liens to the DIP Liens and the Carve Out, the imposition of the automatic stay, and the use, sale or lease by the Debtors of the Debtors' assets that constitute Prepetition Collateral during the pendency of these Chapter 11 Cases, the Prepetition Secured Parties shall receive:

(i) continuing valid, binding, enforceable and perfected postpetition replacement liens pursuant to sections 361, 363(e), and 364(d)(l) of the Bankruptcy Code on the DIP Collateral, which shall be subject and subordinated only to the Carve Out, the DIP Liens, and Permitted Prior Liens (the "Adequate Protection Liens") and which (a) shall otherwise be senior to all other security interests in, liens on, or claims against the DIP Collateral, and (b) shall not otherwise be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Case and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases or any Successor Case, and shall not be subject to sections 510, 549 or 550 of the Bankruptcy Code, without waiver of any of the Debtors' or any other party's right to assert any and all challenges, causes of action, and claims against the Prepetition Secured Parties; and

18

(ii)     Subject and junior to the Carve Out, the DIP Liens, the Permitted Prior Liens, the DIP Superpriority Claims, and the indefeasible repayment in full in cash of all DIP Obligations, immediately upon entry of this Interim Order, the Prepetition Secured Parties are hereby granted pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, allowed superpriority administrative expense claims (the "<u>Adequate Protection Superpriority Claims</u>") in the Chapter 11 Cases and any Successor Case.

b.  the Debtors shall provide to counsel in this case for UMB Bank, N.A. and ServisFirst Bank the Variance Reports, the Updated Budgets and any other reports required to be delivered to the DIP Lender hereunder at the same time such items are provided to the DIP Lender, and such counsel can share such reports with the Prepetition Secured Parties.

14.     **Modification of DIP Term Sheet**.  The Debtors and the DIP Lender are hereby authorized to implement, in accordance with the terms of the DIP Term Sheet any non-material modifications of the DIP Term Sheet without further notice, motion or application to, order of or hearing before, this Court.  Any material modification or amendment to the DIP Term Sheet shall only be permitted pursuant to an order of this Court, after being submitted to this Court upon five (5) days' notice to the Bankruptcy Administrator and the Prepetition Secured Parties; <u>provided</u> that any forbearance from, or waiver of, (a) a breach by the Debtors of a covenant representation or any other agreement or (b) a default or an Event of Default, in each case under the DIP Term Sheet shall not require an order of this Court.  In the event of any inconsistency between this Interim Order and the DIP Term Sheet, this Interim Order shall control.

15.     **DIP Facility Reporting**.  Except as otherwise provided herein or approved by the DIP Lender, the proceeds from the DIP Facility shall be used only in compliance with the terms of the DIP Term Sheet and in accordance with the Approved Budget.  The Debtors shall comply with the reporting requirements and obligations set forth in the DIP Term Sheet.

16.     **Perfection of DIP Liens and Adequate Protection Liens**.  This Interim Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, deed of trust, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens or to entitle the DIP Lender and the Prepetition Secured Parties to the priorities granted herein.  Notwithstanding the foregoing, the DIP Lender and the Prepetition Secured Parties are authorized, but not required, to file, as each deems necessary or advisable, such financing statements, security agreements, mortgages, notices of liens and other similar documents to perfect or otherwise evidence the DIP Liens and the Adequate Protection Liens in accordance with applicable non-bankruptcy law, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens or the Adequate Protection Liens.  The DIP Lender and the Prepetition Secured Parties may, in their respective sole discretion, file an electronic copy or photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office in addition to or in lieu of such financing statements, notices

20

of lien or similar instruments. To the extent that a Prepetition Secured Party is, with respect to the DIP Collateral, a secured party under any Prepetition Credit Documents or is listed as loss payee, lenders' loss payee or additional insured under any Debtor's insurance policies, the DIP Lender shall also be deemed to be the secured party or mortgagee, as applicable, under such documents or to be the loss payee or additional insured, as applicable.

17. **Modification of Automatic Stay**. The automatic stay of section 362 of the Bankruptcy Code is hereby modified to the extent necessary to permit the Debtors, the DIP Lender, and, as applicable, the Prepetition Secured Parties to accomplish the transactions contemplated by this Interim Order.

18. **Proceeds of Subsequent Financing**. If any of the Debtors, any trustee, any examiner, or any responsible officer subsequently appointed in any of the Chapter 11 Cases or any Successor Case, shall obtain credit or incur debt pursuant to sections 364(b), 364(c), or 364(d) of the Bankruptcy Code in violation of the DIP Term Sheet or otherwise at any time prior to the indefeasible repayment in full in cash of all DIP Obligations (other than unasserted contingent obligations that expressly survive termination of the DIP Term Sheet) and the termination of the DIP Lender's obligation to extend credit under the DIP Facility, then, after satisfaction of the Carve Out, and unless otherwise agreed by the DIP Lender, all cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Lender to be distributed in accordance with this Interim Order and the DIP Term Sheet.

19. **Payments Held in Trust**. Except as expressly permitted in this Interim Order, the DIP Term Sheet, or otherwise ordered by this Court, including in respect of the Carve Out and the Permitted Prior Liens, in the event that any person or entity receives any payment on account of a security interest in the DIP Collateral or receives any DIP Collateral or any proceeds of DIP

21

Collateral prior to indefeasible payment in full in cash of all DIP Obligations under the DIP Term Sheet, and termination of the DIP Facility in accordance with the DIP Term Sheet, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of DIP Collateral in trust and shall immediately turn over such proceeds to the DIP Lender, for application in accordance with this Interim Order, the DIP Term Sheet, or the applicable DIP Documents.

20.     **Maintenance of DIP Collateral**.  Until the payment in full of the DIP Obligations, the Debtors shall: (a) insure the DIP Collateral as required under the DIP Term Sheet; and (b) maintain the cash-management system consistent with the terms and conditions of any order(s) governing the Debtors' cash-management systems and the DIP Term Sheet.

21.     **Right to Credit Bid**.  Subject to section 363(k) of the Bankruptcy Code, the DIP Lender may credit bid all or any portion of its claims, including, without limitation, the DIP Obligations and the DIP Superpriority Claim, in connection with any proposed sale of any, all, or substantially all of the Debtors' assets, whether occurring pursuant to section 363 of the Bankruptcy Code or included as part of a reorganization plan under section 1123 of the Bankruptcy Code, including a plan subject to confirmation under section 1129(b)(2)(A)(ii) of the Bankruptcy Code, or a sale or disposition by a chapter 7 trustee for any of the Debtors under section 725 of the Bankruptcy Code.  In connection with any such credit bid by the DIP Lender, the Debtors shall, upon reasonable advance notice by the DIP Lender, provide for the assignment of such DIP Lender's right to purchase the acquired assets to one or more of the applicable DIP Lender's sub-agents or a newly formed acquisition vehicle.

22.     **DIP Termination Event; Exercise of Remedies**.

a.     **DIP Termination Event**.  For purposes of this Interim Order, the term "<u>DIP Termination Event</u>" shall mean: (i) the occurrence of the Maturity Date, (ii) the

22

occurrence of any material breach or Event of Default under the DIP Term Sheet or this Interim Order, or (iii) the acceleration of the DIP Obligations or termination of the DIP Commitment in accordance with the terms of the DIP Term Sheet or the other DIP Documents.

b. **Exercise of Remedies**. Upon the occurrence of a DIP Termination Event, without further notice to, hearing of, application to, or order from this Court, the automatic stay provisions of section 362 of the Bankruptcy Code shall be vacated and modified to the extent necessary to permit the DIP Lender to take any of the following actions, at the same or different time: (i) deliver a written notice (which may be via email) to counsel for the Debtors, the Bankruptcy Administrator, counsel for the Prepetition Secured Parties, and counsel for the Creditors' Committee (the "Remedies Notice") declaring the occurrence of a DIP Termination Event (such date, the "DIP Termination Declaration Date") and deliver a Carve Out Trigger Notice; (ii) declare the termination, reduction or restriction of any commitments under the DIP Facility (including the DIP Commitment) to the extent any such commitment remains; (iii) declare all DIP Obligations to be immediately due and payable, without presentment, demand or protest or other notice of any kind, all of which are expressly waived by the Debtors; (iv) declare the termination, restriction or reduction of the DIP Facility and the DIP Term Sheet as to any further liability or obligation thereunder, but without affecting the DIP Liens, the DIP Superpriority Claims, or the DIP Obligations; (v) charge default interest at the default rate set forth in the DIP Term Sheet; and (vi) declare the termination, restriction, or revocation of the ability of the Debtors to use Cash Collateral.

c. **Waiting Period Procedures**. The Debtors may seek an emergency hearing solely during the period beginning on the DIP Termination Declaration Date and prior to the expiration of the five (5) days following the DIP Termination Declaration Date (such period, the "Waiting Period"). If, notwithstanding the foregoing, a hearing cannot be scheduled prior to the expiration of the Waiting Period, the Waiting Period shall be deemed automatically extended until such time as the matter can be heard by the Court. At any hearing regarding a Remedies Notice, the Court may only consider whether an Event of Default has occurred or is continuing. During the Waiting Period, the Debtors shall continue to have the right to use DIP Collateral (including Cash Collateral) in accordance with the terms of this DIP Order and the Approved Budget, solely to pay any expenses which are necessary to (i) preserve the Debtors' going-concern value or (ii) contest, in good faith, the occurrence of the Event of Default (other than, for the avoidance of doubt, the occurrence of the Maturity Date under the DIP Term Sheet); provided, however, that the professional fees and expenses of the Professional Persons (as defined below) shall be governed by paragraph 24 and subject to the Approved Budget.

d. **Rights and Remedies Following Termination Date**. Following a DIP Termination Declaration Date and unless this Court has entered an order prior to the expiration of the Waiting Period finding that an Event of Default has not occurred or is not continuing, the DIP Lender shall be entitled to exercise all rights and remedies in accordance with this Interim Order, the DIP Term Sheet, the other DIP Documents (if any), applicable law, and the automatic stay of section 362 of the Bankruptcy Code shall automatically, without further order of this Court, be

lifted, to allow the DIP Lender to pursue all rights and remedies in accordance with the DIP Term Sheet, the other DIP Documents (if any), this Interim Order, and applicable law.

23. **No Waiver by Failure to Seek Relief**. The rights and remedies of the DIP Lender specified herein are cumulative and not exclusive of any rights or remedies that the DIP Lender may have under this Interim Order, the DIP Term Sheet, applicable law, or otherwise. The failure or delay on the part of the DIP Lender to seek relief or otherwise exercise its rights and remedies under this Interim Order, the DIP Term Sheet, or applicable law shall not constitute a waiver of any of its respective rights. Except as expressly set forth herein, none of the rights or remedies of the DIP Lender under this Interim Order, the DIP Term Sheet shall be deemed to have been amended, modified, suspended, or waived unless such amendment, modification, suspension, or waiver is express, in writing and signed by the DIP Lender. No consents required hereunder by the DIP Lender shall be implied by any inaction or acquiescence by the DIP Lender.

24. **Carve Out**.

    a. **Priority of Carve Out**. The DIP Liens and the DIP Superpriority Claims shall be subject and subordinate to payment of the Carve Out. The Carve Out shall be senior to all claims and liens over all assets of the Debtors, including any DIP Collateral, as set forth in the DIP Orders.

    b. **Carve Out**. The term "Carve Out" shall mean the sum of (i) all fees required to be paid to the Clerk of the Court and to the Bankruptcy Administrator under 28 U.S.C. § 1930(a), together with any interest thereon pursuant to 31 U.S.C. § 3717 ("Statutory Fees"), which shall not be subject to the Approved Budget; (ii) Court-allowed fees and expenses of a trustee appointed under section 726(b) of the

25

Bankruptcy Code in an amount not to exceed $50,000, (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to sections 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") or persons or firms retained by the Creditors' Committee pursuant to sections 328 or 1103 of the Bankruptcy Code or the patient care ombudsman in these Chapter 11 Cases (if any) (together with the Debtor Professionals, the "Professional Persons"), at any time before or on the first calendar day following delivery by the DIP Lender of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice (the "Pre-Trigger Date Fees"), subject to the Approved Budget and any limits by the DIP Orders, provided that Professional Persons may carry forward budgeted but unused disbursements set forth in the Approved Budget for any week for use in any subsequent week; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $2,500,000 incurred after the first calendar day following delivery by the DIP Lender of the Carve Out Trigger Notice (the "Trigger Date"), to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap" or the "Carve Out Cap"); provided, however, that for the purposes of the foregoing, any plan success fee, financing fee, transaction fee, or other similar contingency fee shall not be included in the Post Carve Out Trigger Notice Cap and shall be paid, to the extent allowed, pursuant to any confirmed plan in these Chapter 11 Cases; provided, further, that

26

nothing herein shall be construed to impair the ability of the DIP Lender to object to the fees, expenses, reimbursement or compensation described in clauses (iii) or (iv) above, on any grounds. In the event that Allowed Professional Fees exceed or are expected to exceed the amounts provided in the Approved Budget, the parties will negotiate in good faith (but without further obligation) regarding a proposed amendment to the Approved Budget to address such additional Allowed Professional Fees. For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Lender or its counsel to the Debtors, their lead restructuring counsel, the Bankruptcy Administrator, counsel to the Prepetition Secured Parties, and counsel to the Creditors' Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the DIP Loans under and as such terms are defined in the DIP Credit Agreement, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

c. **Carve Out Trigger Notice Reserve**. The Debtors shall deposit the Pre-Trigger Date Fees in a segregated account in trust to pay such then unpaid Allowed Professional Fees (the "Carve Out Trigger Notice Reserve") prior to any and all other claims. The Carve Out Trigger Notice Reserve shall be funded on a weekly basis, and shall contain an amount equal to the amount of fees reflected in the Approved Budget for Professional Persons from the Closing Date through the weekly date of funding.

d. **Carve Out Draw**. Subject to exhaustion of the DIP Commitments, the Debtor shall be permitted to draw on the DIP Facility in the amount of the Carve Out less the

27

Carve Out Trigger Notice Reserve, notwithstanding any default, Event of Default, or the occurrence of a Trigger Date.  Any Carve Out Trigger Notice shall be deemed a consent by the DIP Lender to the Debtor depositing Cash Collateral or DIP Facility proceeds into the Carve Out Trigger Notice Reserve in an amount equal to the sum of the Post-Carve Out Trigger Notice Cap and any budgeted Pre-Trigger Date Fees reflected in the Approved Budget through the date of the Carve Out Trigger Notice that have not been deposited in the Carve Out Trigger Notice Reserve.

e. **Payment of Allowed Professional Fees Prior to the Trigger Date**.  Any payment or reimbursement made prior to the occurrence of the Trigger Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

f. **No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees**.  The DIP Lender shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any of the Professional Persons incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in the DIP Orders or otherwise shall be construed to obligate the DIP Lender in any way to pay compensation to, or to reimburse expenses of, any of the Professional Persons, or to guarantee that the Debtors or their estates has sufficient funds to pay such compensation or reimbursement.  Nothing herein shall be construed as consent to the allowance of any fees and/or expenses of Professional Persons of any of the Debtors, the Creditors' Committee, any other official or unofficial committee in these Chapter 11 Cases or any Successor Cases, or of any other person or entity, or shall affect the

28

right of the DIP Lender to object to the allowance and payment of any such fees and expenses.

25. **Approval of DIP Fees**. In consideration for the DIP Facility, the DIP Lender shall be paid all fees, expenses and other amounts payable under the DIP Term Sheet as such become due, including, without limitation, the Commitment Fee (which shall be fully earned and allowed upon entry of this Interim Order and paid in full in cash from the proceeds of the "Initial Draw," as that term is defined in the DIP Term Sheet), the Exit Fee, and the reasonable and documented fees and expenses of the DIP Lender in connection with the DIP Facility (all such fees, together, the "DIP Fees"). Upon entry of this Interim Order, the DIP Fees are approved, on a final basis, and are deemed to be allowed, fully earned, non-refundable, and payable in accordance with the terms of the DIP Term Sheet without the need for any further order of this Court. The DIP Fees shall be part of the DIP Obligations.

26. **DIP Lender's Professionals' Fees**. Professionals for the DIP Lender (Kilpatrick Townsend & Stockton LLP, Wallace, Jordan, Ratliff & Brandt, LLC, and Resurgence Financial Services, LLC, collectively, the "DIP Lender's Professionals"), shall provide summary copies of any invoices (which shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege, the attorney work product doctrine or any other evidentiary privilege or protection recognized under applicable law) with: (i) a summary of the work performed during the relevant compensation period; (ii) the name of, hourly rate (if applicable) of, and number of hours worked by each professional and paraprofessional who worked on the matter during the relevant compensation

29

period; and (iii) the total fee amount being requested by electronic mail to the Bankruptcy Administrator and counsel to the Creditors' Committee (if appointed) contemporaneously with the delivery of such fee and expense statements to the Debtors. The Debtors shall promptly pay in full all such invoiced fees and expenses at the conclusion of the Review Period (as defined below) other than the Disputed Invoiced Fees (as defined below). Any objections raised by the Debtors, the Bankruptcy Administrator or the Creditors' Committee with respect to such invoices (the "Disputed Invoiced Fees") must be in writing and state with particularity the grounds therefor and must be submitted to the applicable professional within 10 days of the receipt of such invoice (the "Review Period") (to be followed by the filing with this Court, if necessary, of a motion or other pleading, with at least 10 days' prior written notice by the submitting party of any hearing on such motion or other pleading). Notwithstanding the foregoing, on or about the Closing Date, the Debtors shall pay fees and expenses of the DIP Lender's Professionals incurred prior to such date, without the need to first deliver a copy of its invoice as provided for herein. No DIP Lender's Professionals shall be required to file an application seeking compensation for services or reimbursement of expenses with this Court.

27. **Indemnification**. The DIP Lender (and its affiliates and respective officers, directors, employees, advisors, and agents, solely in such capacity) (each such person, an "Indemnitee") will have no liability for, and will be indemnified and held harmless by the Debtors and their estates against, any losses, claims, damages, liabilities or expenses incurred in respect of the financing contemplated hereby or the use or the proposed use of proceeds thereof, except to the extent they are found by a final, non-appealable judgment of a court of competent jurisdiction to arise from the gross negligence, bad faith or willful misconduct of the relevant indemnified person (or any of its affiliates or any of its or its respective officers, directors, employees, advisors

Case 25-30256    Doc 69    Filed 02/06/25    Entered 02/06/25 14:30:47    Desc Main
Document      Page 30 of 38

or agents). Such indemnity shall not be available (a) to the extent arising from a material breach of any obligation of such Indemnitee under the DIP Term Sheet or (b) to the extent arising out of any loss, claim, damage, liability or expense that does not involve an act or omission of the Debtors and that is brought by an Indemnitee against another Indemnitee.

28. **Proofs of Claim**. The DIP Lender shall not be required to file a proof of claim in the Chapter 11 Cases or Successor Case, and the entry of this Interim Order shall be deemed to constitute a timely filed proof of claim. Any order entered by this Court in relation to the establishment of a bar date for any claim (including without limitation, administrative claims) in the Chapter 11 Cases or Successor Case shall not apply to the DIP Lender. Notwithstanding the foregoing, the DIP Lender may, in its sole discretion, file (and amend or supplement) a proof of claim or aggregate proofs of claim in the Chapter 11 Cases for any claim allowed herein.

29. **Limitations on Use of DIP Proceeds, Cash Collateral, the Carve Out and Other Funds**. Except as otherwise permitted in this Interim Order and the Approved Budget, the DIP Facility, the DIP Collateral, the Cash Collateral, and the Carve Out may not be used, directly or indirectly, by any of the Debtors, the Creditors' Committee or any trustee or other estate representative appointed in the Chapter 11 Cases (or any Successor Case) or any other person or entity (or to pay any professional fees, disbursements, costs or expenses incurred in connection therewith) in connection with (a) preventing, hindering, or delaying any of the DIP Lender's enforcement or realization upon any of the DIP Collateral; (b) using or seeking to use Cash Collateral without the permission of the DIP Lender or selling or otherwise disposing of DIP Collateral without the prior written consent of the DIP Lender or as permitted by the DIP Term Sheet; (c) using or seeking to use any insurance proceeds constituting DIP Collateral without the prior written consent of the DIP Lender; (d) seeking to amend or modify any of the rights granted

31

to the DIP Lender under this Interim Order or the DIP Term Sheet, including seeking to use Cash Collateral or DIP Collateral on a contested basis; (e) litigating, objecting to, challenging or contesting in any manner in any way the DIP Liens, DIP Obligations, DIP Superpriority Claims, DIP Collateral (including Cash Collateral) or any other claims held by or on behalf of the DIP Lender; (f) litigating, objecting to, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, or any other liens or interests of the DIP Lender; (g) seeking to subordinate, recharacterize, disallow or avoid the DIP Obligations; or (h) any other prohibited or otherwise restricted use of proceeds as set forth in the DIP Term Sheet; provided, however, that, upon an Event of Default or DIP Termination Event, nothing herein shall limit the Debtors' right to move for an order of the Court authorizing the use of Cash Collateral absent the DIP Lender's consent.

30.     **Releases**.  Upon entry of this Interim Order, the Debtors, on their own behalf and on behalf of their estates, forever and irrevocably: (a) release, discharge, and acquit the DIP Lender and each of its respective former or current officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest, in each case solely in their capacity as such, from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every type, including, without limitation, any so-called "lender liability" or equitable subordination claims or defenses, solely with respect to or relating to the negotiation of and entry into the DIP Term Sheet and the other DIP Documents; and (b) waive, discharge and release any and all defenses (including, without limitation, offsets and

counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability, and avoidability of the DIP Liens and the DIP Obligations.

31. **Waivers**.

    a. **Limitation on Charging on Expenses**. Subject to entry of the Final Order, no costs or expenses of administration of the Chapter 11 Cases or any Successor Case shall be charged against or recovered from or against the DIP Lender with respect to the DIP Collateral pursuant to section 105 or section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the DIP Lender.

    b. **No Marshaling**. Subject to entry of the Final Order, in no event shall the DIP Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the DIP Obligations and all proceeds shall be received and applied in accordance with this Interim Order and the DIP Term Sheet.

32. **No Lender Liability**. In determining to make any loan (whether under the DIP Term Sheet or otherwise) or to permit the use of Cash Collateral, the DIP Lender shall not owe any fiduciary duty to the Debtors or their respective creditors, shareholders, or estate, and the DIP Lender shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors by virtue of making the DIP Loans. Furthermore, nothing in this Interim Order shall impose or allow the imposition upon the DIP Lender of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their affiliates, if any (as defined in section 101(2) of the Bankruptcy Code).

33. **Limitation of Liability**. Nothing in this Interim Order, the DIP Term Sheet, the Prepetition Credit Documents, or any other documents related to these transactions shall in any

way be construed or interpreted to impose or allow the imposition upon the DIP Lender of (a) any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts or (b) any fiduciary duties to the Debtors, their respective creditors, shareholders, or estates. The DIP Lender shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other person and all risk of loss, damage, or destruction of the DIP Collateral shall be borne by the Debtors.

34. **No Third-Party Beneficiaries**. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any Professional Person, third party, creditor, landlord, lessor, equity holder, or any direct, indirect, or incidental beneficiary.

35. **Insurance Proceeds and Policies**. The DIP Lender shall be, and shall be deemed to be, without any further action or notice, named as an additional insured and loss payee on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.

36. **No Waivers or Modifications of Interim Order**. The Debtors have agreed not to and shall not seek any modification or extension of this Interim Order without the prior written consent of the DIP Lender and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Lender.

37. **Binding Effect of this Interim Order**. Immediately upon entry of this Interim Order by this Court, the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the DIP Lender, the Prepetition Secured Parties, all other creditors of any of the Debtors, the Creditors' Committee, and all other parties in interest and

their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Chapter 11 Cases, any Successor Case, or upon dismissal of any of the Chapter 11 Cases or any Successor Case; provided that the DIP Lender shall not have any obligation to permit the use of DIP Collateral (including Cash Collateral) by or extend any financing to any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the Debtors' estates.

38. **Discharge**. Except as otherwise agreed in writing by the DIP Lender, the DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization or liquidation in any of the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been indefeasibly paid in full in cash, on or before the effective date of such confirmed plan.

39. **Survival**. The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any chapter 11 plan in any of the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases or any Successor Case; or (d) pursuant to which this Court abstains from hearing the Chapter 11 Cases or Successor Case. The terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to the DIP Lender pursuant to this Interim Order and the DIP Term Sheet, and the adequate protection provided to the Prepetition Secured Parties pursuant to this Interim Order, shall continue in the Chapter 11 Cases, in any Successor Case, or following dismissal of any of the Chapter 11 Cases or any Successor Case, and shall maintain their priority as provided by this Interim Order until, in respect of the DIP Facility, all the DIP Obligations, pursuant to the DIP Term Sheet and this Interim Order, have been paid in full (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge

35

by their terms).  The terms and provisions concerning the indemnification of the DIP Lender shall continue in the Chapter 11 Cases, in any Successor Case, following dismissal of any of the Chapter 11 Cases or any Successor Case, following termination of the DIP Facility or the indefeasible repayment of the DIP Obligations.

40.  **Necessary Actions**.  The Debtors are authorized and directed to take such actions as are reasonable or appropriate to implement the terms of this Interim Order and the DIP Term Sheet.

41.  **Enforceability**.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon entry thereof.  Notwithstanding Bankruptcy Rules 4001(a)(4), 6004(h), or 7062, any applicable Local Rules, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

42.  **Interim Order Controls**.  In the event of any conflict between or among the terms or provisions of this Interim Order and the DIP Term Sheet, the terms and provisions of this Interim Order shall govern and control.

43.  **Headings**.  All paragraph headings used in this Interim Order are for ease of reference only and shall not affect the construction or interpretation hereof.

44.  **Retention of Jurisdiction**.  This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of the DIP Term Sheet or this Interim Order.

45.  **Final Hearing**.  The final hearing (the "Final Hearing") on the Motion shall be held on **Tuesday, March 4, 2025 at 2:00 p.m.** (prevailing Central Time) in the United States

Case 25-30256   Doc 69   Filed 02/06/25   Entered 02/06/25 14:30:47   Desc Main
Document    Page 36 of 38

Bankruptcy Court for the Middle District of Alabama, Courtroom 4F, One Church Street, Montgomery, AL 36104. The Court will allow virtual attendance with limited participation through the following Webex link: https://us-courts.webex.com/us-courts/j.php?MTID=m8aeb0ea882cdf7cad412eea85ccd166a. Parties wishing to attend the final hearing should call in **fifteen (15) minutes** prior to the start of the hearing. Any objections or responses to entry of a final order on the Motion shall be filed on or before **Thursday, February 27, 2025, at 4:00 p.m.** (prevailing Central Time) and served on the following parties: (a) the Debtors; (b) proposed attorneys for the Debtors, Burr & Forman, 420 North 20th Street, Suite 3400, Birmingham, AL 35203, Attn: Derek F. Meek (dmeek@burr.com); (c) attorneys for the DIP Lender, Kilpatrick Townsend & Stockton, LLP, 1100 Peachtree Street NE, Suite 2800, Atlanta, GA 30309, Attn: Paul M. Rosenblatt (prosenblatt@ktslaw.com) and Wallace, Jordan, Ratliff & Brandt, LLC, 800 Shades Creek Parkway, Suite 400, Birmingham, AL, 35209, Attn: Clark R. Hammond (CHammond@wallacejordan.com); (d) the Bankruptcy Administrator, Middle District of Alabama, One Church Street, Montgomery, AL 36104, Attn: Ms. Danielle K. Greco (danielle_greco@almba.uscourts.gov); and (e) counsel to any official committee appointed in these chapter 11 cases (collectively, the "Notice Parties"). In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

46. The requirements set forth in Bankruptcy Rule 6003(b) are satisfied. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion under the circumstances, and the requirements of Bankruptcy Rule 6004(a) and the Local Bankruptcy Rules are satisfied by such notice.

47.    Notwithstanding the applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

48.    All time periods set forth in this Interim Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

### END OF ORDER ###

Order drafted and submitted by:

**BURR & FORMAN LLP**

/s/ Derek F. Meek
Derek F. Meek
Marc P. Solomon
Burr & Forman LLP
420 20th Street North
Suite 3400
Birmingham, Alabama 35203
(205) 251-3000
dmeek@burr.com
msolomon@burr.com

*Proposed Counsel for Debtors and Debtors-in-Possession*

**Exhibit 1 – DIP Term Sheet**

**Exhibit 2 – Initial DIP Budget**

38