# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re | Case No. 25-30256-CLH |
| | Chapter 11 |
| JACKSON HOSPITAL & CLINIC, INC., *et al.*, | Jointly Administered |
| Debtors.[1] | |

## MEMORANDUM OPINION AND ORDER DENYING
## MOTIONS FOR STAY PENDING APPEAL

On April 1, 2025, this matter came before the Court for hearing on UMB Bank, N.A.'s Emergency Motion for a Limited Stay Pending Appeal of the Final Order Authorizing Post-Petition Financing [Doc. No. 264] and ServisFirst Bank's Joinder in UMB Bank, N.A.'s Emergency Motion for a Limited Stay Pending Appeal of the Final Order Authorizing Post-Petition Financing [Doc. No. 265] (together, the "Motions").

The Motions relate to appeals filed by UMB Bank, N.A. ("UMB") and ServisFirst Bank ("ServisFirst," and together with UMB, the "Movants") with respect to the Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Secured Financing Pursuant to Section 364 of the Bankruptcy Code, (B) Use Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Status, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Granting Related Relief [Doc. No. 180] (the "Final DIP Order").

Based on the pleadings and orders of record, the arguments and representations of counsel, and for the reasons below, the Motions are DENIED.

---

[1] An order was entered in accordance with Rule 1015(b) of the Federal Rules of Bankruptcy Procedure directing the joint administration of Jackson Hospital & Clinic, Inc. and JHC Pharmacy, LLC, with Jackson Hospital & Clinic, Inc. 25-30256 as the lead case. (Case No. 25-30256, Doc. 49). Jackson Hospital & Clinic, Inc. and JHC Pharmacy, LLC are hereinafter referred to as the "Debtors."

## JURISDICTION

The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered by United States District Court for the Middle District of Alabama on April 25, 1985. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2).

## BACKGROUND

### A. Prepetition Claims of the Movants

The Movants assert pre-petition claims against the Debtors and liens on certain of the Debtors' assets under loans and related security documents more particularly described in items 1-5 of Schedule A-3 to the DIP Credit Agreement, attached as Exhibit 1 to the Final DIP Order. To date, no party has challenged the validity, priority, or extent of the liens asserted by the Movants, although the Official Committee of Unsecured Creditors (the "Committee") has reserved the right to do so.

### B. Post-Petition Financing Orders

On February 3, 2025, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.[2] On the same day, the Debtors filed a motion for interim and final approval of $24.5 million in DIP Loans[3] [Doc. No. 10] (the "DIP Motion"). The DIP Motion sought approval of DIP Liens on assets that included the Prepetition Collateral, which would prime the liens previously granted to the Movants. The Debtors argued that priming the Movants' liens was appropriate because the Debtors were offering the Movants adequate protection in the form of replacement liens on all assets of the Debtors (subject and subordinate to the Carve Out, the DIP Liens, and the Permitted Prior Liens).

---

[2] All references to the "Code" or the "Bankruptcy Code" are to 11 U.S.C. §§ 101-1532.
[3] Capitalized terms not otherwise defined herein have the meanings set forth in the Final DIP Order.

The DIP Motion also contained a Carve Out provision, under which a certain portion of cash collateral would be reserved each week in a segregated account to pay for, among other things, certain statutory fees and certain professional fees allowed by the Court, with all parties' rights to object to those professional fees reserved. The Movants filed limited objections to the DIP Motion, noting their efforts to negotiate with the Debtors and the DIP Lender to ensure the terms of the DIP Facility adequately protected their prepetition security interests.

On February 5, 2025, the Court held an initial hearing on the DIP Motion. At that hearing, counsel for UMB stated that modifications to the proposed interim order had been negotiated with the Debtors and the DIP Lender, including additional adequate protection in the form of superpriority administrative expense claims to the extent of any diminution in value of the Prepetition Collateral. Following the hearing, the Court entered an order approving the DIP Facility on an interim basis [Doc. No. 69] (the "Interim DIP Order"), reflecting the modifications UMB had negotiated with the DIP Lender and the Debtors, as noted on the record at the hearing.

The Interim DIP Order provided the Movants adequate protection in the form of replacement post-petition liens on all DIP Collateral (the "Adequate Protection Liens") and superpriority administrative expense claims (the "Adequate Protection Superpriority Claims" and collectively with the Adequate Protection Liens, the "Adequate Protection"), which would be subject to the DIP Lender's claims and liens and the Carve Out. By virtue of the Adequate Protection Liens on DIP Collateral, the Movants were granted new liens on all the Debtors' assets. The Court set the DIP Motion for a final hearing on March 4, 2025.

Prior to the final hearing, negotiations continued between the Movants, the Debtors, and the DIP Lender regarding the form of the proposed final order. On February 27, 2025, the Movants supplemented their Limited Objection [Doc. Nos. 147 & 151] (the "Supplemental Limited

Objections"), noting that the Movants had provided minor comments to the proposed final DIP order and further reserving their rights if any other changes impacting the Movants were made to the order prior to the hearing. The Committee also filed an objection to the DIP Motion [Doc. No. 146] (the "Committee Objection"). Relevant to the Motions, in the Committee Objection, the Committee proposed a modification to the final order to add to the Carve Out a new provision for "Trailing Expenses," defined as post-petition expenses arising in the ordinary course of the Debtors' operations that were budgeted or incurred but not paid or payable during any budget period.

On March 4, 2025, the Court held a final hearing on the DIP Motion. The Debtors, the Movants, the DIP Lender, and the Committee resolved most of their disputes over the DIP Motion, but the Committee's proposed treatment of Trailing Expenses remained unresolved. Over the objection of the Movants, the Court approved a two-tiered Carve Out – agreed to by the DIP Lender but not the Movants – to cover post-petition expenses, salaries, wages, and payroll taxes incurred in the ordinary course of the Debtors' operations.

More specifically, Paragraph 24(b)(iii) provides that the DIP Liens and DIP Superpriority Claims shall be subject and subordinate to payment of the Carve Out, defined in relevant part for purposes of the Motions as:

> the post-petition expenses incurred in the ordinary course of the Debtors' operations prior to the Trigger Date (defined below) to the extent such amounts were categorized in the AP Spending line of the Approved Budget but not paid prior to the Trigger Date, in an amount not to exceed $1,700,000.00.

(the "Senior Carve Out Provision"). Paragraph 24(g) provides:

> **Junior Carve Out**. The term "Junior Carve Out" shall mean the sum of (i) the post-petition expenses incurred in the ordinary course of the Debtors' operations prior to the Trigger Date (defined below) but not paid prior to the Trigger Date, and not paid from the Carve Out, and (ii) the post-petition salaries, wages and payroll taxes

4

> incurred in the ordinary course of the Debtors' operations prior to the Trigger Date but not paid prior to the Trigger Date. The DIP Liens, the DIP Superpriority Claims and the indefeasible repayment in full in cash of all DIP Obligations shall be senior to the Junior Carve Out. The Prepetition Liens, the Adequate Protection Liens and the Adequate Protection Superpriority Claims shall be subject and subordinate to payment of the Carve Out and the Junior Carve Out.

(the "Junior Carve Out Provision," and together with the Senior Carve Out Provision, the "Challenged Carve Outs").

### C. Scope of the Appeals and the Motions

On March 19, 2025, UMB filed a Notice of Appeal [Doc. No. 248] (the "UMB Appeal"), and ServisFirst filed a virtually identical Notice of Appeal [Doc. No. 250] (the "ServisFirst Appeal," and, together with the UMB Appeal, the "Appeals"). The Movants limited the Appeals to the provisions in the Final DIP Order authorizing the Challenged Carve Outs. In the Appeals, the Movants assert that the Challenged Carve Outs are inconsistent with the Bankruptcy Code and improperly infringe on the Movants' rights as secured creditors. In the Motions, the Movants seek a limited stay of the Final DIP Order pending appeal, asserting that they do not seek to stay the Final DIP Order in its entirety, but only the provisions related to the Challenged Carve Outs.

## LEGAL ANALYSIS AND CONCLUSIONS OF LAW

### A. Motions for Stay Pending Appeal Generally

Rule 8007 of the Federal Rules of Bankruptcy Procedure provides that, ordinarily, a party must move first in the bankruptcy court for a stay of a bankruptcy court's order pending appeal. FED. R. BANKR. P. 8007(a)(1)(A). "'A stay is not a matter of right, even if irreparable injury might otherwise result.'" *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian Ry. Co. v. U.S.*, 272 U.S. 658, 672 (1926)). A stay pending appeal is an exercise of judicial discretion, and "[t]he propriety of its issue is dependent upon the circumstances of the particular case." *Nken*, 556 U.S.

5

Case 25-30256   Doc 343   Filed 04/08/25   Entered 04/08/25 11:02:13   Desc Main
Document    Page 5 of 12

at 433 (quoting *Virginian Ry. Co.,* 272 U.S. at 672–73)). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken*, 556 U.S. at 433–434.

A stay pending appeal is extraordinary relief for which the moving party bears a heavy burden. *In re Bulger,* Case No. 21-31333, 2022 WL 348627, at *2 (Bankr. M.D. Ala. Feb. 4, 2022). Because a stay pending appeal is an exceptional remedy, a court may grant a stay only when a movant clearly establishes four elements: (a) the movant is likely to prevail on the merits on appeal; (b) absent a stay the movant will suffer irreparable damage; (c) the adverse party will suffer no substantial harm from the issuance of the stay; and (d) the public interest will be served by issuing the stay. *Id.* The movant "'must show satisfactory evidence on all four criteria, and the failure to satisfy one prong is fatal to the motion.'" *Id*. (quoting *Jet Networks FC Holding Corp. v. Goldberg,* No. 09-21082-CIV, 2009 WL 1616375, at *2 (S.D. Fla. June 9, 2009) (citations omitted)).

The second, third, and fourth elements are often referred to as the "balancing of the equities." *In re Bulger,* 2022 WL 348627, at *2. "[T]he Court 'may give greater weight to any of the elements in its discretion depending upon the circumstances of the case.'" *Id*. (quoting *In re Powers,* No. 15-03267-JHH13, 2016 WL 1573791, at *3 (Bankr. N.D. Ala. Apr. 15, 2016) (citing *In re Charter Co.,* 72 B.R. 70, 72 (Bankr. M.D. Fla. 1987)). In the Debtors' cases, the safety of patients and the availability of quality healthcare to the community are of paramount concern. Accordingly, the Court, in its discretion, gives greater weight to the risk of substantial harm to parties other than the Movants and whether the public interest will be served by issuing the stay.

**B. Likelihood of Success on the Merits on Appeal**

A finding of a probable likelihood of success on the merits on appeal requires a determination that the trial court below was clearly erroneous. *Garcia-Mir v. Meese,* 781 F.2d

6

1450, 1453 (11th Cir. 1986). However, a motion for a stay pending appeal can be granted on a lesser showing of a "substantial case on the merits" when the balance of the equities (the second, third, and fourth elements) weigh heavily in favor of granting the stay. *Id.*

The Movants assert that they are likely to succeed "because the Challenged Carve Outs are an unprecedented expansion of Section 364(d) of the Bankruptcy Code to benefit post-petition vendors and labor, and because neither the Debtors nor the Committee provided evidence demonstrating they satisfied the requirements under Section 364(d)." [Doc. No. 264 at ¶ 22]. In short, the Movants have staked their argument on the proposition that the Challenged Carve Outs constitute post-petition financing under Section 364(d). However, the Movants cited no case law supporting this proposition. At the hearing on the Motions, the Court asked counsel for the Movants whether the Court had overlooked any precedent cited in the Movants' papers that indicated the Challenged Carve Outs must be considered a form of post-petition financing, and the counsel for the Movants answered in the negative. Given that the Movants provided no authority supporting their primary theory regarding the Court's error in entering the Final DIP Order, the Court disagrees with the Movants that they are likely to succeed in the Appeals.

At the hearing, the Court questioned not only counsel for the Movants, but also counsel for the Debtors, the Committee, and the DIP Lender, as to whether the Challenged Carve Outs instead constitute a surcharge (or an exception to the waiver of a surcharge) under Section 506(c) of the Bankruptcy Code, which provides that "[t]he trustee may recover from property securing an allowed claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." In this case, the Challenged Carve Outs cover certain post-petition expenses and post-petition salaries, wages, and payroll taxes incurred in the ordinary course of the Debtors' operations. These expenses will preserve or enhance, rather than erode, the Movants' collateral. In other words, Section 506(c) of the

7


Case 25-30256    Doc 343    Filed 04/08/25    Entered 04/08/25 11:02:13    Desc Main
Document      Page 7 of 12

Bankruptcy Code supports the Court's entry of the Final DIP Order and the Challenged Carve Outs contained therein, rendering the Movants' arguments less likely to succeed on appeal.

The Court, however, recognizes that: a) the language in the Final DIP Order covering Challenged Carve Outs might be found inadequate to ensure the Movants' ability to contest whether a surcharge of their collateral under Section 506(c) of the Bankruptcy Code is appropriate; and b) the issues raised in connection with the Challenged Carve Outs present novel questions of law. Moreover, as pointed out by counsel for the Movants, the Court does not have to predict its own reversal to grant a stay. *See St. Jude Med., Inc. v. Access Closure, Inc.*, Case No. 4:08-CV-04101, 2012 WL 12919351, at *1 (W.D. Ark. Oct. 2, 2012); *Learning Annex Holdings, LLC v. Rich Glob., LLC*, Case No. 09 Civ. 4432 (SAS), 2012 WL 13133586, at *1 (S.D.N.Y. Aug. 1, 2012). For these reasons, and for the sake of completeness, the Court believes it appropriate to assume that the Movants could meet their burden under this element of the analysis. Accordingly, the Court will address the other three elements the Movants must prove to obtain a stay pending appeal.

### C. Irreparable Damage to the Movant

As the Supreme Court has stated, "'[t]he key word in this consideration is irreparable.'" *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quoting *Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958)). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id.* "An injury is irreparable only if it cannot be undone through monetary remedies." *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987) (internal quotations omitted). Moreover, "'[t]he irreparable harm must be neither remote nor speculative, but actual and imminent.'" *In re McIntyre*

*Bldg. Co. Inc.,* 10-30558-WRS, 2011 WL 1434691, at *6 (Bankr. M.D. Ala. Apr. 14, 2011) (quoting *In re Advanced Telecomm. Network, Inc.,* Case Nos. 6:10–cv–381–Orl–28 and 6:10–cv–731–Orl–28, 2011 WL 722766, at *3 (M.D. Fla. Feb. 23, 2011)).

The Movants argue that monetary remedies would not be available in the absence of a stay because Section 364(e) protects entities that have extended post-petition credit in good faith if the order authorizing the extension of credit is reversed or modified on appeal. Because of this potential protection, the Movants assert that, absent a stay, they effectively will lose their ability to recover from the DIP Lender and the ordinary course trade vendors and employees with respect to the Challenged Carve Outs. This argument hinges, however, on the proposition that the Challenged Carve Outs constitute post-petition financing. As set forth above, the Movants failed to cite in their papers or at the hearing any case law to support that legal argument. Accordingly, with respect to this argument, the Movants have failed to establish they will be irreparably harmed in the absence of a stay pending appeal.

The Movants also asserted that if the case were to take an abrupt turn into administrative insolvency, there may be no money left to pay them if they succeed in the Appeals. However, the Movants presented no evidence that this risk is actual and imminent. As it currently stands, the record contains no evidence that the DIP Lender has declared a default related to the Debtors' failure to comply with any Approved Budget, which would be the key indicator of a slide toward administrative insolvency and cause for concern that the Movants' access to a monetary remedy is at risk. Without such evidence, the Movants have failed to meet their burden of establishing irreparable injury. However, and again for the sake of completeness, the Court will assume that the Movants have met their burden with respect to this element and will shift its analysis to the potential harm to adverse parties and the public interest.

Case 25-30256    Doc 343    Filed 04/08/25    Entered 04/08/25 11:02:13    Desc Main
Document      Page 9 of 12

### D. Substantial Harm to Adverse Parties and the Public Interest

The Court considers the potential for substantial harm to adverse parties and the public interest to be intertwined in the context of the Debtors' cases. In the Motions and at the hearing, the Movants admirably – and the Court believes sincerely – stated their support for the Debtors' continued operations, the safety of patients, and the community's access to quality healthcare during the pendency of the Debtors' cases. Their position is that the stay they seek is limited in scope and will not jeopardize these important goals.

The Court, however, has grave concerns about the effect of a stay on the DIP Lender's obligations under the DIP Credit Agreement. At the hearing on the Motions, the Court questioned counsel for the Movants, as well as counsel for the Committee, the DIP Lender, and the Debtors, whether a stay of the Final DIP Order would constitute an Event of Default under the DIP Credit Agreement. Without limitation, the Court questioned whether the default provisions in Section 7.1(g) of the DIP Credit Agreement would be triggered if the Court grants the Motions. That section lists among the Events of Default the following:

> except upon Lender's prior written request or with Lender's express prior written consent (and no such consent shall be implied from any other action, inaction, or acquiescence of Lender), any Borrower shall file a motion with the Bankruptcy Court or any other court of competent jurisdiction seeking an order *(or such order is otherwise entered), that by its terms modifies, reverses, revokes, stays, rescinds, vacates, or amends the DIP Order (or any material provision thereof),* this Agreement, any other Loan Documents, or the relief or transactions otherwise contemplated in the foregoing Loan Documents (or, in each case, purports to effect any of the foregoing)

(emphasis added). Counsel for the DIP Lender stated that Section 7.1(r) also could be implicated by a stay. That section lists another Event of Default as follows:

> *the DIP Orders, or any material provision thereof*, (i) cease to be in full force and effect from and after the date of entry thereof by the Bankruptcy Court or (ii) *are modified, reversed, revoked, remanded,*

10

> *stayed, rescinded, vacated, or amended on appeal or by the Bankruptcy Court without the prior written consent of Lender* (and no such consent shall be implied from any other authorization or acquiescence by Lender)

(emphasis added).

At the hearing, the Court asked counsel for the DIP Lender whether the DIP Lender would consider the stay of the Final DIP Order to be an Event of Default. Counsel for the DIP Lender did not indicate the DIP Lender would take steps to terminate the DIP Credit Agreement if the Court granted the Motions, but he did not state definitively that the DIP Lender would waive the right to declare a default. The Court also asked whether the DIP Lender would be willing to enter into a separate stipulation waiving any Event of Default (i.e., the "prior written consent" under Sections 7.1(g) and 7.1(r)) associated with a stay pending appeal, and the DIP Lender suggested that such a waiver would depend on certain conditions that would have to be negotiated with the other parties in interest.

No party has disputed that the funding and use of cash collateral authorized under the Final DIP Order is essential to the Debtors' continued operations and the prevention of a shutdown that would jeopardize patient safety. In that regard, it is essential that an order staying the Final DIP Order does not lead to the DIP Lender's exercise of its default rights and remedies under the DIP Credit Agreement, including termination of this essential funding. Accordingly, substantial harm to adverse parties – and, for that matter, to the Movants through the inevitable resulting deterioration in the value of their collateral – is all but guaranteed if a stay of the Final DIP Order leads to a termination of funding. Likewise, the public interest favors continuation of the funding, as termination of the funding would lead to a shutdown that jeopardizes patient safety and abruptly deprives the community of access to quality healthcare.

The Court has every reason to believe that the DIP Lender, the Committee, the Movants, and the Debtors would negotiate in good faith as to a stipulation that would ensure funding even if the Final DIP Order is stayed. However, as of the entry of this Memorandum Opinion and Order, no such stipulation is of record. The Court is unwilling to take the chance that an order staying the Final DIP Order would cause termination of the DIP Credit Agreement. The Court places the most weight on the substantial harm to essentially all parties involved and the disservice of the public interest that would result from a termination of funding. These elements overwhelmingly cut against granting the Motions.

## CONCLUSION

The Court finds that the Movants have failed to establish the elements necessary to support a stay pending appeal. Accordingly, and for the reasons set forth above, it is hereby

ORDERED that the Motions are DENIED.

Done this 8th day of April, 2025.

Christopher L. Hawkins
United States Bankruptcy Judge

c: Debtors
Derek F. Meek, Attorney for Debtors
Marc P. Solomon, Attorney for Debtors
Stuart H. Memory, Attorney for Debtors
Justin G. Williams, Attorney for UMB
Ralph C. Mayrell, Attorney for UMB
Douglas Buckley, Attorney for UMB
Jeremy Retherford, Attorney for ServisFirst
R. Scott Williams, Attorney for the Committee
Andrew H. Sherman, Attorney for the Committee
Paul M. Rosenblatt, Attorney for the DIP Lender
Clark R. Hammond, Attorney for the DIP Lender