# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re | Case No. 25-30256-CLH |
| | Chapter 11 |
| JACKSON HOSPITAL & CLINIC, INC., *et al.*, | Jointly Administered |
| Debtors.[1] | |

### MEMORANDUM OPINION AND ORDER DENYING DEBTORS' EMERGENCY MOTION TO AMEND EMPLOYMENT APPLICATIONS OF BURR & FORMAN, EISNER ADVISORY GROUP, LLC, GILPIN GIVHAN, PC, AND MEMORY MEMORY & CAUSBY, LLP

On May 13, 2025, this matter came before the Court for hearing on the Debtors' Emergency Motion to Amend Employment Applications of Burr & Forman LLP, Eisner Advisory Group, LLC, Gilpin Givhan, PC, and Memory Memory & Causby, LLP [Doc. No. 448] (the "Motion") and the Objection of UMB Bank, N.A. to the Debtors' Emergency Motion to Amend Employment Applications [Doc. No. 471] (the "Objection"). Appearances were as noted in the record.

At the invitation of the Court, UMB Bank, N.A. ("UMB") filed its Notice of Supplemental Authority in Support of Objection of UMB Bank, N.A. to the Debtors' Emergency Motion to Amend Employment Applications [Doc. No. 485] (the "UMB Supplement") and the Debtors filed the Debtors' Supplemental Response in Support of Debtors' Emergency Motion to Amend Employment Applications of Burr & Forman LLP, Eisner Advisory Group, LLC, Gilpin Givhan, PC, and Memory Memory & Causby, LLP [Doc. 489].

Based on the pleadings of record, the evidence presented, the arguments and representations of counsel, and for the reasons below, the Motion is DENIED.

---

[1] An Order entered in accordance with Rule 1015(b) of the Federal Rules of Bankruptcy Procedure directing the joint administration of the following cases: Jackson Hospital & Clinic, Inc. and JHC Pharmacy, LLC (the "Debtors"), with Jackson Hospital & Clinic, Inc. 25-30256 as the lead case. (Case No. 25-30256, Doc. 49).

## JURISDICTION

The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered by United States District Court for the Middle District of Alabama on April 25, 1985. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2).

## BACKGROUND

Burr & Forman LLP, Eisner Advisory Group, LLC, Gilpin Givhan, PC, and Memory Memory & Causby, LLP (collectively, the "Professionals") seek to amend their employment applications, such that the scope of their employment is expanded to include the potential representation of The Medical Clinic Board of the City of Montgomery, Alabama (the "Medical Clinic Board") in any necessary restructuring efforts. The Medical Clinic Board was formed on July 29, 1965, pursuant to Alabama Code § 11-58-2(a), which:

> provide[s] for the incorporation of medical clinic boards as public agencies and instrumentalities of the State of Alabama to promote the acquisition of health facilities in order to promote the public health of the people of Alabama and also to promote the acquisition of certain other facilities for the housing and care of elderly persons.

ALA. CODE § 11-58-2(a). The Medical Clinic Board's Certificate of Incorporation states that its purpose is to "finance, acquire, own, lease, equip, furnish, maintain, operate, enlarge, improve or dispose of one or more medical clinics and clinical facilities in the City of Montgomery, Alabama." UMB Supplement, p. 26. An amendment to the Certificate of Incorporation clarifies, among other things, that the Medical Clinic Board may engage with any medical clinics and clinical facilities within the corporate limits of Montgomery or within 15 miles of the City of Montgomery, provided that the medical clinics or clinical facilities are not within another municipality. UMB Supplement, p. 21.

The Debtors operate their businesses on real property and with the use of certain essential equipment and other personal property owned by the Medical Clinic Board pursuant to, without limitation, that certain Series 2015 Supplemental and Restated Lease Agreement between The Medical Clinic Board of the City of Montgomery, Alabama and Jackson Hospital & Clinic, Inc. dated as of December 1, 2015 (the "Lease Agreement"). UMB Supplement, pp. 37-91. Under the Lease Agreement, the Debtors pay rent that equals the debt service obligations under the Health Care Facility Revenue Bonds, Jackson Hospital & Clinic Series 2015. *Id.* The bonds were issued by the Medical Clinic Board under the Series 2015 Bond Trust Indenture between the Medical Clinic Board and Regions Bank, as trustee, dated December 1, 2015. *Id.* Under this debt and lease structure and through other transactions with the Medical Clinic Board, the Debtors have been able to purchase, finance, and utilize real and personal property owned by the Medical Clinic Board in a manner that provides favorable tax attributes to the Debtors. Motion, pp. 19-20.

The Medical Clinic Board does not have a bank account and does not engage in day-to-day business operations. *Id*. In most respects, the Medical Clinic Board serves primarily as a pass-through entity for the benefit of the Debtors. *Id.* However, contrary to the Debtors' assertions, the Medical Clinic Board does have its own independent board of directors and officers. UMB Supplement, pp. 7-8, 30-33. It was through the Medical Clinic Board's board of directors, for example, that bonds were authorized and the Lease Agreement was executed. *Id.* at pp. 37-91.

The Debtors' operations are inextricably intertwined with assets owned by the Medical Clinic Board. Motion, pp. 19-20. The Debtors' value as a going concern depends on access to those assets. *Id*. Moreover, the record contains no evidence that the Medical Clinic Board has acquired, financed, leased or otherwise provided property to medical clinics or clinical facilities other than the Debtors. That said, nothing in the Medical Clinic Board's corporate documents limits its ability to do business with entities other than the Debtors. UMB Supplement, pp. 14-28.

3

Put another way, the scope of the Medical Clinic Board's corporate authority is limited to geography, not to the Debtors. *Id*. The Medical Clinic Board is free to acquire, finance, lease or otherwise provide property to any medical clinic or clinical facility within the city limits of Montgomery or in unincorporated areas within 15 miles of Montgomery. *Id.* While it may not be in the best interest of any party to the Debtors' cases – including UMB – to decouple Medical Clinic Board assets from the Debtors' operations, the Medical Clinic Board's corporate documents do not prohibit it from doing so, subject to other applicable bankruptcy and nonbankruptcy law.

## ANALYSIS

A. <u>Section 327 Generally</u>

Section 327(a) of the Bankruptcy Code[2] provides that "the trustee, with the court's approval, may employ one or more attorneys . . . or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." A professional has an interest adverse to the estate when that professional:

> possess[es], or serv[es] as an attorney for a person possessing either an economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant . . . or . . . a predisposition under the circumstances that render such a bias against the estate.

*Denison v. Marina Mile Shipyard, Inc. (In re New River Dry Dock, Inc.)*, 497 Fed. Appx. 882, 887 (11th Cir. 2012) (quoting *Electro-Wire Prods., Inc. v. Sirote & Permutt, P.C.*, 40 F.3d 356, 361 (11th Cir. 1994). A "disinterested person" is a person who, without limitation:

> does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, or interest in, the debtor, or for any other reason.

---

[2] All references to the "Code" or the "Bankruptcy Code" are to 11 U.S.C. §§ 101-1532.

4

Case 25-30256   Doc 491   Filed 05/15/25   Entered 05/15/25 10:54:26   Desc Main
Document      Page 4 of 8

11 U.S.C. § 101(14)(C). "For any other reason" is "broad enough to exclude an attorney with some interest or relationship that 'would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules.'" *In re 7677 East Berry Ave. Assocs., L.P.*, 419 B.R. 833, 843 (Bankr. D. Colo. 2009) (*quoting In re Cook*, 223 B.R. 782, 789 (10th Cir. B.A.P. 1998)). "Together, the statutory requirements of disinterestedness and no interest adverse to the estate 'serve the important policy of ensuring that all professionals appointed pursuant to section 327(a) tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities.'" *Kravit, Gass & Weber, S.C. v. Michel (In re Crivello)*, 134 F.3d 831, 836 (7th Cir. 1998) (quoting *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir. 1994)).

B. <u>Lack of Authority to Approve Employment of Professionals for Non-Debtors</u>

The Motion puts the Court in an awkward position, in that the Debtors seek an order from the Court authorizing the Professionals to represent the Medical Clinic Board when the Medical Clinic Board currently is not a debtor. Section 327(a) states that the court may approve employment of professionals to represent or assist the trustee in carrying out the trustee's duties under the Bankruptcy Code. *See* 11 U.S.C. § 327(a). By virtue of Section 1107(a), the term "trustee" equates to the debtor in possession. *See* 11 U.S.C. § 1107(a). The Medical Clinic Board is not a debtor in possession. As such, the Medical Clinic Board is not a party that the Professionals can be employed to represent. The Medical Clinic Board has no duties under the Bankruptcy Code for which the Professionals can offer assistance. The Court lacks authority to approve or disapprove the selection of attorneys for non-debtor parties. *See In re Diocese of Buffalo, N.Y.*, 625 B.R. 567, 572 (Bankr. W.D.N.Y. 2021); *In re East Cameron Partners, L.P.*, Case No. 08-51207, 2008 WL 5233055, at *1 (Bankr. W.D. La. Dec. 12, 2008). Accordingly, it is appropriate for the Court to refrain from granting the Motion.

5

C.  Potential Adverse Interest and Lack of Disinterestedness

The Court acknowledges the unique circumstances of the Debtors' cases, in which the Debtors anticipate that the Medical Clinic Board may need to file a petition under Chapter 9 of the Bankruptcy Code to facilitate a sale of the Debtors' assets. As it currently stands, that sale must close by July 22, 2025, for the Debtors to remain in compliance with milestones established pursuant the Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Secured Financing Pursuant to Section 364 of the Bankruptcy Code, (B) Use Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Status, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Granting Related Relief. [Doc. No. 180]. The Debtors argue that the exigencies of the case require a determination by the Court that the Professionals do not hold an adverse interest and are disinterested for purposes of representing the Medical Clinic Board. Given the inapplicability of Section 327(a) in Chapter 9 cases and the need to promptly execute a coordinated sale strategy involving Medical Clinic Board assets, the Court understands why the Debtors filed the Motion. *See* 11 U.S.C. § 901(a).

However, even if the Court could work around the inability to authorize the employment of professionals for non-debtor parties, the scope of the Medical Clinic Board's corporate authority raises potential adverse interests and a lack of disinterestedness. The Medical Clinic Board possesses "an economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant." *See In re New River Dry Dock, Inc.*, 497 Fed. Appx. at 887. The relationship between the Medical Clinic Board and the Debtors is not wholly reciprocal because the Medical Clinic Board is not required to conduct business solely with the Debtors. Without complete alignment, the Medical Clinic Board has an economic interest in assets that could lessen the value of the Debtors' estates.

6

Similarly, because mutuality is lacking, there is risk that the Professionals could find themselves recommending a strategy that compromises the Medical Clinic Board's legal rights. This raises concerns over disinterestedness, because "for any other reason" under Section 101(14)(C) can serve to exclude a professional with an existing client relationship that could "even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules." *In re 7677 East Berry Ave. Assocs., L.P.*, 419 B.R. at 843.

The Court has no reason to doubt the Debtors' representations that the Medical Clinic Board and the Debtors share a common mission and common goals, and that their current business arrangements are mutually beneficial. The Court also recognizes that the Debtors' operations are, as a practical matter, intertwined with the use of the Medical Clinic Board's assets and that a sale of the combined operations and assets will maximize the value of the Debtors' estates. The Court cannot, however, find that there is no risk of adverse interests or a lack of disinterestedness if the Professionals are the sole advisors to the Medical Clinic Board.

The Court believes the more prudent approach would be for the Medical Clinic Board to utilize separate counsel to negotiate the terms of any restructuring and sale involving the Debtors. This avoids the risk that the Professionals could be found to have not exercised independence in counseling the Medical Clinic Board on its options. This also would allow the Professionals to zealously advocate – without fear of conflicts – to independent counsel for the Medical Clinic Board on the most mutually advantageous strategy.

## CONCLUSION

The Court concludes that Section 327(a) does not permit an order authorizing the retention of professionals to represent non-debtor parties. Even if such authority existed, under Section 105(a) or otherwise, the Court concludes that the Medical Clinic Board has legal rights that do not completely align with the legal rights and goals of the Debtors. Thus, a risk exists that the

7

Case 25-30256    Doc 491    Filed 05/15/25    Entered 05/15/25 10:54:26    Desc Main
Document      Page 7 of 8

Professionals could represent an interest adverse to the Medical Clinic Board and that their impartiality toward the Medical Clinic Board could be compromised. Accordingly, it is hereby

ORDERED that the Motion is DENIED.

Done this 15th day of May, 2025.

/s/ Christopher L. Hawkins
Christopher L. Hawkins
United States Bankruptcy Judge

c: Debtors
Derek F. Meek, Attorney for Debtors
Marc P. Solomon, Attorney for Debtors
Catherine Via, Attorney for Debtors
James H. Haithcock, III, Attorney for Debtors
Edward Wilson, Jr., Attorney for Debtors
Stuart H. Memory, Attorney for Debtors
Justin G. Williams, Attorney for UMB
Ralph C. Mayrell, Attorney for UMB
Douglas Buckley, Attorney for UMB
Jeremy Retherford, Attorney for ServisFirst
R. Scott Williams, Attorney for the Committee
Andrew H. Sherman, Attorney for the Committee
Paul M. Rosenblatt, Attorney for the DIP Lender
Clark R. Hammond, Attorney for the DIP Lender