UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

In re:                              *
JACKSON HOSPITAL & CLINIC, *
INC.,                               *
                                    *   Chapter 11  Case No. 25-30256
Debtor.                             *

## SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION

Progressive Perfusion, Inc. ("Progressive"), by and through undersigned counsel, respectfully submits this Supplemental Brief in Support of its Motion for Reconsideration of the Court's Orders denying Progressive's Motion to Compel or, in the alternative, to recognize a constructive trust over certain Medicare reimbursements received by Debtor Jackson Hospital and Clinic, Inc. ("Jackson" or "Debtor").[1]

## I. INTRODUCTION

This Brief presents a more expansive analysis of Alabama constructive trust law and, for intimate understanding, the Medicare payment regime. The authorities below demonstrate that when Medicare funds are intended for

---

[1] While Progressive focuses heavily on Medicare reimbursements, it only does so because of its patient base at Jackson, which consisted of a demographic largely comprised of patients on Medicare; however, the theory promoted here is equally applicable to private carriers.

third-parties, such as is the funds Medicare provides to Jackson in payment under DRG codes for said funds to be distributed to the actual providers, i.e. Progressive, equity demands they be turned over to their rightful owner. Additionally, this brief addresses Jackson's violation of standards and guidelines governing the financial affairs of a nonprofit organization and to the detriment of hard working and loyal contractors like Progressive.

## II. ARGUMENT AND CITATION TO AUTHORITY

### A. FRAMEWORK FOR MEDICARE REIMBURSEMENT REGIME

#### 1. Medicare's Reimbursement Framework

Medicare reimburses hospitals for inpatient services under the Prospective Payment System ("PPS"). 42 U.S.C. § 1395ww(d). PPS payments are fixed rates determined by the patient's diagnostic related group ("DRG"), with adjustments for geographic labor costs by way of a "wage index." *Battle Creek Health Sys. v. Leavitt,* 498 F.3d 401, 403 (6th Cir. 2007); *Bellevue Hosp. Ctr. v. Leavitt,* 443 F.3d 163, 168 (2d Cir. 2006). The wage index exists to ensure that hospitals are fairly compensated for regional variations in labor costs. *Methodist Hosp. of Sacramento v. Shalala*, 38 F.3d 1225, 1227–28 (D.C. Cir. 1994).

Hospitals may only seek reimbursement for costs that are actually incurred and necessary in delivering patient care. 42 U.S.C. § 1395x(v)(1)(A). To this end, the Provider Reimbursement Manual ("PRM") *requires* that hospitals report actual personnel costs for direct patient care as furnished under contract. PRM 15-2 §§ 3605.2, 9.01. In other words, hospitals are reimbursed only for expenses ***they have paid or remain obligated to pay to those who furnished said direct patient care** [emphasis added]. Davies Cnty. Hosp. v. Bowen*, 811 F.2d 338, 346–47 (8th Cir. 1987).

2. **Medicare Billing Rules Further Support Imposition of a Constructive Trust**

Under 42 U.S.C. § 1395x(w) and 42 C.F.R. § 412.2(c)(2), services furnished "under arrangements" with a hospital are deemed hospital services for which the hospital is financially responsible, including compensation to the entity that actually performed the service. Medicare policy requires that all substantive reimbursement requirements be met, which common sense dictates include payment to the contract labor providing the direct patient care. *See* 42 C.F.R. § 412.50, 412.52. Jackson's failure to remit the portion of the DRG reimbursement allocable to Progressive's perfusion services constitutes a violation of Medicare's payment conditions.

Progressive provided inpatient perfusion services to Jackson Hospital under an "under arrangement" agreement as defined by 42 U.S.C. § 1395x(w) and 42 C.F.R. § 412.50. The Medicare DRG payments received by Jackson included reimbursement for services rendered solely by Progressive. Jackson billed Medicare under its provider number but failed to remit the agreed compensation to Progressive. These DRG funds, including the carve outs for Progressive's services, are directly traceable to Progressive's invoiced work, yet Jackson, even after being alerted to the contract breach pre-petition and continuously throughout the Bankruptcy proceeding, continues to hold those funds from Progressive, improperly maintaining that the funds belong to Jackson instead of Progressive. In doing so, Jackson has essentially impliedly conveyed to Progressive and the Court that it is exempt from complying with Medicare rules and regulations and, thus, the law of the State of Alabama and the federal government.

Progressive need not obtain or analyze Jackson's cost reports or full financial records to establish its equitable title to the withheld Medicare funds. It is undisputed that Jackson billed Medicare for each inpatient surgery performed during the relevant period, including those requiring perfusion services. Jackson submitted the proper Medicare Severity Diagnosis Related Group (MS-DRG) codes to the Medicare Administrative Contractor and was

reimbursed. Upon receipt of payment, the hospital retained federal funds intended to cover actual, necessary labor costs, in direct contravention of the statutory and regulatory scheme. *See* 42 U.S.C. § 1395x(v)(1)(A); PRM 15-2 § 3605.2, Part II.

This is not simply a matter of private contract. Medicare's payment framework makes clear that reimbursement is conditioned upon a hospital's obligation to pay the personnel who performed the services. By seeking and accepting Medicare funds for perfusion services, Jackson acknowledged both the necessity of those services and its duty to compensate the provider of those services. Its subsequent refusal to do so constitutes an unjust enrichment at the expense of both the federal program and Plaintiff.[2]

Under Alabama law, the failure to remit these funds constitutes unjust enrichment.[3] This retention supports imposition of a constructive trust and satisfies the requirements for equitable exclusion under 11 U.S.C. § 541(d). The Court's prior ruling overlooked the specifics of the Medicare

---

[2] Medicare providers must submit claims only for services actually rendered and are liable for any false or fraudulent claims. 2014 HTHLHB 12, 2019 HTHLHB 11, 145 AMJUR POF 3d 287.

reimbursement regime and Alabama's broader standard that allows constructive trusts where equity requires it.

### B. LEGAL FRAMEWORK FOR CONSTRUCTIVE TRUSTS

Alabama courts have long recognized the equitable doctrine of constructive trust. A constructive trust may be imposed even in the absence of fraud or a confidential relationship, where one party holds legal title to property that in equity belongs to another. Courts consistently hold that it is sufficient that the retention of such property would result in unjust enrichment, unjust enrichment being that which the Doctrine is employed in to prevent.

#### 1. Alabama Law Supports Constructive Trust Relief

Alabama law specifically supports relief under a constructive trust theory – in fact, the reported law in this area leaves room for no other reasonable conclusion. In *In re LaForce*, 577 B.R. 908 (Bankr. S.D. Ala. 2017), the court imposed a constructive trust under Alabama law, finding that even absent fraud or wrongdoing, the equitable nature of the debtor's retention of funds justified exclusion of the funds from the estate under 11 U.S.C. § 541(d). Additionally, in *Cole v. Adkins*, 358 So. 2d 447, 450 (Ala. 1978), the Alabama Supreme Court held that constructive trusts may be imposed to prevent unjust enrichment where it would be inequitable for the holder to

retain the funds, even without fraud. Further, in *Sledge v. Sledge*, 630 So. 2d 461, 464 (Ala. Civ. App. 1993), the court held that a constructive trust is appropriate where the legal titleholder's retention of funds is unconscionable, regardless of whether wrongdoing or fraud occurred. *American Family Care, Inc. v. Irwin*, 571 So. 2d 1053, 1058 (Ala. 1990). A trust is constructively imposed if it would be unjust for one party to retain funds or property belonging to another. *Id*.[4]

The cases cited by Progressive throughout these proceedings, admittedly some with correctable errors, and the categories of parties within those cases are not exhaustive or exclusive – a constructive trust is formed based on inequity and the fact that the wrongdoer has been unjustly enriched. Without question, and regardless of its current financial predicament, Jackson was enriched year after year by Progressive's services and, at least for year 2023 and a portion of year 2024, unjustly so.

---

[4] Progressive suspects that Jackson included Progressive's services and supply costs on the end of year cost reports for 2023 and 2024. As such these unpaid liabilities are disallowed on the cost report and would falsely inflate the wage index and have negative impacts on the entire Medicare program.

### C. IRRESPONSIBLE MANAGEMENT BONUSES VIOLATE NONPROFIT AND FEDERAL STANDARDS

In addition to the equitable and constructive trust arguments supporting Progressive, Inc.'s claim, the conduct of Jackson Hospital's management, specifically its decision to award large executive bonuses while failing to remit contractually and statutorily owed funds to Progressive, violates fundamental standards governing nonprofit organizations and federal reimbursement practices.

Under 26 U.S.C. § 4958, nonprofit hospitals such as Jackson are strictly prohibited from engaging in "excess benefit transactions," which include unreasonable or unjustified compensation to executives. Known as intermediate sanctions, this regime permits the IRS to impose: (a) 25% excise tax on the executive who received the excessive compensation; (b) 10% tax on board members who knowingly approved it; and (c) 200% penalty if the excess is not corrected. To avoid these penalties, Jackson's board was required to: (1) establish executive pay through an independent and conflict-free process; (2) use comparability data from peer institutions; and (3) maintain written documentation of the deliberations and decisions. Progressive has grounds to assert that these requirements were not met, and the payment of management bonuses at a time when Jackson refused to satisfy contractual

and statutory obligations—including payments for Medicare-billed services rendered by Progressive—constitutes an excess benefit transaction and violates Jackson's tax-exempt obligations under federal law.

In addition to federal law, Alabama law holds that nonprofit corporate directors owe fiduciary duties of care, loyalty, and good faith. Ala. Code § 10A-3A-8.30 provides that directors must act in good faith and with the care that a reasonably prudent person in a similar position would exercise. Additionally, CMS's Provider Reimbursement Manual § 2135 mandates that management fees and bonuses must be necessary, reasonable, and directly related to patient care. Here, Jackson paid significant executive bonuses while failing to pay Progressive for inpatient perfusion services that were indispensable to cardiac surgeries reimbursed by DRG payments. The bonuses cannot be justified as patient-care related and would be disallowed in any CMS cost report audit. See also *In re Kings Hospital Center, Inc.*, PRRB Dec. No. 2013-D38 (rejecting inflated administrative expenses where hospital failed to justify necessity and cost-effectiveness). Jackson's actions constitute

gross financial mismanagement and are violative of both federal and state law.[5]

Jackson's officers and board owed fiduciary duties to the hospital's charitable mission. The award of large bonuses while Jackson failed to pay vendors and suppliers violates the fiduciary duty of care. Courts and the IRS have held that public charities must not allow insiders to benefit at the expense of the exempt mission. The nefarious actions of Jackson's leadership in awarding substantial management bonuses while failing to pay Progressive for contracted, hands-on, and crucial, life saving services violate nonprofit governance laws, federal compensation standards, and Medicare's financial principles. These acts also lead to the imposition of a constructive trust. Progressive, thus, seeks reconsideration and equitable relief on grounds not only of unjust enrichment, but also systemic violations of tax, charity, and Medicare reimbursement law.

## III. CONCLUSION

Based on federal Medicare regulations and case law, hospitals are required to reimburse only for expenses they have actually paid or remain

---

[5] In addition to the above, Jackson's diversion of Medicare funds from actual direct patient care providers and toward insider enrichment could warrant review by the Office of Inspector General (OIG).

legally obligated to pay to those who furnished direct patient care services under contract. The actually incurred standard under federal Medicare law requires that costs be genuinely paid out by the provider, not merely that there was an initial contractual obligation to pay. Alabama state law follows similar principles, recognizing that actual expenses include both money paid and obligations incurred to pay actual costs.

Federal regulations address cost reporting requirements and emphasize that hospitals must demonstrate actual costs incurred. The regulations require that providers receiving payment on the basis of reimbursable cost must provide adequate cost data based on their financial and statistical records which must be capable of verification by qualified auditors. 42 CFR § 413.24. *Sta-Home Home Health Agency, Inc. v. Shalala*, 34 F.3d 305, 309 (1994) (holding that Medicare reimbursement is limited to costs that were genuinely paid out by the provider, not contractual obligations that were never fulfilled): see also *Abraham Lincoln Memorial Hosp. v. Sebelius*, 698 F.3d 536 (2012)

These principles are equally critical in the bankruptcy context. Medicare reimbursements paid to the hospital for cardiac procedures that included Progressive's services were earmarked under federal law and regulation to compensate the party furnishing those services. See 42 C.F.R.

§§ 413.53, 413.65, 482.12(e); *In re Visiting Nurse Ass'n of Tampa Bay, Inc.*, 121 B.R. 114, 118 (Bankr. M.D. Fla. 1990) (holding that Medicare or Medicaid funds clearly intended to reimburse a third-party provider give rise to a trust or equitable lien). Under HCFA Ruling 80-4, CMS's obligation to apply its regulations consistently and only upon a substantiated record reinforces that such payments cannot be retained by the hospital contrary to the regulatory purpose for which they were made. Moreover, once the PRRB has jurisdiction over the hospital's cost reporting and payment determinations under 42 U.S.C. § 1395oo(a), 2011-D17 confirms that it has the authority—and Congress intended it have the obligation—to correct those determinations to ensure that funds reach the rightful provider. In this case, those funds are held in constructive trust for Progressive and, under 11 U.S.C. § 541(d), are not property of the estate.

The undisputed facts, combined with federal Medicare regulations, CMS guidance, PRRB precedent, and Alabama's equitable constructive trust doctrine require the conclusion that the DRG funds at issue are not property of Jackson's bankruptcy estate and must be turned over to Progressive. The reimbursement funds held by Jackson for perfusion services, whether from Medicare or different carrier, must be excluded from the estate and turned over to Progressive per § 541(d). Progressive implores the Court to reconsider

its prior rulings, finding upon further review that these funds are not property of Jackson's estate and order their immediate turnover to Progressive.

Respectfully submitted his 26th day of August, 2025.

                                   **GORDON REES SCULLY MANSUKHANI, LLP**

                                   /s/ Cassie D. Preston

Cassie D. Preston
GA Bar No. 940960
55 Ivan Allen Jr. Blvd. N.W., Suite 750
Atlanta, GA 30308
(404) 978-7305 (direct)
cpreston@grsm.com

In re:
JACKSON HOSPITAL & CLINIC, INC.,
Debtor.

UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

Chapter 11  Case No. 25-30256

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 26th day of August, 2025, she electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification to all registered participants listed in the attached Exhibit A.

/s/ Cassie D. Preston