# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re:<br><br>JACKSON HOSPITAL & CLINIC, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br>Case No. 25-30256<br><br>JOINTLY ADMINISTERED |

### THE DIP LENDER'S MOTION FOR SANCTIONS
### REGARDING PROGRESSIVE PERFUSION, INC.'S FILINGS
**(Docket Nos. 776, 859, 860 & 871)**

Jackson Investment Group, LLC, in its capacity as the DIP Lender (the "DIP Lender") to the debtors and debtors-in-possession (collectively, the "Debtors"), in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), by and through undersigned counsel, hereby files this *Motion for Sanctions Regarding Progressive Perfusion, Inc.'s Filings* (the "Motion for Sanctions"), pursuant to section 1927 of title 28 of the United States Code ("Section 1927"), the Court's *sua sponte* Rule 11 powers, and the inherent authority of the Court, seeking the entry of an order: (i) granting sanctions against Progressive Perfusion, Inc.'s ("Progressive") counsel Cassie D. Preston ("Ms. Preston") under Section 1927; (ii) granting sanctions against Ms. Preston and the law firm of Gordon Rees Scully Mansukhani, LLP ("Gordon Rees") under the Court's inherent authority and *sua sponte* Rule 11 powers; and (iii) granting any additional and further relief as this Court deems just and equitable. In support of this Motion for Sanctions, the DIP Lender respectfully states as follows:

### PRELIMINARY STATEMENT

1. As this Court is aware and as reflected in the Court's Order to Show Cause [Docket No. 871], the Motion to Reconsider [Docket No. 776] contained fabrications, mis-citations, and

---

[1]     The Debtors in these cases are: Jackson Hospital & Clinic, Inc. and JHC Pharmacy, LLC.

misstatements of existing case law. Despite the Debtors and the DIP Lender objecting [Docket Nos. 842 and 843] to the Motion to Reconsider, which provided Progressive with notice of the sanctionable conduct represented by the Motion to Reconsider, Progressive "doubled down" on the sanctionable conduct. In reply to the objections, on August 26 Progressive filed a response and supplemental motion [Docket Nos. 859 and 860] that contained even **_more_** mis-citations, misstatements of existing case law, and remarkably used the same fabricated quote, but now attributed to a different irrelevant case.

2. Given the repeated nature of this sanctionable conduct, the Court should impose sanctions not only with respect to the Motion to Reconsider but also as to the August 26th Filings. The sanctions imposed should include, at a minimum, reimbursement of the DIP Lender's legal fees for the drafting and prosecution of the DIP Lender's Objection as well as this Motion for Sanctions.

## BACKGROUND

3. On February 3, 2025 (the "Petition Date"), each of the Debtors commenced a case under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On February 4, 2025, the Debtors filed their *Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Postpetition Secured Financing Pursuant to Section 364 of the Bankruptcy Code, (B) Use Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Status, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 10] (the "DIP Motion").

2

5. On February 6, 2025, this Court entered the *Interim Order (I) Authorizing Debtors to (A) Obtain Postpetition Secured Financing Pursuant to Section 364 of the Bankruptcy Code, (B) Use Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Status, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 69] (the "Interim DIP Order").

6. On March 6, 2025, this Court entered the *Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Secured Financing Pursuant to Section 364 of the Bankruptcy Code, (B) Use Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Status, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Granting Related Relief* [Docket No. 180] (the "Final DIP Order").

7. On June 23, 2025, the Debtors filed the *Supplemental Notice and Disclosure Regarding Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Postpetition Secured Financing Pursuant to Section 364 of the Bankruptcy Code, (B) Use Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Status, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 637] (the "Supplemental Notice")

8. On June 17, 2025 and June 18, 2025, Progressive filed its (i) *Motion to Determine that Medicare Reimbursements Misappropriated by Debtor and Earmarked for Progressive Perfusion, Inc. are Not Property of the Estate* [Docket No. 614] and (ii) *Motion to Compel the Designation of Progressive Perfusion, Inc. as a Critical Vendor and for Payment of the Outstanding Pre-Petition Debt* [Docket No. 617] (together, the "Progressive Motions").

9. On July 15, 2025, the Court entered its (i) *Order Denying Motion to Determine That Medicare Reimbursements Misappropriated by Debtor and Earmarked for Progressive*

*Perfusion, Inc. Are Not Property of the Estate* [Docket No. 712] and (ii) *Order Denying Motion to Compel Designation of Progressive Perfusion, Inc. As a Critical Vendor and for Payment of the Outstanding Pre-petition Debt* [Docket No. 713] (together, the "Denial Orders"), denying the Progressive Motions.

10. On July 29, 2025, Progressive filed its *Motion for Reconsideration of Orders Denying Motion to Compel Turnover or to Recognize Constructive Trust in Medicare Funds* [Docket No. 776] (the "Motion to Reconsider"), seeking reconsiderations of the Denial Orders.

11. On August 21, 2025, the DIP Lender filed its *Objection to Progressive Perfusion, Inc.'s Motion for Reconsideration and Request for Sanctions* [Docket No. 842] (the "DIP Lender's Objection").

12. On the same date, the Debtors filed their *Response to and Motion to Strike Progressive Perfusion's Motion for Reconsideration of Orders Denying Motion to Compel Turnover or to Recognize Constructive Trust in Medicare Funds* [Docket No. 843] (the "Debtor's Objection," and together with the DIP Lender's Objection, the "Objections").

13. On August 26, 2025, Progressive filed its: (a) *Supplemental Brief in Support of Motion for Reconsideration* [Docket No. 859] (the "Supplemental Brief"); and (b) Progressive Perfusion, Inc.'s Joint Response to the Dip Lender's Objection and Request for Sanctions and Debtor's Motion to Strike [Docket No. 860] (the "Response," and together with the Supplemental Brief, the "August 26th Filings"). Also on August 26, 2025, Progressive withdrew the Motion to Reconsider and the Supplemental Brief. [Docket No. 861].

14. On August 28, 2025, the Court entered its *Order to Cassie D. Preston and Gordon Rees Skully Mansukhani, LLC to Appear and Show Cause as to Why Sanctions Should Not Be*

*Imposed* [Docket No. 871] (the "Order to Show Cause"), ordering Ms. Preston and Gordon Rees to show cause as to why they should not be sanctioned for making false statements of fact or law.

## DISCUSSION

15. As detailed in the Objections, sanctions are warranted for the fabrications, mis-citations, and misstatements of existing case law in the Motion to Reconsider. *See* Objections.

16. In addition, sanctions are also warranted for the mis-citations, misstatements of existing case law, and the re-use of a fabricated quote in the August 26th Filings. To assist the Court in its review of the August 26 Filings, the DIP Lender has identified the sanctionable conduct in the August 26th Filings in the chart below:

| # | What Progressive's August 26th Filings Claimed | What Actually Exists | Irregularity |
|---|---|---|---|
| 1 | *In re Visiting Nurse Ass'n of Tampa Bay, Inc.*, 121 B.R. 114, 118 (Bankr. M.D. Fla. 1990) (holding that Medicare or Medicaid funds clearly intended to reimburse a third-party provider give rise to a trust or equitable lien). (Supplemental Brief, at p. 12). | The legal proposition was a fabricated quote attributed to another case in the Motion to Reconsider. Specifically, the Motion to Reconsider stated:<br><br>*In re Monongahela Valley Hosp., Inc.*, 446 B.R. 490, 498 (Bankr. W.D. Pa. 2010) ("[T]he hospital's receipt of funds from Medicare or Medicaid that are clearly intended to reimburse services performed by a third party gives rise to a trust or equitable lien."); (Motion to Reconsider, at p. 6).<br><br>The fabricated language is now being re-used and falsely attributed to another case (without quotation marks).<br><br>The "new" case does not support the legal proposition. *Visiting Nurse Ass'n of Tampa* analyzed the assumption of an agreement and Medicare recoupment issues. The words "trust" and "equitable lien" are nowhere to be found in the case. "Lien" is found but only in the context of a sale free and clear. | Re-use of fabricated quote; mis-states holding. |

5

Case 25-30256   Doc 898   Filed 09/05/25   Entered 09/05/25 17:17:35   Desc Main
Document      Page 5 of 14

| # | What Progressive's August 26th Filings Claimed | What Actually Exists | Irregularity |
|---|---|---|---|
| 2 | In other words, hospitals are reimbursed only for expenses *they have paid or remain obligated to pay to those who furnished said direct patient care [emphasis added]*. *Davies Cnty. Hosp. v. Bowen*, 811 F.2d 338, 346–47 (8th Cir. 1987). (Supplemental Brief, at p. 3). | The case does not support the legal proposition. The case held that the hospital was not entitled to reimbursement for the actual costs of therapy services rendered to patients because the hospital had failed to keep adequate records of the therapy services it provided as required under the Medicare statute.<br><br>The case is from the Seventh Circuit, not the Eighth Circuit. | Mis-states holding; incorrect citation to circuit. |
| 3 | The bonuses cannot be justified as patient-care related and would be disallowed in any CMS cost report audit. See also *In re Kings Hospital Center, Inc.*, PRRB Dec. No. 2013-D38 (rejecting inflated administrative expenses where hospital failed to justify necessity and cost-effectiveness). (Supplemental Brief, at p. 9). | The citation does not match a case titled "*In re Kings Hospital, Inc.*"<br><br>"PRRB Dec. No. 2013-D38" is the citation for a CMS case titled "*Washington General Assistance Days Groups vs. Blue Cross Blue Shield Association/Noridian Administrative Services -WA/AK/Wisconsin Physician Services*."<br><br>That CMS case does not support the legal proposition. The case analyzed whether patient days associated with the Medically Indigent and General Assistance/ Unemployable Programs in Washington State should be included in the numerator of the Medicaid fraction of the Medicare Disproportionate Share Hospital (DSH) payment calculation formula.<br><br>The DIP Lender is unable to locate *any* case titled "*In re Kings Hospital Center, Inc.*" and believes the case name is hallucinated. | Incorrect citation to case; mis-states holding. |

**A. Sanctions Are Warranted Against Ms. Preston Personally Under Section 1927**

17.     Ms. Preston's conduct merits an award of attorneys' fees against her personally under Section 1927, which provides:

> [a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

18.     Attorneys can be sanctioned under Section 1927 if they unreasonably and vexatiously multiply proceedings in any case. *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010). "An attorney multiplies the proceedings unreasonably and vexatiously only when the attorney's conduct is so egregious that it is tantamount to bad faith." *Id.* (citing *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007)) (internal quotations omitted). A determination of bad faith is an objective standard where an attorney "knowingly or recklessly pursues a frivolous claim" or "engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims." *Id.*; *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003).

19.     Courts in this Circuit have found bad faith and imposed Section 1927 sanctions where attorneys used artificial intelligence in filing pleadings without ensuring the accuracy of the case citations and principles of law. *See, e.g., ByoPlanet Int'l, LLC v. Johansson*, No. 0:25-CV-60630, 2025 WL 2091025, at *10 (S.D. Fla. July 17, 2025) (imposing Section 1927 sanctions for the use of AI-generated hallucinated cases and fabricated quotations that caused the parties and the court to spend significant resources to determine the accuracy of the citations); *Versant*

*Funding LLC v. Teras Breakbulk Ocean Navigation Enters., LLC*, No. 17-CV-81140, 2025 WL 1440351, at *5 (S.D. Fla. May 20, 2025) (same).

20. For that reason, sanctions are warranted against Ms. Preston personally for her unreasonable and vexatious conduct in the Motion to Reconsider. This conduct has proliferated the proceedings and caused additional harm to the DIP Lender and the Debtors and wasted the time of the Court to determine the accuracy of the citations.

21. Additionally, Progressive's counsel received more than fair notice of the conduct that warrants sanctions (fabrications, mis-citations, and misstatements of existing case law) and the reasons why, as that conduct and those reasons were exhaustively detailed in the Objections. Despite this notice, Progressive's counsel **_continued_** to engage in conduct that is sanctionable in her August 26th Filings, which include re-use of a fabricated quotation, mis-citations, and misstatements of existing case law. As such, sanctions are also warranted here under Section 1927 for Ms. Preston's unreasonable and vexatious conduct for the August 26th Filings.[2]

**B. Sanctions Are Also Warranted Under the Court's Inherent Authority and *Sua Sponte* Rule 11 Powers**

22. Courts also possess the inherent power to sanction a party "for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 33, 111 S. Ct. 2123, 2126, 115 L. Ed. 2d 27 (1991). A court's inherent power is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 43 (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31, 82 S. Ct. 1386, 1389, 8 L. Ed. 2d 734 (1962)). The Supreme Court further ruled that the

---

[2] Sanctions are warranted under Section 1927 even if generative AI was not used here. *See Caputo v. Tungsten Heavy Powder, Inc.*, 96 F.4th 1111, 1156 (9th Cir. 2024) (affirming finding of bad faith and the award of sanctions under Section 1927 due to attorneys' failure to correct any of the misstatements of law or fact in her pleading, which multiplied proceedings).

sanctioning procedures pursuant to Rule 11 and 28 U.S.C. § 1927 do not limit the courts' inherent power to impose attorney's fees as a sanction for bad-faith conduct. *Id.* at 42-43.

23. For example, courts can utilize their inherent authority to impose less severe sanctions such as attorney fees, to more severe sanctions such as suspending or disbarring lawyers and outright dismissal of a case. *Id.* at 45; *In re Snyder*, 472 U.S. 634, 643, 105 S. Ct. 2874, 2880, 86 L. Ed. 2d 504 (1985).

24. Under this inherent authority, courts can "sanction the misuse of AI when it affects the Court's docket, case disposition, and ruling." *Versant Funding LLC v. Teras Breakbulk Ocean Navigation Enters., LLC*, No. 17-CV-81140, 2025 WL 1440351, at *3 (S.D. Fla. May 20, 2025).

25. Likewise, bankruptcy courts have the power to issue sanctions *sua sponte* under Rule 9011 of the Federal Rules of Civil Procedure (the "Federal Rule(s)"), which provides:

> By presenting to the court a petition, pleading, written motion, or other document— whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that, to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances … the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument to extend, modify, or reverse existing law, or to establish new law[.]

Fed. R. Bankr. P. 9011(b)(2), (c)(1), (3).

26. "Rule 11 imposes a duty on attorneys to certify that they have conducted a *reasonable inquiry* and have determined that any papers filed with the court are well grounded in fact, and legally tenable." *Benjamin v. Costco Wholesale Corp.*, No. 2:24-CV-7399 (LGD), 2025 WL 1195925, at *5 (E.D.N.Y. Apr. 24, 2025) (quoting *Park v. Kim*, 91 F.4th 610, 614 (2d Cir. 2024)) (emphasis in original). "At the very least, the duties imposed by Rule 11 require that

attorneys read, and thereby confirm the existence and validity of, the legal authorities on which they rely." *Id.* (quoting *Park*, 91 F.4th at 615).

27. Accordingly, lawyers who cite case law that is either hallucinated by artificial intelligence or otherwise made up violates his or her duties under Rule 11. *See, e.g., Gauthier v. Goodyear Tire & Rubber Co.*, No. 1:23-CV-281, 2024 WL 4882651, at *3 (E.D. Tex. Nov. 25, 2024) (sanctioning attorney who filed a response "without reading the cases cited, or even confirming the existence or validity of the cases included therein."); *Mata*, 678 F. Supp. 3d at 461 ("A fake opinion is not 'existing law' and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law.").

28. So do lawyers who mis-cite the holdings of a case and mis-quote from judicial opinions. *See United States v. Hayes*, 763 F. Supp. 3d 1054, 1067 (E.D. Cal. 2025); *Precision Specialty Metals, Inc. v. United States*, 315 F.3d 1346, 1347 (Fed. Cir. 2003) (affirming Rule 11 sanctions against attorney for misquoting and failing to quote fully from judicial opinions in a motion for reconsideration she signed and filed); *see also iParametrics, LLC v. Howe*, 522 F. App'x 737, 739 (11th Cir. 2013) (upholding Rule 11 sanctions for filing a factually and legally inaccurate writ of execution where the lawyer "could readily have discovered and corrected his pleadings, but instead his misrepresentations went undetected for over a year.")).

29. Courts addressing AI generated fake citations have imposed various forms of Rule 11 sanctions upon the offending attorneys, including monetary sanctions, referrals to disciplinary body for disciplinary proceedings, imposing CLE training requirements, and revoking pro hac vice admissions. *See Benjamin*, 2025 WL 1195925, at *6 (collecting cases). And where, as should be here, Rule 11 sanctions are to be imposed, "[a]bsent exceptional circumstances, a law firm must

10

be held jointly responsible for a violation committed by its partner, associate, or employee." Fed. R. Bankr. P. 9011(c)(1).

30. In the Eleventh Circuit, to exercise its inherent authority or *sua sponte* Rule 11 powers, a court must find that the party acted in bad faith. *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003); *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017) ("Our circuit has linked inherent power sanctions with subjective bad faith[.]").

31. "[I]n the absence of direct evidence of subjective bad faith, this [subjective bad faith] standard can be met if an attorney's conduct is so egregious that it could only be committed in bad faith." *Purchasing Power*, 851 F.3d at 1124-25. Recklessness alone does not satisfy the subjective bad-faith standard; instead, the standard requires something more, such as recklessness plus a frivolous argument. *Id.* at 1225-26; *see also Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998).

32. For example, in *ByoPlanet*, the district court awarded sanctions under Rule 11 for counsel's continued submissions to the court using AI without checking the accuracy of cases and citations, despite being on notice that the use of AI resulted in hallucinated cases and quotations. No. 0:25-CV-60630, 2025 WL 2091025, at *8 (S.D. Fla. July 17, 2025). In that case, the court found subjective bad faith, holding that counsel's behavior was egregious given that: (1) counsel was already on notice of hallucinated cases and quotations; and (2) after counsel was on notice, he used hallucinated cases and quotations in direct response to a motion to dismiss and an order to show cause regarding his misrepresentations and hallucinated cases and quotations. *Id.* at *9.

33. The facts of *ByoPlanet* are analogous here. Despite being on notice that her Motion to Reconsider contained fabricated quotes, mis-citations, and misstatements of existing case law

(to which the DIP Lender presumes that these citations were generated from the use of artificial intelligence), Ms. Preston continued to submit pleadings with **_more_** mis-citations, misstatements of existing case law, and the re-use of a fabricated quote now attributed to a new case. Even if her initial conduct was "at most, citation or paraphrasing errors," Response, p. 1, as claimed, which the DIP Lender disputes, her subsequent misrepresentations of law in the August 26th Pleadings can only be intentional. In other words, Ms. Preston was informed by the Objections and the Court that her Motion to Reconsider contained misrepresentations of law, yet after she was informed she decided to submit additional misrepresentations of law through her August 26th Pleadings. Her conduct is so egregious that it could only be committed in bad faith.

34. As such, the DIP Lender submits that sanctions are warranted here under both the Court's inherent authority and its *sua sponte* Rule 11 powers. The DIP Lender respectfully requests, along with any other sanctions the Court finds appropriate in this situation, that Progressive be directed to reimburse the DIP Lender for its reasonable attorneys' fees and costs incurred in the preparation, filing, and prosecution of the DIP Lender's Objection and this Motion for Sanctions.

C. **The DIP Lender's Legal Fees**

35. The DIP Lender's legal fees with respect to the Motion to Reconsider and the August 16 hearing are:

| Name | Firm | Title | Rate | Hours | Total |
|---|---|---|---|---|---|
| Rosenblatt, Paul | KTS | Partner | $1,000 | 12.2 | $12,200.00 |
| Wen, Dante | KTS | Associate | $440 | 13.8 | $6,072.00 |
| Baldwin, Cynthia | KTS | Contract Attorney | $252 | 3.1 | $781.20 |
| Hammond, Clark | WJ | Partner | $615 | 3.0 | $1,845.00 |
| | | | **Sub-Total** | **32.1** | **$20,898.20** |

12

36. The DIP Lender's legal fees with respect to the August 26th Filings and this Motion for Sanctions are:

| Name | Firm | Title | Rate | Hours | Total |
|---|---|---|---|---|---|
| Rosenblatt, Paul | KTS | Partner | $1,000 | 6.2 | $6,200.00 |
| Wen, Dante | KTS | Associate | $440 | 15.4 | $6,776.00 |
| Baldwin, Cynthia | KTS | Contract Attorney | $252 | 0 | $0.00 |
| Hammond, Clark | WJ | Partner | $615 | 2.2 | $1,353.00 |
| | | | Sub-Total | **23.8** | **$14,329.00** |

37. The DIP Lender's legal fees total $35,227.20.[3]

38. Attached hereto as <u>Exhibit A</u> is the Declaration of Paul M. Rosenblatt in support of the DIP Lender's legal fees.

## CONCLUSION

**WHEREFORE**, the DIP Lender requests that this Court enter an order (i) granting sanctions against Ms. Preston under Section 1927; (ii) granting sanctions against Ms. Preston and Gordon Rees under the Court's inherent authority and *sua sponte* Rule 11 powers; and (iii) granting such other and further relief as is just and proper.

Dated: September 5, 2025

Respectfully submitted,

By:/s/ *Paul M. Rosenblatt*
**KILPATRICK TOWNSEND & STOCKTON LLP**
Paul M. Rosenblatt, Esq. (*pro hac*)
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309-4528
Email: prosenblatt@ktslaw.com

---

[3] Future fees, if any, will be supplemented before the hearing on the Motion for Sanctions.

13

Case 25-30256    Doc 898    Filed 09/05/25    Entered 09/05/25 17:17:35    Desc Main
Document    Page 13 of 14

-- and --

**WALLACE, JORDAN, RATLIFF & BRANDT, LLC**
Willaim A. Ratliff, Esq.
Clark R. Hammond, Esq.
800 Shades Creek Parkway, Suite 400
Birmingham, AL, 35209
Email: wratliff@wallacejordan.com
Email: CHammond@wallacejordan.com

*Counsel to Jackson Investment Group, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 5, 2025, a true and correct copy of the foregoing pleading was filed with the Court's CM/ECF system that will provide notice to all parties receiving electronic notices in this bankruptcy case.

/s/ Paul M. Rosenblatt
Paul M. Rosenblatt