**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**

| | |
|---|---|
| In re:<br><br>JACKSON HOSPITAL & CLINIC, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br>Case No. 25-30256<br><br>JOINTLY ADMINISTERED |

## DEBTORS' MOTION FOR SANCTIONS

**COME NOW** Jackson Hospital & Clinic, Inc. ("Jackson Hospital") and its affiliated

debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11

cases (the "Chapter 11 Cases"), by and through their undersigned counsel, hereby move (the

"Motion") this Court for the imposition of sanctions and any additional and further relief as this

Court deems just and equitable against Progressive Perfusion ("Progressive"), its counsel, Cassie

D. Preston ("Ms. Preston"), and the law firm of Gordon Rees Scully Mansukhani, LLP ("Gordon

Rees" and collectively, the "Respondents") pursuant to 11 U.S.C. § 105(a), Federal Rule of

Bankruptcy Procedure 9011, section 1927 of title 28 of the United States Code, and this Court's

inherent authority. In support of this Motion, the Debtors state as follows:

## PRELIMINARY STATEMENT

On July 29, 2025, Progressive filed the *Motion for Reconsideration of Orders Denying the*

*Motion to Compel Turnover or to Recognize Constructive Trust in Medicare Funds* (the "Motion

for Reconsideration"). *See* Doc. 776. Throughout the Motion for Reconsideration, Progressive

incorrectly or falsely attributed holdings in numerous reported decisions, cited to quotations that do

not appear in the cases, and in at least two instances, cited to a case that does not match a citation.

Due to this misuse and misrepresentation of case law, and in some cases, fabrication of quotation

---

[1] The Debtors in these cases are Jackson Hospital & Clinic, Inc. and JHC Pharmacy, LLC.

and case citations, the Debtors spent considerable time and estate resources to determine the validity of the authority cited in the Motion for Reconsideration. When the Debtors concluded that the authority cited in the Motion for Reconsideration was misrepresented, the Debtors had to expend further estate resources to file a response and motion to strike the Motion for Reconsideration.

Even after the Debtors and the DIP Lender objected to the Motion for Reconsideration, Progressive filed further pleadings with additional incorrect citations and misstatements of case law.

By way of this Motion, the Debtors move for the entry of an order imposing sanctions in the form of attorneys' fees and any other relief that this Court deems appropriate against Respondents based on the repeated false and manufactured claims of authority cited in the Motion for Reconsideration, Supplemental Brief (as defined below), and Joint Response (as defined below).

## JURISDICTION AND VENUE

1.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the U.S. District Court for the Middle District of Alabama's General Order of Reference dated April 25, 1985.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     The statutory predicates for the relief requested herein are 11 U.S.C. § 105(a), 28 U.S.C. § 1927 ("Section 1927"), and Fed. R. Bankr. P. 9011.

## BACKGROUND

3.     On February 3, 2025 (the "Petition Date"), each of the Debtors commenced a case under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or

examiner has been made in the Chapter 11 Cases. On February 19, 2025, this Court entered an *Amended Order Directing the Appointment of Unsecured Creditors Committee*. *See* Doc. 126.

4.      On June 17, 2025, Progressive filed the *Motion to Determine that Medicare Reimbursements Misappropriated by Debtor and Earmarked for Progressive Perfusion, Inc. are Not Property of the Estate* (the "Motion to Determine Funds"). *See* Doc. 614.

5.      On June 18, 2025, Progressive filed the *Motion to Compel the Designation of Progressive Perfusion, Inc. as a Critical Vendor and for Payment of the Outstanding Pre-Petition Debt* (the "Motion to Compel," and together with the Motion to Determine Funds, the "Motions"). *See* Doc. 617.

6.      On July 11, 2025, the Debtors filed the *Debtors' Response to Progressive Perfusion's (I) Motion to Compel the Designation of Progressive Perfusion, Inc. as a Critical Vendor and for Payment of the Outstanding Pre-Petition Debt; and (II) Motion to Determine that Medicare Reimbursements Misappropriated by Debtor and Earmarked for Progressive Perfusion, Inc. are Not Property of the Estate*. *See* Doc. 693.

7.      On July 14, 2025, Progressive subsequently filed *Progressive Perfusion, Inc.'s Reply to Debtors' Response to Motion to Compel Designation as Critical Vendor and to Motion to Determine that Misappropriated Medicare Reimbursements are Not Property of the Estate*. *See* Doc. 706.

8.      On July 15, 2025, this Court entered the *Order Denying Motion to Determine That Medicare Reimbursements Misappropriated by Debtor and Earmarked for Progressive Perfusion, Inc. are Not Property of the Estate* (the "Order Denying Motion to Determine"). *See* Doc. 712.

9.      On July 15, 2025, this Court entered the *Order Denying Motion To Compel Designation of Progressive Perfusion, Inc. As A Critical Vendor and For Payment of the*

*Outstanding Pre-Petition Debt* (the "<u>Order Denying Motion to Compel,</u>" and together with the Order Denying Motion to Determine, the "<u>Orders</u>"). *See* Doc. 713.

10.     On July 29, 2025, Progressive filed the Motion for Reconsideration asking this Court to reconsider its Orders.  *See* Doc. 776.

11.     Upon careful review of the Motion for Reconsideration, the Debtors and other parties discovered the numerous misrepresentations of holdings and other inaccuracies of cases cited by Progressive in the Motion for Reconsideration.

12.     On August 21, 2025, Jackson Investment Group, LLC (the "<u>DIP Lender</u>") filed *The DIP Lender's (i) Objection to Progressive Perfusion, Inc.'s Motion for Reconsideration and (ii) Request for Sanctions* (the "<u>DIP Lender Objection</u>"). *See* Doc. 842.

13.     On August 21, 2025, the Debtors filed the *Debtors' Response to and Motion to Strike Progressive Perfusion's Motion for Reconsideration of Orders Denying Motion to Compel Turnover or to Recognize Constructive Trust in Medicare Funds* (the "<u>Motion to Strike</u>"). See Doc. 843.

14.     The Debtors attached a chart of the authority cited in the Motion for Reconsideration to the Motion to Strike. For ease of reference, the Debtors have included this same chart as **Exhibit A**.

15.     On August 26, 2025, before the hearing on the Motion for Reconsideration, DIP Lender Objection, and Motion to Strike, Progressive filed the *Supplemental Brief in Support of Motion for Reconsideration* (the "<u>Supplemental Brief</u>"). *See* Doc. 859.

16.     On August 26, 2025, Progressive also filed *Progressive Perfusion's Joint Response to the DIP Lender's Objection and Request for Sanctions and the Debtor's Motion to Strike* (the "<u>Joint Response</u>"). *See* Doc. 860.

17.     At the hearing on August 26, 2025, the Court offered Progressive's counsel an opportunity to withdraw the Motion for Reconsideration. Progressive first inquired as to whether the Supplemental Brief could be substituted for the Motion for Reconsideration. The Court declined to accept the Supplemental Brief as a substitute for the Motion for Reconsideration. After a recess to allow Progressive to consider its options, Progressive withdrew the Motion for Reconsideration and Supplemental Brief. *See* Doc. 871.

18.     On August 28, 2025, this Court entered the *Order to Cassie D. Preston and Gordon Rees Skully Mansukhani, LLC to Appear and Show Cause as to Why Sanctions Should Not be Imposed*. *See* Doc. 871.

19.     After the hearing on August 26, 2025, and in preparation of drafting this Motion, the Debtors reviewed the Supplemental Brief and Joint Response.

20.     Once again, the Debtors found issues with cases cited in the Supplemental Brief and Joint Response, particularly with the three cases cited in the Joint Response. A chart exemplifying the misrepresented authority in the Supplemental Brief and Joint Response is attached as **Exhibit B**.

## RELIEF REQUESTED

21.     The Debtors respectfully request the entry judgment against the Respondents, jointly and severally, awarding the Debtors reasonable attorneys' fees and costs incurred in connection with responding to the Motion for Reconsideration and this Motion.

22.     The Debtors are entitled to such fees and costs in the form of sanctions against the Respondents under 11 U.S.C. § 105(a), Fed. R. Bankr. P. 9011, Section 1927, and this Court's inherent authority.

## ARGUMENT

### I.     Sanctions are Warranted against Respondents under 11 U.S.C. § 105(a).

23.     Section 105(a) provides bankruptcy judges with broad power to implement the provisions of the Bankruptcy Code and to prevent abuse of the bankruptcy process. *See, e.g., Insight Sec. Inc. v. Cordova (In re Cordova),* Nos. 6:19-bk-04049-LVV, 6:19-ap-00323-LVV, 2021 Bankr. LEXIS 3594, at *7 (Bankr. M.D. Fla. Sep. 24, 2021) (citing *Franken v. Mukamal*, 449 Fed. App'x 776, 778 (11th Cir. 2011)); *In re Volpert,* 110 F.3d 494, 500 (7th Cir.1997); *Coquico, Inc.,* 508 B.R. 929, 940 (Bankr. E.D. Pa. 2014).

24.     Under Section 105(a), a Bankruptcy Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of Title 11. Section 105(a) also permits a Bankruptcy Court, *sua sponte,* to "tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." *See* 11 U.S.C. § 105(a). In addition, Section 105(a) may be used "to protect the integrity of the Bankruptcy Code as well as the judicial process." *See In re Arkansas Communities, Inc.,* 827 F.2d 1219, 1222 (8th Cir.1987) (*quoting In re Silver,* 46 B.R. 772, 774 (D. Colo. 1985)).

25.     When sufficient evidence exists to find an abuse of the judicial system, a Bankruptcy Court may award sanctions against both attorneys and litigants under Section 105(a), without regard to the signed document requirement or safe harbor provisions of Rule 9011. *See e.g., In re Schemelia,* 607 B.R. 455 (Bankr. D.N.J. 2019); *In re Evergreen Sec., Ltd.,* 570 F.3d 1257, 1273-74 (11th Cir. 2009); *Ettinger & Assocs. LLC v. Miller (In re Miller)*, 529 B.R. 73, 85 (Bankr. E.D. Pa. 2015); *In re Antonelli,* No. 11-20255/JHW, 2012 WL 280722, at *13 (Bankr. D.N.J. Jan. 30, 2012); *In re Bailey,* 321 B.R. 169, 178 (Bankr. E.D. Pa.2005); *In re Collins,* 250 B.R. 645, 657-59 (Bankr. N.D. Ill. 2000); *In re Mergenthaler,* 144 B.R. 632, 635 (Bankr. E.D.N.Y. 1992) (citing *United States v. Int'l Brotherhood of Teamsters,* 948 F.2d 1338, 1345 (2d Cir. 1991)).

26. Here, there is sufficient evidence to find the Respondents have abused the judicial system and have acted in bad faith by filing and continuing to rely on deficient citations and misrepresentations. Progressive's false and incorrect attribution of holdings in case law cited in the Motion for Reconsideration prejudiced the Debtors. These false representations of case law made to the Court misrepresented the true arguments at hand and created an uneven playing field for the parties. The Debtors had to expend valuable estate resources in responding to the Motion for Reconsideration and wading through the fabrications and misrepresentations contained therein. Most importantly, these misrepresentations called into question Respondents' candor to this Court and Respondents' integrity as part of the judicial process. *See Thomas v. Pangburn*, No. 4:23-CV-046, 2023 WL 9425765, at \*5 (S.D. Ga. Oct. 6, 2023), *report and recommendation adopted,* 2024 WL 329947 (S.D. Ga. Jan. 29, 2024) ("Fake citations waste both the Court's and the opposing party's time and resources."); *see also Morgan v. Cmty. Against Violence*, No. 23-CV-353-WPJ/JMR, 2023 WL 6976510, at \*8 (D.N.M. Oct. 23, 2023) ("Quite obviously, many harms flow from such deception—including wasting the opposing party's time and money, the Court's time and resources, and reputational harms to the legal system (to name a few).").

27. The Supplemental Brief and Joint Response are further evidence of Respondent's abuse of the judicial system and bad faith. As stated above, even after the Debtors and DIP Lender filed pleadings pointing out the inaccurate, misleading, and fabricated representations of legal authority in the Motion for Reconsideration, Progressive filed the Supplemental Brief and Joint Response in further support of the Motion for Reconsideration—a filing without merit supported by inaccurate representations of authority. Respondent's repeated conduct exemplifies a blatant disregard towards the truth.

28. In the Joint Response, Progressive states the "speculation of 'AI use' is unsupported. Citation errors do not justify punishment." *See* Doc. 860, p. 3. The Debtors contend that Respondents' repeated misrepresentation of authority to support its positions is much greater than a few harmless "citation errors." Respondents' conduct must be deterred. This Court should sanction Progressive, including punitively, pursuant to Section 105(a) to prevent abuse of the bankruptcy process, protect the integrity of this Court, and promote judicial efficiency.

## II. Sanctions are warranted against Respondents Pursuant to the Court's Inherent Power to Sanction Parties who appear before it.

29. The United States Supreme Court has long recognized the inherent power of a federal court to "assess attorney's fees when a party 'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *See Chambers v. Nasca, Inc.,* 501 U.S. 32, 45-46, (1991) (quoting *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 258-59 (1975)).

30. "[I]f a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled,' it may assess attorney's fees against the responsible party." *See Chambers,* 501 U.S. at 45-46 (quoting *Universal Oil Products Co. v. Root Refining Co.,* 328 U.S. 575, 580 (1946)).

31. As with section 105(a), sanctions may be imposed under the court's inherent power despite the absence of a signed writing by the party to be sanctioned or compliance with the safe harbor provision of Rule 9011. *See Fellheimer, Eichen & Braverman v. Charter Techs.,* 57 F.3d 1215, 1228 (3d Cir. 2013).

32. To impose sanctions under a Court's inherent power, a Court must find that the party against whom sanctions are to be imposed acted in bad faith. *See, Chambers,* 501 U.S. at 45-46; *In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions,* 278 F.3d 175, 181 (3d Cir. 2002); *In re Theokary,* 468 B.R. 729, 748 (Bankr. E.D. Pa. 2012); *Miller*, 529 B.R. at 91.

33.     The party to be sanctioned must also be afforded due process, including notice of "the legal basis for the sanctions." *See Theokary,* 469 B.R. at 748. However, notice of the "precise sanctioning tool" is not required, as "[n]otice is sufficient if the responding party is aware that he or she is being charged with bad faith conduct and needs to confront this charge to defend against the imposition of sanctions." *See id.*

34.     Courts have found that a party acts in subjective bad faith and is subject to Rule 11 sanctions when the party submits a brief without verifying the validity of arguments or existence of cases cited therein. *See Benjamin v. Costco Wholesale Corp.*, 779 F. Supp. 3d 341, 350 (E.D.N.Y. 2025).

35.     Here, Respondents acted in bad faith when they clearly did not verify the validity of arguments or existence of cases cited in the Motion for Reconsideration. Respondents were on notice that the Motion for Reconsideration was riddled with incorrect citations and misrepresented authority when the Debtors and DIP Lender filed the Motion to Strike and DIP Lender Objection. However, even in the face of this, Respondents "doubled down" and submitted the Joint Response and Supplemental Brief—documents which amazingly *also* contain citation errors and misrepresent authority. This repeated conduct warrants sanctions against Respondents in the form of attorneys' fees pursuant to this Court's inherent authority.

**III.     Sanctions are warranted against Respondents under Bankruptcy Rule 9011.**

36.     Bankruptcy Rule 9011 is the bankruptcy analogue of Rule 11 of the Federal Rules of Civil Procedure. *See, Cinema Serv. Corp. v. Edbee Corp.,* 774 F.2d 584, 585 (3d Cir. 1985) ("The text of the Rule tracks Fed. R. Civ. P. 11, with only such modifications as are appropriate in bankruptcy matters.").

37.     Bankruptcy Rule 9011 contains multiple grounds for the imposition of sanctions, including: (1) whether the pleading was filed for any improper purpose, such as to harass, delay or needlessly increase the expense of litigation; (2) whether the filed pleading is well grounded in fact or warranted by existing law or by a good faith argument for its modification, where a reasonable inquiry would have revealed the deficiency; and (3) whether the allegations and factual contentions have evidentiary support.

38.     In determining whether a party has violated Rule 9011, the Court need not find that a party who makes a false representation to the court acted in bad faith. *See id.,* at 90; *In re Taylor,* 655 F.3d 274, 282 (3d Cir.2011). Rather, "[t]he imposition of Rule 11 sanctions . . . requires only a showing of objectively unreasonable conduct." *See Fellheimer,* 57 F.3d at 1225.

39.     If a court determines that a violation of Rule 9011 has occurred, the court "may… impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." *See* Fed. R. Bankr. P. 9011(c).

40.     An attorney who cites to cases that misrepresent or make up case law cited therein violate the attorney's duties under Rule 11. *See, e.g., Gauthier v. Goodyear Tire & Rubber Co.,* No. 1:23-CV-281, 2024 WL 4882651, at *3 (E.D. Tex. Nov. 25, 2024) (sanctioning attorney who filed a response "without reading the cases cited, or even confirming the existence or validity of the cases included therein."); *United States v. Hayes,* 763 F. Supp. 3d 1054, 1067 (E.D. Cal. 2025); *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 495 (D. Wyo. 2025) (the duty to conduct a reasonable inquiry into the existing law is a "nondelegable responsibility").

41.     Here, Respondents have repeatedly violated Rule 9011 through the pervasive misrepresentations to this Court through the Motion for Reconsideration, Supplemental Brief, and Joint Response. As set forth in Exhibit A and Exhibit B, it is clear that Respondents not only made

pervasive misrepresentations to this Court, but also failed to conduct a reasonable inquiry before filing the pleadings. This conduct clearly violates Rule 9011, and warrants sanctions under Rule 9011.

## IV.     Sanctions are warranted against Ms. Preston under Section 1927.

42.     Ms. Preston should be sanctioned pursuant to Section 1927 for engaging in practices that unnecessarily delayed and increased the complexity of these Chapter 11 cases. This Section states that:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

43.     "[A]n attorney multiplies proceedings unreasonably and vexatiously within the meaning of the statute only when the attorney's conduct is so egregious that it is tantamount to bad faith." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239, 1242 (11th Cir. 2007) (reasoning it is egregious conduct and warrants sanctions when an attorney recklessly pursues a frivolous claim). It is clear from the statutory language and the case law that "for purposes of § 1927, bad faith turns not on the attorney's subjective intent, but on the attorney's objective conduct." *Id.* at 1239.

44.     A determination of bad faith is an objective standard where an attorney "knowingly or recklessly pursues a frivolous claim" or "engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims." *See Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010). Reckless conduct "simply means conduct that grossly deviates from reasonable conduct." *Amlong*, 500 F.3d at 1240; *In re Engle Cases*, 283 F. Supp. 3d 1174, 1214 (M.D. Fla. 2017) ("Recklessness

is enough to support a finding of objective bad faith, even if the attorney does not act knowingly and malevolently.").

45.     Here, Ms. Preston has acted unreasonably and vexatiously in filing the Motion for Reconsideration, and later filing the Supplemental Brief and Joint Response riddled with more incorrect citations and misrepresentations of law.  It is evident that Ms. Preston made no attempt to verify the citations in her pleadings before filing them, even after Respondents were on notice that the Motion for Reconsideration contained pervasive misrepresentations of law. Ms. Preston's conduct has caused harm to the Debtors and their estates, along with other creditors in these Chapter 11 cases. The Debtors and the DIP Lender have spent considerable amounts of time and efforts since the filing of the Motion for Reconsideration to combat these misrepresentations. Ms. Preston's unreasonable and vexatious conduct must be deterred. Therefore, the Debtors request that this Court sanction Ms. Preston pursuant to Section 1927.

**V.     A Federal District Court in the Northern District of Alabama Has Recently Addressed a Similar Situation.**

46.     A court in the United States District Court in the Northern District of Alabama has recently had the opportunity to address a similar situation of parties citing false or misrepresented case law in its pleadings. In the case of *Frankie Johnson v. Jefferson S. Dunn, et al.*, In the United States District Court for the Northern District of Alabama, Southern Division, Case No. 2:21-cv-1701-AMM, the court issued a show cause order to the four attorneys that signed a pleading on behalf of one of the defendants due to the belief that counsel had fabricated citations generated by artificial intelligence in a motion submitted to the court. As a result of the show cause order, the court entered the Sanctions Order, sanctioning the attorneys responsible for these fabrications. The court stated that "this kind of AI misuse is a serious and time-sensitive problem that, unless it is arrested promptly, will impose escalating undue costs on litigants, cause extensive disruptions for

courts, and damage public confidence in the legal community and the integrity of the justice system." *See Frankie Johnson v. Jefferson S. Dunn, et al.*, In the United States District Court for the Northern District of Alabama, Southern Division, Case No. 2:21-cv-1701-AMM, Doc. 204, p. 45.

47.     Other courts that have addresses artificial intelligence generated citations have imposed various forms of sanctions upon the offending attorneys. *See Benjamin v. Costco Wholesale Corp.,* No. 2:24-CV-7399 (LGD), 2025 WL 1195925, at *5 (E.D.N.Y. Apr. 24, 2025); *In re Martin*, 670 B.R. 636, 648 (Bankr. N.D. Ill. 2025) ("Mr. Nield's alleged lack of knowledge of ChatGPT's shortcomings leads me to do what courts have been doing with increasing frequency: announce loudly and clearly (so that everyone hears and understands) that lawyers blindly relying on generative AI and citing fake cases are violating Bankruptcy Rule 9011 and will be sanctioned."); *ByoPlanet Int'l, LLC v. Johansson*, No. 0:25-CV- 60630, 2025 WL 2091025, at *10 (S.D. Fla. July 17, 2025) (imposing Section 1927 sanctions for the use of AI-generated hallucinated cases and fabricated quotations that caused the parties and the court to spend significant resources to determine the accuracy of the citations); *Versant Funding LLC v. Teras Breakbulk Ocean Navigation Enters., LLC*, No. 17-CV-81140, 2025 WL 1440351 (S.D. Fla. May 20, 2025).

48.     In this case, although Respondents have seemingly denied the use of artificial intelligence, the Debtors still presume that these citations were generated from "hallucinations," whether generated from the use of artificial intelligence or some other cause. The misuse of artificial intelligence to generate fabricated case law, quotations, and misrepresentations of holdings, or reliance on some other outside source of any kind, in an attempt to bolster Progressive's position has caused an undue cost on the Debtors and their estates. Moreover, these pleadings, especially the Joint Response, which was filed after Respondents were on notice about the misrepresentations

in the Motion for Reconsideration, raise serious concerns about Respondents' candor to this Court and other parties in interest. Respondents' conduct must be deterred.

49. Due to the considerable amount of time and resources that the Debtors have had to expend to combat these pervasive misrepresentations and hallucinations, the Debtors respectfully request that this Court sanction the Respondents in the form of awarding the Debtors attorneys' fees for the time and resources expended from the Estate, and any further relief as this Court deems appropriate.

## VI.     The Debtors' legal fees.

50. The Debtors have incurred at least $20,494.00 in legal fees associated with responding to the Motion for Reconsideration and drafting this Motion.

51. Attached hereto as **Exhibit C** is the Declaration of Derek F. Meek in support of the Debtors' legal fees.

**WHEREFORE**, the Debtors respectfully request that this Court grant this Motion sanctioning the Respondents in the form of awarding the Debtors attorneys' fees for the time and resources expended from the Estate, and granting any further relief as this Court deems appropriate.

## <u>NOTICE</u>

The Debtors will provide notice of this Motion to those listed on the Master Service List.

Dated: September 8, 2025

/s/ *Derek F. Meek*
Derek F. Meek
Marc P. Solomon
Catherine T. Via
Burr & Forman LLP
420 20th Street North, Suite 3400
Birmingham, Alabama 35203
Telephone: (205) 251-3000

E-mail: dmeek@burr.com
msolomon@burr.com
cvia@burr.com

*Counsel for Debtors and Debtors-in-Possession*

**EXHIBIT A**

## Cases with Incorrect Citations in Motion for Reconsideration

| Case Name Cited in Motion for Reconsideration | Record Cite to Motion for Reconsideration | Proposition/Quote in Motion for Reconsideration | Debtors' Notes |
|---|---|---|---|
| *In re Monongahela Valley Hosp., Inc.*, 446 B.R. 490, 498 (Bankr. W.D. Pa. 2010) | *See* Doc. 776, p. 6. | "*In re Monongahela Valley Hosp., Inc.,* 446 B.R. 490, 498 (Bankr. W.D. Pa. 2010) ("[T]he hospital's receipt of funds from Medicare or Medicaid that are clearly intended to reimburse services performed by a third party gives rise to a trust or equitable lien.") | A diligent search by the Debtors did not reveal a case matching this citation. The only case associated with 446 BR 490 is *In re QuVis, Inc.*, 446 B.R. 490 (Bankr. D. Kan. 2011), *aff'd sub nom. In re QuVIS, Inc.*, 469 B.R. 353 (D. Kan. 2012), *aff'd*, 504 F. App'x 747 (10th Cir. 2012). This case does not appear to be related to the facts or relevant law subject of the Motions and Orders. |
| *Matter of Vacuum Corp.*, 55 B.R. 595 (Bankr. E.D. Tenn. 1985) | *See* Doc. 776, p. 7. | "*See Matter of Vacuum Corp.,* 55 B.R. 595 (Bankr. E.D. Tenn. 1985) (constructive trust imposed where debtor retained misappropriated and traceable funds earned by another party)." | A diligent search by the Debtors did not reveal a case matching this citation. The correct citation for this case is *Matter of Vacuum Corp.*, 215 B.R. 277 (Bankr. N.D. Ga. 1997). This case did not hold reach the holding that the Motion for Reconsideration asserts. |

**Fabricated Quotations Cited in the Motion for Reconsideration**

| Case Name Cited in Motion for Reconsideration | Record Cite to Motion for Reconsideration | Proposition/Quote in Motion for Reconsideration | Debtors' Notes |
|---|---|---|---|
| *United States v. Vernon Home Health, Inc.*, 21 F.3d 693, 696 (5th Cir. 1994) | *See* Doc. 776, p. 4. | "*See United States v. Vernon Home Health, Inc.*, 21 F.3d 693, 696 (5th Cir. 1994) ('[t]he fact that the services were provided through arrangements with contractors does not affect the hospital's responsibility for payment where reimbursement has been made under the hospital's provider number) …." | A diligent search by the Debtors did not reveal the quoted language appearing in the case cited by Progressive. |
| *U.S. ex rel. Hutcheson v. Blackstone Medical, Inc.*, 647 F.3d 377, 386 (1st Cir. 2011) | *See* Doc. 776, p. 5. | "Furthermore, as explained in *U.S. ex rel. Hutcheson v. Blackstone Medical, Inc.*, 647 F.3d 377, 386 (1st Cir. 2011), billing Medicare for a DRG claim "'implies that the billing provider has met the requirements of coverage, including that the services were necessary and delivered as claimed.'" | A diligent search by the Debtors did not reveal the quoted language appearing in the case cited by Progressive. |

| | | | |
|---|---|---|---|
| *In re Mid-Delta Health Systems, Inc.*, 251 B.R. 811, 816 (Bankr. N.D. Miss. 2000) | *See* Doc. 776, p. 6. | "Additionally, *In re Mid-Delta Health Systems, Inc.*, 251 B.R. 811, 816 (Bankr. N.D. Miss. 2000) holds that to 'the extent that the debtor received Medicare reimbursement for services actually performed by the creditor under arrangement, those funds are not property of the estate and must be turned over.'" | A diligent search by the Debtors did not reveal the quoted language appearing in the case cited by Progressive. |
| *In re Visiting Nurse Ass'n of Tampa Bay, Inc.*, 121 B.R. 114, 118 (Bankr. M.D. Fla. 1990) | *See* Doc. 776, p. 6. | "*In re Visiting Nurse Ass'n of Tampa Bay, Inc.*, 121 B.R. 114, 118 (Bankr. M.D. Fla. 1990) (payments owed to third-party providers 'never became part of the debtor's estate')." | A diligent search by the Debtors did not reveal the quoted language appearing in the case cited by Progressive. |

## Misrepresented/Misconstrued Cases Cited in the Motion for Reconsideration

| Case Name Cited in Motion for Reconsideration | Record Cite to Motion for Reconsideration | Proposition/Quote in Motion for Reconsideration | Debtors' Notes |
|---|---|---|---|
| *In re Club Assoc.*, 951 F.2d 1223, 1230 (11th Cir. 1992) | *See* Doc. 776, p. 2. | "Under Fed. R. Civ. P. 59(e), incorporated via Bankruptcy Rule 9023, reconsideration is warranted where the court has committed clear error of law, misapprehended facts, or to prevent manifest injustice." | A diligent search by the Debtors did not reveal any reference to FRCP 59(e), Bankruptcy Rule 9023, or any reference to the reconsideration standard. |
| *In re General Coffee Corp.*, 828 F.2d 699 (11th Cir. 1987) | *See* Doc. 776, p. 2. | "*In re General Coffee Corp.*, 828 F.2d 699 (11th Cir. 1987), held that property held in constructive trust is excluded from the estate under § 541(d)." | This case does not reach this holding. |
| *In re General Coffee Corp.*, 828 F.2d 699 (11th Cir. 1987) | *See* Doc. 776, p. 2. | "A constructive trust arises at the moment of inequitable conduct, not merely upon judicial declaration. *Id.* at 707." | This case does not reach this holding. |
| *In re General Coffee Corp.*, 828 F.2d 699 (11th Cir. 1987) | *See* Doc. 776, p. 8. | "Each of these confirms the principle that property held in constructive trust, or intended for another party, is not estate property — even if in debtor's possession. The holdings are clear in each and every case cited, as well as a myriad of | This case does not reach this holding. |

| | | other cases that were not cited simply to prevent duplication." | |
|---|---|---|---|
| *In re General Coffee Corp.*, 828 F.2d 699 (11th Cir. 1987) | *See* Doc. 776, p. 9. | "Instead, they are granted with a constructive trust in favor of the actual service provider. Courts routinely exclude such funds from the estate…*In re General Coffee Corp.,* 828 F.2d 699, 707 (11th Cir. 1987)." | This case does not reach this holding. |
| *In re Columbia Gas Sys., Inc.*, 997 F.2d 1039, 1059 (3d Cir. 1993) | *See* Doc. 776, p. 8. | "As stated in *In re Columbia Gas Sys., Inc.*, 997 F.2d 1039, 1059 (3d Cir. 1993), funds held in trust, even if intermingled, remain the property of the beneficiary and not the estate." | This case does not discuss intermingled finds, but does generally hold that funds held in constructive trust are excluded from the bankruptcy estate. |
| *In re Visiting Nurse Ass'n of Tampa Bay, Inc.*, 121 B.R. 114, 118 (Bankr. M.D. Fla. 1990) | *See* Doc. 776, p. 2. | "The traceability of these reimbursements to specific DRGs linked to Progressive's work mirrors the facts in *In re Visiting Nurse Ass'n of W. Pa.*, 143 B.R. 633 (Bankr. W.D. Pa. 1992), where such reimbursements were deemed held in trust and excluded from the estate." | This case does not reach this holding and these facts were not present. |
| *In re Visiting Nurse Ass'n of Tampa Bay, Inc.*, 121 B.R. 114, 118 (Bankr. M.D. Fla. 1990) | *See* Doc. 776, p. 8. | "Each of these confirms the principle that property held in constructive trust, or intended for another party, is not estate property — even if in debtor's | This case does not reach this holding. This case does not mention "constructive trusts." |

62117140 v1

| | | possession. The holdings are clear in each and every case cited, as well as a myriad of other cases that were not cited simply to prevent duplication." | |
|---|---|---|---|
| *In re St. Mary Hosp.*, 89 B.R. 503, 513–14 (Bankr. E.D. Pa. 1988) | *See* Doc. 776, p. 4. | "*In re St. Mary Hosp.*, 89 B.R. 503, 513–14 (Bankr. E.D. Pa. 1988) (funds received by a hospital from Medicare for services provided by outside providers are held in trust for those providers and are not property of the estate)." | This case does not discuss funds held in trust or whether they are property of the estate. It discusses Medicare reimbursements in the context of whether the United States Department of Health and Human Services has a right to recoupment or set off to collect past Medicare overpayments. |
| *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1296 (11th Cir. 2003) | *See* Doc. 776, p. 2. | "Under Fed. R. Civ. P. 59(e), incorporated via Bankruptcy Rule 9023, reconsideration is warranted where the court has committed clear error of law, misapprehended facts, or to prevent manifest injustice. *See In re Worldwide Web Sys., Inc.,* 328 F.3d 1291, 1296 (11th Cir. 2003)…." | The only reference to reconsideration in this case is in Footnote 8. There is no reference to Federal Rule of Civil Procedure 59(e) or Bankruptcy Rule 9023. Rather, Footnote 8 cites Bankruptcy Rule 9024 and references Federal Rule of Civil Procedure 60. |
| *Matter of CoServ, L.L.C.*, 273 B.R. 487, 500 (Bankr. N.D. Tex. 2002) | *See* Doc. 776, p. 3. | "These reimbursements were earmarked, are undoubtedly traceable, and never meant to be retained by Jackson for its own use. Courts routinely exclude such funds from the | This case does not discuss property held in trust or whether it is part of the estate. This case deals with payment of |

| | | estate. *See Matter of CoServ, L.L.C.,* 273 B.R. 487, 500 (Bankr. N.D. Tex. 2002)…." | unsecured claims for critical vendors. |
|---|---|---|---|
| *Matter of CoServ, L.L.C.,* 273 B.R. 487, 500 (Bankr. N.D. Tex. 2002) | *See* Doc. 776, p. 8. | "Each of these confirms the principle that property held in constructive trust, or intended for another party, is not estate property — even if in debtor's possession. The holdings are clear in each and every case cited, as well as a myriad of other cases that were not cited simply to prevent duplication." | This case does not discuss property held in trust or whether it is part of the estate. This case deals with payment of unsecured claims for critical vendors. |
| *Matter of Nash Concrete Form Co.,* 159 B.R. 611 (Bankr. D. Mass. 1993). | *See* Doc. 776, p. 3. | "These reimbursements were earmarked, are undoubtedly traceable, and never meant to be retained by Jackson for its own use. Courts routinely exclude such funds from the estate…*Matter of Nash Concrete Form Co.,* 159 B.R. 611 (Bankr. D. Mass. 1993)." | This case does not deal with Medicare reimbursement funds. This case deals with whether income tax withholdings are held in trust in favor of Department of Revenue under a specific Massachusetts state statute and federal counterpart. |

**EXHIBIT B**

**Cases with Incorrect Citations or Misrepresented/Misconstrued Holdings**
**Cited in Supplemental Brief and/or Joint Response**

| Case Name Cited in Pleading | Record Cite to Pleading | Proposition/Quote in Pleading | Debtors' Notes |
|---|---|---|---|
| *Davies Cnty. Hosp. v. Bowen*, 811 F.2d 338, 346–47 (8th Cir. 1987) | *See* Doc. 859, p. 3. | "In other words, hospitals are reimbursed only for expenses ***they have paid or remain obligated to pay to those who furnished said direct patient care*** *[emphasis added]*. *Davies Cnty. Hosp. v. Bowen,* 811 F.2d 338, 346–47 (8th Cir. 1987)." | The citation is incorrect. The correct citation is:<br><br>*Daviess Cnty. Hosp. v. Bowen*, 811 F.2d 338, 343-344 (7th Cir. 1987). |
| *In re Visiting Nurse Ass'n of Tampa Bay, Inc.*, 121 B.R. 114, 118 (Bankr. M.D. Fla. 1990) | *See* Doc. 859, p. 12. | "*In re Visiting Nurse Ass'n of Tampa Bay, Inc.,* 121 B.R. 114, 118 (Bankr. M.D. Fla. 1990) (holding that Medicare or Medicaid funds clearly intended to reimburse a third-party provider give rise to a trust or equitable lien)." | This case was also cited in the Motion for Reconsideration. This case does not reach the holding that Respondents state it does. |
| *Barba v. Seung Heun Lee* (D. Ariz. 2010) | *See* Doc. 860, p. 2. | "In *Barba v. Seung Heun Lee* (D. Ariz. 2010), the court held that sanctions are improper absent a finding that the party acted deliberately to mislead the court." | Respondents do not include a reference to the volume and reporter of this decision. A diligent search by the Debtors revealed the following case: *Barba v. Seung Heun Lee*, No. CV 09-1115-PHX-SRB, 2010 WL 11515528 (D. Ariz. June 15, 2010). This case does not reach the holding that Respondents state it does. |

| | | | |
|---|---|---|---|
| *Metricolor, LLC v. L'Oreal S.A.* (C.D. Cal. 2018) | *See* Doc. 860, p. 2. | "In *Metricolor, LLC v. L'Oreal S.A.* (C.D. Cal. 2018), the court refused sanctions where no improper purpose was shown, even though counsel's work product contained citation errors." | Respondents do not include a reference to the volume and reporter of this decision. A diligent search by the Debtors revealed a case with the same name and year: *Metricolor LLC v. L'Oreal S.A.*, No. CV 18-364-R, 2018 WL 5099496 (C.D. Cal. Aug. 15, 2018), *aff'd in part, vacated in part, remanded*, 791 F. App'x 183 (Fed. Cir. 2019). This case does not reach the holding that Respondents state it does.<br><br>Debtors also found a case with the following citation: *Metricolor, LLC v. L'Oreal USA, Inc.*, No. 2:18-CV-00364-CAS-EX, 2024 WL 1376476 (C.D. Cal. Mar. 29, 2024). This case does not reach the holding that Respondents state it does. |
| *In re Bonilla*, 573 B.R. 368 (D.P.R. 2017) | *See* Doc. 860, p. 2-3. | "Similarly, *In re Bonilla,* 573 B.R. 368 (D.P.R. 2017), excused citation mistakes, allowing for their correction. Here, neither the DIP lender nor Jackson provide evidence that Progressive acted in bad faith. The speculation of "AI use" is unsupported. Citation errors do not justify punishment. | This case does not reach this holding. There are no references to citation mistakes in this decision. |

**EXHIBIT C**

62465325 v1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re: | Chapter 11<br>Case No. 25-30256 |
| JACKSON HOSPITAL & CLINIC, INC., *et al.*,[1] | JOINTLY ADMINISTERED |
| Debtors. | |

## DECLARATION OF DEREK F. MEEK IN SUPPORT OF THE DEBTORS' MOTION FOR SANCTIONS

I, Derek F. Meek, being duly sworn, state the following under penalty of perjury:

1.       I am over 18 years of age and competent to make this declaration. I am a partner of the law firm of Burr & Forman LLP ("Burr & Forman"). I am duly admitted to practice in the State of Alabama and before the U.S. Courts of Appeals for the Eleventh Circuit, the U.S. Court of Federal Claims and the U.S. District Courts for the Northern, Middle and Southern Districts of Alabama. I represent the Debtors, Jackson Hospital & Clinic, Inc. and JHC Pharmacy, LLC, in the above-referenced case. I submit this declaration in support of the *Debtors' Motion for Sanctions* filed contemporaneously by the Debtors.

2.       I have personal knowledge of the facts set forth herein, unless otherwise stated, and if called upon to testify as a witness, I could and would competently testify thereto under oath. The Debtors' legal fees related to the Motion for Reconsideration, Supplemental Brief, and Joint Response (the "Progressive Pleadings") are set forth below. I have reviewed time entries for each attorney and other professional who has worked on these matters to determine how much of the legal fees relate to the Progressive Pleadings. Based on my review, I have concluded that the Debtors have incurred at least $20,494.00 in legal fees related to the Progressive Pleadings.

3.       The fees are broken down by timekeeper as follows:

---

[1] The Debtors in these cases are Jackson Hospital & Clinic, Inc. and JHC Pharmacy, LLC.

| TIMEKEEPER | HOURS BILLED | BILLED AMOUNT |
|---|---|---|
| Derek F. Meek | 8.9 | $7,520.50 |
| Marc P. Solomon | 4.3 | $3,397.00 |
| Catherine T. Via | 23.9 | $9,201.50 |
| Meredith Gunnells | 1 | $375 |
| **TOTAL:** | **38.1** | **$20,494.00** |

4. The rates set forth above are consistent with the rates Burr & Forman charged the Debtors during this engagement. All fees and costs calculated herein have been reviewed and submitted in good faith to this Court for recovery from Progressive Perfusion, Cassie D. Preston, and/or Gordon Rees Scully Mansukhani, LLP. I have reviewed each timekeeper's time entries and believe the number of hours set forth herein related to the Progressive Pleadings are reasonable and nonduplicative.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

September 8, 2025

_Derek F. Meek_
Derek F. Meek