**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**

| | |
|---|---|
| In re: | Chapter 11 |
| JACKSON HOSPITAL & CLINIC, INC., *et al.*,[1] | Case No. 25-30256 |
| Debtors. | Jointly Administered |

## DEBTORS' MOTION FOR APPROVAL OF COMPROMISE AND SETTLEMENT PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019

**COME NOW** Jackson Hospital & Clinic, Inc. ("Jackson Hospital") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), by and through their undersigned counsel, and hereby file this motion (this "Motion") seeking entry of an order, pursuant Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving a compromise and settlement by and between the Debtors and Ann Robinson, as Personal Representative of the Estate of Willie Mae Douglas, deceased ("Plaintiff"). In support of this Motion, the Debtors respectfully represent as follows:

### JURISDICTION

1.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the U.S. District Court for the Middle District of Alabama's *Order of Reference* dated April 25, 1985. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### BACKGROUND, SUMMARY OF PROPOSED SETTLEMENT

2.      On February 3, 2025 (the "Petition Date"), each of the Debtors commenced a case under Chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and

---

[1]      The Debtors in these cases are: Jackson Hospital & Clinic, Inc. and JHC Pharmacy, LLC. *See* [Doc. No. 49].

63057344 v1

managing their assets and operations as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases. An Unsecured Creditors' Committee has been appointed. *See* [Doc. No. 126].

3.      A description of the Debtors' businesses, the reasons for commencing the Chapter 11 Cases, the overall relief sought from the Court, and certain supportive facts and circumstances supporting this Motion and other motions are set forth in the First Day Declaration. *See* [Doc. No. 9].

4.      Jackson Hospital is party to certain non-bankruptcy litigation (the "Litigation") in Montgomery, Alabama, in the Circuit Court of Montgomery County, Alabama. *See* Case No. CV-2023-901277. Jackson Hospital is a Defendant in the Litigation, which was also initiated against Capital Hill Healthcare Center, Inc. d/b/a Capitol Hill Health & Rehab First ("Capitol Hill"), and Turenne & Associates, LLC ("Turenne"). Jackson Hospital is represented by counsel in the Litigation – Bobby Poundstone at Bradley Arant.

5.      The Litigation concerns the death of Willie Mae Douglas after treatment at Jackson Hospital, among other allegations against Capital Hill and Turenne. *See generally* Litigation, [Doc. No. 2]. The allegations against Jackson Hospital include a failure to follow code and resuscitation protocols.

6.      As a result of good-faith, arms-length negotiations, and to avoid expense, inconvenience, and delay, and expedite the closure of the Litigation, Jackson Hospital and Plaintiff have reached an agreement (the "Settlement Agreement"). A copy of the Settlement Agreement, titled *Pro Tanto Release and Confidential Settlement Agreement*, is attached to this Motion as **Exhibit A**. The dollar amount being paid by Jackson Hospital, as funded by the Jackson Hospital's

2

63057344 v1
Case 25-30256   Doc 1019   Filed 10/07/25   Entered 10/07/25 10:11:42   Desc Main
Document    Page 2 of 22

insurance carrier, has been redacted as the settlement is being funded entirely by Jackson Hospital's insurance carrier and confidentiality of the amount is one of the terms of the settlement. Therein, the terms of the settlement are outlined in-full, and any party-in-interest should review the Settlement Agreement for a complete recitation of all of the terms of the Settlement Agreement. The specific, more relevant terms of the Settlement Agreement are: (i) the Plaintiffs will release "all claims" against Jackson Hospital "in full settlement, accord and satisfaction for any and all injuries, damages, costs, attorneys' fees, expenses and compensation of every kind . . .;" (ii) the Settlement Agreement is "not to be construed as an admission of liability" against Jackson Hospital; and (iii) Jackson Hospital will pay [REDACTED] to or for the benefit of the Douglas Estate. *See generally* Exhibit A. The Settlement Agreement also provides that it is subject to this Court's ruling and jurisdiction. *See id*., p. 6, ¶ 2; *see also id*., p. 9, ¶ 7. Given the history of the Debtors' affairs, both pre- and post-petition, and the claims made and asserted in the Litigation, the Settlement Agreement represents resolution of otherwise burdensome claims in the Litigation, and the Debtors submit that the settlement should be approved.

## BASIS FOR RELIEF REQUESTED

7. Pursuant to this Motion and in accordance with Bankruptcy Rule 9019(a), the Debtors respectfully request that the Court enter an Order: (i) approving the proposed compromise and settlement between the parties in the Litigation as-outlined in the Settlement Agreement; (ii) authorizing the Debtors to take any and all actions necessary to effectuate the Settlement Agreement; and (iii) to the extent applicable, waiving any stay imposed by Bankruptcy Rule 6004(h) or other applicable Local Rule.

8. This Court has the right and the power to approve such a compromise and the Settlement Agreement. *See* 11 U.S.C. § 105(a); Bankruptcy Rule 9019. Bankruptcy Rule 9019(a)

provides, in pertinent part, "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Section 105(a) of the Bankruptcy Code further provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

9.      The Debtors believe the Settlement Agreement is in the best interest of the Debtors' estates and their creditors, and therefore, should be approved. *See generally* Ex. A. Specifically, here, settlement of the Litigation is essential to resolve complex, expensive, and lengthy non-bankruptcy litigation in a fair and equitable manner and permit the Debtors, their estates, and their creditors to move forward with a sale or plan or reorganization – looking forward, not back.

10.      Settlements and compromises are a "normal part of the process of reorganization." *Case v. Los Angeles Lumber Prods. Co.,* 308 U.S. 106, 130 (1939). The Supreme Court of the United States has further said: "In administering [bankruptcy] proceedings in an economical and practical manner, it will often be wise to arrange the settlement of claims as to which there are substantially and reasonable doubts." *Protective Comm. Of Stockholders of TMT Trailer Ferry, Inc. v. Anderson (In re TMT Trailer Ferry, Inc.),* 390 U.S. 414, 424 (1968), *on remand*, *TME Trailer Ferry, Inc. v. Kirkland*, 471 F.2d 10 (5th Cir. 1972). Settlements are "desirable and wise methods of bringing to a close proceedings otherwise lengthy, complicated and costly." *See Matter of Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980).

11.      Federal Rule of Bankruptcy Procedure 9019(a) states, in part, that "the Court may approve a compromise or settlement." Such approval falls "within the sound discretion of the Court." *In re Arrow Air, Inc.*, 85 B.R. 886, 891 (Bankr. S.D. Fla. 1988).

63057344 v1

12.     And as previously-stated, compromises are generally favored in bankruptcy cases. *See In re Harbour Development, Ltd.*, Case No. 10-20733-BKC-AJC, 2012 WL 1851015, at *5 (Bankr. S.D. Fla. May 21, 2012) (*citing In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996)).  Approval of a settlement is appropriate so long as the settlement does not "fall below the lowest point in the range of reasonableness." *In re Martin*, 490 F.3d 1272, 1275 (11th Cir. 2007).

13.     In determining whether to approve such a settlement, the Court must consider the following factors: (i) the probability of success in the litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.  *See In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990).

14.     Under the Settlement Agreement, the four-part *Justice Oaks* test is satisfied.  The Settlement Agreement will resolve the claims between Jackson Hospital and the Plaintiff to the Litigation, and those claims will be resolved without the need for additional expense to be incurred by the Debtors and their estates.  Moreover, the settlement will free up additional revenues for the Debtors to utilize with regard to their remaining creditors, and permit the Debtors to continue with their reorganization efforts.  Foregoing the proposed settlement will unnecessarily delay the conclusion of the Litigation, and approval of the Settlement Agreement will not prejudice the interests of the Debtors' creditors.

15.     The Debtors request that any order approving this Motion be effective immediately, thereby waiving the 14-day stay period imposed by Bankruptcy Rule 6004(h). This waiver of the 14-day stay period is necessary for the Settlement Agreement to be implemented as expeditiously as possible and within the timeframes contemplated by the parties to the

63057344 v1

Litigation.  Accordingly, to the extent applicable, the Debtors hereby request that the Court waive the 14-day stay periods imposed by Bankruptcy Rule 6004(h).

## NOTICE

16.     Notice of the hearing on the relief requested herein will be provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as applicable local bankruptcy rules, and is sufficient under the circumstances.  The Debtors will provide notice of this Motion to those listed on the Master Service List.  The Debtors respectfully submit that no further notice of this Motion is required.

**WHEREFORE**, the Debtors respectfully request entry of an order, substantially in the form attached hereto as **Exhibit B**, granting the relief requested herein and such further relief as the Court may deem appropriate and proper.

Dated: October 7, 2025

**BURR & FORMAN LLP**

*/s/ Catherine T. Via*
Derek F. Meek
Marc P. Solomon
Catherine T. Via
Burr & Forman LLP
420 20th Street North, Suite 3400
Birmingham, Alabama 35203
Telephone:  (205) 251-3000
E-mail:         dmeek@burr.com
                    msolomon@burr.com
                    cvia@burr.com

*Counsel for Debtors and Debtors-in-Possession*

63057344 v1

## EXHIBIT A – the Settlement Agreement

*(See attached.)*

## PRO TANTO RELEASE AND
## CONFIDENTIAL SETTLEMENT AGREEMENT

This Pro Tanto Release and Confidential Settlement Agreement (hereinafter "Release") is made and entered by and between Plaintiff Ann Robinson as Personal Representative of the Estate of Willie Mae Douglas (hereinafter "Douglas Estate") and Defendant Jackson Hospital & Clinic, Inc. to finally resolve their disputes in the matter of *Ann Robinson, as Personal Representative of the Estate of Willie Mae Douglas, deceased v. Jackson Hospital & Clinic, Inc., et al.,* Montgomery County Circuit Court, Case Number CV-2023-901277 (hereinafter the "Douglas Lawsuit"). In this Release, the term "Releasees" shall include Jackson Hospital & Clinic, Inc., and each of its divisions, departments, affiliates, parents, subsidiaries, related entities, and all present and former trustees, directors, officers, employees, personnel, independent contractors providing medical or nursing care (including, but not limited to, all physicians or nurses providing medical care at Jackson Hospital & Clinic, Inc. and their employers, residents, fellows, interns, medical students, nurses, laboratory, therapists, dieticians, nutritionists and diagnostic personnel and other health care personnel of any nature), agents, representatives, insurers, guarantors, indemnitors, attorneys, and each of those parties respective predecessors, successors, representatives, administrators and assigns, and all persons acting by, through, under or in concert with any of them. It is expressly acknowledged and agreed that this release does not include a release of any claims the Douglas Estate has against Defendants Capitol Hill Healthcare Center, Inc. and Turenne & Associates, LLC, which will remain pending.

## I.     RECITALS

1.     The Douglas Estate desires to enter into this Release with the Releasees to provide for certain payments in full settlement and discharge of All Claims that arise out of any

1

facts or occurrences whatsoever, whether asserted in the Douglas Lawsuit or not, without limitation, and whether based in contract, statute, common law, equity, or any other legal claim or theory.

2.      "All Claims" means all existing, future, known and unknown claims, demands and causes of action for all existing, future, known and unknown damages and remedies that could arise from any facts and circumstances alleged or that could be alleged by the Douglas Estate against any of the Releasees.  Under this definition, "All Claims" includes, but is not limited to, all claims, demands and causes of action of any nature, whether in contract or in tort, arising under or by virtue of any law, statute or regulation, for past, present, future, known and unknown personal injuries of the Douglas Estate, for property damage and all other losses and damages of any kind whatsoever accruing to the Douglas Estate.  "All Claims" also includes, but is not limited to, all claims and demands for actual damages, exemplary and punitive damages, penalties of any kind, loss of consortium, damage to familial relations, death, loss of inheritance, loss of companionship, loss of society and affect, loss of enjoyment of life, attorneys' fees, and prejudgment and post judgment interest that could arise from any facts and circumstances alleged by or that could be alleged by the Douglas Estate against any of the Releasees.  This definition further includes, but is not limited to, all elements of damages, all remedies, all claims, demands, and causes of action that are now recognized by law or that may be created or recognized in the future in any manner, including, without limitation, by statute, regulation or judicial decision, that could arise from any facts and circumstances alleged by or that could be alleged by the Douglas Estate against any of the Releasees.  Moreover, this definition includes, but is not limited to, all claims, demands, and causes of action which the Douglas Estate may have now or in the future arising out of the manner in which the Releasees' insurers and

2

attorneys handled, settled or defended any claims, demands or causes of action asserted by the Douglas Estate. Without limitation of the above global and comprehensive definition, this term shall include any and all claims, demands, and causes of action that arise in any way out of medical care, diagnoses, treatment, and health care services rendered by Releasees at any time and shall expressly include any and all claims, of whatever nature, that were or could have been asserted against any of the Releasees in the Douglas Lawsuit.

3.    This is a **pro tanto** release and is intended to release claims against the Releasees only. All claims made against Capitol Hill Healthcare Center, Inc. and Turenne & Associates, LLC ("non-released parties") in the Douglas Lawsuit are specifically reserved and not released. The Douglas Estate may continue to pursue its claims against the non-released parties whether in arbitration or the Circuit Court of Montgomery County, Alabama.

## II.    AGREEMENT

The parties hereto agree as follows:

## 1.    Release, Discharge, Covenant Not to Sue and Indemnification

1.1.    The Douglas Estate, for and in consideration of the sums recited herein, the receipt and sufficiency of which is hereby expressly acknowledged, does hereby for itself and its heirs, assigns, executors, successors, representatives and administrators release, acquit and forever discharge the Releasees from All Claims that have accrued or may ever accrue to the Douglas Estate, pro tanto.

1.2.    Without limiting the generality of the foregoing, it is understood and agreed that the consideration paid hereunder and referred to herein is received in full settlement, accord and

3

satisfaction of any and all claims that could arise from the facts, occurrences and circumstances alleged by the Douglas Estate against the Releasees.

1.3. Without in any way limiting the generality of the foregoing, the consideration referred to herein and paid hereunder to the Douglas Estate is received in full settlement, accord and satisfaction for any and all injuries, damages, costs, attorneys' fees, expenses and compensation of every kind sustained or which may be hereafter accrued or sustained by the Douglas Estate, or its heirs, assigns, executors, successors, representatives and administrators, on account of, or growing out of, medical and health care and any other services rendered by Releasees prior to the signing of this Release by the Douglas Estate.

1.4. The Douglas Estate expressly waives and assumes the risk of any and all claims for damages against any of the Releasees that exist as of the date hereof, but which the Douglas Estate does not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, which, if known, would materially affect the Douglas Estate's decision to enter into this Release. The Douglas Estate further agrees that it is accepting the consideration specified in Section 2 hereof as a complete compromise of the matters involving disputed issues of law and fact. The Douglas Estate expressly assumes the risk that the facts or law may be other than it or its attorneys believe. The parties understand and agree that this settlement is a compromise of a disputed claim, and the payments are not to be construed as an admission of liability on the part of Jackson Hospital & Clinic, Inc., which has expressly denied liability. The Douglas Estate hereby acknowledges that in making this Release, the Douglas Estate is relying wholly upon its own judgment and belief as to the nature, extent, effect and duration of said damages and losses and liability therefor. This Release is made without reliance upon any statement or representation of any of the Releasees or their representatives.

4

1.5. This is a *pro tanto* release, and is intended to release claims against only the Releasees. The claims made against Capitol Hill Healthcare Center, Inc. and Turenne & Associates, LLC in the Douglas Lawsuit are expressly reserved and not released. It is the express intent of the Douglas Estate to release Jackson Hospital & Clinic, Inc. and the Releasees from any third party claim for contribution or indemnification related to the claims released herein and to release Jackson Hospital & Clinic, Inc. and the Releasees from all claims from any person whatsoever related to the death of Willie Mae Douglas, including without limitation, any claims for loss of services, claims that collaterally attack this Release and/or derivative claims of any type by any person or entity not a party to this Release. Ann Robinson, both individually and as the personal representative of the of the Estate of Willie Mae Douglas, expressly agrees to defend, indemnify and hold harmless Jackson Hospital & Clinic, Inc. and the Releasees and their counsel from all such claims, demands, obligations, actions, causes of action and damages.

1.6. The Douglas Estate agrees to dismiss with prejudice any and all actions, suits, causes of action, complaints, and claims that have been filed before any court, agency, board, or tribunal as a condition to and material term of this Release. The Douglas Estate covenants and agrees that it will neither file, cause to be filed, nor provide support to any further claims, complaints, or actions of any kind against any of the Releasees, in any place, that relates to any and All Claims released herein. It is expressly agreed that, upon receipt of the payments referenced in Section 2 herein, the Douglas Estate will dismiss any and all claims pending against Jackson Hospital & Clinic, Inc. in the Douglas Lawsuit, with prejudice.

1.7. The Douglas Estate acknowledges and agrees that it is solely responsible for satisfying, to the extent there are any, any and all liens, claims, expenses or subrogation claims which have arisen in the past, currently exist or may arise in the future in favor of any financial

institution, medical provider, doctors, hospitals, chiropractors, health insurers, HMO, Medicare, Medicaid, other insurer or any other third party, by operation of law or equity, for medical expenses, disability benefits or any other charge or expense, directly or indirectly related to the matters and occurrences made the subject of the Douglas Lawsuit. The Douglas Estate agrees to defend, indemnify and hold harmless Jackson Hospital & Clinic, Inc., the Releasees and their respective counsel from and against any and all such claims, demands, obligations, actions, causes of action, damages, costs and expenses. All parties hereto acknowledge that Alabama law does not allow the assertion or collection of subrogation, liens or other debts against a wrongful death lawsuit or proceeds of a wrongful death settlement. This Paragraph (Paragraph 1.7) is included out of an abundance of caution to clarify the Douglas Estate is obligated to respond to any such demands for payment if they are made.

2.    **Payments**

In consideration for this Release, Jackson Hospital & Clinic, Inc., for itself and all Releasees, agrees to pay or cause to be paid to or for the benefit of the Douglas Estate the total sum of ████████████████████████ (the "Settlement Amount"). Payment of the Settlement Amount shall be made payable to "Michael G. Strickland as attorney for the Estate of Willie Mae Douglas" and shall be made no later than thirty days following the last of the following to occur: this Release has been signed by all parties, Jackson Hospital & Clinic, Inc. has received a completed W-9 from the Douglas Estate and the settlement has been approved by the United States Bankruptcy Court for the Middle District of Alabama as provided in to Section 7 of this Agreement. The Douglas Estate accepts responsibility for resolution of, and to whatever extent required, agrees to pay from said sum (or otherwise) all of its attorneys' fees and all other costs and expenses resulting to them or incurred by or on behalf of them

(including any and all liens of any kind or nature) in connection with the Douglas Lawsuit, the settlement thereof, and/or any matters relating to or arising out of the occurrences at issue in the Douglas Lawsuit.

3.   <u>Warranty Of Capacity and Standing To Execute Agreement</u>

In return for the consideration provided hereunder, Ann Robinson, both individually and as personal representation of the estate of Willie Mae Douglas, represents the following to the Releasees: (a) at the time of filing the Douglas Lawsuit, and at all times thereafter, Ann Robinson has been the duly-appointed administrator of the Estate of Willie Mae Douglas with capacity and standing to assert, negotiate, compromise, and release the claims of the Estate; (b) before executing this Release, she became fully informed of the terms, contents, conditions and effect of this Release; (c) she is legally competent to execute this Release for the Douglas Estate; (d) no promise or representation of any kind has been made to her by any of the Releasees, or by anyone acting for any of the Releasees, except as is expressly stated in this Release; (e) all expenses incurred by the Douglas Estate as a result of the alleged facts and circumstances subject to this Release have been or will be paid in full by the Douglas Estate; (f) the Douglas Estate has not assigned, pledged, or in any other manner sold or transferred any right, title, interest, or claim that arises out of these alleged facts and circumstances except in a fee agreement with counsel for the Douglas Estate; (g) she has relied on her own judgment and the advice of counsel for the Douglas Estate in executing this Release; (h) **SHE UNDERSTANDS THAT THIS RELEASE IS A FULL, COMPLETE AND FINAL RELEASE as to RELEASEES, PRO TANTO;** and (i) she understands that the consideration set forth in Section 2 hereof is all the money that is to ever be paid by any of the Releasees to the Douglas Estate as a result of these alleged facts and circumstances.

7

4.     **Representation and Comprehension of Document**

Ann Robinson, both individually and as personal representation of the estate of Willie Mae Douglas, further declares and represents that no promises, inducements or agreements not herein expressed have been made to her; she is both authorized and competent to execute this Release for the Douglas Estate and has the full legal authority to do so; she has read this document, has had the opportunity to discuss it with counsel, understands its contents, and executes it voluntarily on behalf of the Douglas Estate; and that this Release contains the entire agreement of the parties hereto.

5.     **Attorneys' Fees, Costs, Expenses and Other Liabilities**

The Douglas Estate and Jackson Hospital & Clinic, Inc. shall all separately bear their own attorneys' fees arising from the actions and representation of their respective counsel. Each of the parties to this Release shall also be responsible for the payment of their own costs and expenses of litigation, including but not limited to expert fees, mediation fees, court reporter fees, video fees, fees associated with third party subpoenas for the production of documents and filing fees. It is expressly agreed by all parties hereto that Jackson Hospital & Clinic, Inc. and the Releasees shall have no further liability or obligation of payment to or on behalf of the Douglas Estate except for the payment of the Settlement Amount previously set forth and defined in this Release.

6.     **Governing Law**

8

It is further expressly stipulated and agreed that the terms of this Release shall be governed in all respects by the laws of the State of Alabama. If any clause or provision of this Release is illegal, invalid, or unenforceable under present and future laws, then the remainder of this Release shall not be affected thereby, and in lieu of such clause or provision of this Release which is deemed illegal, invalid, or unenforceable, there shall be added, as part of this Release, a clause or provision as similar in terms to such illegal, invalid, or unenforceable clause or provision as may be possible and as may be legal, valid, and enforceable.

7. **Bankruptcy Court Approval**

Jackson Hospital & Clinic, Inc. and the Douglas Estate acknowledge and agree that Jackson Hospital & Clinic, Inc. is a debtor in possession pursuant to a bankruptcy proceeding under Chapter 11 of the United States Bankruptcy Code, case number 25-30256, currently pending before the United States Bankruptcy Court for the Middle District of Alabama (the "Bankruptcy Court"), and that this Agreement is in all respects subject to approval of the Bankruptcy Court. Jackson Hospital & Clinic, Inc. and the Douglas Estate acknowledge that Bankruptcy Court approval of this Agreement is a material condition and, accordingly, should the Bankruptcy Court decline to approve this Agreement, it shall be void in its entirety.

8. **Entire Agreement and Successors In Interest**

This Release contains the entire agreement between the parties regarding the matters addressed in it, and it shall be binding on and inure to the benefit of all agents, officers, servants, employees, heirs, representatives, administrators, successors, assigns and all of the Releasees.

[SIGNATURES ON FOLLOWING PAGES]

Executed this the _3rd_ day of _October_, 2025.

_____
Ann Robinson, as Personal Representative of
the Willie Mae Douglas

STATE OF ALABAMA        )
                        :
MONTGOMERY COUNTY       )

     I, the undersigned, a notary public in and for said county in said state, hereby certify that Ann Robinson, whose name is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, and acting with the advice of counsel of his choosing, she executed the same voluntarily on the day the same bears date.

     Given under my hand and official seal this _3_ day of _October 2025_,
2025.

_____
Notary Public

[NOTARIAL SEAL]

My commission expires: _03/14/28_

Executed this the 2 day of October, 2025

Patic M Mtl

*, Jackson Hospital & Clinic, Inc.

STATE OF ALABAMA )
                  :
MONTGOMERY COUNTY )

     I, the undersigned, a notary public in and for said county in said state, hereby certify that *, whose name is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, and acting with the advice of counsel of his choosing, he executed the same voluntarily on the day the same bears date.

     Given under my hand and official seal this 2 day of October, 2025.

SUSAN R. BAXTER
My Commission Expires
September 16, 2028

Susan RBaxter
Notary Public

[NOTARIAL SEAL]

My commission expires: 9/16/2028

**EXHIBIT B – the Proposed Order**

*(See attached.)*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re: | Chapter 11 |
| JACKSON HOSPITAL & CLINIC, INC., *et al.*,[1] | Case No. 25-30256 |
| Debtors. | Jointly Administered |

## ORDER GRANTING
## DEBTORS' MOTION FOR APPROVAL OF COMPROMISE AND SETTLEMENT PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019

**THIS MATTER** came before the Court on the *Debtors' Motion for Approval of Compromise and Settlement Pursuant to Federal Rule of Bankruptcy Procedure 9019* (the "Motion") [Doc. No. ____]. Upon consideration of the Motion, including the Settlement Agreement (as-defined in the Motion) attached thereto, and pursuant to 11 U.S.C. § 105(a) of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*, (the "Bankruptcy Code"), and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Court hereby finds and holds as-follows:

---

[1]     The Debtors in these cases are: Jackson Hospital & Clinic, Inc. and JHC Pharmacy, LLC. *See* [Doc. No. 49].

1.     Upon review and consideration of the Settlement Agreement, the Court finds that the terms included therein are fair, reasonable, and in the best interests of the Debtors and their estates; and

2.     The Settlement Agreement was negotiated at arms-length, in good faith, and without any appearance of collusion; and

3.     Entry in, and consummation of, the Settlement Agreement constitutes a sound exercise of the Debtors' business judgment and is reasonable under the circumstances. Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED THAT** the Motion is **GRANTED**.  The terms and conditions of the Settlement Agreement are incorporated into this Order as if fully set forth herein.

The Debtors are hereby **AUTHORIZED**, but not directed to, execute, deliver, and fully perform any and all obligations, agreements, documents, or instruments, and take any other actions as are necessary and appropriate to implement and effectuate the Settlement Agreement, and to perform any and all obligations contemplated thereby.  Any authorization given in this Order should not be construed as an admission to the validity or truthfulness of any of the allegations in the Litigation, except as otherwise admitted or denied in the Settlement Agreement.

**IT IS FURTHER ORDERED** that the Settlement Agreement and this Order shall be binding upon and shall inure to the benefit of the parties to the Settlement Agreement and their respective successors, assigns, heirs, executors, legal representatives, administrators, and any trustee appointed or elected in these Chapter 11 Cases, including upon conversion of any of the Chapter 11 Cases to a case under any other Chapter of the Bankruptcy Code.

**IT IS FURTHER ORDERED** that the Debtors shall serve a copy of this Order upon all parties who were served with the Motion. Notwithstanding any applicability of Bankruptcy Rules 6004(h), 7062, or 9014, the terms and conditions of this Order are immediately effective and enforceable upon its entry. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## ## END OF ORDER ##

Prepared By:

Burr & Forman LLP
Marc P. Solomon
420 20th Street North, Suite 3400
Birmingham, Alabama 35203
Telephone: (205) 251-3000
E-mail: msolomon@burr.com