# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

In re:

JACKSON HOSPITAL & CLINIC, INC., *et al.*,[1]

Debtors.

Chapter 11
Case No. 25-30256

JOINTLY ADMINISTERED

## DEBTORS' MOTION FOR SUBSTANTIVE CONSOLIDATION

Jackson Hospital & Clinic, Inc. ("Jackson Hospital") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), by and through undersigned counsel, hereby file this *Motion for Substantive Consolidation* (the "Motion"), pursuant to section 105(a) of Title 11 of the United States Code (the "Bankruptcy Code") and the equitable powers of this Court, for the entry of an order: (i) substantively consolidating the Medical Clinic Board of the City of Montgomery, Alabama (the "Medical Board") with the Debtors' estates; and (ii) granting any additional and further relief as this Court deems just and equitable. In support of this Motion, the Debtors rely on the Declaration of Allen Wilen in Support of the Motion for Substantive Consolidation attached hereto as **Exhibit A**. In further support of the Motion, the Debtors respectfully states as follows:

## JURISDICTION

1.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the U.S. District Court for the Middle District of Alabama's *Order of Reference* dated April 25, 1985. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1]      The Debtors in these cases are Jackson Hospital & Clinic, Inc. and JHC Pharmacy, LLC.

## BACKGROUND

2.      On February 3, 2025 (the "Petition Date"), each of the Debtors commenced a case under Chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their assets and operations as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases.  An Unsecured Creditors' Committee has been appointed. *See* [Docket No. 126].

3.      The Medical Board was formed on July 29, 1965, pursuant to section 11-58-2(a) of the Alabama Code, which provides for the:

> incorporation of medical clinic boards as public agencies and instrumentalities of the State of Alabama to promote the acquisition of health facilities in order to promote the public health of the people of Alabama and also to promote the acquisition of certain other facilities for the housing and care of elderly persons.

Ala. Code § 11-58-2(a).

4.      The Medical Board's *Certificate of Incorporation* (the "Certificate of Incorporation") states that its purpose is to "finance, acquire, construct, own, lease, equip, furnish, maintain, operate, enlarge, improve or dispose of one or more medical clinics and clinical facilities in the City of Montgomery, Alabama."  [Docket No. 485, p. 26].

5.      An amendment to the Certificate of Incorporation states, among other things, that the Medical Board may engage with any medical clinics and clinical facilities within the corporate limits of Montgomery or within 15 miles of the City of Montgomery, provided  that the medical clinics or clinical facilities are not within another municipality. *Id.* at p. 21.

6.      Although the Certificate of Incorporation provides that the Medical Board is free to acquire, finance, lease or otherwise provide property to any medical clinic or clinical facility

2

within the city limits of Montgomery or in unincorporated areas within 15 miles of Montgomery, upon information and belief, the Medical Board has only acquired, financed, leased or otherwise provided property to the Debtors.

## DISCUSSION

7.      Substantive consolidation "involves the pooling of the assets and liabilities of two or more related entities; the liabilities of the entities involved are then satisfied from the common pool of assets created by consolidation." *See Eastgroup Props. v. S. Motel Ass'n, Ltd.*, 935 F.2d 245, 248 (11th Cir. 1991).

8.      "While not specifically authorized by the bankruptcy code, bankruptcy courts have the power to order substantive consolidation by virtue of their general equitable powers." *Id.*; *see also Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 61 S. Ct. 904, 85 L. Ed. 1293 (1941) (implicitly recognizing substantive consolidation); *In re Reider*, 31 F.3d 1102, 1105 (11th Cir. 1994) ("In [*Sampsell*], the Supreme Court gave its tacit approval to this equitable power to substantively consolidate two estates.").

9.      This judicially crafted remedy does not result in a merger or dissolution of the consolidated entities themselves, and the consolidated entities continue to exist until their existence is terminated under applicable state law. *In re Petters Co., Inc.*, 550 B.R. 438, 455 (Bankr. D. Minn. 2016); *see also Melrose Distillers, Inc. v. United States*, 359 U.S. 271, 272, 79 S. Ct. 763, 765, 3 L. Ed. 2d 800 (1959) ("The question whether a corporation 'exists' for any purpose is thus determined by reference to state law.").

10.     The test governing substantive consolidation is whether "'the economic prejudice of continued debtor separateness' outweighs 'the economic prejudice of consolidation.'" *Eastgroup*, 935 F.2d at 249 (quoting *In re Snider Bros., Inc.*, 18 B.R. 230, 234 (Bankr. D. Mass.

3

1982)).  Stated differently, the court must "conduct a searching inquiry to ensure that consolidation yields benefits offsetting the harm it inflicts on objecting parties."  *Id.* (quoting *In re Auto-Train Corp., Inc.*, 810 F.2d 270, 276 (D.C. Cir. 1987)).

11.     To evaluate the comparative benefits and harms of substantive consolidation, the Eleventh Circuit has adopted a two-part standard to determine whether to grant substantive consolidation, which provides that:

> [T]he proponent of substantive consolidation must show that (1) there is substantial identity between the entities to be consolidated; and (2) consolidation is necessary to avoid some harm or to realize some benefit. When this showing is made, a presumption arises that creditors have not relied solely on the credit of one of the entities involved. Once the proponent has made this prima facie case for consolidation, the burden shifts to an objecting creditor to show that (1) it has relied on the separate credit of one of the entities to be consolidated; and (2) it will be prejudiced by substantive consolidation. Finally, if an objecting creditor has made this showing, the court may order consolidation only if it determines that the demonstrated benefits of consolidation heavily outweigh the harm.

*Id.* (internal citations and quotations omitted).

### A.     There is Substantial Identity Between the Debtors and the Medical Board

12.     In *Eastgroup*, the Eleventh Circuit identified certain factors which may aid a court in its determination as to whether there is substantial identity between the entities to be consolidated.  These factors are:

> (1) The presence or absence of consolidated financial statements.
> (2) The unity of interests and ownership between various corporate entities.
> (3) The existence of parent and intercorporate guarantees on loans.
> (4) The degree of difficulty in segregating and ascertaining individual assets and liabilities.
> (5) The existence of transfers of assets without formal observance of corporate formalities.
> (6) The commingling of assets and business functions.
> (7) The profitability of consolidation at a single physical location.

4

*Id.*

13.     These factors are non-exclusive, and no single factor is likely to be determinative. *Id.* at 251 ("We stress, however, that we mention the specific factors set out … only as examples of information that may be useful").

14.     Here, it is clear that there is substantial identity among the Debtors and the Medical Board, and that all of the seven factors identified by the Eleventh Circuit are present and weigh in favor of substantive consolidation.

15.     First, the Debtors and the Medical Board have consolidated financial statements. Additionally, the Debtors keep the books and records for the Medical Board. *See* Exhibit A, ¶ 10.

16.     Second, the Debtors and Medical Board have a unity of interests as well as similarities in their respective "ownership." The Medical Board and the Debtors share a common mission. The Medical Board is a public agency and instrumentality of the State of Alabama organized under Chapter 58 of Title 11 of the Code of Alabama of 1975 (the "<u>Enabling Law</u>"). Pursuant to the Enabling Law, the purpose of the Medical Board is "to promote the public health of the people of Alabama". Ala. Code. § 11-58-2; *Id.*, ¶ 11. Jackson Hospital is an Alabama non-membership non-profit corporation that is the direct or indirect parent company of JHC Pharmacy LLC ("<u>JHP</u>"). The non-profit mission of Jackson Hospital is to operate the hospital "not for pecuniary profit, but exclusively for charitable purposes and for the benefit of the general public" and "to operate the hospital for the general welfare of the public…" *Id.*, ¶ 12.

17.     The Medical Board and the Debtors also share common fiduciary duties and creditors. There is no daylight between the Medical Board and the Debtors in their efforts to fulfill the obligations of their mission and fiduciary duties. Furthermore, this Court noted that it "has no reason to doubt the Debtors' representations that the Medical Board and the Debtors share a

common mission and common goals, and that their current business arrangements are mutually beneficial." [Docket No. 491, p. 7.]

18.     Third, the Debtors and Medical Board are co-obligors on various debts. The Medical Board exists solely for the purpose of serving as a conduit financing vehicle for the assets of the Debtors in order to bestow favorable tax attributes on the Debtors. *Id.*, ¶ 13. Pursuant to these leases and operating agreements, the Medical Board, as lessor, leases all of the hospital's material assets to the Debtors, as lessee.  The lease agreements are a dollar-for-dollar pass-through arrangement, meaning that the lease payments are actually made, dollar-for-dollar, by the Debtors directly to the Medical Board's creditors that are selling or financing the assets (and are also the Debtors' creditors). *Id.*, ¶ 14. Accordingly, the Debtors and the Medical Board are effectively co-obligors on the indebtedness owed to the holders of the obligations issued under the Series 2015 Bond Trust Indenture.[2] *Id.*, ¶ 15. The interests and obligations of the Debtors and the Medical Board are fully aligned with one another as joint obligors.

19.     Fourth, it would be extremely difficult to segregate and ascertain individual assets and liabilities. The Medical Board does not generate any income net of its debt obligations (which are also obligations of the Debtors), and engages in no business other than its support of the Debtors' operations.  The Medical Board did not have a bank account until late July of this year. The Debtors keep the books and records for the Medical Board.  The address of the Medical Board is the same as that of the Debtors.  The Medical Board has historically purchased assets for the Debtors in the Medical Board's name, leased these assets to the Debtors, and the Debtors have

---

[2] The liens on the hospital real estate (and on Debtor assets, as applicable) securing the Series 2015 Bond Trust Indenture will ride through the substantive consolidation of the bankruptcy estate of Jackson Hospital and the Medical Board.

remitted payment directly to the entity selling these assets to the Medical Board for the Debtors' benefit. *Id.*, ¶ 16.

20. The Medical Board is named on the following insurance policies with Jackson Hospital: property, crime/fiduciary, hospital excess general/professional liability, directors and officers/employment practices liability. *Id.*, ¶ 19.

21. This Court has noted that the "Debtors' operations are inextricably intertwined with assets owned by the Medical Board. The Debtors' value as a going concern depends on access to those assets." [Docket No. 491, p. 3]

22. Fifth, the Medical Board purchases assets in the name of the Medical Board using the Debtors' funds, for use by the Debtors. *Id.*, ¶ 18. The Medical Board exists, in part, to pass along favorable tax attributes to the Debtors since the Medical Board does not pay property or sales taxes. *Id.*, ¶ 8. Substantially all property of the Medical Board is under the exclusive possession, control, and operation by the Debtors pursuant to the terms of one or more leases or other operating agreements. *Id.*, ¶ 9. Pursuant to these leases and operating agreements, the Medical Board, as lessor, leases all of the hospital's material assets to the Debtors, as lessee. *Id.*, ¶ 14.

23. Sixth, the Debtors and Medical Board have commingled assets and business functions. The assets purchased by the Medical Board are purchased with the Debtors' funds and used exclusively by the Debtors but owned by the Medical Board. The Debtors pay all related expenses, provide all necessary maintenance and repairs, provide all accounting functions, and treats the assets as their own. *Id.*, ¶ 18. The Medical Board does not generate any income net of its debt obligations (which, again, are also obligations of the Debtors), does not have any employees, and engages in no business other than its support of the Debtors' operations. *Id.*, ¶ 16. As of

7

October 31, 2025, the Medical Board has an intercompany payable to the hospital of approximately $36,600,000. *Id.*, ¶ 18.

24.     Seventh, it would be profitable to consolidate the Debtors and Medical Board at a single physical location. The Medical Board owns the majority of the real property comprising the hospital, together with the accounting system, medical records system, and the intellectual property used by the Debtors. *Id.*, ¶ 17.

25.     In addition to the seven factors listed above, the Eleventh Circuit further advised that additional factors that could be presented in some cases. *See Eastgroup*, 935 F.2d at 250 ("Additional factors that could be presented in some cases include (1) the parent owning the majority of the subsidiary's stock; (2) the entities having common officers or directors; (3) the subsidiary being grossly undercapitalized; (4) the subsidiary transacting business solely with the parent; and (5) both entities disregarding the legal requirements of the subsidiary as a separate organization."). Here, the Medical Board is completely un-capitalized and any expenses of the Medical Board are paid for by the Debtors. *Id.*, ¶ 19. The Medical Board has no independent interest, financial or otherwise, in the Debtors' assets or operations. *Id.*, ¶ 20.

26.     Accordingly, there can be no dispute that there is substantial identity between the Debtors and the Medical Board. Thus, the first part of the two-part *prima facie* showing is satisfied.

**B.     Substantive Consolidation is Necessary to Avoid Harm to, or Realize a Benefit for, Debtors' Unsecured Creditors**

27.     In addition, substantive consolidation of the Medical Board with the Debtors' estates is necessary in these Chapter 11 Cases to realize a benefit for the Debtors' creditors because a larger portion of each of the creditors' claims will be paid than if consolidation did not occur – both because their claims would be paid from the larger pool of assets resulting from consolidation and because substantive consolidation eliminates claims that either debtor has against the other.

8

28.     As this Court has noted, substantive consolidation will also provide a tangible benefit to the unsecured creditors in that consolidation will maximize the value of the Debtors' assets.  *See* [Docket No. 491, p. 7] ("the Debtors' operations are, as a practical matter, intertwined with the use of the Medical Board's assets and that a sale of the combined operations and assets will maximize the value of the Debtors' estates.").

29.     Therefore, as the Debtors have made a *prima facie* showing that substantive consolidation is necessary and appropriate, a presumption arises "that creditors have not relied solely on the credit of one of the entities involved."  *Eastgroup*, 935 F.2d at 249 (quoting *Matter of Lewellyn*, 26 B.R. 246, 251 (Bankr. S.D. Iowa 1982)).

30.     Accordingly, any creditors that oppose substantive consolidation bear the burden to rebut the presumption by showing "that (1) it has relied on the separate credit of one of the entities to be consolidated; and (2) it will be prejudiced by substantive consolidation."  *Id.* at 249.

## C.     Creditors Are Unable to Rebut the Presumption of Non-Reliance on the Separate Credit of Any Particular Debtor

### i.     Creditors Have Not Relied on the Separate Credit of the Medical Board

31.     Objectors do not overcome the presumption of non-reliance simply by showing that they relied in fact on the separate credit of one entity.  As explained by the Eleventh Circuit:

> Even if an objecting creditor establishes reliance in fact, it may be estopped from asserting this defense to consolidation where a reasonable creditor in a similar situation would not have relied on the separate credit of one of the entities to be consolidated—that is, "where such a claim would be unreasonable in light of all the facts." *See In re Snider Bros.*, 18 B.R. at 237, 235, 238 (estoppel applies where creditors "knew or should have known of the close association between affiliate and bankrupt," or where creditors "could be deemed to have dealt with the debtors with full knowledge of their 'consolidated operation'").

*Id.* at n.11.

9

32.     Under this objective analysis of whether creditors dealt with the entities as a "single economic unit," *see In re Augie/Restivo Baking Co., Ltd.*, 860 F.2d 515, 518 (2d Cir. 1988), it is undisputable that all creditors knew or should have known of the consolidated operations of the Debtors and the Medical Board.

33.     As aforementioned, the Medical Board exists solely as a pass-through entity to provide favorable tax benefits to the Debtors. The Debtors possess, control, and operate substantially all property of the Medical Board under lease and operating agreements, and the Debtors make payment on the lease agreements directly to the Medical Board's creditors. The Medical Board generates no net income, and the Debtors keep the books and records for the Medical Board. Assets are purchased and maintained with the Debtors' funds, while the Medical Board holds title.

34.     In fact, creditors of the Medical Board were indeed aware of the consolidated operations of the Medical Board and the Debtors and specifically acted in reliance of the entities' joint venture. For example, the noteholders' claims are secured by assets of the Medical Board (including liens on the hospital real estate) as well as assets belonging to the Debtors (among other things, "a pledge of the Hospital's revenues, and liens on the hospital's real estate assets, including its leasehold interest in the main hospital building"). *See* [Docket No. 264, ¶ 9]. These liens on the hospital real estate will ride through any substantive consolidation of the bankruptcy estate of Jackson Hospital and the Medical Board. In cases where creditors obtain liens on assets of multiple entities for a loan to one entity, courts have held that such creditors have dealt with the entities as a single economic unit. *E.g. In re Gyro-Trac (USA), Inc.*, 441 B.R. 470, 487 (Bankr. D.S.C. 2010) (in making a loan to one debtor-entity, bank dealt with all the debtor-entities as a single economic

unit where it obtained personal guaranties from other debtor-entities and liens on the assets of all debtor-entities).

35.    As such, these facts weigh in favor of an objective finding that creditors have not relied on the separate credit of one entity here. *Cf. In re Republic Airways Holdings Inc.*, 582 B.R. 278, 285 (S.D.N.Y. 2018) (affirming bankruptcy court's finding that substantive consolidation was appropriate for the two debtor-entities that operated as a single economic unit under a single business plan where only one entity had any business operations and where they shared overhead, accounting, and back-office functions).

    ii.   <u>Creditors Will Not Be Prejudiced by Substantive Consolidation</u>

36.    No creditors will be prejudiced by substantive consolidation of the Medical Board with the Debtors' estates.  The secured creditors of Medical Board, including UMB Bank, N.A. and ServisFirst Bank, are retaining their liens on the hospital real estate (and on Debtor assets, as applicable).  Furthermore, combining the hospital real estate with the Debtors' assets will result in a greater likelihood for a successful reorganization and avoid the need for further reorganization down the road.  Due to this result, substantive consolidation will preserve the value of creditors' collateral.

**D.    Even if Creditors Can Rebut the Presumption, the Benefits Outweighs the Harms**

37.    Even if an objecting creditor makes this showing that it has relied on the separate credit of one of the entities to be consolidated and that it will be prejudiced by substantive consolidation, the court may still order substantive consolidation if the benefits heavily outweigh the harm. *Eastgroup*, 935 F.2d at 249.

38.    Here, the benefits of substantive consolidation heavily outweighs the harm for two reasons.  First, if the Medical Board is substantively consolidated with the Debtors' estates, the

pooling of the entities' assets and liabilities would result in a greater recovery for all creditors. Second, without substantive consolidation, there is the possibility that the Debtors' restructuring efforts will be unsuccessful. If so, the Debtors may become administratively insolvent, and unsecured creditors will get nothing.

39.     Any shutdown of the Debtors' operations will be catastrophic to the individuals of Montgomery and the Alabama River Region who depend on Jackson Hospital for healthcare. This result would be to the detriment of the Medical Board as well, which exists to promote the public health of the people of Alabama. Furthermore, the hospital real estate itself will decline in value, given that the value is intrinsically tied to the continued operations of Jackson Healthcare.

40.     With substantive consolidation, it is more likely that the Debtors will continue to operate, providing for a confirmed plan and a distribution to unsecured creditors. Accordingly, the benefits of substantive consolidation heavily outweigh the harm (if any).

41.     Moreover, substantive consolidation will avoid the need for the Medical Board to seek relief under Chapter 9 of the bankruptcy code. Even though the Alabama legislature provided authority for the Medical Board to seek relief under Chapter 9 [Ala. Code 1975 § 11-58-5.2], substantive consolidation will provide a vehicle to more efficiently and economically administer the assets and liabilities of the Medical Board under the protections of the Bankruptcy Code.

**E.     Applicable Law Permits the Substantive Consolidation of Debtors and Non-Debtors with Different Corporate Forms**

42.     Courts in the Eleventh Circuit have held that a non-debtor can be substantively consolidated with a debtor. *See In re S & G Fin. Servs. of S. Fla., Inc.*, 451 B.R. 573, 581 (Bankr. S.D. Fla. 2011) (collecting cases); *In re No Rust Rebar, Inc.*, No. 21-12188-PDR, 2023 WL 4497328, at *5 (Bankr. S.D. Fla. July 12, 2023), *aff'd sub nom. Smith v. Slott*, 754 F. Supp. 3d 1271 (S.D. Fla. 2024); *In re Alico Mining, Inc.*, 278 B.R. 586, 589 (Bankr. M.D. Fla. 2002); *Matter*

*of Munford, Inc.*, 115 B.R. 390, 398 (Bankr. N.D. Ga. 1990); *accord Sampsell*, 313 U.S. 215 (affirming bankruptcy referee's decision to substantively consolidate a non-debtor with the bankruptcy estate).

43.     Moreover, a court may order substantive consolidation of non-debtors and debtors with different corporate forms.   *See Slott*, 754 F. Supp. 3d at 1311 (affirming substantive consolidation of corporate debtor with non-debtor corporations and limited liability companies); *In re Cameron Constr. & Roofing Co., Inc.*, 565 B.R. 1, 11 (Bankr. D. Mass. 2016) (consolidating corporate debtor with non-debtor limited liability company); *In re Bonham*, 229 F.3d 750, 758 (9th Cir. 2000) (consolidating personal debtor's estate with non-debtor corporations); *In re Clark*, 525 B.R. 107 (Bankr. D. Idaho 2014), *aff'd*, 548 B.R. 246 (B.A.P. 9th Cir. 2016), *aff'd*, 692 F. App'x 946 (9th Cir. 2017) (consolidating personal debtor's estate with non-debtor limited liability company and trust); *In re Owner Mgmt. Serv., LLC Tr. Corps*, 530 B.R. 711, 742 (Bankr. C.D. Cal. 2015), *aff'd sub nom. OMS, LLC v. Bank of Am., N.A.*, No. CV 15-3876-R, 2015 WL 12712307 (C.D. Cal. Nov. 6, 2015) (consolidating limited liability company debtor with various non-debtor limited liability companies, corporations, and individuals).

44.     Accordingly, given the fully aligned interests and obligations of the Debtors and the Medical Board, as well as the resulting benefit to the Debtors' unsecured creditors if granted, substantive consolidation of the Medical Board with the Debtors is appropriate in this case.

### F.     Substantive Consolidation Can Be Accomplished by Motion

45.     An adversary proceeding is not required to grant the relief of substantive consolidation.   Courts in the Eleventh Circuit "routinely" order substantive consolidation by motion.  *Slott*, 754 F. Supp. 3d at 1287 (collecting cases); *No Rust Rebar*, No. 21-12188-PDR, 2023 WL 4497328, at *11 ("the Court finds it may substantively consolidate a non-debtor with a bankruptcy debtor by motion"); *see also Eastgroup*, 935 F.2d at 249 ("The D.C. Circuit has

13

elaborated a standard, which we adopt today, by which to determine whether to grant a *motion* for substantive consolidation.") (emphasis added); *Reider*, 31 F.3d at 1108 (11th Cir. 1994) ("the proponent of a *motion* for substantive consolidation must demonstrate") (emphasis added).

46.    Accordingly, substantive consolidation of the Medical Board with the Debtors' estates may be approved pursuant to this Motion.

## NOTICE

47.    Notice of the hearing on the relief requested herein will be provided by the Debtors in accordance with and in compliance with Bankruptcy Rules 4001 and 9014, as well as applicable local bankruptcy rules, and is sufficient under the circumstances. The Debtors will provide notice of this Motion to those listed on the creditor matrix and all known creditors of the Medical Board. The Debtors respectfully submit that no further notice of this Motion is required.

**WHEREFORE**, the Debtors respectfully request entry of an order, substantially in the form attached hereto as **Exhibit B**, granting the relief requested herein and such further relief as the Court may deem appropriate and proper.

Dated: November 10, 2025

                                        **BURR & FORMAN LLP**

                                        */s/ Marc P. Solomon*
                                        Derek F. Meek
                                        Marc P. Solomon
                                        Catherine T. Via
                                        Burr & Forman LLP
                                        420 20th Street North, Suite 3400
                                        Birmingham, Alabama 35203
                                        Telephone:  (205) 251-3000
                                        E-mail:      dmeek@burr.com
                                                     msolomon@burr.com
                                                     cvia@burr.com

                                        *Counsel for Debtors and Debtors-in-Possession*

14

## **EXHIBIT A**

*Declaration of A. Wilen*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

| | |
|---|---|
| In re: | Chapter 11<br>Case No. 25-30256 |
| JACKSON HOSPITAL & CLINIC, INC., *et al.*,[1] | |
| Debtors. | JOINTLY ADMINISTERED |

**DECLARATION OF ALLEN WILEN IN SUPPORT OF DEBTORS' MOTION FOR
SUBSTANTIVE CONSOLIDATION**

I, Allen Wilen, hereby declare under penalty of perjury:

1.     I am the Chief Restructuring Officer ("CRO") of Jackson Hospital & Clinic, Inc. ("JHC") and JHC Pharmacy LLC ("JHP"), each a debtor and debtor-in-possession (each, individually, a "Debtor" and, collectively, the "Debtors") in the above-captioned chapter 11 cases.

2.     I have served as CRO for the Debtors since September 4, 2025. In such capacity, I am generally familiar with the Debtors' day-to-day operations, business and financial affairs, and books and records.

3.     I am above 18 years of age, and I am competent to testify.

4.     I am a Partner at Eisner Advisory Group LLC ("Eisner") and serve as the National Director of Eisner's financial advisory services group. I have more than thirty years of financial and accounting experience, as well as extensive experience advising insolvent and troubled companies, including several companies in the healthcare industry, in turnaround and crisis situations and navigating such companies through turnaround, sale and liquidation processes. I have frequently been involved in complex matters requiring expertise in forensic accounting and operational analysis and have been qualified as an expert in numerous state and federal courts throughout the United States.

---

[1]     The Debtors in these cases are Jackson Hospital & Clinic, Inc. and JHC Pharmacy, LLC.

1

5.      I submit this declaration in support of *Debtors' Motion for Substantive Consolidation*.

6.      Except as otherwise indicated herein, all facts set forth in this declaration are based on my personal knowledge, my discussions with other members of the Debtors' management team and the Debtors' advisors, and my review of the relevant documents and information concerning the Debtors' operations, financial affairs, and refinancing and restructuring initiatives.  If called upon to testify, I could and would testify competently to the facts set forth herein.

7.      The Medical Board is a separate legal entity from the Debtors, but acts as a conduit and pass-through entity for providing tax benefits to the Debtors.

8.      The Medical Board exists, in part, to pass along favorable tax attributes to the Debtors since the Medical Board does not pay property or sales taxes.

9.      Substantially all property of the Medical Board is under exclusive possession, control, and operation by the Debtors pursuant to the terms of one or more leases or other operating agreements.

10.     The financial statements of the Medical Board and the Debtors are made on a consolidated basis.

11.     There is a unity of interest between the Medical Board and the Debtors as well as similarities in their respective "ownership". The Medical Board is a public agency and instrumentality of the State of Alabama organized under Chapter 58 of Title 11 of the Code of Alabama of 1975 (the "Enabling Law").  Pursuant to the Enabling Law, the purpose of the Medical Board is "to promote the public health of the people of Alabama". Ala. Code. § 11-58-2.

12.     JHC is an Alabama non-membership non-profit corporation that is the direct or indirect parent company of JHP.  The non-profit mission of JHC is includes to operate the hospital

2

"not for pecuniary profit, but exclusively for charitable purposes and for the benefit of the general public" and "to operate the hospital for the general welfare of the public…" *See* Exhibit A, Third Amended And Restated Articles Of Incorporation Of Jackson Hospital & Clinic, Inc., Article III(a) and (c).

13.     The Medical Board exists solely for the purpose of serving as a conduit financing vehicle for the assets of the Debtors.

14.     Pursuant to these leases and operating agreements, the Medical Board, as lessor, leases all of the hospital's material assets to the Debtors, as lessee.  The lease agreements are a dollar-for-dollar pass-through arrangement, meaning that the lease payments are actually made, dollar-for-dollar, by the Debtors directly to the Medical Board's creditors that are selling or financing the assets (and are also the Debtors' creditors).

15.     Accordingly, the Debtors and the Medical Board are effectively co-obligors on the indebtedness owed to the holders of the Series 2015 Bond Trust Indenture.

16.     The Medical Board does not generate any income, and engages in no business other than its support of the Debtors' operations.  The Medical Board did not have a bank account until late July of this year.  The Medical Board has no officers or employees.  The Debtors keep the books and records for the Medical Board.  The address of the Medical Board is the same as that of the Debtors.  The Medical Board has historically purchased assets for the Debtors in the Medical Board's name, leased these assets to the Debtors, and the Debtors have remitted payment directly to the entity selling these assets to the Medical Board for the Debtors' benefit. Accordingly, the Debtors and Medical Board are effectively co-obligors on any indebtedness owed related to these assets.

3

17.     The Medical Board owns the majority of the real property comprising the hospital, together with the accounting system, medical records system, and the intellectual property used by the Debtors.  Title to all hospital real estate is held by the Medical Board in order to permit tax-free financing of those assets.

18.     The assets are purchased with the Debtors' funds and used exclusively by the Debtors but owned by the Medical Board.  The Debtors pay all related expenses, provide all necessary maintenance and repairs, provides all accounting functions, and treats the assets as their own.  As of October 31, 2025, the Medical Board has an intercompany payable to the hospital of approximately $36,600,000.

19.     The Medical Board is named on the following insurance policies with Jackson Hospital: property, crime/fiduciary, hospital excess general/professional liability, directors and officers/employment practices liability.

20.     The Medical Board is completely un-capitalized and any expenses of the Medical Board are paid for by the Debtors.

21.     The Medical Board has no independent interest, financial or otherwise, in the Debtors' assets or operations.

22.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: November 10, 2025

_____
Allen Wilen, CRO

**EXHIBIT A**

63470880 v3

Alabama
Sec. Of State

Entity Change
000-070-134 DNP
Date 8/23/2024
Time 15:49
240823          11 Pg

File          $100.00
County        $.00

Total         $100.00
03/015

### THIRD
### AMENDED AND RESTATED
### ARTICLES OF INCORPORATION
### OF
### JACKSON HOSPITAL & CLINIC, INC.
#### An Alabama Nonprofit Corporation

Pursuant to Section 10A-3A-9.07, Code of Alabama, 1975, we, the undersigned Chairman and Secretary, respectively, of Jackson Hospital & Clinic, Inc., a Corporation existing as a nonprofit corporation under the Alabama Nonprofit Corporation Law, have signed, verified, and filed a Certificate of Third Restatement amending and restating the existing Articles of Incorporation of Jackson Hospital & Clinic, Inc., as amended, to state as follows:

### ARTICLE I.
### NAME, REGISTERED OFFICE, AND REGISTERED AGENT

The Name of this corporation is **"JACKSON HOSPITAL & CLINIC, INC."**, and the corporation is herein referred to as the "Corporation". The Corporation was initially incorporated pursuant to Title 10, Article 6, Section 100, Code of Alabama, 1940, with B. Franklin Jackson, Jr., 1725 Pine Street, Montgomery, Alabama 36106, serving as the sole incorporator, and the Corporation continues to be incorporated pursuant to the Alabama Nonprofit Corporation Law, § 10A-3A-1.01 *et seq.*, Code of Alabama, 1975. The Registered Office of the Corporation shall be 1725 Pine Street, Montgomery, Alabama 36106, being located in Montgomery County, Alabama. The Registered Agent of the Corporation is Joe B. Riley.

### ARTICLE II.
### DURATION

The period of duration of this Corporation shall be perpetual until its existence shall be terminated in the manner prescribed by these Third Amended and Restated Articles of Incorporation and the Alabama Nonprofit Corporation Law as such Law may be amended from time to time hereafter.

### ARTICLE III.
### PURPOSES

The Corporation shall have for its objects and purposes the following:

(a) To own, operate, control, and conduct, not for pecuniary profit, but exclusively for charitable purposes and for the benefit of the general public, (i) a general hospital to provide facilities for the medical examination, treatment, and surgical care of human diseases and ailments of every kind and nature and for sick, infirm, indigent, injured, and disabled persons of every race, creed, and nationality, said hospital to be known and operated under the style "Jackson Hospital", in the City of Montgomery, Alabama, (ii) a training school for nurses, (iii) a medical,

pharmaceutical, biological, radiological, and chemical laboratory or laboratories and facility, to be used in conjunction with the management and operation of a general hospital, and (iv) all other necessary, incidental, and useful activities or facilities in connection therewith, including ancillary and coincidental services, shops, cafeterias, restaurants, and similar undertakings normal or customary as an adjunct to the operation of a general hospital;

(b) To render by all means necessary or expedient a comprehensive and complete service to physicians, surgeons, health care agencies, and governmental, public, private, and charitable institutions in the pursuit of the Corporation's fulfillment of the purposes set forth herein;

(c) To study, advance, and promote the science of medicine and surgery, and pathological, biological, radiological, chemical, and clinical research;

(d) To assist and instruct students of medicine and surgery;

(e) To operate the hospital for the general welfare of the public and in fulfillment of the realized need for a modern, well-equipped hospital, clinic, and laboratory, with services available at the lowest feasible cost to those financially able to make payment therefor and without charge or at reduced charge to such indigent patients as the development and financial status of the hospital may permit, applying any income derived from the operation of the hospital not for the benefit or inurement to any office, director, or private person, but for the general welfare of the community and public and only for the purposes for which this Corporation is organized;

(f) To conduct and transact any business lawfully authorized which is not prohibited by the Alabama Nonprofit Corporation Law or other legislation to which it is subject and which is permitted for continued qualification as an exempt organization under Section 501(c)(3) of the Internal Revenue Code, as heretofore or hereafter amended.

## ARTICLE IV.
## MEMBERSHIP

The Corporation shall have no members, and the affairs of the Corporation shall be managed by the Board of Directors.

## ARTICLE V.
## BOARD OF DIRECTORS

**5.01 Powers and Authority of the Board of Directors.** The Board of Directors is charged with the management of the Corporation. In discharge of these responsibilities, it shall have and exercise all powers accruing generally to boards of directors under the Alabama Nonprofit Corporation Law. The powers and authority of the Board of Directors to manage the affairs of the Corporation include (but are not limited to) the authority and power to elect and delegate authority to officers, to hire, discharge, and establish compensation for the officers and physician employees of the Corporation, to consider and approve contracts of the Corporation, and generally to do all other things necessary, appropriate, or incidental to discharging its responsibilities and duties as

# **EXHIBIT B**

*Proposed Order*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 25-30256 |
| JACKSON HOSPITAL & CLINIC, INC., *et al.*,[1] | Jointly Administered |
| Debtors. | |

## ORDER GRANTING DEBTORS' MOTION FOR SUBSTANTIVE CONSOLIDATION

Before the Court is the following motion (the "Motion")[2]: *Debtors' Motion for Substantive Consolidation* filed November __, 2025. A hearing on the Motion was held by the Court on _____ __, 2025 (the "Hearing"). The Court having considered the record in this case, including the Motion, any objections filed in response to the Motion, and the statements of those parties present at the Hearing; and it appearing to the Court that (a) it has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334; (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (c) venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (d) sufficient

---

[1] The Debtors in these cases are Jackson Hospital & Clinic, Inc. and JHC Pharmacy, LLC.

[2] All terms capitalized but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

notice has been provided under the circumstances; and (e) good and sufficient cause exists for the relief granted herein; now therefore,

IT IS HEREBY ORDERED AS FOLLOWS:

1.      The Motion is granted pursuant to the terms of this Order.

2.      The bankruptcy estate of Jackson Hospital & Clinic, Inc. ("JHC") is substantively consolidated with the Medical Clinic Board of the City of Montgomery, Alabama ("MCB") for all purposes, including but not limited to the administration, distribution of assets, and allowance of claims, except the consolidated entities shall continue to exist as separate legel entities until their respective existence is terminated under applicable state law.

3.      All assets and liabilities of JHC and MCB shall be pooled and treated as the assets and liabilities of a single consolidated entity.

4.      All claims against JHC and/or MCB shall be filed, administered, and paid from the consolidated estate, subject to the priority provisions of the Bankruptcy Code.

5.      The consolidated estate shall be administered by JHC under Case No. 25-30256 in accordance with the Bankruptcy Code and orders of this Court.

6.      Nothing in this Order shall affect any rights or defenses of parties in interest with respect to specific claims or causes of action, except as expressly consolidated herein.

7.      The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

### END OF ORDER ###

Order drafted and submitted by:
Marc P. Solomon
BURR & FORMAN LLP
420 20th Street North, Suite 3400
Birmingham, Alabama 35203
(205) 251-3000

msolomon@burr.com
Counsel for Debtors and Debtors-in-Possession

63553377 v1