## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re: | Chapter 11 |
| JACKSON HOSPITAL & CLINIC, INC., *et al.*,[1] | Case No. 25-30256 |
| Debtors. | Jointly Administered |

### OBJECTION OF UMB BANK, N.A., AND SERVISFIRST BANK TO
### DEBTORS' MOTION FOR SUBSTANTIVE CONSOLIDATION

UMB Bank, N.A., ("UMB Bank") as (a) successor trustee under the Series 2015 Bond Trust Indenture, dated as of December 1, 2015, (b) successor master trustee under the Amended and Restated Master Trust Indenture, dated as of December 1, 2015, and (c) noteholder representative and collateral agent under the Senior Note Purchase Agreement, dated November 5, 2014, and ServisFirst Bank (together, the "**Prepetition Secured Lenders**") respectfully submit this objection ("**Objection**") to Debtors' Motion for Substantive Consolidation (the "**Motion**") and state as follows:

### INTRODUCTION

1.      Debtors (at the insistence of the DIP Lender) are desperate to seize control of the Medical Clinic Board's ("**MCB**") assets. Their motivations are obvious: They hope to use Chapter 11 to prime, strip, or cram down the Prepetition Secured Lenders' liens on the MCB's property and hand either control or ownership of the property over to the DIP Lender, leaving the Prepetition Secured Lenders empty-handed.

2.      But Debtors face an intractable obstacle: They need a path to lawfully move the MCB's assets into this estate. For months, they have said Chapter 9 is their answer, even getting

---

[1] The Debtors in the Chapter 11 Cases are Jackson Hospital & Clinic, Inc. and JHC Pharmacy, LLC.

Alabama law changed to allow for such an action. Yet, with no petition in sight, Debtors (only a week after the DIP Lender has taken control of its board) have turned towards a more extreme tactic. They have moved to substantively consolidate the MCB—a municipal instrumentality of the sovereign State of Alabama—into this corporate Chapter 11 case.

3. Debtors' ploy is unprecedented. They have not identified a single case in any jurisdiction where a municipality has been substantively consolidated into a Chapter 11 case, bypassing Chapter 9, and, in essence, pushing a part of state government into bankruptcy without state consent. This has never been done. And for good reasons: It would simultaneously invade state sovereignty and upset settled market expectations about the credit risk of municipalities. Moreover, Debtors' request is not only novel, but also clearly contrary to law for multiple reasons:

4. *First*, Debtors' requested relief would violate the Constitution. The Supreme Court has explained that the Tenth Amendment protects states from their instrumentalities participating in a bankruptcy process without the state's consent. *See, e.g.*, *United States v. Bekins*, 304 U.S. 27, 51-52 (1938) (emphasizing importance of state consent in municipal bankruptcy); *Ashton v. Cameron Cnty. Water Improvement Dist. No. 1.*, 298 U.S. 513, 538-39 (1936) (Cardozo, J., dissenting) (same). That is why Chapter 9 today includes a requirement that municipalities can file for Chapter 9 only if authorized to do so by their state's law and why Chapter 9 does not permit a creditor to seek involuntary bankruptcy of a municipality. 11 U.S.C. §§ 109(c), 901. Although discovery has revealed that the MCB purports to have consented to the Motion, in fact no state law authorizes the MCB to consent to a Chapter 11 bankruptcy—only adjustment of debts under Chapter 9 is allowed, Ala. Code § 11-58-5.2(b)—thus the consent is ineffective and substantive consolidation would violate the Tenth Amendment.

5.      *Second*, Debtors' Motion violates the Bankruptcy Code. Congress provided that municipalities cannot file for Chapter 11, only Chapter 9, 11 U.S.C. § 109(c)-(d), and set forth specific requirements for Chapter 9 petitions, including that they must be authorized by state law. 11 U.S.C. § 109(c). This Motion violates that mandate from Congress by allowing an unauthorized Chapter 11 bankruptcy of a municipality and exposing it to liquidation; moreover, the conditions for even a Chapter 9 proceeding are not met here.

*6.*      *Third*, Debtors' Motion is wrong that consolidation with a non-debtor is permissible under the Bankruptcy Code at all. No binding Eleventh Circuit decision has authorized consolidation of non-debtors, and while there is disagreement among courts elsewhere, many well-reasoned opinions have concluded that substantive consolidation of non-debtors violates the Bankruptcy Code's eligibility requirements set forth in Section 303 of the Bankruptcy Code. *See In re Pearlman*, 462 B.R. 849, 854-55 (Bankr. M.D. Fla. 2012) (collecting cases).

7.      *Fourth*, Debtors have not met the exacting burden to justify substantive consolidation with a non-debtor. Debtors do not, and cannot, own the MCB, and the MCB has a separate board. Debtors' and the MCB's assets, liabilities, financial statements, functions, leadership, and address are in fact separate, and they have observed corporate forms in their interactions. Moreover, Prepetition Secured Lenders relied on the separateness of Debtors and the MCB in assessing collateral, credit risk, and the ability to access tax-exempt status, and would be prejudiced by this consolidation, the sole purpose of which is to strip them of their collateral.

8.      Again, it is hard to understate the unprecedented nature of this Motion. If the Court were to grant this Motion, it would mean that private corporations would be able to drag municipalities into bankruptcy, seizing control of public property and an arm of the State from the

people and the State. It would shock the settled expectations of municipal bond markets and undermine the State's ability to control its own governments. This Motion must be denied.

## BACKGROUND

9.     Under Alabama Law, medical clinic boards are "public agencies and instrumentalities of the State of Alabama." Ala. Code § 11-58-2(a). They can be created only with the consent of the municipality where it intends to be incorporated. *Id.* § 11-58-2(b). Alabama law dictates that medical clinic boards are governed by a board of directors that "shall be elected by the governing body of the respective municipality or county." *Id.* § 11-58-4.

10.     The MCB was formed on July 29, 1965. Doc. 485 at 11. The MCB is not a subsidiary, or parent, to any other corporation, including Debtors. Although state law requires MCB to have three directors, Ala. Code § 11-58-4, currently, there are only two: Mark J. Dierlam and Laura Harmon. *Id.* at 7. Mr. Dierlam and Ms. Harmon are not employees, board members, or officers of Debtors.

11.     The MCB also has the ability to work with "medical clinics or clinical facilities other than the Debtors." Doc. 491 at 3; *see also id.* at 4 ("[T]he scope of the Medical Clinic Board's corporate authority is limited to geography, not to the Debtors."). Earlier this year, the Alabama Legislature enacted a statute that allowed medical clinic boards to file for "readjustment of its debts," Ala. Code § 11-58-5.2(b), i.e., for Chapter 9. The motivation behind the bill was to open a path for the MCB to file for bankruptcy.[2]

12.     The MCB has insisted that it is a separate entity from Jackson Hospital in Court before. In *Underwood v. Medical Clinic Bd. for the City of Montgomery and Jackson Hospital & Clinic, Inc.*, State and Montgomery County revenue officers sought a declaratory judgment,

---

[2] Alex Jobin, *Senate passes bill to allow Jackson Hospital to restructure debt following bankruptcy*, Alabama Political Reporter (March 7, 2025).

arguing that the MCB had to pay *ad valorem* tax on the Goode Medical building. 904 So. 2d 264 (2004). In trial testimony before the Montgomery County Circuit Court, later included in the record on appeal, the then Chief Financial Officer of Jackson Hospital testified that the MCB was formed before Jackson Hospital because the MCB had financed projects before Jackson Hospital existed. Ex. D at R-37. He further testified that Jackson Hospital has never owned the hospital property at issue. Ex. D at R-38. Jackson Hospital and the MCB also argued, and the Alabama Supreme Court agreed, that the MCB's property was exempt from taxation because the MCB is a separate governmental entity and an instrumentality of the State. 904 So. 2d at 268. When it was to their advantage, Jackson Hospital and the MCB had no hesitation in representing, under oath, that the MCB was a distinct public entity; only now, when they desire a different outcome, do Debtors attempt to treat the MCB as a meaningless fiction.[3]

13. The Bonds at issue in this case are tax exempt because they are issued by the MCB, a municipality. 26 U.S.C. § 103(a) (providing that interest on state and local bonds tax exempt); Ala. Code § 11-58-14. The property operated by Jackson Hospital is also tax exempt because it is owned by the MCB. *See Underwood*, 904 So. 2d at 268. There are also other agreements where MCB and Debtors have followed corporate forms and emphasized their corporate separateness. For example, in March 2015, Debtors and MCB signed an Amended and Restated Project

---

[3] Debtors have not even begun to grapple with the consequences of their newfound position that Jackson Hospital and the MCB are not meaningfully separate. If their alter-ego theory were taken seriously, it might open the door to scrutiny of decades of tax-exempt treatment, including millions of dollars in avoided *ad valorem* taxes, bond-related tax benefits, and other state and local tax exemptions premised entirely on the MCB's status as a distinct municipal governmental entity. It might also call into question the validity of every bond counsel opinion, issuer opinion, and tax-exemption opinion issued in connection with the MCB's financings, a risk that could expose the Debtors, the MCB, and even third parties to regulatory, tax, and contractual consequences. The downstream ramifications of unwinding that history are potentially substantial, and Debtors offer no analysis of the exposure their argument would create for themselves, the MCB, or the State.

Agreement to facilitate the purchase of equipment for the Debtors while ensuring the property was titled with the MCB, with different individuals signing for the Debtors and the MCB respectively. Ex. G at 1, 8-9.

14.     Earlier in this bankruptcy, counsel for the Debtors attempted to become counsel for the MCB. The Court denied that motion. In its order, it explained that there was not "complete alignment" between the Debtors and the MCB. Doc. 491 at 6. The Court went further, noting that "Medical Clinic Board's corporate authority raises potential adverse interests" between itself and Debtors. *Id.* at 6.

15.     On November 18, 2025, the two MCB board members met at the offices of Debtors' special counsel, Gilpin Givhan, with Debtors' counsel Christopher Richard attending, as well as counsel for the MCB, Bill Espy.  The MCB voted to "authorize[] and approve[] the restructuring of its debts by any means consistent with the authorizations provided in Alabama Act No. 2025-82, the Bankruptcy Code, and other applicable law, including without limitation, by consenting to substantive consolidation."  Ex. H at 3-4.  There is no indication from the resolution that the MCB was informed that Alabama law in fact does not authorize MCB's participation in a Chapter 11 proceeding, only in "readjustment of its debts" under Chapter 9.  Ala. Code § 11-58-5.2(b).  Nor does the MCB appear to have been informed that it is prohibited from disposing of its assets or consolidating with any private entity under Section 11(a) of the Note Purchase Agreement, which provides that "[n]o Note Party shall . . . enter into any merger, consolidation or other reorganization with or into any other person."  Ex. I.

16.     On November 19, 2025, the MCB entered into a Secured Promissory Note (Ex. E) and Security Agreement with the DIP Lender, Jackson Investment Group, Inc. (Ex. F). The Secured Promissory Note includes certain conditions that would result in a default, including if

the MCB "becomes insolvent," i.e., the parties agree that it is not insolvent now (and thus not eligible for Chapter 9). Ex. E at 2. Becoming insolvent would also cause a default in the Security Agreement. Ex. F. § 4(i). The Security Agreement purports to secure the loan under the Secured Promissory Note against all of the MCB's property, notwithstanding that the MCB is only authorized by Alabama law to "mortgage and pledge" its medical facilities "as security for the payment of the principal and interest on any *bonds*," and the Secured Promissory Note is not a bond. Ala. Code § 11-58-5(9). Neither Debtor is a party to these agreements.

## ARGUMENT

17.     Substantive consolidation of an arm of state government in the MCB with Debtors' Chapter 11 case is unprecedented. Not one of the cases cited by Debtors involves substantive consolidation of a municipality and a private corporation like what they propose here. In fact, the Prepetition Secured Lenders are unaware of any case holding that substantive consolidation is appropriate when a municipality is one of the parties sought to be consolidated. And it's clear why this has never happened before: Consolidating an instrumentality of the state, which would only be eligible, at most, to file for Chapter 9, with a private corporation in Chapter 11, would violate both the Constitution and the Bankruptcy Code. Moreover, even the consolidation of a debtor with a non-debtor is problematic under the Bankruptcy Code and a source of disagreement between courts. Finally, even if substantive consolidation extended to municipalities and non-debtors, the facts asserted here are nowhere close to the required showing to demonstrate that substantive consolidation is appropriate.

## I.     Substantive Consolidation of a Municipality Is Unconstitutional

18.     The Constitution as a whole, and the Tenth Amendment in particular, preserves "a residuary and inviolable sovereignty" for the States. *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 470-71 (2018) (quoting The Federalist No. 39, p. 245 (C. Rossiter ed. 1961) (J.

Madison)). Allowing a private corporate debtor to use substantive consolidation to put an arm of a state into bankruptcy, without authorization from the state, would violate that foundational principal of federalism. Yet that is precisely what Debtors propose to do here.

19.     Alabama law does not authorize the MCB to be pulled into a Chapter 11 case (nor could it because even if it were authorized by the State, MCB wouldn't be eligible to be placed in Chapter 11 under the Bankruptcy Code, *see infra* p. 12). It provides only that a "medical clinic board" may bring its own case to take any step "permitted by any act of Congress of the United States relating to the *readjustment of municipal indebtedness,*" i.e. file a Chapter 9 petition. Ala. Code § 11-58-5.2(b) (emphasis added); *see also id.* (allowing a "*medical clinic board* to proceed under the federal acts for the *readjustment* of its debts" (emphasis added)); *compare* 11 U.S.C. ch. 9 ("Adjustment of Debts of a Municipality"), *with* 11 U.S.C. ch. 11 ("Reorganization"). Any consent by the MCB, therefore, runs afoul of Alabama law, as Alabama has not consented to allow private debtors to subject municipalities to Chapter 11 reorganization. Moreover, the MCB's purported consent violates the prohibition in Section 11 of the Note Purchase Agreement that it may not "enter into any merger, consolidation or other reorganization with or into any other person." Ex. I § 11(a).

20.     This isn't just an academic constitutional concern—the Supreme Court has made clear the significance it assigns to state and municipal consent for municipal bankruptcy. In *Ashton v. Cameron County Water Improvement Dist. No. 1*, the Supreme Court struck down an early attempt to provide for municipal bankruptcies. 298 U.S. at 530-31. In its discussion, the Court reasoned that the law was an unconstitutional infringement on state sovereignty. *Id.* at 531. Justice

Cardozo dissented, but his dissent emphasized that in his view there was no constitutional concern because under that law the states had to consent to the extent required by state law:

> The question is not here whether the statute would be valid if it made provision for involuntary bankruptcy, *dispensing with the consent of the state* and with that of the bankrupt subdivision. For present purposes one may assume that there would be in such conditions a dislocation of that balance between the powers of the states and the powers of the central government which is essential to our federal system.

*Id.* at 538-39 & n.9 (Cardozo, J. dissenting) (emphasis added).

21.     Congress then amended the prior act, and when a challenge to that law reached the Supreme Court, it upheld the law in *United States v. Bekins*. 304 U.S. 27 (1938). The Court explained that the new statute passed constitutional muster because the "State retains control of its fiscal affairs," and preserved the "essence of sovereignty," emphasizing that the importance of the state's power to "give consents bearing upon the exertion of governmental power." *Id.* at 51-52; *see also Kentucky Emps. Ret. Sys. v. Seven Counties Servs, Inc.*, 901 F.3d 718, 733-34 (6th Cir. 2018) (McKeague J., dissenting) (explaining that the Supreme Court decision in *Bekins* was premised on Congress allowing "states [to] retain[] ultimate control" of the bankruptcy process).

22.     The lesson of *Ashton* and *Bekins* is simple. Municipal bankruptcies are constitutionally permitted, if, and only if, the municipality *and* the state consent. *See Kentucky Emps. Ret. Sys.*, 901 F.3d at 734 (McKeague J., dissenting).[4] Indeed, Chapter 9 is intentionally limited to steer well clear of the Tenth Amendment's reservation of political powers to the states. *See In re Addison Cmty. Hosp. Auth.*, 175 B.R. 646, 649 (Bankr. E.D. Mich. 1994). As a bankruptcy court in the Northern District of Alabama explained, "*Consistent with the Tenth Amendment's reservation of powers to states* is 11 U.S.C. § 904's demarcation that without a

---

[4] The majority opinion in *Kentucky Employees* did not take issue with this analysis, it was concerned only with whether the specific entity that filed for bankruptcy was a "governmental unit." *Id.* at 725-26.

municipal debtor's consent, a bankruptcy court may not interfere with any of its . . . property or revenues, or its use or enjoyment of any income-producing properties." *In re Jefferson Cnty.*, 484 B.R. 427, 463 (Bankr. N.D. Ala. 2012) (emphasis added). Here, however, a private company is seeking to drag a municipality into bankruptcy without state authorization. Although MCB allegedly consented to substantive consolidation into this Chapter 11 proceeding (Ex. H) that consent is ineffective because it is a clear violation of Alabama law, which only authorizes MCB to enter Chapter 9. Thus, the State of Alabama has not consented, and this entirely novel exercise of the Bankruptcy Court's powers violates constitutional protection of state sovereignty.

23.     The Supreme Court's recent jurisprudence on state sovereignty confirms the unconstitutionality of compelling an arm of the state to take certain action. As the Supreme Court has recognized, "[t]he Federal Government may not command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program." *Murphy*, 584 U.S. at 472-73 (quoting *Printz v. United States*, 521 U.S. 898, 935 (1997)) (cleaned up). But that is exactly what would happen here—a federal court (at the behest of a private corporation) will take control of municipality, contrary to state law, and force it into bankruptcy. This, in turn, could allow a municipality to be liquidated—an extreme takeover (and full dissolution) of the municipality's control over its own property, and one in which the leading commentator agrees raises constitutional concerns. 6 Collier on Bankruptcy ¶ 900.01. ("[D]issolution of a public entity . . . could run afoul of the Tenth Amendment to the Constitution.").

24.     The Constitution does not allow such intrusion into state affairs. This Court, under the guise of the Bankruptcy Code, cannot control a municipality and force it into bankruptcy. That

decision is reserved for the state and the municipality. As a result, substantive consolidation of the MCB without authorization from the State or consent of the MCB would violate the Constitution.

## II.     The Bankruptcy Code Prohibits Substantive Consolidation of Municipalities and Non-Debtors into a Chapter 11 Case

25.     Substantive consolidation arises from the general grant of equity powers provided to bankruptcy courts. *Eastgroup Props. v. Southern Motel Assoc., Ltd.*, 935 F.2d 245, 249 (11th Cir. 1991). Among the courts that allow it, there is "nearly unanimous consensus that it is a remedy to be used sparingly." *In re Owens Corning*, 419 F.3d 195, 209 (3d Cir. 2005) (cleaned up); *accord In re Reider*, 31 F.3d 1102, 1109 (11th Cir. 1994) ("Substantive consolidation should be invoked 'sparingly' where any creditor or debtor objects to its use."). A bankruptcy court cannot exercise its equitable powers, including substantive consolidation, in a manner contrary to the Bankruptcy Code. *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988) ("[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."). Bankruptcy courts have "considerably less discretion than first meets the eye, and [Section 105] in no sense constitutes 'a roving commission to do equity.'" *In re Ludlow Hosp. Soc'y, Inc.*, 124 F.3d 22, 27 (1st Cir. 1997) (quoting *In re Oxford Mgmt., Inc.*, 4 F.3d 1329, 1334 (5th Cir. 1993)). "[A] bankruptcy court's supplementary equitable powers thereunder may not be exercised in a manner that is inconsistent with the other, more specific provisions of the Code." *Landsing Diversified Props. v. First Nat'l Bank & Trust Co.*, 922 F.2d 592, 601 (10th Cir. 1990) (per curiam), *modified on other grounds*, 932 F.2d 898 (10th Cir. 1991).

26.     Here, the Bankruptcy Code prevents the Court from using the equitable powers suggested by the Debtors. *First*, substantive consolidation simply cannot apply to municipalities. Forcing a municipality into an involuntary bankruptcy where it may be liquidated, bypassing Chapter 9 completely, violates the Bankruptcy Code and Alabama Law. *Second*, the power to

substantively consolidate non-debtors is not settled law in this circuit, and courts that have "discovered" this equity power relied on improperly broad readings of the Bankruptcy Court's authority over non-debtors which the Supreme Court has recently rejected.

**A. Bankruptcy Courts Cannot Consolidate a Municipality into a Chapter 11 Case**

27.     Substantive consolidation of the MCB into this proceeding would violate multiple provisions of the Bankruptcy Code and completely ignore Congress's intent. At a minimum, it would make MCB into a Chapter 11 debtor, which is prohibited under the Bankruptcy Code, foist it into a bankruptcy proceeding without the consent of the State and without satisfying the requirements set forth by Congress in Chapter 9, and expose it to the risk of liquidation, which Congress expressly prohibited.

28.     The MCB is simply ineligible to be a debtor in Chapter 11 under the Bankruptcy Code.  In Section 109(d), Congress provided that only a "person that may be a debtor under chapter 7 . . . may be a debtor under chapter 11." 11 U.S.C. § 109(d). And a "person" specifically "does not include governmental unit," except in some narrow circumstances that do not apply here. 11 U.S.C. § 101(41). Thus, MCB is expressly prohibited from being a Chapter 11 debtor in this case—full stop. That should be the end of Debtors' Motion right there.

29.     The MCB has not even satisfied the requirements for Chapter 9. The MCB may only be a debtor, if at all, in Chapter 9, and then, only if it satisfies the specific requirements of Chapter 9, such as showing state or effective municipal consent, insolvency, a plan to adjust debts, or efforts to negotiate with creditors. 11 U.S.C. § 109(c). Debtors' Motion obviously does not even try to satisfy those requirements for MCB—even if they could—because Debtors' expressly stated goal is to bypass Chapter 9. Mot. at 12 ("[S]ubstantive consolidation will avoid the need for the Medical Board to seek relief under Chapter 9 . . .."). The Debtors' omission is all the more glaring in light of the agreements between the MCB and the DIP Lender, Jackson Investment Group. It is

- 12 -

an event of default, under the Secured Promissory Note and the Security Agreement, if the MCB "*becomes* insolvent," clearly demonstrating that MCB and the DIP Lender, at least, did not believe MCB was insolvent whenever those agreements were signed. Ex. E at 2.[5] Congress explained what is required for a municipality to become a debtor, and those conditions have not been satisfied.

30.     Nor can Debtors effectively initiate Chapter 9 proceedings for the MCB. Section 901(a), which integrates the other applicable sections of the Bankruptcy Code, notably *excludes* Section 303 (which governs involuntary petitions) as an applicable chapter; as such, no party can file a petition to force a municipality into bankruptcy. Section 904 also provides that "[n]otwithstanding any power of the court, *unless the debtor consents or the plan so provides*, the court may not . . . interfere with . . . any of the property or revenues of the debtor." Congress viewed Section 904 as a "strict limitation" on "the powers of the court." H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 263 (1977). Further, the statute authorizing MCB to file Chapter 9 expressly requires the "*medical clinic board* to proceed under the federal acts for the *readjustment* of its debts." Ala. Code § 11-58-5.2(b) (emphasis added). It does not say that another party can initiate the Chapter 9 case, let alone pull the MCB into a Chapter 11 case through substantive consolidation.

31.     Substantive consolidation into this Chapter 11 case would also violate the Bankruptcy Code's protections against liquidation of municipalities. It is well established that a municipality cannot be liquidated. *In re City of Stockton, California*, 514 B.R. 261, 284 (B.A.P. 9th Cir. 2015) ("[I]t goes without saying that a municipality cannot be liquidated."); *see also* H.R. Rep. No. 95-595 ("A municipal unit cannot liquidate its assets to satisfy its creditors totally and finally."). Indeed, even with consent "dissolution of a public entity . . . could run afoul of the Tenth

---

[5] As of filing, we have not received executed copies of these agreements from Debtors.

Amendment to the Constitution." 6 Collier on Bankruptcy ¶ 900.01. Chapter 11 contains no such protections. Chapter 11 cases can convert to liquidations. Indeed, in this case, the Debtors have proffered to the Court that they are sometimes weeks from shutting down. Here, the assets of the municipality could be consolidated, and still this bankruptcy could fail. That would undoubtedly run afoul of the protections given to municipalities in Chapter 9.[6]

32.     History confirms what the text and structure of the Bankruptcy Code make plain: bankruptcy courts do not have the power to substantively consolidate a private entity with a municipality. A lack of precedent demonstrating that courts have exercised similar powers in equity demonstrates that Courts lack the equitable authority to act in that manner. *See Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 223-24 (2024) (observing that a lack of history showing that "American courts in the past enjoyed" the power sought to be exercised by the bankruptcy court supported argument that it did not have that power); *see also Trump v. CASA, Inc.*, 606 U.S. 831, 845-46 (2025) (observing lack of history concerning universal injunctions demonstrated that the equitable power did not extend to universal injunctions).  And here, there is no precedent for the substantive consolidation of a municipality into a Chapter 11 proceeding.

*          *          *

33.     Substantive consolidation does not provide a path around these limitations on the eligibility of an entity for bankruptcy. The Eighth Circuit rejected precisely such a ploy to bypass the eligibility requirements in the Bankruptcy Code in *In re Archdiocese of Saint Paul &*

---

[6] Debtors claim that "consolidated entities continue to exist until their existence is terminated under applicable state law." Mot. 3. First, the cases cited do not rebut this point. Neither case addresses the existence of a legal entity post-liquidation. *In re Petters Co.*, 550 B.R. 438, 455 (Bankr. D. Minn. 2016); *Melrose Distillers, Inc. v. United States*, 359 U.S. 271, 277 (1959). Moreover, it would be cold comfort if the constitutionally mandated protection against liquidation of a municipality was merely that the municipality could remain with no assets, no ability to govern, and a shell of its prior self. Such needless formalism—the fact that a liquidation is not a dissolution—does not mean that liquidating a municipality wouldn't violate the Bankruptcy Code here.

*Minneapolis*, 888 F.3d 944, 951 (8th Cir. 2018). There, the court refused to substantively consolidate non-debtor entities that would otherwise be ineligible for involuntary bankruptcy because "Section 303(a) prevents the use of § 105(a) to force truly independent non-profit entities into involuntary bankruptcy." *Id.* at 953. The same rule should apply here. The MCB is ineligible for Chapter 11 and cannot be involuntarily pushed into Chapter 9 by a third party, and therefore, substantive consolidation cannot occur.

34.     It also bears repeating: **There is no authority that supports the Debtors' position**.[7] No bankruptcy court from any jurisdiction has ever substantively consolidated the assets of a private corporation and a municipality. If this Court were to grant Debtors' Motion, it would be the first and only court to ever reach this conclusion. In deciding similar questions, the Supreme Court has heavily weighed the lack of any history supporting a supposedly new-found power to weigh heavily against the claim of that power. For example, in *Harrington*, the Court rejected a claim that the bankruptcy courts can grant non-debtor releases, in part because "[n]o one has directed us to a statute or case suggesting that American courts in the past enjoyed [that] power." 603 U.S. at 224. Even then, however, there ***were*** modern cases that had concluded that non-debtor releases were appropriate. *Id.* at 243 (Kavanaugh, J., dissenting). Here, not even that can be said. No court has ever concluded that it has had this authority.

---

[7] *In re Reider*, 31 F.3d at 1103 (spouses); *Eastgroup*, 935 F.2d at 247 (commonly owned corporations); *In re Augie/Restivo Baking Co.*, 860 F.2d 515, 517 (2d Cir. 1988) (two corporations that swapped stocks); *In re Gyro-Trac (USA), Inc.*, 441 B.R. 470, 474 (corporations all founded by same individual, who remained president, CEO of all corporations); *In re S&G Fin. Servs. of S. Fla., Inc.*, 451 B.R. 573, 576 (Bankr. S.D. Fla. 2011) (commonly owned corporations); *In re No Rust Rebar, Inc.*, 2023 WL 4497328, at *4-5 (Bankr. S.D. Fla. 2023) (commonly owned corporations); *aff'd sub nom. Smith v. Slott*, 754 F. Supp. 3d 1271 (S.D. Fla. 2024); *In re Alico Mining, Inc.*, 278 B.R. 586, 587 (Bankr. M.D. Fla. 2002) (commonly owned corporations); *In re Munford, Inc.*, 115 B.R. 390, 392 (Bankr. N.D. Ga. 1990) (corporations with common officers); *see also* Mot. 13 (listing types of corporate entities in each case, none of which involves a municipality).

35. Substantive consolidation of MCB into this Chapter 11 case clearly lies outside of this Court's equity powers.

## B. Bankruptcy Courts Cannot Substantively Consolidate Non-Debtors Regardless of Corporate Form

36. Not only do bankruptcy courts lack the authority to substantively consolidate a non-debtor municipality, they simply lack the ability to substantively consolidate a non-debtor, period.

37. As explained above, the specific provisions of the Bankruptcy Code rule over the general. And, as many courts have concluded, allowing substantive consolidation of a non-debtor "circumvents the[] strict requirements and is in contravention of [the Code]." *In re Pearlman*, 462 B.R at 854-55 (second alteration in original) (quoting *In re Ira S. Davis*, 1993 WL 384501, at *7 (E.D. Pa. September 22, 1993)); *see also In re Concepts America, Inc.*, 2018 WL 2085615, at *6 (N.D. Ill. May 3, 2018); *In re Hamilton*, 186 B.R. 991, 993 (Bankr. D. Colo. 1995).

38. Indeed, substantive consolidation undermines Section 303 as the exclusive way an entity can be brought involuntarily into bankruptcy. Further under Section 303, a petitioning creditor must comply with the strict eligibility requirements. For example, if the non-debtor has more than 12 creditors, the involuntary petition must be brought by three or more creditors (or an indenture trustee representing such a creditor) with non-contingent unsecured claims totaling at least $21,050.00. 11 U.S.C. § 303(b). An unsuccessful petitioning creditor may be liable for attorneys' fees, costs, reasonable damages, and even punitive damages, putting a damper on any overeager creditor seeking to force their way into the bankruptcy court. These protections are essential: They ensure that potential debtors are not subject to the bankruptcy courts without appropriate cause. Substantive consolidation, however, undermines these protections and creates a backdoor for involuntary bankruptcy.

- 16 -

39.     It is true that courts in this circuit have substantively consolidated non-debtors. *See* Mot. 12.[8] But these courts rest their conclusions on two questionable premises. The first is that the Supreme Court approved of this practice in *Sampsell v. Imperial & Color Corp.*, 313 U.S. 215 (1941). *In re No Rust Rebar, Inc.*, 2023 WL 4497328, at *5 (Bankr. S.D. Fla. 2023); *In re S&G Fin. Servs. of S. Fla.*, 451 B.R. 573, 581 (S.D. Fla. 2011); *In re Munford, Inc.*, 115 B.R. 390, 396-67 (N.D. Ga. 1990). But these courts overread *Sampsell*, which did not address the issue explicitly. *See, e.g., In re Owens Corning*, 419 F.3d at 206 (noting that *Sampsell* approved of substantive consolidation "at least indirectly and perhaps inadvertently"). As a result, *Sampsell* is not decisive. *See United States v. Trump*, 740 F. Supp.3 d 1245, 1289 (S.D. Fla. 2024) ("A case is not 'binding precedent' on points that were not there raised in briefs or argument nor discussed in the opinion.") (quoting *Bourbon v. U.S. Dep't of Homeland Sec.*, 940 F.3d 537, 548-49 (11th Cir. 2019)).[9]

40.     The second premise that is relied upon is that consolidation is appropriate because it will maximize available recovery in that case. Even if that were true, that alone is not a proper reason. "[N]o legislation pursues its purposes at all costs." *CTS Corp. v. Waldburger*, 573 U.S. 1, 12 (2014) (cleaned up). Instead, the text and structure of the relevant law govern. *Id.* ("Congressional intent is discerned primarily from the statutory text"). The Bankruptcy Code does not provide that any action which may maximize creditor recovery is justified. It pursues other goals, such as ensuring that states maintain their authority over municipalities or protections for non-debtors. Section 303, which allows for involuntary bankruptcy but ensures adequate protection for non-debtors who may be wrongfully dragged into bankruptcy reflects the balance

---

[8] It is worth noting that *all* of these cases are distinguishable because none involve the substantive consolidation of a municipality.

[9] The two decisions from the Eleventh Circuit on substantive consolidation did not involve non-debtors. *Eastgroup*, involved two Chapter 7 debtors. 935 F.2d at 246. *Reider* concerned spouses who were both separately in Chapter 7 proceedings. 31 F.3d at 1103.

of policies that Congress meant to achieve. Creating a back door, without any of the protections provided by that section, does not advance congressional intent, it undermines it.

41.     Because substantive consolidation with non-debtors circumvents the Bankruptcy Code's protection for non-debtors, it is beyond the powers of the Bankruptcy Court. The courts that have decided otherwise rest their opinions on faulty premises. As such, this Court should conclude it lacks the equitable power requested in this case and deny the Motion.

## III.     The Facts Do Not Support Substantively Consolidating the MCB and Jackson Hospital

42.     Finally, the Motion falls far short of bearing Jackson Hospital's "exacting" burden for substantive consolidation. *In re Reider*, 31 F.3d at 1109.

43.     For courts that allow substantive consolidation, the basic issue is simple: "Corporate disregard as a fault may lead to corporate disregard as a remedy." *In re Owens Corning*, 419 F.3d at 205. That is, if the debtor and non-debtor ignored the corporate form "in life" potentially to the detriment of others, then the court may, in extreme cases, disregard the corporate form "in death" to remedy that harm. *See, e.g.*, 2 Collier on Bankruptcy ¶ 105.09 ("If the related corporations were mere fictions and were in fact the alter egos of the debtor parent, the court can justify the [substantive consolidation on a non-debtor,] on the theory that the subsidiary corporations were not really separate."); *In re Horsley*, 2001 WL 1682013, at *7 (Bankr. D. Utah 2001) ("Certainly, for substantive consolidation to effectively bring a nondebtor within the jurisdiction of this court, the identity of the nondebtor must be so far subsumed in the debtor that they are as one.").

44.     Beyond that general principal, courts require parties moving for substantive consolidation to make a prima facie case "that (1) there is substantial identity between the entities to be consolidated; and (2) consolidation is necessary to avoid some harm or to realize some

- 18 -

benefit." *Eastgroup*, 935 F.2d at 249. If the movant can make this showing, the burden shifts to an objecting creditor to demonstrate "that (1) it has relied on the separate credit of one of the entities to be consolidated; and (2) it will be prejudiced by substantive consolidation." *Id.* at 249. If that showing is made, the movant must demonstrate that the "benefits of consolidation 'heavily' outweigh the harm." *Id.* (cleaned up).

### A. Debtors Have Not Proven the Prima Facie Case

45.    In determining whether there has been substantive consolidation, the Eleventh Circuit has recognized twelve, non-exhaustive, factors.[10] An analysis of these factors demonstrates that Debtors have failed to make the prima facie case.

46.    *Consolidated Financial Statements*. The Debtors oddly claim that all the financial statements of the debtors are consolidated with the MCB. That seems to be incorrect. The MCB's financial statements, attached as **Exhibits A, B, and C**, contain the consolidated financial statements of the Debtors and their *subsidiaries*. In fact, the financial statement also states that the MCB is *not* a subsidiary and is instead "a related party," and that the consolidation includes "the Surgery Center, Jackson Health, and the Hospice," but *not* the MCB. Ex. A at 9.

47.    *Unity Of Interests and Ownership Between Various Corporate Entities*. It is self-evident that there is not a "unity of interests *and* ownership" in these entities. *See In re Eastgroup*, 935 F.2d at 249 (emphasis added). No one "owns" the MCB. It is a municipality, so there cannot be a unity of ownership. Nor is there a unity of interest, which this Court recognized in its prior

---

[10] (1) The presence or absence of consolidated financial statements; (2) the unity of interests and ownership between various corporate entities; (3) the existence of parent and intercorporate guarantees on loans; (4) the degree of difficulty in segregating and ascertaining individual assets and liabilities; (5) the existence of transfers of assets without formal observance of corporate formalities; (6) the comingling of assets and business functions; (7) the profitability of consolidation at a single physical location; (8) the parent owning the majority of the subsidiary's stock; (9) the entities having common officers or directors; (10) the subsidiary being grossly undercapitalized; (11) the subsidiary transacting business solely with the parent; and (12) both entities disregarding the legal requirements of a subsidiary as a separate organization.

ruling. Indeed, not only are these entities not perfectly aligned, they may be adverse to one another in this *very* bankruptcy case. Doc. 491 at 6 ("[E]ven if the Court could work around the inability to authorize the employment of professionals for non-debtor parties, the scope of the Medical Clinic Board's corporate authority raises potential adverse interests.").

48.     Debtors insist that there is a "unity of interest" because both entities have an interest in supporting the public health of Alabama, but that is plainly insufficient for a "unity of interests." If that were true, Jackson Hospital would have a unity of interest with the Alabama Department of Health,[11] the United States' Department of Health and Human Services,[12] and the United Nations.[13] Such a vague showing of purpose cannot possibly satisfy this factor.

49.     ***The Existence of Parent and Intercorporate Guarantees on Loans.*** The Debtors and the Medical Board are listed together on various debts. But that does not support the assertion that there must be substantial identity. In fact, there are great pains being taken in this debt to segregate and separate them. In these bond issuances, the Hospital and the MCB have different officers sign on their behalf. They must take separate steps to approve these issuances. They then benefit from this separate status as the Bonds are tax exempt. As such the fact that the Hospital is often listed as a guarantor to the MCB's debts does not support substantial consolidation.

50.     ***The Degree of Difficulty in Segregating and Ascertaining Individual Assets and Liabilities***. The Debtors argue that it is difficult to segregate and ascertain individual assets and liabilities. But then the facts they assert (at Mot. 6) do not weigh in any way on this factor. It does not matter, for example, that the MCB does not generate income, nor does it matter that it has a

---

[11] https://www.alabamapublichealth.gov/ ("The Alabama Department of Health works to promote, protect and improve your health")

[12] https://www.hhs.gov/about/index.html ("The mission of the U.S. Department of Health and Human Services (HHS) is to enhance the health and well-being of all Americans.").

[13] https://www.un.org/en/global-issues/health (noting the United Nations' "unwavering commitment to health.").

bank account. Mot. 6. This factor is attempting to inquire whether the assets of each are identifiable as separate. And here, they clearly are. The Debtors say it themselves, freely acknowledging that the land and other assets are owned by the MCB and leased to the hospital. Far from having assets that are "hopelessly comingled," there is a clear ownership and leasehold as to each asset. *In re No Rust Rebar,* 2023 WL 4497328, at *6 (observing that "for substantive consolidation to be appropriate, the assets of the debtor and non-debtor entities must be 'hopelessly commingled'" (quoting *In re Gulfco Inv. Corp.*, 593 F.2d 921, 929 (10th Cir. 1979)). As such, this factor again weighs against substantive consolidation.

51.     ***The Existence of Transfers of Assets Without Formal Observance of Corporate Formalities***. The Debtors fail to address whether corporate formalities have been addressed, waiving the argument. *ripKurrent LLC v. Richard Ballard IRA LLC*, 530 F. Supp. 3d 1281, 1297 (S.D. Fla. 2021). But the evidence presented demonstrates that corporate formalities *are* observed between the MCB, and the Debtors. In its own telling, "Substantially all property of the Medical Board is under the exclusive possession, control, and operation by the Debtors *pursuant to the terms of one or more leases or other operating agreements*." Mot. 7 (emphasis added). The Debtor produced agreements that comply with these corporate formalities, such as the Amended and Restated Project Agreement. *E.g.,* Ex. G.  The fact that there *are* these agreements show that internally, the Debtors and the MCB have in fact followed and respected corporate formalities (probably, as a way to ensure that tax benefits keep flowing to the Debtors). *See Underwood*, 904 So. 2d at 268. As such, this factor also weighs against substantive consolidation.

52.     ***The Comingling of Assets and Business Functions***. The assets and "business functions" of the Debtors and the MCB are not commingled. Commingled does not merely mean that the assets are used by the Debtor and purchased by the MCB. The assets must be combined in

some way such that it "cannot be separated." Black's Law Dictionary, Commingling (12th ed. 2024). Here the assets remain separated. Title is retained by the MCB, despite being used by the Hospital. If it were the case that leased property was comingled, then renters and their landlords would have "commingled" property, a debtor who rented a car could argue that his and Enterprise's property is commingled. That is self-evidently false; leased property is not comingled.

53.     Neither are the business functions commingled. The MCB does not treat patients. A patient or proprietor clearly knows it is dealing with the Debtors, not the MCB when it seeks services. And lenders knew they were dealing with the MCB and the Debtors separately while purchasing debt. As such, this factor too weighs against consolidation.

54.     ***The Profitability of Consolidation at a Single Physical Location***. There is no profitability to be gained by consolidation into a single location. The MCB merely needs a business address. It can conduct its meetings in any place. Nor is the Hospital made more profitable if the MCB, which does *not* regularly meet, happens to be at the same address. That does nothing to attract patients (or providers to care for those patients). As such this factor does not weigh in favor of substantive consolidation.

55.     The Debtors, again, also get the facts wrong here. Their Motion asserts that the MCB and Jackson Hospital have the same address. The bond documents and recent Secured Promissory Note and tell a different story. The MCB's address is listed as Montgomery City Hall. Doc. 485 at 61 (Series 2015 Supplemental and Restated Lease Agreement); Ex. E at 5. Regardless, no matter the MCB 's address, there is no profitability to be gained by MCB and the Debtors for being at the same location.

56.     ***The Subsidiary Being Grossly Undercapitalized***. To be undercapitalized, the MCB would need to be unable to carry on its business. *In re Autobacs Strauss, Inc.*, 473 B.R. 525, 552-

53 (Bankr. D. Del. 2012). There is no evidence of that in this case; the MCB has not claimed in a filing here or otherwise that it currently cannot carry out its purposes.

57. ***Remaining Factors.*** The remaining factors are quickly dealt with and all weigh against substantive consolidation. For example, "the parent" does not own the majority of the "subsidiary's" stock. Putting aside for a moment that there is no parent and subsidiary relationship here, the MCB as a municipality doesn't have stock. Nor do the entities have common officers. The Debtors fail to argue, that the entities have disregarded the legal requirements to be treated as separate organizations. Nor could they meaningfully contest this; the MCB, a creature of state law, has been properly set-up as a clinic board under Alabama law, meanwhile Jackson Hospital, is separate as a private corporation.

58. The evidence produced by Debtors fails to meet the exacting standard of proof. At best, the facts demonstrate that it would be convenient ***now*** to disregard corporate formalities for the benefit of a handful of creditors, like the DIP Lender. That is not even close to meeting this standard. *In re Owens Corning*, 419 F.3d at 214. And the evidence demonstrates that Debtors and the MCB emphatically did not abuse the corporate form before. Thus, substantive consolidation is entirely inapplicable here.

**B. The Prepetition Secured Lenders Relied on The Separate Credit of the MCB**

59. The Prepetition Secured Lenders, whenever they have lent money, have relied on the separate credit of the MCB and the fact that part of their collateral was held by a municipal entity that could not avail itself of Chapter 7 or Chapter 11, only Chapter 9.

60. The tax benefit to Prepetition Secured Lenders easily demonstrates this reliance. The Bonds are tax-exempt as they are issued by a municipality. The tax-exempt nature of the bonds is a large draw to investors seeking tax-exempt investment returns and it provides huge benefits to the hospital, because it allows the hospital to borrow at lower interest rates than it could on the

taxable bond market. Moreover, the reliance on the separate credit is made plain by the debt documents themselves. In all of them, the MCB and Debtors are represented by separate officers and separate provisions cover both. If they hadn't been separate entities, Prepetition Secured Lenders might not have received the tax benefit of municipal bonds, and thus they relied on that separateness in making their investment.

61.     Prepetition Secured Lenders also relied on the separation of MCB and Debtors for another reason:  Their collateral at MCB was not subject to Chapter 7 liquidation or Chapter 11. The assessment of the credit risk of municipalities is always lifted in part by the fact that municipalities and collateral in their possession are safe from those procedures. Exposing collateral held at MCB to the risks inherent in Chapter 7 or Chapter 11 necessarily changes lenders' views.

62.     It is also worth noting that Debtors benefited from, and state and local governments relied on, MCB's tax-exempt status as well. *See Underwood*, 904 So.2d at 268. Debtors benefited from avoiding paying taxes on this property that they otherwise had full use of for years based on the corporate separateness of MCB and Debtors. If the Debtors succeed in proving that MCB and Debtors were alter egos of one another, Alabama and local governments may well come knocking for *ad valorem* tax that the MCB avoided while posing as an "*alter ego.*"

**C. The Prepetition Secured Lenders Will Be Prejudiced by Consolidation**

63.     Substantive consolidation will prejudice the Prepetition Secured Lenders. As of now, one of the largest sources of security available to the Prepetition Secured Lenders is their liens on real property. It is perfectly predictable what the Debtors are trying to do—indeed, they tried to write it into the last DIP Order. They intend to confirm a plan which strips the Prepetition Secured Lenders of their liens and leave them with pennies on the dollar (at most) of their secured claim under Chapter 11.

64.     This is nothing more than an attempt to deliver title or control of the real estate free of liens to the DIP Lender. And while the Debtors will respond by saying without this, the DIP Lender will not move forward with support of hospital operations, the fact of the matter is the end result is it leaves secured creditors holding the bag. That elimination of creditor's security interest, for nothing in return, clearly prejudices them.

### D. The Benefit Does Not Heavily Outweigh the Harm

65.     The benefits that may accrue under substantive consolidation do not "heavily" outweigh the harm. *In re Eastgroup*, 935 F.2d at 249. First, the assertion that there will be a greater recovery "for all creditors" is dubious at best. Again, instead of presenting any evidence, the Debtors assert this as gospel. But there is no evidence that this will enhance recovery for any party, besides perhaps a lien free giveaway to Jackson Investment Group. Indeed, even the Committee has jumped in to object that it has not seen evidence that consolidation would benefit the estate. Doc. 1203.

66.     Moreover, giving an enhanced recovery to some parties, but stripping protection from others is not equity. As Judge Friendly realized long ago, "[e]quality among creditors who have lawfully bargained for different treatment is not equity but its opposite." *Chemical Bank New York Trust Co. v. Kheel*, 369 F.2d 845, 848 (2d Cir. 1966) (Friendly, J., concurring). Here, the Prepetition Secured Lenders negotiated and received liens on the property. Trying to maximize recovery for others who did not do that is not equity, it's just redistribution.

### CONCLUSION

67.     Neither the facts nor the law supports substantive consolidation. The Motion should be denied.

Respectfully submitted this 5th day of December,

/s/ Jeremy L. Retherford
Jeremy L. Retherford

**BALCH & BINGHAM LLP**
1901 Sixth Avenue North, Suite 1500
Birmingham, Alabama 35203-4642
Telephone: (205) 226-3479
Facsimile: (205) 488-5693
Email: jretherford@balch.com

*Attorney for ServisFirst Bank*

/s/ Justin G. Williams
Justin G. Williams

**TANNER & GUIN LLC**
2711 University Blvd. Suite 201
Tuscaloosa, Alabama 35401-3206
Telephone: (205) 633-0218
Facsimile: (205) 633-0318
Email: justin@tannerguin.law

-and-

**HERBERT SMITH FREEHILLS KRAMER (US) LLP**
Douglas Buckley (admitted *pro hac vice*)
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
Email: amy.caton@hsfkramer.com
         douglas.buckley@hsfkramer.com

Ralph C. Mayrell (admitted *pro hac vice*)
2000 K Street NW 4th Floor
Washington, D.C. 20006
Telephone: (202) 775-4500
Facsimile: (202) 775-4510
Email: ralph.mayrell@hsfkramer.com

*Counsel to UMB Bank, N.A.*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 5, 2025, a true and correct copy of the foregoing pleading has been filed with the Court's CM/ECF system to all parties receiving electronic notices in this bankruptcy case and by email transmission to the following:

| | |
|---|---|
| *Attorneys for the Debtors and Debtors in Possession*<br>Burr & Forman, LLP<br>420 20th Street North, Suite 3400<br>Birmingham, AL 35203<br>Derek F. Meek<br>dmeek@burr.com<br>Marc Solomon<br>msolomon@burr.com | *The Bankruptcy Administrator*<br>Office of the Bankruptcy Administrator for the Middle District of Alabama<br>One Church Street<br>Montgomery, AL 36104<br>Ms. Danielle K. Greco<br>Danielle_Greco@almba.uscourts.gov |
| *Attorneys for the DIP Lender*<br>Kirkpatrick Townsend & Stockton LLP<br>Paul Rosenblatt<br>prosenblatt@ktslaw.com<br><br>Wallace, Jordan, Ratliff & Brandt, LLC<br>Clark R. Hammond<br>CHammond@wallacejordan.com | *Counsel to the Official Committee of Unsecured Creditors*<br>Sills Cummis & Gross P.C.<br>Andrew H. Sherman<br>asherman@sillscummis.com<br><br>Rumberger, Kirk & Caldwell, P.C.<br>R. Scott Williams<br>swilliams@rumberger.com |

*/s/ Justin G. Williams*
Justin G. Williams
Of Counsel