# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re: | Chapter 11 |
| JACKSON HOSPITAL & CLINIC, INC., *et al.*,[1] | Case No. 25-30256 |
| Debtors. | Jointly Administered |

## DEBTORS' MOTION FOR APPROVAL OF COMPROMISE AND SETTLEMENT PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019

Jackson Hospital & Clinic, Inc. ("Jackson Hospital") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), by and through their undersigned counsel, hereby file this motion (this "Motion") seeking entry of an order, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving Debtors' receipt of settlement funds from a non-bankruptcy class action settlement. In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the U.S. District Court for the Middle District of Alabama's *Order of Reference* dated April 25, 1985.  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND, SUMMARY OF PROPOSED SETTLEMENT

2.      On February 3, 2025 (the "Petition Date"), each of the Debtors commenced a case under Chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their assets and operations as debtors-in-possession pursuant to sections 1107(a) and

---

[1]      The Debtors in these cases are: Jackson Hospital & Clinic, Inc. and JHC Pharmacy, LLC.  *See* [Doc. No. 49].

1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases. An Unsecured Creditors' Committee has been appointed. *See* [Doc. No. 126].

3.      A description of the Debtors' businesses, the reasons for commencing the Chapter 11 Cases, the overall relief sought from the Court, and certain supportive facts and circumstances supporting this Motion and other motions are set forth in the First Day Declaration. *See* [Doc. No. 9].

4.      Jackson Hospital is a claimant in certain non-bankruptcy class action litigation (the "Litigation") in the United States District Court for the District of New Mexico, bearing the caption *San Miguel Hospital Corp., d/b/a Alta Vista Regional Hospital v. David Sackler, et al.*, Case No. 1:25-cv-010190 (D.N.M). Jackson Hospital, as a claimant, is represented by counsel in the Litigation.

5.      San Miguel Hospital Corporation, d/b/a Alta Vista Regional Hospital (the "Plaintiff") is the named plaintiff in the Litigation who also represents the interests of similarly situated entities. The Plaintiff named Richard Sackler, along with other defendants (the "Settling Defendants"), as a defendant in the Litigation.

6.      The Plaintiff generally alleges that: (i) Settling Defendants misrepresented the risks and safety of prescription opioid use; (ii) that Settling Defendants conspired with others to promote the improper use of prescription opioids, including distributors who did not properly monitor, stop, or report suspicious orders, and pharmacies who filled opioid prescriptions that were not written for legitimate medical purposes; (iii) that, consequently, Acute Care Hospitals (as defined in the

Litigation) spent additional money and resources to treat opioid-dependent patients and patients with opioid-related conditions that they would not have had to treat otherwise.

7. As a result of good-faith, arms-length negotiations, and to avoid expense, inconvenience, and delay, and expedite the closure of the Litigation, Plaintiff and Settling Defendants have reached an agreement (the "Settlement Agreement"). The terms of the Settlement Agreement, titled Class Action Settlement Agreement by and between the Settling Defendants and Acute Care Hospitals is attached to this Motion as **Exhibit A**.

8. Settling Defendants (i) do not admit and expressly deny any and all allegations of liability or wrongdoing. Specifically, the Settling Defendants expressly deny the allegations stated in the paragraph above. Nothing herein shall be considered, construed or represented to be (a) an admission, concession or evidence of liability or wrongdoing; (b) a waiver or any limitation of any defense otherwise available to the Settling Defendants.

9. To resolve the Litigation, the Settling Defendants have agreed to provide up to $174,215,320.82 to distribute to eligible claimants ("Claimant" or "Claimants"). A Claimant must meet the following criteria: Claimant must be an Acute Care Hospital in the United States that (i) treated patients diagnosed with opioid use disorder and/or other opioid-related conditions at any time from January 1, 2009, through March 20, 2026; (ii) is not owned or operated by a federal, state, county, parish, city, or other municipal government; and (iii) is not a physician practice group. Jackson Hospital satisfies all three of these requirements.

10. To be considered an Acute Care Hospital, the Claimant must (a) provide medical care and other related services for surgery, acute medical conditions or injuries for a period of treatment time that is, on average, less than 25 days; and (b) (i) appear as either active or inactive under its current or former name, including any hospital that has changed its name through merger,

3

acquisition, or any other change to its corporate form, in the American Hospital Directory as a "short term acute care" hospital or a "critical access" hospital or a "critical access" hospital, and (ii) have an emergency department that is subject to the Emergency Medical Treatment and Labor Act. Jackson Hospital meets the definition of an Acute Care Hospital.

11. The Claimant, if the above criteria is met, must submit a claim by July 15, 2026 at 5:00 p.m.

12. A high-level review of the terms of the Settlement Agreement as it pertains to Jackson Hospital as a Claimant are: (i) Jackson Hospital, as an Acute Care Hospital, shall submit a claim before July 15, 2026 at 5:00 p.m. (ii) depending on the alleged damages supported by accompanying data, Settling Defendants shall pay Jackson Hospital a certain sum of money; and (iii) Jackson Hospital releases any and all claims described in the Settlement Agreement against the Settling Defendants.

13. Jackson Hospital, as a qualifying Claimant, timely submitted a claim entitled *Sackler Parties Claim Form* (the "Claim"), which is attached hereto as **Exhibit B**. Contemporaneously, Jackson Hospital submitted an additional claim entitled *Sackler Parties Claim Registration Form / "Quick Pay" Election Form*, which is attached hereto as **Exhibit C**. Therein, Jackson Hospital opted out of an expedited claims process that paid a fix sum of $5,000 to all claimants regardless of their respective individual alleged damages.

14. The claims process established by the Settlement Agreement, which Jackson Hospital timely and properly utilized, allows Jackson Hospital to receive a payout that will benefit the Debtors' estates, and the Debtors submit that the settlement should be approved.

<u>**BASIS FOR RELIEF REQUESTED**</u>

4

15. Pursuant to this Motion and in accordance with Bankruptcy Rule 9019(a), the Debtors respectfully request that the Court enter an Order: (i) approving the proposed compromise and settlement between the parties in the Litigation as-outlined in the Settlement Agreement; (ii) authorizing the Debtors to take any and all actions necessary to effectuate the Settlement Agreement; and (iii) to the extent applicable, waiving any stay imposed by Bankruptcy Rule 6004(h) or other applicable Local Rule.

16. This Court has the right and the power to approve such a compromise and the Settlement Agreement. *See* 11 U.S.C. § 105(a); Bankruptcy Rule 9019.  Bankruptcy Rule 9019(a) provides, in pertinent part, "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Section 105(a) of the Bankruptcy Code further provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

17. The Debtors believe the Settlement Agreement is in the best interest of the Debtors' estates and their creditors, and therefore, should be approved.  Specifically, here, settlement of the Litigation allows the estate to receive a certain sum of money that will benefit the Debtors and its creditors. Moreover, the settlement ensures that expenses can be saved by avoiding the costs of complex litigation that class action suits often entail.

18. Settlements and compromises are a "normal part of the process of reorganization." *Case v. Los Angeles Lumber Prods. Co.,* 308 U.S. 106, 130 (1939). The Supreme Court of the United States has further said: "In administering [bankruptcy] proceedings in an economical and practical manner, it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts." *Protective Comm. Of Stockholders of*

5

*TMT Trailer Ferry, Inc. v. Anderson (In re TMT Trailer Ferry, Inc.),* 390 U.S. 414, 424 (1968), *on remand*, *TME Trailer Ferry, Inc. v. Kirkland*, 471 F.2d 10 (5th Cir. 1972). Settlements are "desirable and wise methods of bringing to a close proceedings otherwise lengthy, complicated and costly." *See Matter of Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980).

19. Federal Rule of Bankruptcy Procedure 9019(a) states, in part, that "the Court may approve a compromise or settlement." Such approval falls "within the sound discretion of the Court." *In re Arrow Air, Inc.*, 85 B.R. 886, 891 (Bankr. S.D. Fla. 1988).

20. And as previously-stated, compromises are generally favored in bankruptcy cases. *See In re Harbour Development, Ltd.*, Case No. 10-20733-BKC-AJC, 2012 WL 1851015, at \*5 (Bankr. S.D. Fla. May 21, 2012) (*citing In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996)). Approval of a settlement is appropriate so long as the settlement does not "fall below the lowest point in the range of reasonableness." *In re Martin*, 490 F.3d 1272, 1275 (11th Cir. 2007).

21. In determining whether to approve such a settlement, the Court must consider the following factors: (i) the probability of success in the litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premises. *See In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990).

22. Under the Settlement Agreement, the four-part *Justice Oaks* test is satisfied. The Settlement Agreement will resolve the claims between Jackson Hospital and the Settling Defendants to the Litigation, and those claims will be resolved without the need for additional expense to be incurred by the Debtors and their estates. Moreover, the settlement will bring additional revenues into the Debtors' estates for the Debtors to utilize with regard to their

6

remaining creditors..  Approval of the Settlement Agreement will not prejudice the interests of the Debtors' creditors.

23.     The Debtors request that any order approving this Motion be effective immediately, thereby waiving the 14-day stay period imposed by Bankruptcy Rule 6004(h). This waiver of the 14-day stay period is necessary for the Settlement Agreement to be implemented as expeditiously as possible and within the timeframes contemplated by the parties to the Litigation.  Accordingly, to the extent applicable, the Debtors hereby request that the Court waive the 14-day stay periods imposed by Bankruptcy Rule 6004(h).

## **NOTICE**

24.     Notice of the hearing on the relief requested herein will be provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as applicable local bankruptcy rules, and is sufficient under the circumstances.  The Debtors will provide notice of this Motion to those listed on the Master Service List.  The Debtors respectfully submit that no further notice of this Motion is required.

**WHEREFORE**, the Debtors respectfully request entry of an order, substantially in the form attached hereto as **Exhibit D**, granting the relief requested herein and such further relief as the Court may deem appropriate and proper.

Dated:  August 6, 2026

                                        **BURR & FORMAN LLP**

                                        */s/ Derek F. Meek*
                                        Derek F. Meek
                                        Marc P. Solomon
                                        Catherine T. Via
                                        Burr & Forman LLP
                                        420 20th Street North, Suite 3400
                                        Birmingham, Alabama 35203
                                        Telephone:  (205) 251-3000
                                        E-mail:      dmeek@burr.com

7

msolomon@burr.com
cvia@burr.com

*Counsel for Debtors and Debtors-in-Possession*

8

**Exhibit A- the Settlement Agreement**

*(See attached.)*

# CLASS ACTION SETTLEMENT AGREEMENT BY AND BETWEEN THE SETTLING DEFENDANTS AND ACUTE CARE HOSPITALS

173348964v7

**TABLE OF CONTENTS**

I.      Definitions.................................................................................................................. 1

II.     Representations and Warranties.............................................................................. 10

III.    Class Definition ....................................................................................................... 12

IV.     Settlement Amount .............................................................................................. 122

V.      Approval and Notice .............................................................................................. 17

VI.     Conditions of Settlement; Effect of Disapproval, Cancellation, or Termination ........... 233

VII.    Trustee and Notice and Claims Administrators ................................................... 25

VIII.   Class Counsel's Attorneys' Fees and Expenses.................................................. 27

IX.     Releases and Dismissal .......................................................................................... 28

X.      Miscellaneous Provisions....................................................................................... 31

i

This Settlement Agreement, including all exhibits attached hereto (collectively, the "*Agreement*"), is entered into as of _____, 2025, by and between defendants David Sackler, Ilene Sackler, Kathe Sackler, Mortimer D.A. Sackler, Richard Sackler, the estate of Beverly Sackler by and through its executors Richard Sackler and David Sackler, the estate of Jonathan Sackler by and through its executor Garrett Lynam, and the estate of Raymond Sackler by and through its executors Richard Sackler and David Sackler (collectively, "*Settling Defendants*"), and Class Counsel for Class Representatives, both individually and on behalf of the Class in the above-captioned action.  The Class Representatives, the Class, and the Settling Defendants are collectively referred to for purposes of this Agreement as the "Settling Parties," and each, individually, a "Settling Party."  This Agreement is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as that term is defined herein), upon and subject to the terms and conditions herein, and subject to the approval of the Court under Federal Rule of Civil Procedure 23(e).

## I.    Definitions

As used in this Agreement, the following terms have the meanings specified below:[1]

A.    "*Action*" means *San Miguel Hospital Corp., d/b/a Alta Vista Regional Hospital v. David Sackler, Ilene Sackler, Kathe Sackler, Mortimer Sackler, Richard Sackler, Richard Sackler and David Sackler as executors of the estate of Beverly Sackler, Richard Sackler and David Sackler as executors of the estate of Raymond Sackler, and Garrett Lynam as executor of the estate of Jonathan Sackler*, Case No. 1:25-cv-1010 (D.N.M.).

B.    "*Acute Care Hospital*" means an entity that, at any time on or after January 1, 2009: (i) provides medical care and other related services for surgery, acute medical conditions, or injuries for a period of treatment time that is, on average, less than 25 days; and (ii) (A) appears as either active or inactive under its current or former name, including any hospital that has changed its name through merger, acquisition, or any other change to its corporate form, in the American Hospital Directory® as a "short term acute care" hospital or a "critical access" hospital, and (B) includes an emergency department that is subject to the Emergency Medical Treatment and Labor Act ("EMTALA"), 42 U.S.C. §1395dd *et seq*. and (C) is not a physician or physician practice group.

C.    "*Affiliates*" has the meaning set forth in the Master Settlement Agreement.

D.    "*Allocated Amount*" means the amount of the Net Settlement Funds payable to the Qualifying Class Member at issue, as determined pursuant to the Plan of Allocation.

E.    "*Allowed*" means (i) any Claim held by a Settling Creditor (whose distribution, if any, shall be subject to and determined in accordance with the Plan and any applicable Creditor Trust Documents), (ii) with respect to any Claim held by a Non-Settling Creditor, such Claim that has been allowed in accordance with the Plan or a Final Order (whose distribution, if any, shall be subject to and determined in accordance with the Plan and any applicable Creditor Trust Documents), (iii) with respect

---

[1] Terms defined in the Master Settlement Agreement, which is defined below, are incorporated by reference.

1

to any Adlon General Unsecured Claim or Avrio General Unsecured Claim, such Claim that is Scheduled as not disputed, contingent or unliquidated, and for which no Proof of Claim or Interest, as applicable, has been timely filed, and (iv) with respect to any Claim (other than a Channeled Claim) against a Debtor, such Claim (A) that is allowed pursuant to the Plan or a Final Order, (B) as to which no objection has been timely filed and that is evidenced by a Proof of Claim timely filed by the applicable Bar Date or that is not required to be evidenced by a filed Proof of Claim under the Plan, the Bankruptcy Code or a Final Order or (C) the amount of which has been agreed, compromised, settled or otherwise resolved pursuant to the authority of the Debtors or the Plan Administration Trustee, as applicable. Except as otherwise specified in the Plan or any Final Order, the amount of an Allowed Claim shall not include interest or other charges on such Claim on and after the Petition Date. No Claim of any Person subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Person pays in full the amount for which it is liable to the applicable Debtor or the Plan Administration Trustee as provided in section 502(d). Correlative terms such as "*Allow*" and "*Allowance*" have correlative meanings. For the avoidance of doubt, any Channeled Claim that is Allowed under the Plan shall still be subject to, and shall only receive a distribution pursuant to, the applicable Creditor Trust Documents.

      F.    "*Attorneys' Fees and Expenses*" means (i) payment to Class Counsel of attorneys' fees and litigation expenses and charges (including expert and consulting fees) in an amount to be determined by the Court; and (ii) payment of Service Awards to Class Representatives, in an amount to be determined by the Court. Attorneys' Fees and Expenses shall be paid exclusively from the Settlement Amount.

      G.    "*Bankruptcy Case*" means *In re Purdue Pharma L.P.,* No. 19-23649 (Bankr. S.D.N.Y.).

      H.    "*Bankruptcy Code*" has the meaning set forth in the Master Settlement Agreement.

      I.    "*Business Day*" has the meaning set forth in the Master Settlement Agreement.

      J.    "*Cause of Action*" means any Claim, action, class action, claim, cross-claim, counterclaim, third-party claim, cause of action, controversy, dispute, demand, right, Lien, indemnity, contribution, rights of subrogation, reimbursement, guaranty, suit, obligation, liability, debt, damage, judgment, loss, cost, attorneys' fees and expenses, account, defense, remedy, offset, power, privilege, license or franchise, arising out of or related to the facts alleged in the Complaint filed in the Action (ECF No. 1); in each case, of any kind, character or nature whatsoever, asserted or unasserted, accrued or unaccrued, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, secured or unsecured, allowable or disallowable, Allowed or Disallowed, assertible directly or derivatively (including, without limitation, under alter-ego theories), in rem, quasi in rem, in personam or otherwise, whether arising before, on or after the Petition Date, arising under federal or state statutory, or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, in contract or in tort, at law, in equity or pursuant to any other theory or principle of law, including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter ego, unjust enrichment, disgorgement, restitution, contribution, indemnification, rights of subrogation and joint liability, regardless of where in the world accrued or arising. For the avoidance of doubt, "*Cause of Action*" expressly includes (i) any

2

Cause of Action held by a natural person who is not yet born or who has not yet attained majority as of the Petition Date or as of the Plan Effective Date, (ii) any right of setoff, counterclaim or recoupment and any Cause of Action for breach of contract or for breach of duty imposed by law or in equity, (iii) the right to object to or otherwise contest Claims or Interests, (iv) any Cause of Action pursuant to section 362 of the Bankruptcy Code or chapter 5 of the Bankruptcy Code, (v) any claim or defense, including fraud, mistake, duress and usury and any other defense set forth in section 558 of the Bankruptcy Code, and (vi) any claim under any state or foreign law, including for the recovery of any fraudulent transfer or similar theory.

K.        "*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code.

L.        "*Claim Form*" means the document or online form, in the form attached as Exhibit C to this Agreement, that Class Members are required to submit if they elect to receive an Allocated Amount in their Registration Form.

M.        "*Claim-Over*" means a Claim asserted by a Non-Released Party against a Released Party on the basis of contribution, indemnity, or other claim-over on any theory relating to a Non-Party Covered Conduct Claim asserted by a Releasor.

N.        "*Class*" or "*Settlement Class*" has the meaning set forth in Section III.A.

O.        "*Class Counsel*" or "*Settlement Class Counsel*" means, collectively, John W. ("Don") Barrett of Barrett Law Group, P.A.; Warren T. Burns of Burns Charest LLP; Robert A. Clifford of Clifford Law Offices, P.C.; Steven B. Farmer of Farmer Cline & Campbell, PLLC; Charles J. LaDuca of Cuneo, Gilbert, & LaDuca, LLP; and Steven A. Martino of Taylor Martino, P.C.  Mr. Barrett is designated as Lead Counsel.

P.        "*Class Member*" or "*Settlement Class Member*" means an entity that falls within the definition of the Class and does not elect to opt out of the Class.  For the avoidance of doubt, each Class Representative is a Class Member.

Q.        "*Class Representatives*" or "*Settlement Class Representatives*" means the plaintiffs bringing the Action and the following Other Actions:  *San Miguel Hospital Corp., d/b/a Alta Vista Regional Hospital v. Johnson & Johnson*, No. 1:23-cv-00903 (D.N.M.); *Florida Health Sciences Center, Inc., et al. v. Richard Sackler, et al.*, Case No. 19-018882 (Cir. Ct. Broward Cnty., Fla.); *The DCH Health Care Authority, et al. v. Purdue Pharma, L.P., et al.*, Case No. CV-19-07 (Cir. Ct. Conecuh Cnty., Ala.); *Fort Payne Hospital Corporation, et al. v. McKesson Corporation, et al.*, Case No. 21-cv-2021-900016.00 (Cir. Ct. Conecuh Cnty., Ala.); and *Lester E. Cox Medical Centers d/b/a Cox Medical Centers,  et al. v. Amneal Pharms., LLC, et al.*, No. 6:22-cv-3192 (W.D. Mo.).

R.        "*Class Settlement Effective Date*" means the date of the Final Approval Order.

S.        "*Court*" means the United States District Court for the District of New Mexico.

T.        "*Covered Conduct*" means any actual or alleged act, failure to act, negligence, statement, error, omission, breach of any duty, conduct, event, transaction, agreement, misstatement, misleading statement, or other activity of any kind whatsoever from the beginning of time through the Plan Effective Date (and any past, present, or future consequence of any such act, failure to act, negligence,

3

statement, error, omission, breach of duty, conduct, event, transaction, agreement, misstatement, misleading statement, or other activity) arising out of or related to the facts alleged in the Complaint filed in the Action, including relating in any way to (i) compounding, counseling or documentation relating to any Product or class of Products; (ii) the discovery, development, manufacture, packaging, repackaging, marketing, promotion, advertising, labeling, recall, withdrawal, distribution, delivery, monitoring, reporting, supply, sale, prescribing, dispensing, physical security, warehousing, use or abuse of, or operating procedures relating to, any Product, or any system, plan, policy or advocacy relating to any Product or class of Products, including, but not limited to, any unbranded promotion, marketing, programs, or campaigns relating to any Product or class of Products; (iii) the characteristics, properties, risks, or benefits of any Product; (iv) the reporting, disclosure, non-reporting or nondisclosure to federal, state or other regulators of orders placed with any Released Parties or physicians or pharmacists identified by any Shareholder Released Party as potentially engaging in suspicious or problematic conduct; or (v) diversion control programs or suspicious order monitoring.

U.      "*Creditors' Committee*" has the meaning in the Master Settlement Agreement.

V.      "*Debtors*" has the meaning in the Master Settlement Agreement.

W.      "*Disallowed*" means (i) with respect to a Channeled Claim, or any portion thereof, such Channeled Claim that has been disallowed by a Final Order or pursuant to a settlement, and (ii) with respect to any Claim against a Debtor (other than a Channeled Claim), such Claim, or any portion thereof, that (A) has been disallowed under this Plan, by a Final Order or pursuant to a settlement, (B) is Scheduled at zero dollars ($0) or as contingent, disputed or unliquidated and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court, including the Bar Date Order, or otherwise deemed timely filed under applicable law, or (C) is not Scheduled and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law. Correlative terms such as "*Disallow*", and "*Disallowance*" have correlative meanings.

X.      "*Estate*" has the meaning in the Master Settlement Agreement.

Y.      "*Estate Causes of Action*" means, in each case whether or not asserted, any and all Causes of Action that any Debtor or its Estate may have, hold, or control, or be entitled to assert, or that any Person may be entitled to assert, currently or in the future, by, through, under, or on behalf of any Debtor or its Estate, and each of their respective successors or assigns, including, without limitation, any and all Causes of Action that: (i) were included in the proposed complaint filed by the Creditors' Committee, in the Bankruptcy Case [D.I. 6685-2]; (ii) seek to avoid or recover any transfer of property or value by any Debtor or its Estate, or to avoid any obligation incurred by any Debtor or its Estate, including on a theory of fraudulent transfer, fraudulent conveyance, preference, turnover, unjust enrichment, constructive trust, or conversion; (iii) arise from an injury suffered by a Debtor, including Causes of Action arising from a breach of fiduciary duty, mismanagement, corporate waste, or similar theories arising out of a Person's ownership, management, oversight, operation, status, tenure, conduct, omission, liability, action, or inaction at any time as a stockholder, affiliate, owner, partner, member, manager, director, officer, employee, servant, agent, representative, attorney, creditor, successor, assign, or other relationship with a Debtor or any of its predecessors; (iv) arise from disregarding the

4

separateness of any Debtor or its Estate or imputing the liability of any Debtor or its Estate to another Person, including on a theory of successor liability, vicarious liability, respondeat superior, alter ego, veil piercing, agency, control person liability, or joint venture; (v) arise from a common injury that (a) could be asserted by creditors of a Debtor or its Estate or (b) arises from a breach of duty owed to a Debtor or its Estate; (vi) are property of any Debtor or its Estate or can be asserted, settled, or released by any Debtor or its Estate under the Bankruptcy Code or other applicable law; or (vii) are other derivative claims duplicative of any of the foregoing. Estate Causes of Action shall not include any Cause of Action arising from a breach by a non-Debtor of a legally cognizable duty or statutory prohibition – including not to engage personally in fraud, misrepresentation, or misconduct that causes a nuisance, in each case under consumer protection laws and like regulatory laws or statutes (including, without limitation, UDAP/consumer protection laws) or the common law – which duty or statutory obligation is owed by such non-Debtor directly to the Person asserting such Cause of Action (or to the citizenry on whose behalf such Person is charged to act), where the injury caused by such breach is particular to the Person asserting such Cause of Action (or the citizenry on whose behalf such Person is charged to act) and is not an injury common to creditors of the Debtor or its Estate.

Z.    "*Excluded Class Member*" means any putative Class Member that validly opts out of the Class under Section V.G.

AA.    "*Fairness Hearing*" means the proceedings to be held before the Court to determine whether the Class should be finally certified for settlement purposes; whether the Settlement should be approved as fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e)(2); whether a final judgment should be entered; and whether the motion for award of Attorneys' Fees and Expenses, and Service Awards, if any, should be granted.

BB.    "*Fee and Expense Award*" means an award by the Court of Attorneys' Fees and Expenses.

CC.    "*Final Approval Order*" means the order entered by the Court pursuant to Section V.H approving this Agreement and directing the dismissal with prejudice of the Action and Other Actions against Settling Defendants.  The Final Approval Order shall be in the form of the order attached hereto as Exhibit E, subject to Section V.A.2.

DD.    "*Final Judgment*" means the Final Approval Order when it has become final and non-appealable.  The Final Approval Order shall be deemed to be the Final Judgment on (i) the day following the expiration of the deadline for appealing the entry by the Court of the Final Approval Order (or for appealing any ruling on a timely motion for reconsideration of such Final Approval Order, whichever is later), if no such appeal is filed; or (ii) if an appeal of the Final Approval Order is filed (A) the date upon which all appellate courts with jurisdiction (including the United States Supreme Court by petition for certiorari) affirm such Final Approval Order, or deny any such appeal or petition for certiorari, such that no further appeal is possible, or (B) if no appeal is filed from the appellate court decision obtained pursuant to clause (A), the day following the expiration of the deadline for filing a petition for certiorari to the United States Supreme Court.

EE.    "*Grantor Trust Arrangement*" means one or more escrow accounts in respect of each of which a timely election is made, pursuant to Treasury Regulations Section 1.468B-1(k), to be treated as

a "*grantor trust*" of which the payor is the sole grantor and reports all items of income, gain, loss, deduction, or credit for federal and applicable state and local income tax purposes.

FF.   "*Grantor Trust Release Date*" means the tenth (10th) Business Day immediately preceding the second (2nd) Payment Date.

GG.   "*Hospitals Trust*" means a to-be-formed Delaware statutory trust, intended to qualify as a "qualified settlement fund" within the meaning of section 468B of the Internal Revenue Code, established for the benefit of the Class, and for the purposes described below.

HH.   "*Interest*" unless referring to an amount owed or paid on a principal sum, means any equity security (as defined in section 101(16) of the Bankruptcy Code) in a Person, including any shares, common stock or units, preferred stock or units, or other instrument evidencing any fixed or contingent equity or ownership interest in a Person, including any option, warrant or other right, contractual or otherwise, to acquire any such interest in such Person, whether or not transferable and whether fully vested or vesting in the future.

II.   "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

JJ.   "*Master Settlement Agreement*" or "*MSA*" means that certain Master Settlement Agreement filed in *In Re Purdue Pharma L.P.*, No. 19-23649 (Bankr. S.D.N.Y.) entered into by and among the MDT and each of the parties listed pursuant to the Exhibits A and B of the Master Settlement Agreement and PRA L.P., as it may be amended or supplemented from time to time.

KK.   "*MSA Settlement Effective Date*" means the Settlement Effective Date in the MSA, determined in accordance with the terms and conditions of the MSA.

LL.   "*Maximum Deposit Amount*" means, at any given point in time, the Maximum Settlement Amount less the cumulative Notice and Administrative Costs incurred as of such point in time.

MM.   "*Maximum Settlement Amount*" means $174,215,320.82, inclusive of any and all expenses, fees, and costs, including, without limitation, any common benefit assessment ordered by a court pursuant to the Ongoing Common Benefit Order in MDL Case No. 1:17-md-2804, which sums represent compensatory restitution (within the meaning of 26 U.S.C. § 162(f)(2)(A)) for the operational losses for Class Members resulting from providing treatment to individuals with substance use disorder, opioid use disorder, or other opioid-related conditions. The Parties acknowledge that the extent of any Class Member's obligation to make any common benefit assessment may be subject to court challenge. For the avoidance of doubt, the Maximum Settlement Amount is limited to $174,215,320.82, the Payment Groups' aggregate payment obligation under this Settlement shall equal the Settlement Amount, and under no circumstances will Payment Groups, Settling Defendants or any other Released Party be responsible for any additional expenses, costs, or fees related to the Settlement.

NN.   "*MDT*" has the meaning set forth in the Master Settlement Agreement.

OO.   "*Net Settlement Funds*" means the Settlement Amount, less any Attorney Fee and Expense Award or Service Award, Taxes, Tax Expenses and all other applicable deductions described in Section VII.B.

6

PP.    "*Non-Party Covered Conduct Claim*" means a Cause of Action against any Non-Released Party involving, arising out of, or related to Covered Conduct (or conduct that would be Covered Conduct if engaged in by a Released Party).

QQ.    "*Non-Party Settlement*" means a settlement by any Releasor that settles any Non-Party Covered Conduct Claim and includes a release of any Non-Released Party.

RR.    "*Non-Released Party*" means a party that is not a Released Party.

SS.    "*Notice*" means the Court-approved form of the notice, substantially similar to the form attached as Exhibit F to this Agreement, advising Class Members of their rights with respect to this Agreement in accordance with Section V.D.

TT.    "*Notice and Administrative Costs*" means the reasonable sum of money not to exceed $200,000 for Notice to the Class and related administrative costs, as approved by the Court. Notice and Administrative Costs shall reduce the Maximum Deposit Amount and the Settlement Amount, without duplication.

UU.    "*Notice and Claims Administrators*" means the notice and claims administrators to be selected by Class Counsel, with the consent of Settling Defendants, and approved by the Court.

VV.    "*Notice Order*" means the Court order authorizing the dissemination of Notice to the Class.

WW.    "*Notice Plan*" means the plan for distribution of Notice that is subject to Court approval as set forth in Section V.C.

XX.    "*Objection*" means a written objection to the Settlement, or any part of this Agreement, as set forth in Section V.F.

YY.    "*Opt-Out Form*" has the meaning set forth in Section V.G.

ZZ.    "*Opt-Out Reduction Amount*" means the sum of the Putative Allocated Amounts of all Excluded Class Members.

AAA.    "*Other Action(s)*" means a lawsuit brought on behalf of any Acute Care Hospital against Settling Defendants and asserting claims that are Released Claims under this Agreement, *including San Miguel Hospital Corp., d/b/a Alta Vista Regional Hospital v. Johnson & Johnson*, No. 1:23-cv-00903 (D.N.M.); *Florida Health Sciences Center, Inc., et al. v. Richard Sackler, et al.*, Case No. 19-018882 (Cir. Ct. Broward Cnty., Fla.); *The DCH Health Care Authority, et al. v. Purdue Pharma, L.P., et al.*, Case No. CV-19-07 (Cir. Ct. Conecuh Cnty., Ala.); *Fort Payne Hospital Corporation, et al. v. McKesson Corporation, et al.*, Case No. 21-cv-2021-900016.00 (Cir. Ct. Conecuh Cnty., Ala.); and *Lester E. Cox Medical Centers d/b/a Cox Medical Centers,  et al. v. Amneal Pharms., LLC, et al.*, No. 6:22-cv-3192 (W.D. Mo.).

BBB.    "*Payment Effective Date*" means the later of (i) five (5) Business Days following the Final Judgment; (ii) the MSA Settlement Effective Date; and (iii) five (5) Business Days following the date that the Settlement Amount is determined.

7

CCC.    "*Person*" has the meaning set forth in the Master Settlement Agreement.

DDD.    "*Petition Date*" means September 15, 2019.

EEE.    "*Plaintiffs*" means the Class Members named as plaintiffs in the Action and the Other Actions.

FFF.    "*Plan*" has the meaning set forth in the Master Settlement Agreement.

GGG.    "*Plan Effective Date*" has the meaning set forth in the Master Settlement Agreement.

HHH.    "*Plan of Allocation*" means the plan or formula of allocation of the Net Settlement Funds, whereby the Net Settlement Funds shall in the future be distributed to Class Members, attached as Exhibit A, and to be approved by the Court.

III.    "*Preliminary Approval Order*" means the order (or orders) of the Court preliminarily approving this Agreement and the Settlement, as set forth fully in Section V.C.  The form of Preliminary Approval Order submitted to the Court shall be in the form of the order attached hereto as Exhibit D.

JJJ.    "*Pro Rata Share*" means, with respect to any Payment Group, the percentage equal to (a) the portion of the Maximum Settlement Amount assigned to such Payment Group pursuant to Exhibit I divided by (b) the Maximum Settlement Amount.

KKK.    "*Product*" means any and all products developed, designed, manufactured, marketed or sold, in research or development, or supported by, the Debtors, whether work in progress or in final form, whether used for medicinal or non-medicinal purposes, and whether natural, synthetic, or semi-synthetic, or any finished pharmaceutical product made from or with such product, including, but not limited to (i) any such products that are: (A) an opioid or opiate, as well as any product containing any such substance; or (B) benzodiazepine, carisoprodol, or gabapentin; or (C) a combination or "cocktail" of chemical substances prescribed, sold, bought, or dispensed to be used together that includes opioids or opiates and (ii) any such product consisting of or containing buprenorphine, codeine, fentanyl, hydrocodone, hydromorphone, meperidine, methadone, morphine, oxycodone, oxymorphone, tapentadol, tramadol, opium, heroin, carfentanil, diazepam, estazolam, quazepam, alprazolam, clonazepam, oxazepam, flurazepam, triozolam, temazepam, midazolam, carisoprodol, gabapentin, or any variant of these substances or any similar substance.

LLL.    "*Putative Allocated Amount*" means the Allocated Amount that would have been paid to an Excluded Class Member had such Excluded Class Member been a Qualifying Class Member and not elected to opt out of the Class.

MMM.    "*Qualifying Class Members*" means Class Members that submit a Registration Form and/or Claim Form and that have been determined by the Trustee and Notice and Claims Administrators to be eligible under the Plan of Allocation to receive an Allocated Amount.

NNN.    "*Registration Form*" means the document or online form, in the form attached as Exhibit B to this Agreement, that Class Members are required to submit to register to receive an Allocated Amount under this Agreement.

8

OOO.  *"Released Claims"* means any Cause of Action for Covered Conduct to the extent arising out of or related to the facts alleged in the Action.

PPP.   *"Released Parties"* and *"Released Party"* means each of the Settling Defendants and the persons described on Exhibit H.

QQQ.  *"Releasors"* means the Plaintiffs, any Class Representatives, the Class (including any Class Member that is not an Excluded Class Member), and each of their past, present, and future direct or indirect parents, subsidiaries, divisions, sister companies, affiliates (including all members of or entities associated with the Class Member's health system or health network), joint ventures, predecessors, assigns, related entities, holding companies, unincorporated business units, vendors, independent contractors, stockholders, officers, directors, insurers, general or limited partners, principals, employees, agents, attorneys, and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors, and assigns of each of the foregoing).  The inclusion of a specific reference to a type of entity in this definition shall not be construed as meaning that the entity may not be a Class Member.

RRR.   *"Sackler Parties' Representative"* has the meaning set forth in the MSA.

SSS.   *"Service Award"* means any award made by the Court to the Class Representatives in connection with their service as representatives of the Class. Service Awards shall be paid from the Settlement Amount.

TTT.   *"Settlement"* means the settlement of the Released Claims between the Settling Parties on the terms and conditions set forth in this Agreement.

UUU.  *"Settlement Amount"* means the Maximum Settlement Amount less the Opt-Out Reduction Amount less the cumulative Notice and Administrative Costs incurred as of the date the Settlement Amount is computed.

VVV.  *"Summary Notice"* means the form of summary notice attached as Exhibit G to be distributed as set forth in Section V.D.

WWW.        *"Tax"* or *"Taxes"* means all taxes, customs, duties, governmental fees or other like assessment or charge of any kind whatsoever, including all federal, state, local or foreign income, gross receipts, windfall profits, severance, property (real or personal), production, sales, use, value added, ad valorem, license, excise, franchise, transfer, gains, escheat, mortgage recording, transportation, gross operating, capital, employment, unemployment, occupation, social security, pension plan, withholding or similar taxes, customs, duties, governmental or other like assessments or charges, together with any interest, repayment supplement, additions or penalties with respect thereto and any interest in respect of such additions or penalties.

XXX.  *"Trustee"* means the Trustee of the Hospitals Trust, which is presumed to be Hon. Thomas Hogan (ret), or such other person as Class Counsel shall designate entity, subject to the consent of Settling Defendants.

YYY.  *"Unknown Claims"* means any Released Claim that a Class Member does not know or suspect to exist in their favor at the time of the release of the Released Parties that, if known by them,

9

might have affected their settlement with and release of the Released Parties, or might have affected their decision not to object to this Settlement.

## II.    Representations and Warranties

A.    **Class Representatives' Representations and Warranties.**  Class Representatives represent and warrant to Settling Defendants as follows:

1.    Each of the Class Representatives is a Class Member.

2.    Each of the Class Representatives has received legal advice from Class Counsel regarding the advisability of entering into this Agreement and the legal consequences of this Agreement.

3.    No portion of any of the Released Claims possessed by any of the Class Representatives and no portion of any relief under this Agreement to which any of the Class Representatives may be entitled has been assigned, transferred, or conveyed by or for any of the Class Representatives to any other person, except pursuant to any contingency fee agreement with Class Counsel, or to any lawful grant from a governmental entity, loan or lien.

4.    None of the Class Representatives is relying on any statement, representation, omission, inducement, or promise by the Settling Defendants, their agents, or their representatives, except those expressly stated in this Agreement.

5.    Each of the Class Representatives, through Class Counsel, has investigated the law and facts pertaining to the Released Claims and the Settlement.

6.    Each of the Class Representatives has carefully read, and knows and understands, the full contents of this Agreement and is voluntarily entering into this Agreement after having consulted with Class Counsel or other attorneys.

7.    Each of the Class Representatives has all necessary competence and authority to enter into this Agreement on its own behalf and on behalf of the Class, has authorized the execution and performance of this Agreement, has authorized Class Counsel to sign this Agreement on its behalf, and has authority to release all Released Claims on behalf of itself and all other entities that are Releasors by virtue of their relationship or association with it.

8.    None of the Class Representatives will submit an Opt-Out Form, file an Objection, or otherwise challenge the Settlement.  None of the Class Representatives will solicit, or assist others in soliciting, Class Members to submit an Opt-Out Form, file an Objection, or otherwise challenge the Settlement.

B.    **Class Counsel's Representations and Warranties.**  Class Counsel represents and warrants to the Settling Defendants as follows:

10

1.        Class Counsel believes the Settlement is fair, reasonable, adequate, and beneficial to each Class Member and that participation in the Settlement would be in the best interests of each Class Member.

2.        Because Class Counsel believes that the Settlement is in the best interests of each Class Member, Class Counsel will not solicit, or assist others in soliciting, Class Members to submit an Opt-Out Form, file an Objection, or seek any relief inconsistent with this Settlement.

3.        Class Counsel has all necessary authority to enter into and execute this Agreement on behalf of Class Representatives and Class Members.

4.        Each of the Class Representatives has approved and agreed to be bound by this Agreement.

5.        The representations of each Class Representative set forth in Section II.A are true and correct to the best of Class Counsel's knowledge.

C.        **Settling Defendants' Representations and Warranties.**  Settling Defendants represent and warrant to Class Representatives as follows:

1.        Settling Defendants have received legal advice from their attorneys regarding the advisability of entering into this Agreement and the legal consequences of this Agreement.

2.        Settling Defendants are not relying on any statement, representation, omission, inducement, or promise by Class Representatives, Class Members, or Class Counsel, except those expressly stated in this Agreement.

3.        Settling Defendants, with the assistance of its attorneys, have investigated the law and facts pertaining to the Released Claims and the Settlement.

4.        Settling Defendants have carefully read, and know and understand, the full contents of this Agreement and are voluntarily entering into this Agreement after having consulted with their attorneys.

5.        Settling Defendants have all necessary authority to enter into this Agreement, have authorized the execution and performance of this Agreement, and have authorized the person signing this Agreement on their behalf to do so, provided that, for the Estate of Raymond Sackler, the Estate of Beverly Sackler, and Estate of Jonathan Sackler (together, the "Estate Settling Defendants"), (a) to the extent that approval from a probate court is sought for the Estate Settling Defendants to enter into the Agreement, the signatures of the Estate Settling Defendants are being held in escrow pending final probate court approval confirming that the Estate Settling Defendants can enter into this Agreement, and (b) for the Estates of Beverly Sackler and Raymond Sackler, resolution of certain tax issues. The Settling Defendants other than the Estate Settling Defendants (the "Non-Estate Settling Defendants") represent that, if the signatures of the Estate Settling Defendants have not been released from escrow on the Payment Effective Date,

11

the payment obligations under this Agreement will be made in full by the Payment Groups and Payment Parties, however those terms are defined under the MSA at the time of the MSA Settlement Effective Date. The Parties agree and acknowledge that, to the extent the Estate Settling Defendants are Payment Parties under the MSA, that will only occur after final probate court approval is obtained should it be sought for the Estate Settling Defendants and, for the Estates of Beverly and Raymond Sackler, resolution of certain tax issues.

6.    Settling Defendants authorize their undersigned counsel, at the appropriate time and in the appropriate manner, to accept service of process of the Complaint for purposes of effectuating this Agreement.

### III.    Class Definition

A.    **Class Certification.**  The Class Representatives and Settling Defendants agree jointly to request that the Court certify the Class defined below under Federal Rule of Civil Procedure 23(b)(3) for purposes of settlement:

1.    The "Class" or "Settlement Class" shall consist of all entities that fall within one or more of the following categories: all Acute Care Hospitals in the United States that (i) are not owned or operated by a federal, state, county, parish, city, or other municipal government; (ii) treated patients diagnosed with opioid use disorder and/or other opioid-related conditions at any time from January 1, 2009, through the date of entry of the Preliminary Approval Order; and (iii) are not physician practice groups.

2.    Any Acute Care Hospital whose Released Claims have been released by any other settlement with Settling Defendants is excluded from the Class.

B.    **Ability to Cure Omissions.** In the event that the Settling Parties agree that an entity was inadvertently omitted from the Class definition, the Settling Parties may, at any time before entry of the Final Approval Order, amend this Agreement to add such an entity. The Settling Parties agree that they will act reasonably in considering any claim of such omission.

C.    **Certification for Settlement Purposes Only.**  The Settling Parties agree that any certification of the Class will be for settlement purposes only.  The Settling Parties do not waive or concede any position or arguments they have for or against certification of any class for any other purpose in any action or proceeding, and the Settling Parties retain full right and ability to contest any such class certification.

### IV.    Settlement Amount

A.    **Master Settlement Agreement.** The parties hereto acknowledge and agree that: (i) the Settling Defendants' obligation to pay any amount hereunder will be satisfied by the Payment Parties as set forth in the Master Settlement Agreement; (ii) the obligation of each Payment Group to pay the portion of the Settlement Amount corresponding to its Pro Rata Share is set forth in the Master Settlement Agreement, (iii) the obligation of each Payment Group to pay the portion of the Settlement Amount corresponding to its Pro Rata Share shall be on a several and not joint basis as among the Payment Groups (but is joint and several to the extent set forth in the Master Settlement Agreement, as

12

among Payment Parties within each Payment Group) and is otherwise limited in the manner contemplated by the Master Settlement Agreement; and (iv) payment in full when due by or on behalf of a Payment Group of the portion of the Settlement Amount corresponding to its Pro Rata Share, as determined under the Master Settlement Agreement, shall satisfy in full all of such Payment Group's payment obligations hereunder.

B.    **Settlement Payment**. Each Payment Group's share of the Maximum Settlement Amount is set forth on Exhibit M-2 of the MSA (which has been replicated in relevant part as Exhibit I hereto for convenience). Each Payment Group shall be solely responsible for paying, when due pursuant to this Agreement, the portion of the Settlement Amount corresponding to its Pro Rata Share, and shall have no obligation to cover any portion allocated to another Payment Group. Except as expressly provided in this Section IV.B, no Payment Group shall be required to make any payment prior to the Payment Effective Date.

1.    ***Procedure if both Final Judgment and calculation of Opt-Out Reduction occur prior to MSA Settlement Effective Date.*** If on or prior to the tenth (10th) day immediately preceding the MSA Settlement Effective Date, a Final Judgment has been entered and the Opt-Out Reduction Amount, if any, has been finally determined, then, pursuant to the Master Settlement Agreement, each Payment Group shall, on the MSA Settlement Effective Date, pay to the Hospitals Trust the portion of the Settlement Amount corresponding to its Pro Rata Share.

2.    ***Procedure if Final Judgment occurs prior to MSA Settlement Effective Date but calculation of Opt-Out Reduction does not.*** If on or prior to the tenth (10th) day immediately preceding the MSA Settlement Effective Date, a Final Judgment has been entered but the Opt-Out Reduction Amount, if any, has not been finally determined, then on the MSA Settlement Effective Date:

a.    the Settling Defendants, through the Sackler Parties' Representative for each Payment Group, and Class Counsel, in conjunction with the Notice and Claims Administrator, shall cooperate in determining a reserve for Excluded Class Members (the "Opt-Out Reserve"), which shall be a conservative reasonable estimate of the Opt-Out Reduction Amount, which estimate shall err on the side of overestimating the Opt-Out Reduction Amount to avoid any negative economic consequences to the Settling Defendants that could occur as a result of the Settling Defendants paying more than their obligations under the Agreement, and within five (5) Business Days after the Opt-Out Reserve is communicated in writing to the Sackler Parties' Representative each Payment Group shall pay (in aggregate) to one or more Grantor Trust Arrangements the portion of the Opt-Out Reserve corresponding to its Pro Rata Share (each Payment Group's share being its "Pro Rata Reserve"); and

b.    each Payment Group shall, on the MSA Settlement Effective Date, pay to the Hospitals Trust an amount equal to (1) the portion of the Maximum Deposit Amount corresponding to its Pro Rata Share, less (2) the amount of its Pro Rata Reserve.

13

Thereafter, if prior to the Grantor Trust Release Date the Opt-Out Reduction Amount is finally determined in accordance with this Agreement, then:

     c.     within five (5) Business Days after the final Opt-Out Reduction Amount is communicated in writing to the Sackler Parties' Representative, each Payment Group shall pay (or cause to be paid from the Grantor Trust Arrangements) to the Hospitals Trust an amount equal to (1) the amount of its Pro Rata Reserve, less (2) the portion of the Opt-Out Reduction Amount corresponding to its Pro Rata Share (provided that if the result is less than $0, then the amount payable under this clause shall be $0); and

     d.     all amounts remaining in each Grantor Trust Arrangement following such payment shall be released from such Grantor Trust Arrangement in accordance with the written instructions of the Payment Party that is a party to such Grantor Trust Arrangement.

     3.     ***Procedure if Final Judgment has not occurred prior to MSA Settlement Effective Date.*** If on or prior to the tenth (10th) day immediately preceding the MSA Settlement Effective Date, a Final Judgment has not been entered, then, pursuant to the Master Settlement Agreement, on the MSA Settlement Effective Date, each Payment Group shall pay to a Grantor Trust Arrangement the portion of the Maximum Deposit Amount corresponding to its Pro Rata Share. If at any time thereafter and prior to the Grantor Trust Release Date, a Final Judgment is entered:

     a.     if the Opt-Out Reduction Amount has not yet been determined in accordance with this Agreement, then:

     (i)     within five (5) Business Days after the Opt-Out Reserve is communicated in writing to the Sackler Parties' Representative, each Payment Group shall pay (or cause to be paid from the Grantor Trust Arrangements) to the Hospitals Trust an amount equal to (1) the portion of the Maximum Deposit Amount corresponding to its Pro Rata Share less (2) its Pro Rata Reserve; and

     (ii)     any portion of the payment described in this Section IV.B.3.a that is paid by the Payment Group to the Hospitals Trust but not paid from the applicable Grantor Trust Arrangement shall be released from the Grantor Trust Arrangement in accordance with the written instructions of the Payment Party that is a party to the escrow agreement related to such Grantor Trust Arrangement.

     Thereafter, if prior to the Grantor Trust Release Date the Opt-Out Reduction Amount is finally determined in accordance with this Agreement, then:

     (iii)     within five (5) Business Days after the final Opt-Out Reduction Amount is communicated in writing to the Sackler Parties' Representative, each Payment Group shall pay (or cause to be paid from

14

the Grantor Trust Arrangements) to the Hospitals Trust an amount equal to (1) the amount of its Pro Rata Reserve, less (2) the portion of the Opt-Out Reduction Amount corresponding to its Pro Rata Share (provided that if the result is less than $0, then the amount payable under this clause shall be $0); and

(iv)    all amounts remaining in each Grantor Trust Arrangement following such payment shall be released from such Grantor Trust Arrangement in accordance with the written instructions of the Payment Party that is a party to such Grantor Trust Arrangement.

b.    if the Opt-Out Reduction Amount has been finally determined in accordance with this Agreement, then:

(i)    within five (5) Business Days after the Opt-Out Reduction Amount is communicated in writing to the Sackler Parties' Representative, each Payment Group shall pay (or cause to be paid from the Grantor Trust Arrangements) to the Hospitals Trust the portion of the Settlement Amount corresponding to its Pro Rata Share; and

(ii)    all amounts remaining in each Grantor Trust Arrangement following such payment shall be released from such Grantor Trust Arrangement in accordance with the written instructions of the Payment Party that is a party to such Grantor Trust Arrangement.

4.    Notwithstanding anything to the contrary in this Section IV.B:

a.    If at any time after funds are deposited into the Grantor Trust Arrangements this Agreement is terminated, then all remaining funds in each Grantor Trust Arrangement with respect to this Agreement shall be released in accordance with the written instructions of the Payment Party that is a party to such Grantor Trust Arrangement.

b.    On the Grantor Trust Release Date, all amounts in each Grantor Trust Arrangement shall be promptly released from such Grantor Trust Arrangement in accordance with the written instructions of the Payment Party that is a party to such Grantor Trust Arrangement. Such release shall not limit the obligations of the Payment Groups under this Agreement. However, amounts released to the Hospitals Trust (other than interest pursuant to Section IV.B.3(c)) from Grantor Trust Arrangements shall constitute full and timely payment of the Maximum Settlement Amount.

c.    Each Payment Group shall be responsible solely for funding its respective share of each Settlement Payment Obligation as set forth in the Master Settlement Agreement, whether such payment is required to be made to the Hospitals Trust, through a Payment Party, or by causing amounts to be paid from a Grantor Trust Arrangement.  Nothing in this Agreement shall be construed to

15

increase, alter or modify the amount any Payment Group or Payment Party is required to pay pursuant to the Master Settlement Agreement.

d.      Class Members will receive the actual interest generated on funds in the Grantor Trust Arrangements (net of tax distributions) based on the escrowed principal amount that corresponds to the amounts finally determined to be payable to them. The Payment Party that is a party to the applicable Grantor Trust Arrangement will select the investments made pursuant to such Grantor Trust Arrangement, which investments shall consist of U.S. Treasuries and money market funds that invest in U.S. Treasuries.  Any interest associated with amounts attributed to Excluded Class Members will be retained by the Payment Party that is a party to the applicable Grantor Trust Arrangement.

e.      Each Grantor Trust Arrangement shall be subject to the terms and conditions of Exhibit Z to the Master Settlement Agreement, including with respect to tax distributions payable to the Payment Party that is a party to such Grantor Trust Arrangement.

C.      **No Additional Payment Obligations.**  The obligations incurred pursuant to this Agreement, if paid pursuant to the Master Settlement Agreement, shall be in full and final disposition and settlement of all Released Claims.  The Settlement Amount paid or provided by Settling Defendants is their sole monetary obligation under this Agreement.  Once the Settlement Amount is paid, Payment Parties and Settling Defendants shall have no further monetary obligations of any sort or kind to Plaintiffs, the Class, or any counsel for Plaintiffs pursuant to this Agreement or the Settlement.  Under no circumstances will Payment Parties and Settling Defendants be required to pay more than the Settlement Amount pursuant to this Agreement and the Settlement set forth herein.  For purposes of clarification, the payment of Taxes and Tax Expenses (as set out in Section IV.D), any Fee and Expense Award, the Notice and Administrative Costs, and any other costs associated with the implementation of this Agreement, shall be exclusively paid from the Settlement Amount. For purposes of clarification, if a Payment Group makes its full Pro Rata Share of the Settlement Amount, such Payment Group's obligation with respect to the Settlement Amount shall not include any unpaid Pro Rata Share of another Payment Group with respect to the Settlement Amount and the Settlement shall be fully effective with respect to such Payment Group that has paid its Pro Rata Share notwithstanding the lack of payment by another Payment Group, as per the several obligations set forth in Section IV.A. above.

D.      *Taxes.*

1.      All funds held in the Hospitals Trust shall be treated by the Settling Parties as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1 (and corresponding or similar provisions of state, local, or foreign law, as applicable), and the Court shall have continuing jurisdiction over the funds held in the Hospitals Trust, pursuant to Treas. Reg. § 1.468B-1(c)(1), and over the funds held in the Hospitals Trust as its administrator.

2.      The following shall be paid out of the funds held in the Hospitals Trust: (i) all taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Settlement Amount and (ii) all expenses and costs incurred in

16

connection with the operation and implementation of this Section, including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Section (collectively, "Tax Expenses"). In all events, neither the Settling Defendants nor any other Released Party nor their counsel shall have any liability or responsibility for the Taxes described in clause (i) above or the Tax Expenses. Neither the Settling Defendants nor any Released Party nor their counsel is responsible therefor, nor shall they have any liability therefor. The Settling Parties agree to cooperate to the extent reasonably necessary to carry out the provisions of this Section and with respect to any tax claim, dispute, investigation, audit, examination, contest, litigation, or other proceeding relating to the Agreement.

3.     The Settling Parties agree that: (i) each of the Class Members is enforcing its rights as a private party and is not enforcing any rules or exercising any regulatory powers, in either case as part of a governmental function; and (ii) the Settlement Amount is being paid as compensatory restitution (within the meaning of 26 U.S.C. § 162(f)(2)(A)) in order to restore, in whole or in part, the Class Members to the same position or condition that they would be in had the Class Members not suffered alleged damage or harm allegedly caused by the Settling Defendants.

## V.     Approval and Notice

### A.     Approval and Effectiveness.

1.     It is a condition to the Settlement that (i) within a reasonable time period after execution of this Agreement, and in all events, unless waived by the Sackler Parties' Representative in its sole discretion, before the MSA Settlement Effective Date, the Court approve and enter the Preliminary Approval Order in the form attached as Exhibit D, provided that any modification to the Preliminary Approval Order must be acceptable to all Class Representatives and the Sackler Parties' Representative, and (ii) the Preliminary Approval Order remain in full force and effect until entry of the Final Approval Order.

2.     It is a condition to the Settlement that (i) within a reasonable time period after the Preliminary Approval Order, the Court approve and enter the Final Approval Order in the form attached as Exhibit E, provided that any modification to the Final Approval Order must be acceptable to all Class Representatives and the Sackler Parties' Representative, and (ii) the Final Approval Order remain in full force and effect until it becomes a Final Judgment.

3.     It is a condition to the Settlement that the Final Approval Order not be reversed, vacated, or modified on appeal, a motion for reconsideration, or other review and that it becomes a Final Judgment.

4.     The Settling Parties agree that the Settlement is not final and enforceable until the Payment Effective Date, except as to any provisions that the Agreement provides shall occur prior to the Payment Effective Date.  The Preliminary Approval

17

Order and the Final Approval Order shall be enforceable upon entry in accordance with their terms.

B.    **Reasonable Best Efforts to Effectuate This Settlement.**  The Settling Parties: (i) acknowledge that it is their intent to consummate this Agreement; and (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement the terms and conditions of this Agreement and to exercise their best efforts to accomplish the terms and conditions of this Agreement.  The Settling Parties will continue to work cooperatively to complete and submit promptly to the Court for approval the motions for Preliminary Approval and Final Approval and such additional documentation as may be necessary for the Court to make the determinations required hereunder, and to address any concerns regarding the Agreement or the Settlement identified by the Court or any court of appeal.

C.    **Preliminary Approval.**

1.    No later than 30 days after the execution of this Agreement, Class Counsel shall submit the Agreement together with its Exhibits to the Court and shall apply for entry of the Preliminary Approval Order (the "*Motion for Preliminary Approval*") pursuant to Federal Rule of Civil Procedure 23(e).

2.    The Motion for Preliminary Approval shall request the entry of a Preliminary Approval Order that includes: (i) the findings required by Federal Rule of Civil Procedure 23(e)(1)(B); (ii) approval of the Notice, substantially in the form of Exhibit E, and proposed Notice Plan; (iii) scheduling of the Fairness Hearing to occur after the conclusion of the notice period and no earlier than ninety (90) days following the entry of the Preliminary Approval Order; (iv) a stay of the Action as to the Settling Defendants until the Court renders a final decision regarding the approval of the Settlement; (v) granting a stay of all proceedings in any forum brought by Releasors as to the Settling Defendants; (vi) enjoining each Class Member from filing or prosecuting any new proceedings for Released Claims, unless and until both (A) such Class Member files a timely and valid Opt-Out Form and that Opt-Out Form becomes effective; and (B) any other injunction of claims against the Released Parties has expired or dissolved; and (vii) directing the Class Representatives to file motions to sever and stay the Other Actions brought by the Class Representatives as to Settling Defendants until the Court renders a final decision regarding the approval of the Settlement, to the extent not already filed. The Preliminary Approval Order shall provide that if this Agreement is not approved, is voided, terminated, or fails to become effective for any reason, the Settling Parties shall be returned to the *status quo* that existed immediately prior to the date of the filing of the Action, except as expressly provided herein.

3.    Class Counsel shall provide Settling Defendants with a draft of their Motion for Preliminary Approval, together with any accompanying memorandum of law and proposed form of notice, at least five (5) Business Days in advance of filing and shall consider in good faith any suggestions that Settling Defendants may have.  Class Counsel shall not file such a motion without the Sackler Parties' Representative's consent, which consent shall not be unreasonably withheld.

18

D.    **Notice to the Class.**

1.    Notice of the Settlement shall be given as soon as practicable after Preliminary Approval and, in any event, the notice process shall commence no later than twenty-one (21) calendar days following the entry of the Preliminary Approval Order. Notice shall be provided by the Notice and Claims Administrators to Class Members pursuant to the Notice Plan, subject to any modifications required by the Court.  The Notice and Summary Notice are attached as Exhibits F and G to this Agreement, and any modifications to them must be acceptable to all Class Representatives and the Sackler Parties' Representative in their individual discretion.

2.    Class Counsel shall move, as part of the Motion for Preliminary Approval, for entry of the Notice Order.  Class Counsel shall also submit to the Court for approval a proposed form of, method for, and schedule for dissemination of notice to the Class.  The Motion for Preliminary Approval shall recite and ask the Court to find that the proposed form of and method for dissemination of notice to the Class constitutes valid, due, and sufficient notice, constitutes the best notice practicable under the circumstances, and complies fully with the requirements of Federal Rule of Civil Procedure 23.

3.    Class Counsel shall seek an order authorizing and ordering the Trustee and the Notice and Claims Administrators:  (i) to request from any Acute Care Hospital that seeks to exclude any other entity from the certified Class, documentation and declarations supporting any purported authority to opt out other entities and (ii) to submit a report (an "*Opt-Out Report*") which shall be provided no later than fourteen (14) calendar days after the Opt-Out Deadline, as defined in Exhibit D, to the Court, Class Counsel, and Settling Defendants and the Sackler Parties' Representative identifying all requests to be excluded from the Class, and whether any such requests were deemed untimely and/or failed to provide any of the information required in Section V.G.1 or were otherwise inadequate, and relevant information regarding the Putative Allocated Amount that any such Excluded Class Member would have received under the Plan of Allocation had such excluded class member not elected to opt out of the Class, for purposes of calculating the Opt-Out Reduction Amount. If the Putative Allocated Amount cannot be calculated within seven (7) calendar days after the Opt-Out Deadline, then the Opt-Out Report shall be delivered without the Putative Allocated Amount information and the Notice and Claims Administrators shall deliver an amended Opt-Out Report with the Putative Allocated Amounts as soon as such amounts can be calculated.  For the avoidance of doubt, the Opt-Out Reduction Amount will be determined by the Trustee and the Claims Administrator using the Plan of Allocation to calculate Putative Allocated Amounts.

4.    No later than fourteen (14) calendar days following the commencement of the dissemination of the Notice, Class Counsel shall serve on Settling Defendants and file with the Court proof, by affidavit or declaration, of such dissemination.

E.    **CAFA Notice.**  Pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. Settling Defendants shall serve notice of the Settlement on the appropriate federal and state officials no later than ten (10) calendar days after the filing of this Agreement with the Court.  If the Settlement does not become final for any reason, Settling Defendants shall not recover the notice and notice

19

administration costs, including any costs of providing notice pursuant to the Class Action Fairness Act of 2005.

F.    **Objections to Settlement.**

      1.    **Form of Objection & Deadline for Filing.**  The Notice shall require that any Objection to the Settlement, or any part of this Agreement, including Attorneys' Fees and Expenses, the Class Representatives' Service Awards, or the Plan of Allocation be in writing. The deadline for filing the Objection with the Court shall be forty-five (45) calendar days after commencement of the dissemination of the Notice.

      2.    **Content of Objection.**  The written Objection filed with the Court shall: (i) state the name, address, and telephone number of the objector and must be signed by the objector even if represented by counsel; (ii) state that the objector is objecting to the proposed Settlement, Plan of Allocation, the application for Attorneys' Fees and Expenses, and/or application for Service Awards to Class Representatives; (iii) state the Objection(s) and the specific reasons for each Objection, including any legal and evidentiary support the objector wishes to bring to the Court's attention; (iv) state whether the Objection applies only to the objector, to a subset of the Class, or to the entire Class; (v) identify all class actions to which the objector and its counsel have previously objected; (vi) include documents sufficient to prove the objector's membership in the Class, such as the objectors' status as an Acute Care Hospital and its treatment of patients diagnosed with opioid use disorder; (vii) state whether the objector intends to appear at the Fairness Hearing; (viii) if the objector intends to appear at the Fairness Hearing through counsel, state the identity of all attorneys who will appear on the objector's behalf at the Fairness Hearing; and (ix) state that the objector submits to the jurisdiction of the Court with respect to the Objection or request to be heard and the subject matter of the Settlement of the Action, including, but not limited to, enforcement of the terms of the Settlement.

      3.    **Waiver.**  Any Class Member that does not object in the manner provided herein shall be deemed to have waived such Objection and shall forever be foreclosed from making any Objection to the fairness or adequacy of the proposed Settlement, the Plan of Allocation, the Attorneys' Fees and Expenses, or to any Service Award, unless otherwise ordered by the Court.  All presentations of Objections will be further limited by the information listed in the Objection.  A Class Member's compliance with the foregoing requirements does not in any way guarantee a Class Member the ability to present evidence or testimony at the Fairness Hearing.  The decision whether to allow any testimony, argument, or evidence, as well as the scope and duration of any and all presentations of Objections at the Fairness Hearing, will be in the sole discretion of the Court.

G.    **Opt-Out.**

      1.    Any entity within the Class that wishes to opt out of the Class and Settlement must submit a written and signed statement entitled "Opt-Out Form" to the Notice and Claims Administrators and email it to the Sackler Parties' Representative and

20

Class Counsel as set forth in the Notice. The Opt-Out Form must certify, under penalty of perjury in accordance with 28 U.S.C. § 1746, that the submitting entity is acting on its own behalf, is included in the Class definition, and is legally authorized to exclude itself from the Settlement and must:

      a.     provide an affidavit or other proof of the standing of the submitting entity and why they would be a Class Member absent the Opt-Out;

      b.     provide the information required under Section D of the Claim Form so that the Putative Allocated Amount that would have been paid to an Excluded Class Member absent the Opt-Out can be calculated, for purposes of calculating the Opt-Out Reduction Amount;

      c.     provide the submitting entity's name, address, telephone number, and email address (if available);

      d.     provide the entity's National Provider Identifier (if available) and CMS Certification Number (if available);

      e.     provide a list of current and former names of the entity, including any and all names under which the entity does or has done business since January 1, 2009; and

      f.     be received by the Trustee, the Notice and Claims Administrators, Class Counsel, and the Sackler Parties' Representative no later than the date designated for such purpose in the Notice.

2.     An Opt-Out Form that fails to satisfy any of the requirements set forth in Section V.G.1, including, but not limited to, the provision of inaccurate or incomplete information, shall be null and void and shall have no effect whatsoever on the entity's membership in the Class.

3.     All Opt-Out Forms must be served on such schedule as the Court may direct. In seeking Preliminary Approval, the Settling Parties will request that the deadline for receipt of Opt-Out Forms be forty-five (45) calendar days after commencement of dissemination of the Notice.

4.     Opt-Out Forms shall be deemed valid only for the entity named in the request.

5.     Opt-Out Forms shall be deemed timely if received by the Notice and Claims Administrators, Class Counsel, and the Sackler Parties Representative no later than the date designated for such purpose in the Notice.

6.     Any entity that submits a timely and valid Opt-Out Form in accordance with Section V.G.1 shall not (i) be bound by any orders or judgments effecting the Settlement; (ii) be entitled to any of the relief or other benefits provided under this

Agreement; (iii) gain any rights by virtue of this Agreement; or (iv) be entitled to submit an Objection.

7.      Any Class Member that does not submit a timely and valid Opt-Out Form in accordance with Section V.G.1 submits to the jurisdiction of the Court and, unless the Class Member submits an Objection that complies with the provisions of Section V.F, shall waive and forfeit any and all Objections to the Settlement or the Agreement the Class Member may have asserted.

8.      No "mass," "class," "group" or otherwise combined Opt-Out Form shall be valid, and no entity may submit an Opt-Out Form on behalf of any other entity that is included in the Class definition including, but not limited to, the entity's subsidiaries, affiliated or related companies or business entities, divisions, partnerships, joint ventures clients, customers, or administrative services organization.

9.      **Opt-Out Report.**  No later than fourteen (14) calendar days after the deadline set by the Court for receipt of the Opt-Out Forms, and at least fifteen (15) Business Days prior to the Fairness Hearing, the Trustee and the Notice and Claims Administrators shall submit to the Court, Class Counsel, and the Sackler Parties' Representative, on behalf of the Settling Defendants the Opt-Out Report as described in Section V.D.3.

H.      **Motion for Final Approval and Entry of Final Judgment.**

1.      On or before the deadline set by the Court in the Preliminary Approval Order, Class Counsel shall file a motion for final approval of the Settlement (the "*Motion for Final Approval*").  In the Motion for Final Approval and at the Fairness Hearing, the Settling Parties will request that the Court:  (i) enter the Final Approval Order in the form attached as Exhibit E to this Agreement, provided that any modifications to the Final Approval Order must be acceptable to Class Representatives and the Settling Defendants (including by the Sackler Parties' Representative acting on the Settling Defendants' behalf); (ii) finally certify the Class; (iii) approve and adopt the Agreement as final, fair, reasonable, adequate, and binding on all Class Members; (iv) enter judgment dismissing the Action with prejudice and directing the dismissal with prejudice of any of the Other Actions; and (v) permanently enjoin any Class Member from asserting or pursuing any Released Claim against any Released Party in any forum.  The Final Approval Order and Final Judgment shall contain provisions:

  a.      certifying the Class for settlement purposes; fully and finally approving the Settlement contemplated by this Agreement and its terms as being fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23 and directing its consummation pursuant to its terms and conditions; finding that the Notice given to the Class Members constituted the best notice practicable under the circumstances and complies in all respects with the requirements of Federal Rule of Civil Procedure 23 and due process;

22

b.    entering judgment dismissing the Action with prejudice as to Released Parties and, except as provided for herein, without costs;

c.    directing that the Other Actions be dismissed with prejudice as to Released Parties and, except as provided for herein, without costs;

d.    discharging and releasing the Released Parties from all Released Claims;

e.    permanently barring and enjoining the institution and prosecution by Class Members of any other action against the Released Parties in any forum asserting any claims related in any way to the Released Claims;

f.    reserving and continuing exclusive jurisdiction over the Settlement, and all future proceedings concerning the administration, consummation, and enforcement of this Agreement, unless there is a failure of the Payment Effective Date under Section VI.B. hereto;

g.    determining pursuant to Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing entry of a Final Approval Order as to Plaintiffs and Settling Defendants; and

h.    containing such other and further provisions consistent with the terms of this Agreement to which the Settling Parties expressly consent in writing.

2.    Class Counsel also will request that the Court approve the proposed Plan of Allocation and application for attorneys' fees and reimbursement of expenses, as described below.

3.    Class Counsel shall provide the Sackler Parties' Representative with a draft of the Motion for Final Approval, together with any accompanying memorandum of law at least five (5) Business Days in advance of filing and shall consider in good faith any comments Settling Defendants may have.  Class Counsel shall not file such a motion without the Sackler Parties' Representative's consent, which consent shall not be unreasonably withheld.

## VI.    Conditions of Settlement; Effect of Disapproval, Cancellation, or Termination

### A.    Occurrence of Payment Effective Date.

1.    Upon the Payment Effective Date, any and all remaining interest or right of the Payment Parties (including the Settling Defendants) in or to the Settlement Amount, if any, shall be absolutely and forever extinguished.

### B.    Failure of Payment Effective Date to Occur.

1.    In the event that (i) the Payment Effective Date does not occur, for whatever reason, or (ii) the Master Settlement Agreement terminates prior to the Payment

23

Effective Date, then this Agreement shall be cancelled and terminated, unless the Settling Parties mutually agree in writing to proceed with this Agreement. Any funds held in a Grantor Trust Arrangement in accordance with Section 2.01(a)(iii) of the Master Settlement Agreement shall be released to the grantor of such Grantor Trust Arrangement.

2.      Upon receipt by the Payment Groups (as grantors under the Grantor Trust Arrangements) of the funds referenced in the immediately preceding paragraph, this Agreement shall terminate, and it, the Settling Defendants' and Payment Parties' obligations under it, and all releases contained herein shall become null and void. In the event of such a termination, (i) no Class will be deemed certified as a result of this Agreement; (ii) all orders of the Court preliminarily or otherwise approving the Settlement shall be vacated; (iii) the Plaintiffs shall voluntarily dismiss the Action and the Other Actions without prejudice as against the Settling Defendants; and (iv) the Settling Parties shall retain all of their respective rights and defenses as of immediately prior to the date on which the Action was filed. The Settling Parties shall then proceed in all respects as if this Agreement and related orders had not been executed.

C.      **No Court Approval.**

1.      If the Court declines to or does not enter the Preliminary Approval Order or the Final Approval Order, or the Payment Effective Date does not occur, the Plaintiff will voluntarily dismiss the Action without prejudice unless within thirty (30) days of such event, the Settling Parties mutually agree in writing to: (i) seek reconsideration or appellate review of any decision denying entry of such order; (ii) attempt to renegotiate the Settlement and seek Court approval of the renegotiated settlement; and/or (iii) comply with other guidance or directives the Court has provided, subject to any injunction preventing the continuation of any such proceeding.

D.      **Time to Appeal.**  The time to appeal from approval of the Settlement shall commence upon the Court's entry of the Final Approval Order regardless of whether or not either the Plan of Allocation or an application for Attorneys' Fees and Expenses has been submitted to the Court or resolved.

E.      **Orders Regarding Plan of Allocation, Attorney's Fees and Expenses, Service Award**. Any order or proceeding solely relating to the Plan of Allocation, Attorney's Fees and Expenses, or a Service Award, including any adjustments to any Class Member's claim, shall not operate to terminate or cancel this Agreement or affect or delay the finality of the Final Judgment or release of the Released Claims, or any other orders entered pursuant to this Agreement. The Plan of Allocation is not a necessary term of this Settlement, and it is not a condition of this Settlement that any particular plan of allocation be approved by the Court. Plaintiff may not cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to the Plan of Allocation or any plan of allocation in this Action. Neither the Settling Defendants nor any other Released Party shall have any responsibility or liability whatsoever for allocation of the Net Settlement Fund, nor shall the Settling Defendants object to the Plan of Allocation proposed by Plaintiff. Any order or proceeding relating to a request for approval of the Plan of Allocation, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate the Settlement or affect or delay the

24

Effective Date or the effectiveness or finality of the Final Approval Order and Final Judgment and the release of the Released Claims.

### VII.    Trustee and Notice and Claims Administrators

A.    **Selection of Trustee; Notice and Claims Administrators.**  Class Counsel shall nominate Hon. Thomas Hogan (ret.) to serve as sole Trustee ("Trustee") of the Hospitals Trust; Class Counsel shall also nominate A.B. Data Group and Cherry Bekaert Advisory, LLC, or another entity, subject to the consent of Settling Defendants, to serve as Notice and Claims Administrators that shall be subject to appointment by the Court in the Preliminary Approval Order, and that meets the following requirements:

1.    The Trustee and the Notice and Claims Administrators may not be an entity that has acted as counsel, or otherwise represented a party, in claims relating to Covered Conduct.

2.    The Trustee and the Notice and Claims Administrators shall have the authority to perform all actions consistent with the terms of this Agreement and the Hospitals Trust that they deem to be reasonably necessary to effectuate the Notice Plan, which is subject to Court approval as provided in Section V.C.  Subject to the terms of the Hospitals Trust and, as appropriate, the Court's approval, the Trustee and the Notice and Claims Administrators may retain any entity that they deem to be reasonably necessary to provide assistance in developing and administering the Notice Plan.

3.    The Claims Administrator's roles generally shall include supporting the Trustee's administration of the proposed Settlement, including reviewing, analyzing, and approving Claim Forms, including all supporting documentation, as well as determining any Qualifying Class Member's Allocated Amount or Excluded Class Member's Putative Allocated Amount and overseeing distribution of the Net Settlement Funds pursuant to the Plan of Allocation set forth in Exhibit A, as supervised by the Trustee.

4.    Any successor to the initial Trustee or the Notice and Claims Administrators shall be subject to appointment by the Court, with the consent of all Settling Parties, shall fulfill the same functions from and after the date of succession, and shall be bound by the determinations made by the predecessor(s) to date.

5.    The Trustee and the Notice and Claims Administrators shall have no authority to alter in any way the Settling Parties' or Class Members' rights and obligations under the Agreement.

6.    Settling Defendants, Settling Defendants' Counsel, and Released Parties shall have no involvement with or responsibility for supervising the Trustee or Notice and Claims Administrators and are not subject to the authority of the Trustee or Notice and Claims Administrators.

7.    All fees, costs, and expenses incurred in the administration and/or work by the Trustee and the Notice and Claims Administrators, including fees, costs, and expenses of the Notice and Claims Administrators, as well as the costs of distributing the

25

Notice, shall be paid from the Settlement Amount. Settling Defendants and other Released Parties shall have no obligation to pay any such fees, costs, and expenses other than the Settlement Amount.

B.    **Distribution of Settlement Amount.**

1.    Upon further orders of the Court, the Notice and Claims Administrators, subject to such supervision and direction of the Trustee, the Court, Class Counsel, and/or the Special Master, as may be necessary or as circumstances may require, shall administer the claims submitted by Class Members and shall oversee distribution of the Settlement Amount, including distribution of the Net Settlement Funds to Class Members pursuant to the Plan of Allocation. Subject to the terms of this Agreement and any order(s) of the Court, the Settlement Amount shall be applied as follows:

a.    to pay reasonable fees and costs, including legal fees;

b.    to pay for Notice and Administrative Costs reasonably and actually incurred in connection with providing notice to the Class, in connection with administering and distributing the Net Settlement Funds to Class Members;

c.    to pay all costs and expenses, if any, reasonably and actually incurred in soliciting claims and assisting with the filing and processing of such claims;

d.    to pay the Taxes and Tax Expenses as defined herein;

e.    to pay any Fee and Expense Award, and any Service Awards to Class Representatives, that are approved by the Court, subject to and in accordance with the Agreement; and

f.    to distribute the Net Settlement Funds to Class Members as allowed by the Agreement, the Plan of Allocation, or order of the Court.

2.    No amount may be disbursed from the Settlement Amount until the Payment Effective Date, except that: (i) Notice and Administrative Costs, to the extent authorized by the Court, may be paid from the Settlement Amount as they become due and (ii) Taxes and Tax Expenses may be paid from the Settlement Amount as they become due.

C.    **Distribution of Net Settlement Funds.**

1.    Upon the Payment Effective Date and thereafter, and in accordance with the terms of this Agreement, the Plan of Allocation, and any further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Funds shall be distributed to Class Members.

2.    The Net Settlement Funds shall be distributed to Class Members that submit a Registration Form and/or Claim Form in accordance with a Plan of Allocation to

26

be approved by the Court.  No funds from the Net Settlement Funds shall be distributed until after the Payment Effective Date.

3.    All Class Members shall be subject to and bound by the provisions of this Agreement, the releases contained herein, and the Final Judgment with respect to all Released Claims.

D.    **No Reversion.**  If there is any balance remaining in the Net Settlement Funds (whether by reason of tax refunds, uncashed checks, or otherwise), such balance shall be distributed in accordance with the Plan of Allocation or further order of the Court (but not to Settling Defendants).

E.    **Orders Regarding Plan of Allocation.**  Any order or proceeding solely relating to the Plan of Allocation, including any adjustments to any Class Member's claim, shall not operate to terminate or cancel this Agreement or affect the finality of the Final Judgment, or any other orders entered pursuant to this Agreement.

## VIII.    Class Counsel's Attorneys' Fees and Expenses

A.    **Fee and Expense Application.**  Class Counsel may submit an application or applications (the "*Fee and Expense Application*") for distributions after the Payment Effective Date from the Settlement Amount for: (i) an award of attorneys' fees; (ii) reimbursement of expenses incurred in connection with prosecuting the Action and the Other Actions brought by the Class Representatives; and (iii) any interest on such Attorneys' Fees and Expenses at the same rate and for the same periods as earned by the Settlement Amount, as appropriate, and as may be awarded by the Court.  Class Counsel will not seek an award of Fees and Expenses that exceeds what would otherwise be permissible pursuant to the Plan.

B.    **Allocation.**  Any fees and expenses awarded by the Court shall be allocated and distributed by and among Class Counsel using their judgment to compensate each counsel fairly based on their contribution to the institution, prosecution, and resolution of the Action and the Other Actions.

C.    **Payment of Fee and Expense Award.**  Any amounts that are awarded by the Court pursuant to Section VIII.A shall be paid from the Settlement Amount after the Payment Effective Date consistent with the provisions of this Agreement.

D.    **Orders Regarding Award of Fees and Expenses and Service Award.**  The procedure for, and the allowance or disallowance by the Court of, the Fee and Expense Application or application for Service Award are not part of the Settlement set forth in this Agreement.  Any order or proceeding solely relating to the Fee and Expense Application or Service Award, including any appeal therefrom or any other order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the Final Judgment and the Settlement of the Action as set forth herein, *provided* that any such order or proceeding has no impact on any other aspect of the Settlement or this Agreement, including, without limitation, Sections V.G and VI.C.

E.    **No Liability for Fees and Expenses of Class Counsel or Service Award.**  Neither the Released Parties nor their counsel shall have any responsibility for or liability whatsoever with respect to any payment(s) to Class Counsel pursuant to this Agreement and/or to any other entity who may

27

assert some claim thereto or any Fee and Expense Award or Service Award that the Court may make in the Action, other than as set forth in this Agreement.

F. **Service Award.** Class Representatives may request Service Awards in connection with their representation of the Class. Class Representatives' support for the Settlement is not in any way conditioned on their right to request, or receipt of, Service Awards.

**IX.    Releases and Dismissal**

A.    **Claim-Over and Non-Party Settlement.**

1.    The payments made under this Agreement shall be the sole payments made by the Released Parties to Class Members involving, arising out of, or related to the Released Claims. Claims by Class Members against non-parties shall not result in additional payments by the Released Parties, whether through contribution, indemnification, or any other means.

2.    No Released Party shall seek to recover for amounts paid under this Agreement based on indemnification, contribution, or any other theory from a manufacturer, pharmacy, hospital, pharmacy benefit manager, health insurer, third-party vendor, trade association, distributor, or health care practitioner, provided that a Released Party shall be relieved of this prohibition with respect to any entity that asserts a Claim-Over against it. For the avoidance of doubt, nothing herein shall prohibit a Released Party from recovering amounts owed pursuant to insurance contracts.

3.    To the extent that, on or after the Payment Effective Date, any Releasor enters into a Non-Party Settlement, including any plan of reorganization (whether individually or as a class of creditors), the Releasor will include (or in the case of a Non-Party Settlement made in connection with a bankruptcy case, will cause the debtor to include), unless prohibited from doing so under applicable law, in the Non-Party Settlement a prohibition on contribution or indemnity of any kind substantially equivalent to that required from Settling Defendants in Section IX.A.2 or a release from such Non-Released Party in favor of the Released Parties (in a form equivalent to the releases contained in this Agreement) of any Claim-Over. The obligation to obtain the prohibition and/or release required by the subsection is a material term of this Agreement.

4.    To the extent that, on or after the Payment Effective Date, a settlement on behalf of a class that would otherwise be a Non-Party Settlement is submitted to a court for preliminary or final approval under Rule 23 of the Federal Rules of Civil Procedure, the proponents of the settlement will include, unless prohibited by applicable law, a prohibition on contribution or indemnity of any kind substantially equivalent to that required from Settling Defendants in Section IX.A.2 or a release from such Non-Released Party in favor of the Released Parties (in a form equivalent to the releases contained in this Agreement) of any Claim-Over. For the avoidance of doubt, the Settling Parties acknowledge that the effectiveness of any such provision will depend upon its approval by the court to which the settlement agreement is submitted in accordance with Rule 23

28

of the Federal Rules of Civil Procedure. The obligation to include the prohibition and/or release required by the subsection is a material term of this Agreement.

5.      It is the intent of the Parties that the Agreement meets the Uniform Contribution Among Tortfeasors Act and any similar state law or doctrine that reduces or discharges a released party's liability to pay other parties.

6.      The provisions of this Section IX.A are intended to be implemented consistent with these principles. This Agreement and the releases and dismissals provided for herein are made in good faith.

7.      In the event that any Class Member obtains a judgment with respect to a Non-Released Party and such Non-Released Party asserts a Non-Party Covered Conduct Claim against the Released Parties related to the Released Claims, that Class Member and Settling Defendants shall take the following actions to ensure that the Released Parties do not pay more with respect to the Released Claims to Class Members or to Non-Released Parties than the amounts owed under this Agreement by Settling Defendants:

   a.      Settling Defendants or the Sackler Parties' Representative shall notify the Class Member of the Claim-Over within sixty (60) days of the assertion of the Claim-Over or within sixty (60) days of the Payment Effective Date, whichever is later.

   b.      Settling Defendants' payment obligations under this Agreement are and shall be binding, notwithstanding the existence of any Claim-Over.  In no event shall any Class Member be required to forego, disgorge, diminish, or alter any amounts owing under this Agreement as a result of any Claim-Over.

   c.      Settling Defendants and the Class Member shall meet and confer concerning the means to hold the Released Parties harmless and ensure that Settling Defendants or Released Parties are not required to make any payment with respect to the Released Claims beyond the Settlement Amount owed by Settling Defendants under this Agreement.

   d.      The Class Member and Settling Defendants shall take steps sufficient and permissible under applicable law to hold the Released Parties harmless from the Claim-Over and ensure the Released Parties are not required to make any payment with respect to the Released Claims beyond the Settlement Amount owed by Settling Defendants under this Agreement. Such steps shall include, where permissible:

      (i)      Support by Releasors of a motion to dismiss or such other appropriate motion as may be filed by Settling Defendants or Released Parties in response to any Claim filed in litigation or arbitration; and

      (ii)      Such other actions as that Releasor and Settling Defendants may devise to hold the Released Parties harmless from the Claim-Over.

29

B.      **Litigation Bar.**  The Settling Parties contemplate and agree that this Agreement may be pleaded as a bar to a lawsuit, and an injunction may be obtained, preventing any action from being initiated or maintained in any case sought to be prosecuted on behalf of any Releasors with respect to the Released Claims.

C.      **General Release**. The Releasors acknowledge that, by executing this Agreement, and for the consideration received hereunder, it is their intention to release, and they are releasing, all Released Claims, even unknown Claims. In connection with the releases provided for in the Agreement, each Releasor expressly, knowingly, and voluntarily waives, releases, and forever discharges any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, which reads:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Releasors likewise expressly, knowingly, and voluntarily waive the provisions of Section 20-7- 11 of the South Dakota Codified Laws, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

The Releasors acknowledge that they have been advised by Class Counsel of the contents and effects of California Civil Code § 1542, and hereby expressly waive and release with respect to the Released Claims any and all provisions, rights, and benefits conferred by California Civil Code § 1542 or by any equivalent, similar, or comparable law or principle of law in any jurisdiction, including, but not limited to, Section 20-7-11 of the South Dakota Codified Laws. A Releasor may hereafter discover facts other than or different from those which it knows, believes, or assumes to be true with respect to the Released Claims, but each Releasor hereby expressly waives, and fully, finally, and forever settles, releases, and discharges, upon the Class Settlement Effective Date, any and all Released Claims that may exist as of such date but which Releasors do not know or suspect to exist, whether through ignorance, oversight, error, negligence or through no fault whatsoever, and which, if known, would materially affect the Releasors' decision to participate in this Agreement.

D.      **Assigned Interest Waiver.**  To the extent that any Releasor has any direct or indirect interest in any rights of a third party that is a debtor under the Bankruptcy Code as a result of a claim arising out of Covered Conduct by way of assignment or otherwise, including as a result of being the beneficiary of a trust or other distribution entity, to assert claims against the Released Parties (whether derivatively or otherwise), under any legal or equitable theory, including for indemnification, contribution, or subrogation, such Releasor waives the right to assert any such claim, or to receive a distribution or any benefit on account of such claim and such claim, distribution, or benefit shall be deemed assigned to the Released Parties.

E.      ***Res Judicata.***  Nothing in this Agreement shall be deemed to reduce the scope of the *res judicata* or claim preclusive effect that the Settlement gives rise to under applicable law.

F.      **Effectiveness.**  The releases set forth in the Agreement shall not be impacted in any way by any dispute that exists, has existed, or may later exist between or among the Releasors.  Nor shall such releases be impacted in any way by any current or future law, regulation, ordinance, or court or agency order limiting, seizing, or controlling the distribution or use of the Settlement Amount or any portion thereof, by the enactment of future laws, or by any seizure of the Settlement Amount or any portion thereof.

G.      **Cooperation.**  Plaintiffs and Class Representatives (i) lack a present intent to, and will not encourage any person or entity to bring or maintain any Released Claim against any Released Party or any other Cause of Action released pursuant to this Agreement against any Released Party and (ii) will reasonably cooperate with and not oppose any effort by any Released Party to secure the prompt dismissal of any and all Released Claims or any other Cause of Action released pursuant to the Release against any Released Party, including suits brought by non-Class Representatives or non-Plaintiffs based on Released Claims or any other Cause of Action released pursuant to the Release against any Released Party. Class Representative and Class Counsel will meet and confer and make reasonable efforts to resolve any action that is filed by a non-Plaintiff or Non-Class Representative against a Released Party on or after the date of the Preliminary Approval Order.

H.      **Non-Released Claims.**  Notwithstanding the foregoing or anything in the definition of Released Claims, any claims solely to enforce the terms of this Agreement are not released.

I.      **Liens.**  Each Class Member agrees to be responsible for any liens, interests, actions, or claims asserted by any third party, in a derivative manner, for or against the portion of Net Settlement Funds allocated to that Class Member, including, without limitation, any derivative actions or claims asserted by any financial institutions, lenders, insurers, agents, representatives, successors, predecessors, assigns, attorneys, bankruptcy trustees, and any and all other entities who may claim through them in a derivative manner.

J.      **Estate Settling Defendants.**  To the extent that the signatures of any Estate Settling Defendant are not released from escrow on or prior to the Payment Effective Date, as set forth in Section II.C.5, then notwithstanding anything herein or in the MSA to the contrary, such Estate Settling Defendant shall not be deemed either a Released Party or a Settling Defendant under the Agreement.

X.      **Miscellaneous Provisions**

A.      **No Admission of Liability or Wrongdoing.**  The Class Representatives, the Class, and Settling Defendants agree to settle the Released Claims and to execute this Agreement solely to compromise and settle protracted, complicated, and expensive litigation.  The Settling Defendants and other Released Parties do not admit, and expressly deny, liability or wrongdoing.  This Agreement shall not be considered, construed or represented to be (i) an admission, concession or evidence of liability or wrongdoing; (ii) a waiver or any limitation of any defense otherwise available to the Settling Defendants or other Released Parties, including, without limitation, their defense of lack of personal jurisdiction (including in the Action); or (iii) an admission or concession that a class action could be certified in a litigated proceeding.

31

B.    **Voluntary Settlement.**  Each Settling Party warrants and represents that it negotiated the terms of this Agreement in good faith.  The Settling Parties agree that throughout the course of the litigation of the Action, the Settling Parties and their counsel vigorously prosecuted their claims and/or defenses consistent with the applicable rules of procedure.

C.    **Integrated Agreement.**  Except for any amendments, alterations, or modifications provided for under Section X.D, this Agreement, including its exhibits and any other attachments, embodies the entire Agreement and understanding between and among the Settling Parties relating to the subject matter hereof and supersedes (i) all prior agreements and understandings relating to such subject matter, whether written or oral, and (ii) all purportedly contemporaneous oral agreements and understandings relating to such subject matter.  It is understood by the Settling Parties that, except for the matters expressly represented herein, the facts or law with respect to which this Agreement is entered into may turn out to be other than or different from the facts now known to each party or believed by such party to be true.  Each Settling Party therefore expressly assumes the risk of the facts or law turning out to be so different, and agrees that this Agreement shall be in all respects effective and not subject to termination by reason of any such different facts or law.

The exhibits to this Agreement are:

| | |
|---|---|
| Exhibit A | Plan of Allocation |
| Exhibit B | Registration Form |
| Exhibit C | Claim Form |
| Exhibit D | Form of Preliminary Approval Order |
| Exhibit E | Form of Final Approval Order |
| Exhibit F | Form of Notice |
| Exhibit G | Form of Summary Notice |
| Exhibit H | Identifies each of the Released Parties |
| Exhibit I | Portion of Maximum Settlement Amount Allocated to each Payment Group |

D.    **Amendment.**  The terms and provisions of this Agreement may not be altered, amended, or modified except in writing signed by all Settling Parties (provided, any such writing may be executed and delivered on behalf of the Settling Defendants by the Sackler Parties' Representative). To the extent there is a conflict between the provisions of this Agreement, the Master Settlement Agreement, and/or the Plan of Allocation, each such document shall have controlling effect in the following rank order: (i) the Master Settlement Agreement, (ii) this Agreement, and (iii) the Plan of Allocation.

E.    **Execution in Counterparts.**  This Agreement may be executed in counterparts and by different signatories on separate counterparts, each of which shall be deemed an original, but all of which shall together be one and the same agreement.  One or more counterparts of this Agreement may be delivered by facsimile or electronic transmission with the intent that it or they shall constitute an original counterpart hereof.  One or more counterparts of this Agreement may be signed by electronic signature.  Counsel for the Settling Parties to this Agreement shall exchange among themselves original or scanned counterparts and a complete, assembled executed counterpart shall be filed with the Court.

F.    **Construction.**  None of the Settling Parties shall be considered to be the drafter of this Agreement or of any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this

32

Agreement.  The headings of the provisions of this Agreement are not binding and are for reference only and do not limit, expand, or otherwise affect the contents or meaning of this Agreement.

G.      **Each Party to Bear Its Own Costs and Fees.**  Except as otherwise provided herein, each Settling Party shall bear its own attorneys' fees and other litigation expenses and costs.

H.      **Inadmissibility.** The Settling Parties agree that this Agreement, its terms and the negotiations surrounding this Agreement shall not be admissible or offered or received into evidence in any suit, action, or other proceeding, under Federal Rule of Evidence 408 or any other similar rule, law or authority limiting the admissibility of such an agreement, except as provided in this Agreement, upon the written agreement of the Settling Parties hereto, pursuant to an order of a court of competent jurisdiction, or as shall be necessary to give effect to, or to declare or enforce the rights of the Settling Parties with respect to, any provision of this Agreement. Notwithstanding anything to the contrary in this Agreement or otherwise, Settling Defendants may file or use this Agreement and related materials in any action:  (i) involving a determination regarding insurance coverage; (ii) involving a determination of the taxable income or tax liability of any Settling Defendant; (iii) to support a claim for contribution and/or indemnification; or (iv) to support any argument or defense by a Settling Defendants that the Settlement Amount provides a measure of compensation for asserted harms or otherwise satisfies the relief sought.

I.      **Litigation Cooperation.**  Upon request by Settling Defendants (including by the Sackler Parties' Representative acting on their behalf), Class Representatives agree to cooperate in the provision of de-identified data from the Class Representatives for the sole purpose of a Released Party recovering amounts owed to it pursuant to any insurance contract.  If such request includes information beyond what was previously produced in the Other Actions, or used to support the Class Representatives' Registration and/or Claim Forms, the costs to extract, de-identify, and certify HIPAA compliance of such data shall be borne by Settling Defendants.

J.      **Binding Effect.**  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties.  Without limiting the generality of the foregoing, each and every covenant and agreement entered into herein by Class Representatives and Class Counsel shall be binding upon all Class Members.

K.      **Notices.**  All notices from or between the Settling Parties shall be in writing. Each such notice shall be given by: (i) email; (ii) hand delivery; (iii) registered or certified mail, return receipt requested, postage pre-paid; or (d) FedEx or similar overnight courier, and, if directed to any Class Member, shall be addressed to Class Counsel at their addresses set forth below, and, if directed to the Settling Defendants, shall be addressed to the Sackler Parties' Representative at the addresses set forth below or such other addresses as Class Counsel or the Sackler Parties' Representative, on behalf of the Settling Defendants, may designate, from time to time, by giving notice to all Settling Parties in the manner described in this paragraph.

If directed to the Class Representatives or any Class Member(s), address notice to:

John W. ("Don") Barrett
BARRETT LAW GROUP, P.A.
P.O. Box 927
404 Court Square North
Lexington, MS  39095
donbarrettpa@gmail.com

Warren T. Burns
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, TX  75202
wburns@burnscharest.com

Robert A. Clifford
CLIFFORD LAW OFFICES, P.C.
120 North LaSalle Street
36th Floor
Chicago, IL  60602
rclifford@cliffordlaw.com

Steven B. Farmer
FARMER, CLINE & CAMPBELL, PLLC
746 Myrtle Road
Charleston, WV  25314
sbfarmer@fcclaw.net

Charles J. LaDuca
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Avenue
Suite 200
Washington, D.C.  20016
charlesl@cuneolaw.com

Steven A. Martino
TAYLOR MARTINO ROWAN
455 St. Louis Street
Suite 2100
Mobile, AL  36602
SteveMartino@taylormartino.com

If directed to Settling Defendants, address notice to the Sackler Parties' Representative at:

Garrett Lynam
Kokino LLC
201 Tresser Boulevard, 3rd Floor
Stamford, CT  06901

34

Phone:  (203) 595-4552
Email:  glynam@kokino.com

Frank S. Vellucci
Summer Road LLC
207 6th Street
West Palm Beach, FL 33401
Phone: (561) 473-5060
Email: fsv@srllc.com

Leslie J. Schreyer
Norton Rose Fulbright US LLP
1301 Avenue of the Americas
New York, NY 10019-6022
Phone: +1 (212) 408-5335
Email: les.schreyer@nortonrosefulbright.com

Jonathan G. White
Inpendra Limited
2nd Floor, Eaton House
9 Seaton Place
St Helier, Jersey JE2 3QL
Phone: +44 1534 280360
Email: jonathan.white@inpendra.com

with a copy (which shall not constitute notice) to

Milbank LLP
55 Hudson Yards
New York, NY 10001
Attn: Robert Kennedy
Tel: (212) 530-5087
e-mail: rkennedy@milbank.com

and

Debevoise & Plimpton LLP
66 Hudson Boulevard
New York, NY 10001
Attention: Jasmine Ball
Phone: +1 (212) 909-6845
Email: jball@debevoise.com

35

Any Settling Party may change or add the contact information of the persons designated to receive notice on its behalf by notice given (effective upon the giving of such notice) as provided in this Section X.K (provided, any such notice with respect to any Settling Defendant shall be valid only if given by the Sackler Parties' Representative).

L.    **Consent to Jurisdiction.**  The Settling Defendants and each Class Member hereby irrevocably submit to the exclusive jurisdiction of the Court only for the specific purpose of any suit, action, proceeding, or dispute arising out of or relating to the enforcement of this Agreement. Solely for purposes of such suit, action, or proceeding, or dispute arising out of or relating to the enforcement of this Agreement, the Settling Defendants and the Class Members irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the jurisdiction of the Court or that the Court is in any way an improper venue or an inconvenient forum. For the avoidance of doubt, nothing herein shall be construed as a submission to jurisdiction in any suit, action, proceeding, or dispute that does not arise out of or relate to the enforcement of this Agreement, including, without limitation, any suit, action, proceeding, or dispute involving a determination regarding insurance coverage or the assertion of any Claims against the Settling Defendants arising from or out of, or relating to, the Covered Conduct, or the assertion by any Settling Defendant of a defense to a Claim-Over. For the avoidance of doubt, nothing herein shall be construed as a submission to jurisdiction in any action involving a determination regarding insurance coverage or defense to a Claim-Over.

M.    **Resolution of Disputes; Retention of Exclusive Jurisdiction.**  Any disputes between or among the Settling Defendants and any Class Members concerning the enforcement of this Agreement, shall, if they cannot be resolved by negotiation and agreement, be submitted to the Court. The Court shall retain exclusive jurisdiction over the implementation and enforcement of the Settlement unless the Payment Effective Date does not occur.

N.    **Choice of Law.**  This Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of New York without giving effect to that State's choice of law principles.

O.    **Severability.**  If any provision of this Settlement Agreement—excepting Section III (Class Definition), Section IV (Settlement Amount), Section V (Approval and Notice), Section VI (Conditions of Settlement; Effect of Disapproval, Cancellation, or Termination), and Section IX (Releases and Dismissal)—were for any reason held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision of this Settlement Agreement.

P.    **Waiver.**  No delay or omission by any Settling Party in exercising any rights under this Agreement will operate as a waiver of that or any other right.  A waiver or consent given by a Settling Party on any one occasion is effective only in that instance and will not be construed as a bar or waiver of any right on any other occasion, unless otherwise agreed in writing.

36

Q.	**Confidentiality.**  The terms of this Agreement shall remain confidential until the Motion for Preliminary Approval is filed, unless the Sackler Parties' Representative and Class Counsel agree otherwise, provided that the Settling Parties may disclose the terms of this Settlement to accountants, lenders, auditors, legal counsel, tax advisors, insurers, or consultants; or as part of any security or other disclosure required by law (as determined by a Settling Party and its counsel); or in response to a request by any governmental, judicial, or regulatory authority, including in connection with the Chapter 11 proceedings of Purdue Pharma L.P. and its affiliated debtors, or otherwise required by applicable law or court order; and Class Members may disclose the terms of the Settlement to any entity that has applied to serve as Claims Administrators, or settlement trust, who shall abide by the terms of this paragraph. Any formal press release by a Settling Party regarding this Settlement prior to entry of the Final Approval Order shall be shared in advance with the other Settling Party, with a reasonable opportunity for comments and suggested changes, and the Settling Parties may respond to any press comments prior to the entry of the Final Approval Order as mutually agreed among the Settling Parties. Notwithstanding the foregoing, in the event any public misstatement has been made by any Settling Party regarding this Settlement, the other Settling Parties shall be permitted to correct such public misstatement in their respective sole discretion. No such press release shall be made prior to Class Counsel moving for an order directing Notice to the Class.

[Signature Pages Follow]

37

IN WITNESS WHEREOF, the Settling Parties hereto, through their fully authorized representatives, have executed this Agreement in several counterpart originals as of the date set forth below.

Agreed to as of this _____ 2025.

38

**SETTLING DEFENDANTS, by and through their counsel:**

DAVID A. SACKLER

By: _Katherine Kelly Fell_
Milbank LLP
55 Hudson Yards
New York, NY 10001
*Attorneys for David A. Sackler*

DR. RICHARD S. SACKLER

By: ____[in escrow]*_____
Milbank LLP
55 Hudson Yards
New York, NY 10001
*Attorneys for Dr. Richard S. Sackler*

GARRETT LYNAM, AS EXECUTOR
OF THE ESTATE OF JONATHAN D. SACKLER

By: ____[in escrow per II.C.]_____
Milbank LLP
55 Hudson Yards
New York, NY 10001
*Attorneys for Garrett Lynam, Executor*
*of the Estate of Jonathan D. Sackler*

**\*** *This signature is delivered in escrow and will be considered released by the undersigned upon, and only upon, the execution by the undersigned of the Master Settlement Agreement (and related Credit Support Annex) consistent with the terms of the Stipulation Agreement dated August 1, 2025 among the undersigned and certain other members of the undersigned's Payment Group.*

DR. RICHARD S. SACKLER, AS CO-EXECUTOR
OF THE ESTATE OF RAYMOND R. SACKLER

By:___[in escrow per II.C.]_____
Milbank LLP
55 Hudson Yards
New York, NY 10001
*Attorneys for Dr. Richard S. Sackler, as Co-Executor*
*of the Estate of Raymond R. Sackler*

DAVID A. SACKLER, AS CO-EXECUTOR
OF THE ESTATE OF RAYMOND R. SACKLER

By:___[in escrow per II.C.]_____
Milbank LLP
55 Hudson Yards
New York, NY 10001
*Attorneys for David A. Sackler, as Co-Executor*
*of the Estate of Raymond R. Sackler*

THERESA E. SACKLER

By: _/s/ Jasmine Ball_____
Debevoise & Plimpton LLP
66 Hudson Blvd
New York, NY 10001
*Attorneys for Theresa E. Sackler*

ILENE SACKLER LEFCOUT

By: _/s/ Jasmine Ball_____
Debevoise & Plimpton LLP
66 Hudson Blvd
New York, NY 10001
*Attorneys for Ilene Sackler Lefcourt*

KATHE A. SACKLER

By: _/s/ Jasmine Ball_____
Debevoise & Plimpton LLP
66 Hudson Blvd
New York, NY 10001
*Attorneys for Kathe A. Sackler*

MORTIMER D.A. SACKLER

By: _/s/ Jasmine Ball_____
Debevoise & Plimpton LLP
66 Hudson Blvd
New York, NY 10001
*Attorneys for Mortimer D.A. Sackler*

**CLASS COUNSEL:**

By: _Don Barrett_  
John W. ("Don") Barrett  
BARRETT LAW GROUP, P.A.  
P.O. Box 927  
404 Court Square North  
Lexington, MS 39095

By: _____  
Warren T. Burns  
BURNS CHAREST LLP  
900 Jackson Street  
Suite 500  
Dallas, TX 75202

By: _____  
Robert A. Clifford  
CLIFFORD LAW OFFICES  
120 North LaSalle Street  
36th Floor  
Chicago, IL 60602

By: _Steve Farmer_  
Steven B. Farmer  
FARMER, CLINE & CAMPBELL, PLLC  
746 Myrtle Road  
Charleston, WV 25314

By: _CZ_  
Charles J. LaDuca  
CUNEO GILBERT & LADUCA, LLP  
4725 Wisconsin Avenue  
Suite 200  
Washington, D.C. 20016

By: _Steve Martino_  
Steven A. Martino  
TAYLOR MARTINO ROWAN  
455 St. Louis Street  
Suite 2100  
Mobile, AL 36602

# **EXHIBIT A**

<<mail id>>
<<Name1>>
<<Name2>>
<<Rep>>
<<Biz>>
<<Address1>>
<<Address2>>
<<City>><<State>><<Zip>>
<<Foreign Country>>                                                    <<Date>>

<table>
<tr><td>**YOU MUST SUBMIT YOUR REGISTRATION FORM AND CLAIM FORM BY <<DATE>>**</td></tr>
</table>

## Submitting a Claim under the Acute Care Hospital
## Class Action Settlement Agreements

To make a Claim for benefits under the Acute Care Hospital Class Action Settlement Agreements[1] reached in the litigation titled *San Miguel Hospital Corp., d/b/a Alta Vista Regional Hospital v. David Sackler, et al.*, Case No. 1:25-cv-1010-_____ (D.N.M.) (the "Settlements"), a representative from your Acute Care Hospital must fill out the attached Registration Form and submit it via email to info@acutecarehospitalsettlement.com no later than [DATE].  Upon registration, a secure file transfer protocol ("SFTP") link will be provided for you to submit the attached Claim Form and any supporting documentation.  Claim Form and documentation submissions must be completed no later than [DATE].  Each Acute Care Hospital making a Claim must submit a separate Registration Form and Claim Form.  You may obtain extra copies of all forms at www.acutecarehospitalsettlement.com.  Your Allocated Amount for each Settlement will be determined in accordance with the attached Plan of Allocation.

**Deadline:  If you do not complete and submit your Registration and Claim Forms by 5:00 p.m. prevailing Central Time on [DATE], your Claim will be rejected and you will be precluded from receiving an Allocated Amount under the Acute Care Hospital Class Action Settlement Agreement.  Do not send your Registration Form or Claim Form to the Court or to anyone other than the Notice and Claims Administrators.**

Capitalized terms not otherwise defined shall have the meaning ascribed to them in the Acute Care Hospital Class Action Settlement Agreements in *San Miguel Hospital Corp., d/b/a Alta Vista Regional Hospital v. Sackler Parties, et al.*, Case No. 1:25-cv-_____-KWR-JFR (D.N.M.).

---

[1] "Acute Care Hospital Class Action Settlement Agreement" refers to the Class Action Settlement Agreement by and between the Settling Defendants and Acute Care Hospitals dated [DATE], which is available at www.acutecarehospitalsettlement.com.

1

Class Members submitting Claims may be contacted by representatives of Class Counsel or the Notice and Claims Administrators for additional information regarding the Class Member's Claims.

A Class Member must do each of the following, according to the guidelines set forth below:

1. Complete the Registration Form electronically, which is a fillable PDF that can be downloaded from [www.acutecarehospitalsettlement.com] and must be emailed to info@acutecarehospitalsettlement.com;

   If the "Quick Pay" option is selected on the Registration Form in Section E, there is no further action needed unless directed by the Notice and Claims Administrators.  If the "Quick Pay" option is **NOT** selected, a Class Member must complete the steps outlined in Items 3-6 below;

2. Once the Registration Form is received, the Notice and Claims Administrators will communicate instructions to you for accessing an SFTP;

3. Complete the Business Associate and Confidentiality Agreement (the "BAA") electronically, which is a fillable PDF that can be downloaded from [www.acutecarehospitalsettlement.com], and submit it via SFTP;

4. The Notice and Claims Administrators will provide you with an executed BAA via the SFTP to download for your records;

5. Complete the Claim Form, as applicable, electronically, which is a fillable PDF that can be downloaded from [www.acutecarehospitalsettlement.com]; and

6. Submit the completed Claim Form with all supporting documents and information requested therein, along with the requisite claims data as described in Section F.8 of the Claim Form, via SFTP.

**PLEASE NOTE THAT THE BAA, CLAIM FORM, AND ACCOMPANYING CLAIMS DATA ABOVE SHALL NOT BE SUBMITTED VIA EMAIL**.  Instead, by submitting the Registration Form described in Item 1 above, you will receive instructions for accessing an SFTP to which the BAA, the Claim Form, and accompanying requisite claims data must be submitted.

**IT IS IMPORTANT THAT YOU ANSWER ALL QUESTIONS FULLY AND ACCURATELY.  FAILURE TO PROVIDE THE REQUESTED INFORMATION, DATA, AND/OR DOCUMENTATION BY THE DEADLINE WILL CAUSE YOUR CLAIM TO BE REJECTED AND YOUR ACUTE CARE HOSPITAL WILL BE PRECLUDED FROM RECEIVING AN ALLOCATED AMOUNT.**

2

# PLAN OF ALLOCATION

A.    The Notice and Claims Administrators (A.B. Data Group and Cherry Bekaert Advisory, LLC) shall utilize this Plan of Allocation for the determination of all Claims, including any Allocated Amount due to any Qualifying Class Member under the proprietary Acute Care Hospital Allocation Model and Algorithm (the "Model"). The Notice and Claims Administrators will consider the eligibility of a Class Member with respect to each Settlement Class separately.

B.    The Model is prepared and operated by Cherry Bekaert Advisory, LLC (formerly known as Legier & Company, apac) and is consistent with the algorithm developed in the Purdue Pharma bankruptcy proceedings (Case No. 19-23649), and utilized thereafter in the Mallinckrodt, plc (Case No. 20-12522) and Endo (Case No. 22-22549) bankruptcy proceedings. Cherry Bekaert Advisory, LLC retains all intellectual property rights in the Model.

C.    A.B. Data Group shall mail the Notice to Class Members no later than twenty-one (21) calendar days following the entry of the Preliminary Approval Order pursuant to the Notice Plan. Following the occurrence of the Effective Date for each Settlement, A.B. Data Group will be authorized to remit payment to Qualifying Class Members under this Plan of Allocation. Cherry Bekaert Advisory, LLC shall manage the Settlement website [www.acutecarehospitalsettlement.com], shall issue SFTP links upon a Class Member timely submitting the Registration Form, and shall process all timely submissions for determining eligibility for an Allocated Amount under the Model.

D.    Any Qualifying Class Member may participate in the Quick Pay option by submitting via email to [info@acutecarehospitalsettlement.com] a completed Registration Form (1) agreeing to be bound by the terms of the Class Action Settlement Agreement by and between the Settling Defendants and Acute Care Hospitals and (2) accepting the terms of the Quick Pay option in this Plan of Allocation. The default Quick Pay Amount shall be $5,000.

E.    A Class Member may elect to participate in the more detailed damages calculation using the Model, which may result in an Allocated Amount greater (but not less) than the Class Member's Quick Pay Amount. This process requires the Class Member to establish through requisite claims data (see Claim Form Section F.8) that it has calculable damages under the Model. The rejection or denial of a claim under the Model will result in a Qualifying Class Member receiving their Quick Pay Amount after an eligibility determination is made.

F.    Under the Model, Cherry Bekaert Advisory, LLC shall determine the Allocated Amount distributable to each Qualifying Class Member who has not elected Quick Pay based on: (1) the diagnostic codes associated with operational charges incurred by the Qualifying Class Member in connection with the treatment of OUD patient encounters in (a) the Emergency Department, (b) Inpatient settings, and (c) Outpatient settings;[2] (2) the portion of such charges that were not reimbursed; and (3) the following distribution determination factors and weights:[3]

---

[2] Refer to the Claim Form and instructions for the claims data details. Physician office visits and non-acute care visits should NOT be included in the data provided.

[3] The "Model" calculates a Qualifying Class Member's loss resulting from its treatment of patients with OUD and other opioid diagnoses in the emergency department and inpatient and outpatient settings, considering, among other things, the total charges and collections, including a causation algorithm applied to each patient encounter.

3

| Factors | Weighting % |
|---|---|
| MMEs | 10% |
| OUD Rates | 10% |
| Opioid Deaths | 5% |
| Operational Impact | 35% |
| Opioid Patient % | 15% |
| Litigation Participation | 25% |
| **Total** | **100.00%** |

The above factors are defined as follows:

1.      Units of morphine milligram equivalents ("MMEs") shipped into the Qualifying Class Member's service area ("Service Area") during the period of January 1, 2006 through December 31, 2014 (the "Measurement Period");

2.      Opioid use disorder rates ("OUD Rates") at the state level, prorated for each Qualifying Class Member;

3.      Opioid overdose deaths in the Qualifying Class Member's Service Area ("Opioid Deaths");

4.      Operational impact calculated using the Qualifying Class Member's opioid diagnoses codes, and charge and reimbursement data ("Operational Impact");

5.      The Qualifying Class Member's opioid related patients as a percentage of its total patients ("Opioid Patient %");

6.      Participation in active litigation against an Opioid Manufacturer and/or any Settling Defendant[4] ("Litigation Participation") by commencing a civil action in a state or federal court and engaging in the following activities:[5]

   (a)      Hosting expert visits for the purpose of enabling the experts to engage with hospital personnel on the opioid epidemic at the hospital, and to review hospital policies, procedures, and programs regarding opioids;

   (b)      Producing claims data to the Settling Defendants;

   (c)      Actively engaging in discovery by, e.g., responding to interrogatories and requests for production or admissions; supplying hospital financial documents, policies and procedures, custodial emails, and/or dispensing and discharge prescription data in response to requests by Settling Defendants or orders of a court; providing 30(b)(6) and/or fact witness testimony; propounding discovery to Settling Defendants; formally disclosing expert opinions consistent with federal and/or state court rules; or engaging in motion practice before a court and/or a special master; and

---

[4] The Settling Defendants means the Released Entities defined in each of the Acute Care Hospital Class Action Settlement Agreements.

[5] This participation factor is weighted at 25%, to be split equally amongst sub-factors (a)-(d).

4

(d)    Obtaining a court-ordered trial date.

G.    Qualifying Class Members shall be paid as promptly as possible following the Effective Date of the Settlement Agreement for which the Qualifying Class Member has submitted a Claim, on a *pro rata* basis (up to the available amounts in the Net Settlement Funds) in a manner to be determined by Cherry Bekaert Advisory, LLC.  Qualifying Class Members that submit a valid Claim will receive a payment of no less than what they would be entitled to receive from that Settlement under the "Quick Pay" option.  A Qualifying Class Member will receive maximum payment if it submits a valid Claim and the Effective Date for the Settlement occurs.

H.    An Acute Care Hospital that previously received an allocation from the Chapter 11 Bankruptcy cases of Mallinckrodt, plc (Case No. 20-12522), and/or Endo (Case No. 22-22549) may direct the Notice and Claims Administrators (or their agents or representatives) to utilize in this claims process (to the extent applicable), the claims data, and/or information submitted in those claims processes.

172316342v3

5

# **EXHIBIT B**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

SAN MIGUEL HOSPITAL
CORPORATION, d/b/a/ ALTA
VISTA REGIONAL HOSPITAL,
on behalf of itself and all others
similarly situated,

        Plaintiff,

v.

David Sackler, *et al.*,

        Defendants.

1:25-cv-1010_____-

The Hon.

# SACKLER PARTIES CLAIM REGISTRATION FORM / "QUICK PAY" ELECTION FORM

# SACKLER PARTIES CLAIM REGISTRATION FORM / "QUICK PAY" ELECTION FORM

**Claim Registration Form / "Quick Pay" Election Form Deadline (the "Registration Form Deadline"): [INSERT DATE]**

Please provide the following information to the Notice and Claims Administrators by completing this Claim Registration Form (the "Registration Form") and emailing it to [info@acutecarehospitalsettlement.com] prior to completing the Claim Form.  Capitalized terms not otherwise defined shall have the meanings ascribed to them in the Class Action Settlement Agreement[1] by and between the Settling Defendants and Acute Care Hospitals (the "Settlement Agreement") in *San Miguel Hospital Corp., d/b/a Alta Vista Regional Hospital v. Sackler Parties, et al.*, Case No. 1:23-cv-00903-KWR-JFR (D.N.M.), available on the settlement website at [www.acutecarehospitalsettlement.com.]  Each entity making a Claim ("Claimant") must submit a separate Registration Form.

To be eligible to make a Claim, the Claimant must fall within the following category: Claimant is an Acute Care Hospital in the United States that treated patients diagnosed with opioid use disorder and/or other opioid-related conditions from January 1, 2009, through the [date of entry of the Preliminary Approval Order], and is not owned or operated by a federal, state, county, parish, city, or other municipal government.  To be considered an Acute Care Hospital under the Settlement Agreement, Claimant must (a) provide medical care and other related services for surgery, acute medical conditions or injuries for a period of treatment time that is, on average, less than 25 days; and (b) either (i) appear as either active or inactive in the American Hospital Directory® as a "short term acute care" hospital or a "critical access" hospital or (ii) have an emergency department that is subject to the Emergency Medical Treatment and Labor Act ("EMTALA");

A Claimant is ineligible for recovery under the Settlement Agreement if any of its Released Claims were released in any other settlement with the Settling Defendant(s) that are party to the Settlement Agreement.

A Claimant that submits a Registration Form or Claim Form may be contacted by representatives of Class Counsel or by the Notice and Claims Administrators for additional information regarding the Class Member's claims.

The Claim Deadline is 5:00 p.m. Central Prevailing Time [DATE].  **HOWEVER, in advance of this Claim Deadline you must first submit this Registration Form by the Registration Form Deadline on [DATE] to allow sufficient time for submission of all other required documents and information required to process your Claim.**  Your Claim will be rejected and you will be precluded from receiving an Allocated Amount by the Settlement Agreement if this Registration Form is not received by the Registration Form Deadline.  Do not send your Registration Form and Claim Form to the Court or to anyone other than the Notice and Claims Administrators.

---

[1] A complete copy of the Settlement Agreement is available at www.acutecarehospitalsettlement.com.

A person who files a fraudulent claim on behalf of a Class Member may, at a minimum, be fined up to $500,000.00, imprisoned for up to five years, or both, in accordance with 18 U.S.C. §§ 152, 157. Class Members shall provide the information requested that is, to the best of their knowledge, current and valid as of the date this Registration Form is completed and delivered to the Notice and Claims Administrators.

## A. Claimant Information

Please provide the information in Section A.1 for the operating entity that owns one or more hospitals/facilities ("Operating Entity").

### 1. Operating Entity

| | |
|---|---|
| 1. Name of Operating Entity: | |
| 2. Address: | Street Address Line 1 |
| | Street Address Line 2 |
| | City / State / Zip |
| 3. Federal Employer Identification Number of Operating Entity: | _____ - _____ |

### 2. Acute Care Hospital Information

Please provide the information in Section A.2 for the Acute Care Hospital owned and/or operated by the above referenced Claimant in Section A.1 for which the Claim is filed.

| | | |
|---|---|---|
| 1. Name of Acute Care Hospital: | | |
| 2. Address: | Street Address Line 1 | |
| | Street Address Line 2 | |
| | City / State / Zip | |
| 3. a) Ownership (Check the one that applies): | Current Owner | Former Owner |
| b) Duration of Ownership: | Date Acquired/Opened / / | Date Sold/Closed / / |

**B.  Contact Information**

Please provide the information in Section B where notices should be sent:

| 1. Contact Name: | |
|---|---|
| 2. Contact Title: | |
| 3. Address: | Street Address Line 1 |
| | Street Address Line 2 |
| | City — State: — Zip: |
| 4. Phone: | (          )          _ |
| 5. Email: | |
| By filling out this Registration Form, you are deemed to consent to receipt of notice by email. | |

**For promptness and accuracy, we prefer to contact you by email and will do so if possible. Accordingly, please provide your email address.  If necessary, we may also contact you by phone or by U.S. mail.**

PAGE 3

## C.    Attorney Information

1.  Is your Acute Care Hospital submitting this Registration Form with the assistance of an attorney?

Yes    ☐

No     ☐

**If yes, please provide the following information:**

| | |
|---|---|
| 1.  Attorney Contact Name: | |
| 2.  Law Firm Name: | |
| 3.  Address: | Street Address Line 1 |
| | Street Address Line 2 |
| | City                State         Zip |
| 4.  Phone: | (     )        - |
| 5.  Email: | |
| By filling out this Registration Form, you are deemed to consent to receipt of this notice by email. | |

2.  Do you want any potential payment mailed to your attorney?

Yes    ☐

No     ☐

### D.    Aggregator Information

1. Is your Acute Care Hospital submitting this Claim Form with the assistance of an aggregator?

Yes ☐

No ☐

**If yes, please provide the following information:**

| 1. Aggregator Contact Name: | |
|---|---|
| 2. Company Name: | |
| 3. Address: | Street Address Line 1 |
| | Street Address Line 2 |
| | City | State | Zip |
| 4. Phone: | ( ) - |
| 5. Email: | |
| By filling out this Registration Form, you are deemed to consent to receipt of this notice by email. | |

### E.    Calculation of Allocated Amount and Quick Pay Election

The Class Action Settlement Agreement by and between the Settling Defendants and Acute Care Hospitals provides benefits to certain Claimants who can establish "Eligible Damages," and allocates available settlement funds to Qualifying Class Members ("Allocated Amount"). A copy of the Settlement Agreement and Plan of Allocation may be found at www.acutecarehospitalsettlement.com. To determine your Allocated Amount under the Settlement Agreement, you must submit claims data. For purposes of the Settlement, you, as a Class Member, are eligible for an Allocated Amount if you are a Qualified Class Member that treated patients with OUD and/or other opioid-related conditions and, as a result of that care, you suffered identifiable operational losses reflected in your claims data, including losses reflected in the charges to payments ratio for various treatment codes.

**If you do not wish to complete a Claim Form and submit the data necessary to calculate an Allocated Amount, you may elect to receive your "Quick Pay Amount" instead.  Subject to the Plan of Allocation, the Quick Pay Amount is $5,000 and will be disbursed as promptly as practicable after the Effective Date of the Settlement Agreement. Any eligible Class Member may elect to receive their Quick Pay Amount by answering the questions below:**

1. **Do you agree to be bound by the terms of the Class Action Settlement Agreement and to participate in the Quick Pay option?**

   Yes    No

   **If yes, please sign, verify below and complete the IRS Form W-9 (or IRS Form W-8, if applicable), which is a fillable PDF that can be downloaded from [www.acutecarehospitalsettlement.com], and return it with this Registration Form for the claimant identified in Section A above. The entity name and the EIN number noted in the W-9 (or W-8, if applicable) must match the Operating Entity Name and EIN noted in Section A.1 above:**

   > I, _____, am authorized on behalf of _____ , ("Participant") to elect to participate in the "Quick Pay" option under the Plan of Allocation. By completing this "Quick Pay" box and signing my name, I understand that the Participant waives any objection to the Class Action Settlement Agreement, requests payment of the Quick Pay Amount of $5,000, and that the Participant will be ineligible for any further Allocated Amount under the Settlement Agreement.
   >
   > I understand this Quick Pay Amount will be reduced under the Plan of Allocation if one or more Settlements is not approved or if the Participant is ineligible to receive funds from one or more Settlements.
   >
   > I direct and authorize the Notice and Claims Administrators to process the Participant's Claim as a "Quick Pay" for the Participant to receive its Quick Pay Amount under the Plan of Allocation. Payment checks will be mailed to the law firm identified in Section C of this Claim Form if Yes was selected in Section C.2. If not working with an attorney or if No was selected in Section C.2, the check will be mailed to the contact person identified in Section B.
   >
   > Signed: _____
   >
   > Printed Name:_____
   >
   > Printed Title:_____

## F. Supporting Documentation

**<span style="color:red">Important notices regarding submission to the jurisdiction of the Court in New Mexico</span>**

By the filing of this Registration Form, you hereby submit to the jurisdiction of the United States District Court, District of New Mexico for the purposes of this Claim.

**<span style="color:red">Verification of Properly Submitted Claim</span>**

The benefits provided by the Class Action Settlement Agreement by and between the Settling Defendants and Acute Care Hospitals are for the operational losses to Class Members resulting from providing treatment to individuals with substance use disorder, opioid use disorder, or other opioid-related conditions.  By submitting this Registration Form, you verify that other than what you disclosed in this Registration Form, you have not otherwise been reimbursed or compensated for the costs and expenses you are seeking.

By submitting this Registration Form, you verify, under oath and penalty of perjury, that, to the best of your knowledge, all the damages for which you seek benefits in this Registration Form relate to your provision of medical treatment in an emergency department, inpatient, or outpatient setting at an Acute Care Hospital.

**G.    Certification**

| |
|---|
| **I certify that I am authorized to sign this Registration Form, and I understand that an authorized signature on this Registration Form serves as an acknowledgement that I have a reasonable belief that the information is true and correct.**<br><br>**I certify that the Settlement Class Member has authority to release all Released Claims as identified in the Settlement Agreement on behalf of itself and all other entities who are Releasors by virtue of their relationship or association with it.**<br><br>**I certify that the Settlement Class Member I am submitting this Registration Form on behalf of is eligible to receive funds under the Settlement Agreement.**<br><br>**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.** |

Your typed signature and submission of this Registration Form will have the same force and effect as if you signed the Registration Form on paper, which you may do alternatively.

Signature: _____

Executed on date (MM/DD/YYYY): _____

Print the name of the person who is completing and signing this Claim.

Name (First Middle Last): _____

Title: _____

Acute Care Hospital: _____

Address: _____

_____

_____

Contact Phone: _____

Email: _____

172316409v4

PAGE 8

# **EXHIBIT C**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

SAN MIGUEL HOSPITAL
CORPORATION, d/b/a/ ALTA VISTA
REGIONAL HOSPITAL, on behalf of itself
and all others similarly situated,

          Plaintiff,

v.

David Sackler, *et al.*,

          Defendants.

1:23-cv-1010_____-

## SACKLER PARTIES CLAIM FORM

## SACKLER PARTIES CLAIM FORM

**Claim Deadline: [==DATE==]**

Please read the instructions carefully before filling out this Claim Form (this "Claim Form"). Capitalized terms not otherwise defined shall have the meanings ascribed to them in the Class Action Settlement Agreement (the "Settlement Agreement") by and between the Settling Defendants and Acute Care Hospitals in *San Miguel Hospital Corp., d/b/a Alta Vista Regional Hospital v. David Sackler, et al.*, Case No. 1:25-cv-1010 (D.N.M.) available on the settlement website at www.acutecarehospitalsettlement.com. Each entity making a Claim ("Claimant") must submit a separate Claim Form.

To be eligible to make a Claim, the Claimant must fall within the following category: Claimant is an Acute Care Hospital in the United States that treated patients diagnosed with opioid use disorder and/or other opioid-related conditions from January 1, 2009, through the [==date of entry of the Preliminary Approval Order==], and is not owned or operated by a federal, state, county, parish, city, or other municipal government. To be considered an Acute Care Hospital under the Settlement Agreement, Claimant must (a) provide medical care and other related services for surgery, acute medical conditions or injuries for a period of treatment time that is, on average, less than 25 days; and (b) either (i) appear as either active or inactive in the American Hospital Directory® as a "short term acute care" hospital or a "critical access" hospital or (ii) have an emergency department that is subject to the Emergency Medical Treatment and Labor Act ("EMTALA");

A Claimant is ineligible for recovery under the Settlement Agreement if any of its Released Claims were released in any other settlement with the Settling Defendant(s) that are party to the Settlement Agreement.

A Claimant that submits a Registration Form or Claim Form may be contacted by representatives of Class Counsel or by the Notice and Claims Administrators for additional information regarding the Class Member's claims.

The submission of this Claim Form by the claim deadline of 5:00 p.m., Central Prevailing Time, on [==DATE==] (the "Claim Deadline") is a prerequisite to eligibility for an Allocated Amount but does not guarantee that a Class Member will be deemed eligible to receive an Allocated Amount. If a Class Member is deemed eligible to receive an Allocated Amount, the information provided in this Claim Form will be used to determine each such Allocated Amount. Class Members may redact information on this Claim Form or any attached documents as they deem necessary, although redactions may impact the Notice and Claims Administrators' determinations as to eligibility or the Allocated Amount. A Class Member shall only submit through the Secure File Transfer Protocol ("SFTP") link *copies* of any documents that support a Claim and shall not mail or transmit hard copies or original documents; documents submitted may be destroyed after scanning and will not be returned to the Class Member.

A person who files a fraudulent claim on behalf of a Class Member may, at a minimum, be fined up to $500,000.00, imprisoned for up to five years, or both, in accordance with 18 U.S.C. §§ 152, 157. Class Members shall provide the information requested that is, to the best of their knowledge, current and valid as of the date this Claim Form is completed and delivered to the Notice and Claims Administrators.

PAGE 1

**Please provide the following information to the Notice and Claims Administrators by delivering this completed Claim Form by SFTP according to the instructions that will be provided to you once you register prior to the Claim Form Deadline set forth on page 1 of this Claim Form.**

**<u>Failure to submit a completed copy of this Claim Form and Requisite Claims Data (as described in Item F.8) herein by the Claim Deadline set forth on page 1 of this Claim Form may disqualify you from receiving an Allocated Amount.</u> Additionally, failure to complete any portion of the Claim Form or to provide <u>Requisite Claims Data (as described herein)</u> may result in a reduced Allocated Amount or disqualification from receiving an Allocated Amount.**

### A.    Claimant Information

Please provide the information in Section A.1 for the operating entity that owns one or more hospitals/facilities ("Operating Entity").

### 1.    Operating Entity

| | | | |
|---|---|---|---|
| 1. Name of Operating Entity: | | | |
| 2. Address: | Street Address Line 1 | | |
| | Street Address Line 2 | | |
| | City | State | Zip |
| 3. Federal Employer Identification Number of Operating Entity: | _____ - _____ | | |
| 4. Claim Number: If you received a Claim Number after you completed your Registration Form, please provide that six-digit Claim Number. | _____ | | |

PAGE 2

**2.    Acute Care Hospital Information**

Please provide the information in Section A.2 for the Acute Care Hospital owned and/or operated by the above referenced Claimant in Section A.1 for which the Claim is filed.

| | | | |
|---|---|---|---|
| 1. Name of Acute Care Hospital: | | | |
| 2. Address: | Street Address Line 1 | | |
| | Street Address Line 2 | | |
| | City | State | Zip |
| 3. Number of Staffed Beds[1]: | | | |

**B.    Contact Information**

Please provide the information in Section B where notices should be sent:

| | | | |
|---|---|---|---|
| 1.  Contact Name: | | | |
| 2.  Contact Title: | | | |
| 3.  Address: | Street Address Line 1 | | |
| | Street Address Line 2 | | |
| | City | State: | Zip: |
| 4.  Phone: | (          )          _ | | |
| 5.  Email: | | | |
| By filling out this Claim Form, you are deemed to consent to receipt of this notice by email. | | | |

**For promptness and accuracy, we prefer to contact you by email and will do so if possible. Accordingly, please provide your email address.  If necessary, we may also contact you by phone or by U.S. mail.**

---

[1] The number of beds reported from a hospital's most recent Medicare cost report (W/S S-3, Part I, line 7 column 2). Cost report instructions define staffed beds as, "the number of beds available for use by patients at the end of the cost reporting period.  A bed means an adult bed, pediatric bed, birthing room, or newborn bed maintained in a patient care area for lodging patients in acute, long-term, or domiciliary areas of the hospital. Beds in labor room, birthing room, post-anesthesia, postoperative recovery rooms, outpatient areas, emergency rooms, ancillary departments, nurses' and other staff residences, and other such areas which are regularly maintained and utilized for only a portion of the stay of patients (primarily for special procedures or not for inpatient lodging) are not termed a bed for these purposes."

PAGE 3

## C.      Attorney Information

1. Is your Acute Care Hospital submitting this Claim Form with the assistance of an attorney?

Yes   ☐

No    ☐

**If yes, please provide the following information:**

| 1. Attorney Contact Name: | |
|---|---|
| 2. Law Firm Name: | |
| 3. Address: | Street Address Line 1 |
| | Street Address Line 2 |
| | City | State | Zip |
| 4. Phone: | (    )        - |
| 5. Email: | |
| By filling out this Claim Form, you are deemed to consent to receipt of this notice by email. | |

2. Do you want any potential payment mailed to your attorney?

Yes   ☐

No    ☐

PAGE 4

## D.    Aggregator Information

1. Is your Acute Care Hospital submitting this Claim Form with the assistance of an aggregator?

    ☐ Yes    ☐ No

**If yes, please provide the following information:**

| | |
|---|---|
| 1. Aggregator Contact Name: | |
| 2. Company Name: | |
| 3. Address: | Street Address Line 1 |
| | Street Address Line 2 |
| | City | State | Zip |
| 4. Phone: | ( ) - |
| 5. Email: | |
| By filling out this Claim Form, you are deemed to consent to receipt of this notice by email. | |

## E.    Payment Information

Payment checks will be mailed to the law firm identified in Section C of this Claim Form if Yes was selected in Section C.2. If working with an aggregator, the check will be mailed to the Operating Entity identified in Section A.1 above. If not working with an attorney or an aggregator, or if No was selected in Section C.2, the check will be mailed to the contact person identified in Section B of this Claim Form.

PAGE 5

**F.      Additional information for Claimants seeking an Allocated Amount**

**(non-Quick-Pay option)**

If you wish to claim an Allocated Amount on the basis of a calculated amount, and not the Quick-Pay option as defined in the Registration Form and Plan of Allocation, you must complete this Section F, including all of the data identified in Item F.8 below.[2] **Failure to provide claims data for the entire time period from January 1, 2015 through December 31, 2020 may result in a reduction in Operational Impact, as defined in the Plan of Allocation.**

1.  Are you a named plaintiff in any active cause of action against opioid manufacturers, distributors, or pharmacies? ___ Yes ___ No

    a.  If yes, please provide whether the active cause of action is filed (check one):

        i.   in the Multidistrict Litigation, Case No. 1:17-md-2804: ☐

        ii.  in state court: ☐

    b.  If yes, attach a copy of the most recently filed complaint.

2.  Is the hospital/facility listed above an Acute Care Hospital in the United States that treated patients diagnosed with opioid use disorder and/or other opioid-related conditions from January 1, 2009, through the [date of entry of Preliminary Approval Order], and is not owned or operated by a federal, state, county, parish, city, or other municipal government that (i) provides medical care and other related services for surgery, acute medical conditions, or injuries for a period of treatment time that is, on average, less than 25 days; and (ii) either (a) appear as active or inactive in the American Hospital Directory® as a "short term acute care" hospital or a "critical access" hospital or (b) includes an emergency department that is subject to the Emergency Medical Treatment and Labor Act ("EMTALA");

    ___Yes ___ No

3.  Has the Acute Care Hospital listed above hosted experts' visits at the Acute Care Hospital for the purpose of enabling the experts to engage with hospital personnel on the opioid epidemic at the hospital, and to review hospital policies, procedures, and programs regarding opioids? ___Yes ___ No

4.  Has the Acute Care Hospital listed above produced claims data (as described in Item 8 below herein) to the Settling Defendants, for the cause of action noted in Item 2(a) above? ___Yes ___ No

5.  Has the Acute Care Hospital listed above actively engaged in discovery, for the cause of action, if any, noted in Item 2(a) above? ___ Yes ___ No

---

[2] The Notice and Claims Administrators and the Special Master shall have complete discretion to determine whether a Claimant has complied with this requirement.

PAGE 6

If yes, please indicate below those activities in which the Acute Care Hospital has actively engaged[3]:

    a. Responded to interrogatories and requests for production and requests for admissions?

    ___Yes ___ No

    b. Supplied hospital financial documents, policies and procedures, custodial emails, dispensing and discharge prescription data in response to requests by Settling Defendants or orders of a court? ___ Yes ___ No

    c. Provided 30(b)(6) and/or fact witness testimony? ___ Yes ___ No

    d. Propounded discovery to Settling Defendants? ___ Yes ___ No

    e. Formally disclosed expert opinions consistent with federal and/or state court rules? ___ Yes ___ No

    f. Engaged in motion practice before a court and/or a special master? ___ Yes ___ No

6. Did the Acute Care Hospital listed above have a court-ordered trial date, for the cause of action, if any, noted in Item F1.a above?

___Yes ___ No

If yes, please enter the court ordered trial date: _____

7. Did the Acute Care Hospital listed in Section A.2 timely file a claim to the Notice and Claims Administrators in the *San Miguel Hospital Corp., d/b/a Alta Vista Regional Hospital v. Johnson & Johnson, et al.*, Case No. 1:23-cv-00903-KWR-JFR in the United States District Court for the District of New Mexico?

___Yes ___ No

    a. If Yes, to the best of your knowledge, did you provide all of the Requisite Claims Data from January 1, 2015 through December 31, 2020, were approved for an allocated amount and wish to utilize the Requisite Claims Data previously provided for this Claim and the Acute Care Hospital noted in Section A.2 above?

    ___Yes ___ No

        i. If Yes, then proceed to Item F.9.

        ii. If No to Item F.7 or F.7.a, then proceed to Item F.8.

---

[3] To receive the 5% weight for this participation factor, the Acute Care Hospital must have participated in at least three of the six identified activities.

8.  For all inpatient and outpatient discharges during the period January 1, 2015 through December 31, 2020, from the Acute Care Hospital listed in Section A.2 above, please provide the following data in CSV (Comma Delimited) Electronic File or Pipe-Delimited Electronic Text File to be used in connection with the determination of the Allocated Amount. **An example of the data formatting is set forth in Exhibit [ ].** **This data should be in a separate CSV (Comma Delimited) Electronic File or Pipe-Delimited Electronic Text File for each Acute Care Hospital**. Physician office visits and non-acute care visits should **NOT** be included in data provided.

For the CSV (Comma Delimited) Electronic File or Pipe-Delimited Electronic Text File, please include in the file name the Name of the Acute Care Hospital, City and State where located and Date Range of Data Provided, for example, PhoenixGeneral-Phoenix-AZ-Jan09-Dec12.csv. If more than one file is provided due to size limitations, each file name will be the same with only the date range of the data provided changing (e.g., PhoenixGeneral-Phoenix-AZ-Jan13-Dec20.csv).

It is important to note, and as further described below, that the following data for each visit/discharge will need to be repeated on each row corresponding to each different ICD diagnosis code (except for ICD diagnosis code, ICD diagnosis code description and ICD diagnosis code priority). The data for the ICD diagnosis codes, ICD diagnosis code descriptions and ICD diagnosis code priority for each visit/discharge will therefore be unique to each row. For example, if a visit has 18 ICD diagnosis codes, there would be 18 rows/lines for that visit/discharge with each line containing a different ICD diagnosis code, ICD diagnosis code description and ICD diagnosis code priority. For all other data fields such as Patient Medical Record Number, Date of Discharge, etc. this data will be the same, and thus repeated, on all 18 rows/lines for that visit/discharge.

To the extent the qualifying Acute Care Hospital utilizes a coding system for any columns/data fields, please provide an index to explain the contents of any column/data field to the secure portal provided by the Notice and Claims Administrators. For example, the Patient Type data provided includes a 1, 2, or 3 and these respective contents are 1=Inpatient, 2=Outpatient, and 3=Emergency.

If sending the requested data in a CSV (Comma Delimited) Electronic File, please also ensure that all columns/data fields that may contain commas are updated so that such columns/data fields are placed in quotations when populating the CSV or Pipe-Delimited Electronic Text File. The columns/data fields that often contain commas include, but are not limited to, Attending Physician Name, DRG and ICD Diagnosis Code Descriptions.

Once the CSV (Comma Delimited) or Pipe-Delimited Electronic Text File is prepared, **please review the data VERY CAREFULLY** to confirm the data in each column contains the applicable data for that respective column's data field description. For example, payment amounts (Total Payments) should not be shown in the DRG Code column/data field or ICD Diagnosis Code column/data field should not be blank or designated null for a patient visit

PAGE 8

without an explanation, etc.   In conducting your review, this will require that you "reality test" your data before submission to ensure that it does not contain obvious errors and inconsistencies.  **After submission of the Registration Form, each Class Member will be provided a secure portal (SFTP) by the Notice and Claims Administrators to upload an executed BAA (as described in Section F.9 of this Claim Form), and then upload this Requisite Claims Data to the SFTP.**

| Column | Data Fields | Definitions and Clarifications |
|---|---|---|
| a. | Name | Name of hospital/facility for which data is provided. |
| b. | Address | Address of hospital/facility for which data is provided. |
| c. | City | City of hospital/facility for which data is provided. |
| d. | State | State of hospital/facility for which data is provided. |
| e. | Zip Code | Zip Code of hospital/facility for which data is provided. |
| f. | CMS Certification Number | Center for Medicare & Medicaid Services Certification Number – Formerly known as the Medicare Provider Number.  This should be a six-digit Medicare certification number for which the data is provided. |
| g. | Patient Medical Record # | |
| h. | Patient Account # | |
| i. | Payor Financial Class Description | e.g., Blue Cross, Medicaid, Private Pay, etc. |
| j. | Patient Type | e.g., Inpatient or Outpatient. Hospital-related clinics or physician office visits should NOT be included in data provided. |
| k. | Custom Patient Type | e.g., Inpatient Psych, Outpatient Single Visit, Surgery, Lab, etc. Hospital related clinics or physician office visits should NOT be included in data provided. |
| l. | Date of Admission | |
| m. | Date of Discharge | |
| n. | Length of Stay (days) | |
| o. | Admission Type Description | e.g., Emergency, Reservation, Reference Lab, etc. |
| p. | Discharge Disposition Description | e.g., Discharge Home, Nursing Home, Expired, etc. |
| q. | Patient Date of Birth | |

| Column | Data Fields | Definitions and Clarifications |
|---|---|---|
| r. | **Patient Age at Discharge** | |
| s. | **Patient Gender** | |
| t. | **Patient Race** | |
| u. | **Patient City** | |
| v. | **Patient State** | |
| w. | **Patient Zip Code** | |
| x. | **Attending Physician Name** | |
| y. | **Total Charges** | |
| z. | **Total Payments** | Total Payments should only contain actual payments received (e.g., insurance/self-pay). It should NOT include adjustments, bad debt, write-offs or contractual adjustments. |
| aa. | **DRG Code** | Diagnosis-Related Group ("DRG") code for each inpatient visit/discharge. |
| ab. | **DRG Code Description** | Provide a DRG code description for the above DRG code. |
| ac. | **All ICD Diagnosis Codes** | All International Classification of Disease (ICD) diagnosis codes (ICD-9 or ICD-10, as applicable) associated with each patient visit/discharge. Note: In most instances there should be multiple ICD codes for a patient visit/discharge. Each of these ICD Diagnosis Codes related to each patient's visit should NOT be listed in multiple columns but rather each ICD Code should be listed in the same single column with each ICD Code shown on separate rows within the same single column. See Exhibit [ ]. |
| ad. | **ICD Diagnosis Code Descriptions** | ICD Diagnosis Code descriptions for the above ICD Diagnosis Codes. |
| ae. | **ICD Diagnosis Code Priority** | Indicate whether each ICD Diagnosis Code is a Primary, Secondary, Tertiary, etc. diagnosis. These categories must be expressed in terms of a numerical code such as 1=Primary, 2=Secondary, 3=Tertiary, etc. ADD "Location of Service (LOS) or Place of Service (POS) as i.e. Office, Home, Telehealth, et. |
| af. | **Mother's MRN (if applicable)** | This field pertains only to Acute Care Hospitals that deliver newborn babies or have a neonatal unit. If this visit/charge is for a birth mother, then this field should be blank as it would be the same MRN as the patient reported in #g above. However, if this visit/charge pertains to a baby, then this field should |

| Column | Data Fields | Definitions and Clarifications |
|--------|-------------|-------------------------------|
|  |  | contain the mother's MRN so that there can be a mother/baby link associated therewith. |
| ag. | Baby's MRN (if applicable) | This field pertains only to Acute Care Hospitals that deliver newborn babies or have a neonatal unit. If this visit/charge is for a baby, then this field should be blank as it would be the same MRN as the patient reported in # g. above. However, if this visit/charge pertains to a birth mother, then this field should contain the Baby's MRN so that there can be a mother/baby link associated therewith. |

9. Please execute and submit a Business Associate and Confidentiality Agreement ("BAA") to Cherry Bekaert Advisory, LLC (formerly known as Legier & Company, apac) as attached as Exhibit [] and return with this Claim Form for the Operating Entity listed in Section A.1 above. This BAA is not subject to revision or update.

10. Please complete the IRS Form W-9 attached hereto (or IRS Form W-8, if applicable) and return it with this Claim Form for the claimant identified in Section A above. The entity name and the EIN number noted in the W-9 (or W-8, if applicable) must match the Operating Entity Name and EIN noted in Section A.1 above.

**G.    Certification**

> **I certify that I am authorized to sign this Claim Form and I understand that an authorized signature on this Claim Form serves as an acknowledgement that I have a reasonable belief that the information is true and correct.**
>
> **I certify that the Settlement Class Member has authority to release all Released Claims as identified in the Settlement Agreement on behalf of itself and all other entities who are Releasors by virtue of their relationship or association with it.**
>
> **I certify that the Settlement Class Member I am submitting this Claim Form on behalf of is eligible to receive funds under the Settlement Agreement.**
>
> **I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.**

Your typed signature and submission of this Claim Form will have the same force and effect as if you signed the Claim Form on paper, which you may do alternatively.

Signature: _____

Executed on date (MM/DD/YYYY): _____

Print the name of the person who is completing and signing this Claim.

Name (First Middle Last): _____

Title: _____

Acute Care Hospital: _____

Address: _____

_____

_____

Contact Phone: _____

Email: _____

172316455v4

PAGE 12

# **EXHIBIT D**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

<table>
<tr>
<td>
SAN MIGUEL HOSPITAL<br>
CORPORATION, d/b/a/ ALTA VISTA<br>
REGIONAL HOSPITAL, on behalf of itself<br>
and all others similarly situated,<br>
<br>
                Plaintiff,<br>
<br>
v.<br>
<br>
David Sackler, <em>et al.</em>,<br>
<br>
                Defendants.
</td>
<td>
1:25-cv-1010-_____<br>
<br>
The Hon. _____
</td>
</tr>
</table>

[PROPOSED] ORDER (I) PRELIMINARILY APPROVING SETTLEMENT PURSUANT TO FED. R. CIV. P. 23(e)(1), (II) APPOINTING THE NOTICE AND CLAIMS ADMINISTRATORS AND SPECIAL MASTER, (III) APPROVING FORM AND MANNER OF NOTICE TO CLASS MEMBERS, (IV) SCHEDULING A FINAL FAIRNESS HEARING TO CONSIDER FINAL APPROVAL OF THE SETTLEMENT, AND (V) GRANTING RELATED RELIEF - DATED AUGUST 19, 2025

2

Before the Court is the Motion of proposed Settlement Class Counsel for Preliminary Approval of the Class Action Settlement Agreement by and between the Settling Defendants and Acute Care Hospitals (the "Preliminary Approval Motion"), pursuant to Rules 23(a), 23(b), and 23(e) of the Federal Rules of Civil Procedure, which seeks: (1) Preliminary Approval of the Settlement Agreement; (2) preliminary certification, for settlement purposes only, of the Settlement Class; (3) approval of the form of Notice and proposed Settlement Plan; (4) appointment of Settlement Class Counsel; (5) appointment of Settlement Class Representatives; (6) appointment of the Notice and Claims Administrators; (7) appointment of the Special Master; (8) appointment of the Escrow Agent; (9) approval of the Escrow Agreement; (10) establishment of the Qualified Settlement Fund; (11) scheduling of a Fairness Hearing; (12) a stay of all proceedings brought by Releasors in the Action and Other Actions in any forum as to Settling Parties, and an injunction against the filing of any new such proceedings for Released Claims; and (13) a directive to the Settlement Class Representatives to file motions to sever and stay Other Actions as to the Settling Parties, to the extent the Other Actions are not already stayed.

WHEREAS, an action is pending before this Court entitled *San Miguel Hospital Corp., d/b/a/ Alta Vista Regional Hospital v. David Sackler, et al.*, 1:25-cv-1010 (D.N.M.) (the "Action");

WHEREAS, the Settlement Class Representatives, on behalf of the proposed Settlement Class, having made a motion, pursuant to Federal Rule of Civil Procedure 23(e), for an order preliminarily approving the Settlement of this Action as to the Settling Defendants (collectively, the "Settling Parties") in accordance with the Class Action Settlement Agreement by and between the Settling Defendants and Acute Care Hospitals (the "Settlement Agreement" or "Settlement"), which, together with the exhibits attached thereto, sets forth the terms and conditions for proposed

3

Settlement of the Action and Other Actions as to the Settling Parties and for dismissal of the Action and Other Actions with prejudice as to the Settling Parties upon the terms and conditions set forth therein; and the Court having read and considered the Settlement Agreement and the exhibits attached thereto;

WHEREAS, Settling Parties do not oppose the Court's entry of the proposed Preliminary Approval Order;

WHEREAS, unless otherwise defined, all terms used herein have the same meanings as set forth in the Settlement Agreement;

WHEREAS, this Court has considered all of the presentations and submissions related to the Motion, as well as the facts, contentions, claims, and defenses as they have developed in these proceedings, and is otherwise fully advised of all relevant facts in connection therewith;

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. The Court has reviewed the Settlement Agreement and does preliminarily approve the Settlement between Plaintiffs and the Settling Parties set forth therein as fair, reasonable, and adequate, subject to further consideration at the Fairness Hearing described below.

2. The Settlement Class shall consist of all Acute Care Hospitals in the United States that (a) are not owned or operated by a federal, state, county, parish, city, or other municipal government; and (b) treated patients diagnosed with opioid use disorder and/or other opioid-related conditions at any time from January 1, 2009, through the date of entry of the Preliminary Approval Order;

The following are excluded from the Settlement Class:

(1) Any Acute Care Hospital whose Released Claims have been released by any other settlement with the Settling Parties.

3. The Court preliminarily finds that the proposed Settlement Class satisfies all

relevant requirements under Federal Rules of Civil Procedure 23(a) and 23(b)(3), for certification for settlement purposes only.

4.      The Court preliminarily finds that the proposed Settlement of the Action between the Settlement Class Representatives and the Settling Parties should be approved as: (i) the result of serious, extensive arm's-length and non-collusive negotiations; (ii) falling within a range of reasonableness warranting final approval; (iii) having no obvious deficiencies; and (iv) warranting notice of the proposed Settlement to Settlement Class Members and further consideration of the Settlement at the Fairness Hearing described below.

5.      The Court appoints as Interim Settlement Class Counsel John W. ("Don") Barrett ("Barrett") of Barrett Law Group, P.A.; Warren T. Burns of Burns Charest LLP; Robert A. Clifford of Clifford Law Offices, P.C.; Steven B. Farmer of Farmer Cline & Campbell, PLLC; Charles J. LaDuca of Cuneo, Gilbert, & LaDuca, LLP; and Steven A. Martino of Taylor Martino, P.C. Barrett is designated as Lead Counsel. Interim Settlement Class Counsel and Settling Parties are authorized to take, without further Court approval, all necessary and appropriate steps to implement the Settlement, including the approved notice program.

6.      The plaintiffs in the Action and the following Other Actions are appointed as Settlement Class Representatives: *Florida Health Sciences Center, Inc., et al. v. Richard Sackler, et al.*, Case No. 19-018882 (Cir. Ct. Broward Cnty., Fla.); *The DCH Health Care Authority, et al. v. Purdue Pharma, L.P., et al.*, Case No. CV-19-07 (Cir. Ct. Conecuh Cnty., Ala.); *Fort Payne Hospital Corporation, et al. v. McKesson Corporation, et al.*, Case No. 21-cv-2021-900016.00 (Cir. Ct. Conecuh Cnty., Ala.); and *Lester E. Cox Medical Centers d/b/a Cox Medical Centers, et al. v. Amneal Pharmaceuticals, LLC, et al.*, No. 6:22-cv-3192 (W.D. Mo.).

7.      All litigation in any forum brought by or on behalf of a Releasor and that asserts a

Released Claim, and all Claims and proceedings therein, are hereby stayed in all Courts as to the Released Parties, except as to proceedings that may be necessary to implement the Settlement. All Releasors are enjoined from filing or prosecuting any Claim in any forum or jurisdiction (whether federal, state, or otherwise) against any of the Released Parties, and any such filings are stayed; provided, however, that this Paragraph 7 shall not apply to any entity that files a timely and valid Opt-Out Form, beginning on the later of (a) the date such Opt-Out Form becomes effective, or (b) any other injunction of claims against the Released Parties has expired or dissolved. The provisions of this Paragraph 7 will remain in effect until the earlier of (i) the Effective Date, in which case such provisions shall be superseded by the provisions of the Order Granting Final Approval, or (ii) the termination of the Settlement Agreement in accordance with its terms. This Order is entered pursuant to the findings under Federal Rule of Civil Procedure 23(e) set forth above, in aid of its jurisdiction over the members of the proposed Settlement Class and the settlement approval process under Rule 23(e).

8.      If not already stayed, and to the extent not already filed, Settlement Class Counsel is directed to file motions to sever and stay the Other Actions brought by the Settlement Class Representatives as to the Settling Parties until the Court renders a final decision regarding the approval of the Settlement.

9.      The Fairness Hearing shall be held before this Court on _____ at [ • ], Mountain Time, at the United States District Court for the District of New Mexico, Pete V. Domenici Courthouse, 333 Lomas Blvd. NW, Albuquerque, NM, 87102, Courtroom [ • ], (A) to determine (i) whether the proposed Settlement of the Action on the terms and conditions provided for in the Settlement Agreement is fair, reasonable, and adequate to the Settlement Class and should be finally approved by the Court; (ii) whether the proposed Final Judgment as provided under the Settlement

6

Agreement should be entered as to the Settling Parties; (iii) whether the proposed Plan of Allocation is fair, reasonable, and adequate and should be approved; (iv) the amount of Attorneys' Fees and Expenses; and (v) any Service Award to the Settlement Class Representatives; (B) to hear any objections by Settlement Class Members to (i) the Settlement or Plan of Allocation; (ii) the award of Attorneys' Fees and Expenses; and (iii) Service Awards to the Settlement Class Representatives; and (C) to consider such other matters the Court deems appropriate.  The Court may adjourn the Fairness Hearing without further notice to the Settlement Class Members.

10.    The assertion of an Objection does not opt the Settlement Class Member asserting it out of, or otherwise exclude that Settlement Class Member from, the Settlement Class. A Settlement Class Member within the Settlement Class can opt out of the Settlement Class and Settlement only by submitting a valid and timely Opt-Out Form in accordance with the provisions of Section V.G of the Settlement Agreement.

11.    The Court approves, as to form and content, the Notice substantially in the form attached as Exhibit ___ to the Settlement Agreement.

12.    The Court approves, as to form and content, the Registration Form, Claim Form, and Summary Notice (together, the "Notice Package"), substantially in the forms attached as Exhibits ___, ___ & ___ to the Settlement Agreement, respectively.

13.    The Court finds that the distribution and posting of the Notice and Notice Package substantially in the manner and form set forth in Paragraphs 11 and 12 of this Order: (a) constitute the best notice to Settlement Class Members practicable under the circumstances; (b) are reasonably calculated, under the circumstances, to describe the terms and effect of the Settlement Agreement and of the Settlement and to apprise Settlement Class Members of their right to object to the proposed Settlement; (c) are reasonable and constitute due, adequate, and sufficient notice to all Settlement

Class Members entitled to receive such notice; and (d) satisfy all applicable requirements of the Federal Rules of Civil Procedure (including Rules 23(c)–(e)), the United States Constitution (including the Due Process Clause), the Rules of this Court, and other applicable law.

14.     The firms of A.B. Data Group and Cherry Bekaert Advisory, LLC (the "Notice and Claims Administrators") are hereby appointed to supervise and administer the notice procedure as well as the processing of claims as set forth more fully below.

15.     The Honorable Thomas L. Hogan (Ret.) ("Special Master") is hereby appointed to oversee the process of allocating the Net Settlement Funds as provided in the Plan of Allocation.

16.     Not later than _____, 2025 (the "Notice Date"), the Notice and Claims Administrators shall commence distribution of the Notice Package to all Settlement Class Members that can be identified with reasonable effort and to be posted on the case-designated website, www.acutecarehospitalsettlement.com, according to the Notice Plan in the Declaration of _____ filed in support of Preliminary Approval.  The Notice shall be given as soon as practicable after entry of this Order and, in any event, no more than twenty-one (21) calendar days following the entry of this Order.

17.     No later than fourteen (14) calendar days following the Notice Date, Settlement Class Counsel shall serve on the Settling Parties and file with the Court proof, by affidavit or declaration, of such distribution.

18.     [Intentionally omitted].

19.     All fees and expenses incurred in identifying and notifying Settlement Class Members shall be advanced by Settlement Class Counsel and then repaid from Settlement Funds, if the Settlement is approved at the Fairness Hearing.

20.     Consistent with the requirements of Federal Rules of Civil Procedure 1 and 23 and

8

due process, the Notice and Claims Administrators shall coordinate with the Settling Parties to minimize costs in effectuating its duties.

21.    All Settlement Class Members shall be bound by all determinations and judgments in the Action concerning the Settlement, whether favorable or unfavorable to the Settlement Class, regardless of whether such Settlement Class Members or entities seek or obtain by any means, including, without limitation, by submitting a Registration Form, Claim Form, or any similar documentation, any Allocated Amount.

22.    Settlement Class Members that wish to participate in the Settlement shall complete and submit Registration and Claim Forms in accordance with the instructions contained therein. Unless the Court orders otherwise, all Registration Forms and Claim Forms must be submitted no later than ___ days from the Effective Date. Any Settlement Class Member that submits a Registration Form and/or Claim Form shall reasonably cooperate with the Notice and Claims Administrators, including by promptly responding to any inquiry made by the Notice and Claims Administrators. Any Settlement Class Member that does not timely submit a Registration Form and/or Claim Form within the time provided shall be barred from sharing in the distribution of the proceeds of the Settlement but shall nonetheless be bound by the Settlement Agreement, the Final Judgment, and the releases therein, unless otherwise ordered by the Court.

23.    The Registration Form and Claim Form must comply with the requirements set forth in the Settlement Agreement and any further requirements described in the forms attached as Exhibits ___ and ___ to the Settlement Agreement.

24.    Any Settlement Class Member may enter an appearance in the Action, at the Class Member's own expense, individually or through counsel of the Settlement Class Member's own choice.  If a Settlement Class Member does not enter an appearance, that Settlement Class Member

9

will continue to be represented by Settlement Class Counsel.

25.    Any Settlement Class Member may appear, at the Court's discretion, at the Fairness Hearing and show cause why the proposed Settlement of the Action should or should not be approved as fair, reasonable, and adequate, why a judgment should or should not be entered thereon, why the Plan of Allocation should or should not be approved, why Attorneys' Fees and Expenses should or should not be awarded to Settlement Class Counsel, or why an amount of Service Awards should or should not be awarded to the Settlement Class Representatives; provided, however, that no Settlement Class Member or any other entity shall be heard or entitled to contest such matters, unless that Settlement Class Member or entity has complied with Section [V.F] of the Settlement Agreement, including by (a) delivering by hand or first-class mail written Objections and copies of any papers and briefs such that they are received, not simply postmarked, on or before _____, 202_ by Settlement Class Counsel and the Settling Parties and (b) filing said Objections, papers, and briefs with the Clerk of the United States District Court for the District of New Mexico, 333 Lomas Blvd. NW, Albuquerque, NM 87102, on or before _____, 202_, which date shall be no more than forty-five (45) calendar days after the commencement of the dissemination of the Notice.

26.    Any Objections must: (a) state the name, address, and telephone number of the objector and must be signed by the objector even if represented by counsel; (b) state that the objector is objecting to the proposed Settlement, Plan of Allocation, the application for Attorneys' Fees and Expenses, and/or application for Service Awards to Settlement Class Representatives; (c) state the Objection(s) and the specific reasons for each Objection, including any legal and evidentiary support the objector wishes to bring to the Court's attention; (d) state whether the Objection applies only to the objector, to a subset of the Settlement Class, or to the entire Settlement Class; (e) identify all

class actions to which the objector and its counsel have previously objected; (f) include documents sufficient to prove the objector's membership in the Settlement Class, such as the objectors' status as an Acute Care Hospital and its treatment of patients diagnosed with opioid use disorder; (g) state whether the objector intends to appear at the Fairness Hearing; (h) if the objector intends to appear at the Fairness Hearing through counsel, state the identity of all attorneys who will appear on the objector's behalf at the Fairness Hearing; and (i) state that the objector submits to the jurisdiction of the Court with respect to the Objection or request to be heard and the subject matter of the Settlement of the Action, including, but not limited to, enforcement of the terms of the Settlement. At the request of Settlement Class Counsel, an objector shall submit to a deposition within thirty (30) days of the filing of the objection. The deposition shall be conducted at a mutually convenient time and place, and in accordance with the Federal Rules of Civil Procedure.

27.     The Court will consider a Settlement Class Member's Objection only if the Settlement Class Member has complied with the above requirements. Any Settlement Class Member that does not object in the manner provided herein shall be deemed to have waived such Objection and shall forever be foreclosed from making any Objection to the fairness, reasonableness, or adequacy of the proposed Settlement, the Plan of Allocation, the Attorneys' Fees and Expenses, or to any Service Award, unless otherwise ordered by the Court. All presentations of Objections will be further limited by the information listed in the Objection. A Settlement Class Member's compliance with the foregoing requirements does not in any way guarantee that Settlement Class Member the ability to present evidence or testimony at the Fairness Hearing. The decision whether to allow any testimony, argument, or evidence, as well as the scope and duration of any and all presentations of Objections at the Fairness Hearing, will be in the sole discretion of the Court. Settlement Class Members submitting written Objections are not required to attend the Fairness

11

Hearing, but any Settlement Class Member wishing to be heard orally in opposition to the approval of the Settlement, the Plan of Allocation, and/or the application for an award of Attorneys' Fees and Expenses and/or Service Awards must file a written Objection and indicate in the written Objection its intention to appear at the hearing and to include in its written Objections the identity of any witnesses it may call to testify and copies of any exhibits it intends to introduce into evidence at the Fairness Hearing. Settlement Class Members do not need to appear at the Fairness Hearing or take any other action to indicate their approval of the Settlement.

28.     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Settlement Agreement and/or further order(s) of the Court.

29.     The Court has reviewed the proposed Escrow Agreement and Section IV.C of the Settlement Agreement and approves the Escrow Agreement and Section IV.C of the Settlement Agreement and authorizes that the Escrow Account established pursuant to the Escrow Agreement be established as a "qualified settlement fund" within the meaning of Treasury Regulations 28 CFR § 1.468B-1. Such account shall constitute the Qualified Settlement Fund as defined in the Settlement Agreement. The Court shall maintain continuing jurisdiction over these proceedings (including over the administration of the Qualified Settlement Fund) for the benefit of the Settlement Class.

30.     All opening briefs and supporting documents in support of the Settlement, the Plan of Allocation, and any application by Settlement Class Counsel for attorneys' fees, charges, and expenses and Service Awards to the Settlement Class Representatives shall be filed and served by no later than _____, 202_, and any reply papers, including any responses to Objections, shall be filed and served no later than _____, 202_.

31.     The Released Parties shall have no responsibility for the Plan of Allocation or any application for Attorneys' Fees and Expenses submitted by Settlement Class Counsel or any Service Award to the Settlement Class Representatives, and such matters will be considered separately from the fairness, reasonableness, and adequacy of the Settlement.

32.     The procedures for the submission of Opt-Out Forms set forth in Section V.G of the Settlement Agreement and the instructions in the Notice regarding the procedures that must be followed to opt out of the Settlement Class and Settlement are approved.

33.     Any Settlement Class Member wishing to opt out of the Settlement Class and Settlement must submit a written and signed Opt-Out Form to the Notice Administrator and email it to Settling Parties and Settlement Class Counsel as set forth in the Notice. Such written request must be received by the Notice Administrator, Settlement Class Counsel, and Settling Parties no later than the date forty-five (45) calendar days following the commencement of the Notice Plan, which is the last day of the opt out period (the "Opt-Out Deadline").

34.     The Opt-Out Form must certify, under penalty of perjury in accordance with 28 U.S.C. § 1746, that the submitting entity is acting on its own behalf, is included in the Class definition, and is legally authorized to exclude itself from the Settlement and must:  provide an affidavit or other proof of the standing of the submitting entity and why it would be a Settlement Class Member absent the Opt-Out; provide the submitting entity's name, address, telephone number and email address (if available); provide the National Provider Identifier (if available) and CMS Certification Number (if available); provide a list of current and former names of the submitting entity, including any and all names under which the entity does or has done business since January 1, 2009; and be received by the Notice and Claims Administrators, Settlement Class Counsel, and Settling Parties no later than the date designated for such purpose in the Notice.

13

35. No later than seven (7) calendar days after the Opt-Out Deadline, the Notice and Claims Administrators, and/or the Special Master, shall provide Settling Parties, Settlement Class Counsel, and the Court with the Opt-Out Report identifying all requests to be excluded from the Settlement Class, and whether any such requests were deemed untimely and/or failed to provide any of the information required in Section V.G of the Settlement Agreement or were otherwise inadequate. [Settling Parties may, in their sole discretion, terminate the Settlement Agreement by providing notice to Settlement Class Counsel within fifteen (15) business days following receipt by the Settling Parties of the Opt-Out Report of the Notice and Claims Administrators detailing all opt-outs from the Settlement.] If Settling Parties do not provide notice of exercise of the Walk-Away Right to Settlement Class Counsel in accordance with this paragraph, the Walk-Away Right shall be waived.

36. If the Settlement Agreement is terminated or is not consummated for any reason, the Court's findings with respect to certification of the Settlement Class shall be void, the Action against the Settling Parties for all purposes will revert to its status prior to the execution of the settlement term sheet, and any unexpended Settlement Funds shall be returned to the Settling Parties as provided in Section VI of the Settlement Agreement, as applicable. In such event, the Settling Parties will not be deemed to have consented to certification of any class, and will retain all rights to oppose, appeal, or otherwise challenge, legally or procedurally, class certification or any other issue in the Action. Likewise, if the Settlement does not reach Final Judgment, then the participation in that Settlement by any Settlement Class Representative or Settlement Class Member cannot be raised as a defense to their claims.

37. At or after the Fairness Hearing, the Court shall determine whether the Plan of Allocation proposed by Settlement Class Counsel, and any application for Attorneys' Fees and

14

Expenses or any Service Award to the Settlement Class Representatives should be approved. The Court may, in its discretion, enter the Final Judgment approving the Settlement regardless of whether it has approved the Plan of Allocation or awarded Attorneys' Fees and Expenses or any Service Award to the Settlement Class Representatives.

38.     All reasonable expenses incurred in identifying and notifying Settlement Class Members, as well as administering the Settlement Funds, shall be paid as set forth in the Settlement Agreement.

39.     Neither this Preliminary Approval Order, the Settlement Agreement, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be considered, construed or represented to be (1) an admission, concession, or evidence of liability or wrongdoing or (2) a waiver or any limitation of any defense otherwise available to the Settling Parties.

40.     The Court reserves the right to adjourn the date of the Fairness Hearing without further notice to the members of the Settlement Class and retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement. The Court may approve the Settlement, with such modifications as may be agreed to by the Settling Parties, as provided in the Settlement Agreement, if appropriate, without further notice to the Settlement Class.

41.     If the Settlement Agreement and the Settlement set forth therein is not approved or consummated for any reason whatsoever, the Settlement Agreement and Settlement and all proceedings had in connection therewith shall be without prejudice to the rights of the Settling Parties to the Settlement Agreement *status quo ante*, except as otherwise expressly provided in the Settlement Agreement.

42.     Pending final determination of whether the proposed Settlement should be

15

approved, neither the Settlement Class Representatives nor any Settlement Class Member, directly or indirectly, representatively, or in any other capacity, shall commence or prosecute against any of the Settling Parties, any action or proceeding in any court or tribunal asserting any of the Plaintiffs' Released Claims.

43.    Settlement Class Counsel and Settling Parties are authorized to use all reasonable procedures in connection with administration and obtaining approval of the Settlement Agreement that are not inconsistent with this Order Granting Preliminary Approval or the Settlement Agreement, including making, without further approval of the Court or notice to Settlement Class Members, minor changes to the Settlement Agreement, to the form or content of the Notice, or otherwise to the extent the Parties jointly agree such minor changes are reasonable and necessary.

44.    Except to the extent the Settling Parties may agree to resolve through mediation any disputes that may arise prior to the entry of judgment, the Court retains exclusive jurisdiction over the Action to consider all further matters arising out of or connected with the Settlement.

IT IS SO ORDERED.

DATED: _____                    _____
                                          THE HONORABLE _____
                                          UNITED STATES DISTRICT JUDGE

**APPROVED SCHEDULE FOR FINAL APPROVAL PROCESS**

| DATE / DAYS (days are calendar days unless otherwise specified) | EVENT |
|---|---|
| , 2025 | Plaintiffs file Motion for Preliminary Approval of Settlement |
| , 2025 (10 days after the Settlement Agreement is filed with the Court) | Settling Parties provide Class Action Fairness Act Notice to State Attorneys General |
| , 2025 | Hearing on Preliminary Approval of Settlement [Date and Time TBD by Court] |
| No later than 21 days following entry of the Preliminary Approval Order | Settlement Notice Program Begins ("Notice Date") |
| 30 days after Notice Date | Plaintiffs file Motion for Final Approval of Settlement, Attorneys' Fees, Expenses, and Service Awards |
| 45 days after Notice Date | Deadline for Settlement Class Members to submit Opt-Outs to the Notice Administrator, Settlement Class Counsel, and Settling Parties ("Opt-Out Deadline") |
| 45 days after Notice Date | Objection Deadline and Deadline for State Attorneys General to file Comments/Objections |
| 7 days after Opt-Out Deadline | Deadline for Notice and Claims Administrators to provide Opt-Out Report to Settling Parties and Settlement Class Counsel |
| 15 business days after receipt of Opt-Out Report | Deadline for Settling Parties to exercise Walk-Away Right |
| 75 days after Notice Date | Plaintiffs file Response to Objections for Final Approval of Settlement, Attorneys' Fees, Expenses, and Service Awards |
| , 202_ | Fairness Hearing on Final Approval of Settlement, Attorneys' Fees, Expenses, and Service Awards [Date and Time TBD by Court, provided that the Fairness Hearing shall not be scheduled any earlier than the later of: (1) one hundred twenty (120) days following the Motion for Preliminary Approval; (2) five (5) days following the deadline for Settling Parties to exercise their Walk-Away Right; or (3) no earlier than ninety (90) days following the entry of the Preliminary Approval Order.] |

172316506v4

17

# **EXHIBIT E**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

<table>
<tr><td>

SAN MIGUEL HOSPITAL
CORPORATION, d/b/a/ ALTA VISTA
REGIONAL HOSPITAL, on behalf of itself
and all others similarly situated,

                Plaintiff,

v.

David Sackler, *et al.*,

                Defendants.

</td><td>

1:25-cv-1010-_____

The Hon. _____

</td></tr>
</table>

[PROPOSED] FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE AS
TO THE SETTLING DEFENDANTS – DATED _____

WHEREAS, this matter came before the Court pursuant to the Preliminary Approval Order (I) Preliminarily Approving the Settlement Pursuant to Fed. R. Civ. P. 23(e)(1), (II) Appointing the Notice and Claims Administrators and Special Master, (III) Approving Form and Manner of Notice to Settlement Class Members, (IV) Scheduling a Final Fairness Hearing to Consider Final Approval of the Settlement, and (V) Granting Related Relief ("Order") dated _____, 2025, on the application of the Settlement Class Representatives for approval of the Class Action Settlement Agreement by and between the Settling Defendants and Acute Care Hospitals ("Settlement Agreement") dated _____. Due and adequate notice having been given to the Settlement Class as required in the Order, and the Court having considered all papers filed and proceedings had herein and good cause appearing therefore, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1.    This Final Judgment and Order of Dismissal with Prejudice as to the Settling Defendants[1] ("Final Judgment") incorporates by reference: (a) the Settlement Agreement; (b) the Notice of Proposed Settlement of Class Action and Summary Notice (collectively, the "Notice"); and (c) the Declaration of the Notice and Claims Administrators filed with this Court on _____, 2025.  All terms used herein shall have the same meanings as set forth in the Settlement Agreement, unless otherwise defined herein.

2.    The Court has jurisdiction over the subject matter of the Action and over all Settling Parties and all Settlement Class Members.

3.    The Court certifies the Settlement Class defined in Section III.A of the

---

[1] Settling Defendants means the defendants David Sackler, Ilene Sackler, Kathe Sackler, Mortimer D.A. Sackler, Richard Sackler, the estate of Beverly Sackler by and through its executors Richard Sackler and David Sackler, the estate of Jonathan Sackler by and through its executor Garrett Lynam, and the estate of Raymond Sackler by and through its executors Richard Sackler and David Sackler (collectively, "Settling Defendants")

2

Settlement Agreement, which Settlement Class is certified for settlement purposes only.

4.      The Notice given to the Settlement Class was the best notice practicable under the circumstances and of the matters set forth therein, including the proposed Settlement set forth in the Settlement Agreement, to all Persons entitled to such notice, and said notice fully satisfied the requirements of the Federal Rules of Civil Procedure (including Rules 23(c)–(e)), the United States Constitution (including the Due Process Clause), the rules of this Court, and other applicable law.

5.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court hereby affirms its determinations in the Preliminary Approval Order, fully and finally approves the Settlement set forth in the Settlement Agreement in all respects, and finds that:

(a)      the Settlement Agreement and the Settlement contained therein, is, in all respects, fair, reasonable, and adequate, and in the best interests of the Settlement Class;

(b)      there was no collusion in connection with the Settlement;

(c)      the Settlement was the product of informed, arm's-length negotiations among competent, able counsel with the assistance of third-party mediators; and

(d)      the record is sufficiently developed and complete to have enabled the Settlement Class Representatives and the Settling Defendants to have adequately evaluated and considered their positions.

6.      Accordingly, the Court authorizes and directs implementation and performance of all the terms and provisions of the Settlement Agreement, as well as the terms and provisions hereof.  Except as to any individual claims of those persons or entities who have validly and timely requested exclusion from the Settlement Class, as set forth in Exhibit ___ to Settlement Class Counsel's Motion for Award of Attorneys' Fees and Expenses, the Court hereby dismisses

3

the Action as to the Settling Defendants and all Released Claims against the Released Parties with prejudice. The Settling Parties are to bear their own costs, except as and to the extent provided in the Settlement Agreement, and any separate order(s) entered by the Court regarding Class Counsel's Motion for Award of Attorneys' Fees and Expenses.

7.      The Releases set forth in Section [IX] of the Settlement Agreement, together with the definitions contained in the Settlement Agreement relating thereto, are expressly incorporated herein by reference.  Accordingly, this Court orders that:

(a)      Upon the Effective Date, and as provided in the Settlement Agreement, the Settlement Class Representatives shall, and each of the Settlement Class Members shall be deemed to have, and by operation of this Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged any and all Released Claims against the Released Parties, whether or not such Settlement Class Member shares in the Settlement Funds.  Claims to enforce the terms of the Settlement Agreement are not released.

(b)      The Settlement Class Representatives and all Settlement Class Members, Releasors, and anyone claiming through or on behalf of any of them, are hereby forever and permanently barred and enjoined from commencing, instituting, prosecuting, or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, asserting any of the Released Claims, or any claim related in any way to the Released Claims, against any of the Released Parties.

8.      Upon the Effective Date, any and all persons or entities shall be permanently barred, enjoined, and restrained, to the fullest extent permitted by law, from bringing, commencing, prosecuting, or asserting any and all claims, actions, or causes of action for contribution or indemnity or otherwise against the Settling Defendants or any of the Released

4

Parties seeking as damages or otherwise the recovery of all or any part of any liability, judgment, or settlement which they pay or are obligated or agree to pay to the Settlement Class or any Settlement Class Member arising out of, based upon, relating to, concerning, or in connection with any facts, statements, or omissions that were or could have been alleged in the Action or the Other Actions. Notwithstanding the foregoing, nothing herein shall bar any action by any of the Settling Parties to enforce or effectuate the terms of the Settlement Agreement, the Settlement, or this Final Judgment.

9.      All objections to the Settlement Agreement are found to be without merit and are overruled.

10.     The Settlement is not subject to any modification without approval from the Court, and without the express written consent of Settlement Class Counsel and Settling Defendants.

11.     The terms of the Settlement and of this Final Judgment are forever binding on the Settling Parties and Settlement Class Members, as well as their respective heirs, executors, administrators, predecessors, successors, affiliates, and assigns. Settlement Class Members include all entities within the Settlement Class definition in Section III.A of the Settlement Agreement that did not submit a timely and valid Opt-Out Form that was recognized as such in accordance with the procedures set forth in the Settlement Agreement and the Preliminary Approval Order.

12.     The Court finds that the Settlement is a good-faith settlement that bars any Claim by any Non-Released Entity against any Released Parties for contribution, indemnification, or that otherwise seeks to recover all or a portion of any amounts paid by or awarded against that Non-Released Entity to any Settlement Class Member or Releasor by way of settlement,

judgment, or otherwise on any Claim that would be a Released Claim were such Non-Released

Entity a Settling Defendants, to the extent that a good-faith settlement (or release thereunder)

has such an effect under applicable law, including, without limitation, N.M. Stat. § 41-3-4, Cal.

Civil Code § 1542, and S.D. Codified Laws § 20-7-11, and similar laws in other states or

jurisdictions.

13.     Any Plan of Allocation submitted by Settlement Class Counsel or any order

entered regarding any Attorneys' Fees and Expenses or Service Awards to the Settlement Class

Representatives shall in no way disturb or affect this Final Judgment and shall be considered

separate from this Final Judgment.

14.     Neither the Settlement Agreement nor the Settlement contained therein, nor any

act performed or document executed pursuant to or in furtherance of the Settlement Agreement

or the Settlement:  (a) is or may be deemed to be or may be used as an admission of, or evidence

of, the validity of any Released Claim or of any wrongdoing or liability of the Settling

Defendants or Released Parties; or (b) is or may be deemed to be or may be used as an admission

of, or evidence of, any fault or omission of any of the Settling Defendants or Released Parties in

any civil, criminal, or administrative proceeding in any court, administrative agency, or other

tribunal. Notwithstanding the foregoing, the Settling Defendants and/or the Released Parties

may file the Settlement Agreement and/or this Final Judgment in any other action that may be

brought against any of them in order to support a defense or counterclaim based on principles of

*res judicata*, collateral estoppel, release, good faith settlement, judgment bar, or any theory of

claim preclusion or issue preclusion or similar defense.

15.     Without affecting the finality of this Final Judgment in any way, this Court hereby

retains continuing jurisdiction over: (a) implementation of this Settlement and any award or

distribution of the Settlement Funds, including interest earned thereon; (b) disposition of the Settlement Funds; (c) hearing and determining applications for Attorneys' Fees and Expenses or Service Awards to the Settlement Class Representatives; (d) all parties herein for the purpose of construing, enforcing, and administering the Settlement Agreement (provided, however, the Settlement Class Members and this Court acknowledge that the Settling Defendants have only consented to jurisdiction for the purposes of effecting and enforcing the terms of the Settlement Agreement); (e) the Settlement Class Members for all matters relating to the Action; (f) the Escrow Account and Escrow Agent in its capacity as administrator of the Escrow Account; and (g) other matters related or ancillary to the foregoing. The administration of the Settlement and the decision of all disputed questions of law and fact with respect to the validity of any claim or right of any person or entity to participate in the distribution of the Net Settlement Funds shall remain under the authority of this Court.

16.     The deadline for Settlement Class Members to submit Claim Forms will be ___ days from the Effective Date. Settlement Class Counsel shall make practicable efforts to provide Settlement Class Members with notice of this Final Judgment and the deadline to submit a Claim Form.

17.     The Court finds that during the course of the Action, the Settling Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.

18.     If the Settlement does not become effective in accordance with the terms of the Settlement Agreement or the Effective Date does not occur, then this Final Judgment shall be rendered null and void to the extent provided by and in accordance with the Settlement Agreement and shall be vacated and, in such event, all orders entered and releases delivered in

7

connection herewith shall be null and void to the extent provided by and in accordance with the Settlement Agreement, and the Settlement Funds shall be returned in accordance with the Settlement Agreement.

19.     Subject to Paragraph 18 above, all Other Actions are hereby dismissed.

20.     Without further order of the Court, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions of the Settlement Agreement.

21.     The Court finds, pursuant to Federal Rule of Civil Procedure 54(b), that there is no just reason for delay, and directs immediate entry of this Final Judgment by the Clerk of the Court.

22.     Within fourteen days of the filing of any Notice of Appeal to this Order, the Settling Parties are granted leave to file a motion under Federal Rule of Appellate Procedure 7 for the assessment of an appropriate bond for costs on appeal, including any to be assessed under 18 U.S.C. § 1964(c) and/or Federal Rule of Civil Procedure 68.

IT IS SO ORDERED.

DATED: _____                    _____
                                         THE HONORABLE _____
                                         UNITED STATES DISTRICT JUDGE

172316572v4

8

# **EXHIBIT F**

**COURT-ORDERED LEGAL NOTICE**
**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO**

# If you are an Acute Care Hospital that treated patients diagnosed with opioid use disorder and/or other opioid-related conditions, you may receive a payment from up to $174,215,320.82 in this class action settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

**If you are included, your legal rights will be affected whether you act or don't act. Please read this notice carefully.**

A settlement ("Settlement"), which could total up to $174,215,320.82 million with defendants David Sackler, Ilene Sackler, Kathe Sackler, Mortimer D.A. Sackler, Richard Sackler, the estate of Beverly Sackler by and through its executors Richard Sackler and David Sackler, the estate of Jonathan Sackler by and through its executor Garrett Lynam, and the estate of Raymond Sackler by and through its executors Richard Sackler and David Sackler (collectively, "Settling Defendants") have been reached in a class action lawsuit. The lawsuit alleges that to sell as many prescription opioids as possible, manufacturers misrepresented the risks and safety of prescription opioid use, distributors did not properly monitor, stop, or report suspicious orders, and pharmacies filled opioid prescriptions that were not written for legitimate medical purposes, it further alleges that as a result, acute care hospitals must now spend additional money and resources to treat opioid-dependent patients and patients with opioid-related conditions that they would not have had to treat otherwise. Defendants deny that they did anything wrong. The Court has not decided who is right.

Under the Settlements, the settling Defendants agreed to pay money to resolve the claims against them.

Generally, you are included if you are an acute care hospital in the United States that (a) treated patients diagnosed with opioid use disorder and/or other opioid-related conditions from January 1, 2009, through October 14, 2025, and (b) is not owned or operated by a federal, state, county, parish, city, or other municipal government.

The full text of the Settlement is available at www.acutecarehospitalsettlement.com. In the event of any inconsistency between this notice and the terms of the Settlement, the Settlement's terms control.

**This notice is not intended to be an expression of any opinion by the Court with respect to the truth of the allegations in the Action or the merits of the claims or defenses asserted. This notice is solely to advise you of proposed Settlement in this Action and your rights in connection with the Settlement.**

Questions? Call the Settlement Administrator toll-free at 1-800-000-0000 or visit www.acutecarehospitalsettlement.com. 1 of 12

Case 25-30256    Doc 1924    Filed 08/06/26    Entered 08/06/26 11:05:43    Desc Main
Document    Page 111 of 186

| YOUR LEGAL RIGHTS AND OPTIONS | |
|---|---|
| **SUBMIT A CLAIM** | You must submit a Registration Form and may submit a Claim Form to file a claim for a payment from these Settlements. <br><br> The deadline to submit these forms is [**Month 00, 202_**]. |
| **OBJECT** | You may write to the Court about why you do not like the Settlements. The objection deadline is [**Month 00, 202_**]. <br><br> Additionally, you may ask to go to the Fairness Hearing and speak in Court about the fairness of the Settlements. <br><br> If you object to the Settlements, you are still a Class Member and you must file a claim to receive a payment. |
| **OPT OUT** | You may write to the Settlement Administrator and exclude yourself (or "opt out") from one or more of the Settlements. Exclusion allows you to file your own lawsuit against the settling Defendants about the claims in this case. You will not receive any payment and will not be bound by the releases contained in the Settlements from which you exclude yourself. The exclusion deadline is [**Month 00, 202_**]. |
| **DO NOTHING** | If you do nothing, you will not receive any payment. You will be bound by the releases in the Settlements and will not be able to sue the settling Defendants about the claims in this lawsuit. |

These rights and options are explained in this notice. If you do not act by the deadline for an option, you will lose your right to exercise that option. The Court overseeing this case still has to decide whether to approve the Settlement. You may receive a payment if the Court approves the Settlement and the period to appeal has expired and/or all appeals have been resolved. Please be patient.

# TABLE OF CONTENTS

**BASIC INFORMATION** ........................................................................................................... **4**

   1.   WHAT IS THIS LAWSUIT ABOUT? .................................................................... 4

   2.   WHO ARE THE DEFENDANTS? ........................................................................... 4

   3.   WHAT IS A CLASS ACTION? ............................................................................... 4

   4.   WHY IS THERE A SETTLEMENT? ...................................................................... 4

   5.   ARE YOU PART OF THE SETTLEMENT? ........................................................ 4

   6.   WHAT IF YOU ARE STILL NOT SURE IF YOU ARE INCLUDED? ..................... 5

**THE SETTLEMENTS** .............................................................................................................. **5**

   7.   WHAT DO THE SETTLEMENT PROVIDE? ........................................................ 5

**SETTLEMENT PAYMENTS** ................................................................................................. **5**

   8.   HOW MUCH WILL YOU RECEIVE FROM THE SETTLEMENT? ..................... 5

   9.   HOW CAN YOU GET A PAYMENT FROM THE SETTLEMENT FUNDS? ............... 6

   10.  IF YOU RECEIVED A PAYMENT IN PREVIOUS BANKRUPTCY CASES, DO YOU NEED TO PROVIDE CLAIMS DATA WITH YOUR CLAIM FORM? ...................... 6

   11.  WHEN WILL YOU GET A PAYMENT? ............................................................... 6

   12.  WHAT HAPPENS IF THERE ARE FUNDS REMAINING AFTER DISTRIBUTION? ............. 6

   13.  WHAT WILL YOU GIVE UP IN EXCHANGE FOR THE SETTLEMENT? ............... 6

**THE LAWYERS REPRESENTING THE CLASS** ................................................................. **7**

   14.  DO YOU HAVE A LAWYER IN THIS CASE? ..................................................... 7

   15.  HOW WILL THE LAWYERS BE PAID? ............................................................. 7

   16.  HOW TO OBJECT TO THE SETTLEMENT ....................................................... 8

   17.  HOW TO OPT OUT OF THE SETTLEMENT ...................................................... 9

   18.  IF YOU EXCLUDE YOURSELF, CAN YOU STILL GET A PAYMENT? ............... 10

   19.  IF YOU DON'T EXCLUDE YOURSELF, CAN YOU SUE THE DEFENDANTS FOR THE SAME THING LATER? ..................................................................................... 10

   20.  WHAT IS THE DIFFERENCE BETWEEN OBJECTING AND ASKING TO BE EXCLUDED? ............................................................................................................. 10

**FAIRNESS HEARING** ........................................................................................................... **10**

   21.  WHEN IS THE FAIRNESS HEARING? ............................................................. 10

   22.  DO YOU HAVE TO ATTEND THE HEARING? .................................................. 10

   23.  MAY YOU SPEAK AT THE HEARING? ............................................................ 11

**GETTING MORE INFORMATION** ...................................................................................... **11**

   24.  HOW DO YOU GET MORE INFORMATION? .................................................... 11

## BASIC INFORMATION

| 1.   WHAT IS THIS LAWSUIT ABOUT? |
| --- |

This lawsuit is a class action known as *San Miguel Hospital Corp., d/b/a Alta Vista Regional Hospital v. David Sackler, et. al.,* No. 1:25-cv-_____ (the "Lawsuit" or "Action"). The people or entities who sued are called the "Plaintiffs," and the parties they sued are called the "Defendants."

The lawsuit alleges that to sell as many prescription opioids as possible, manufacturers misrepresented the risks and safety of prescription opioid use, distributors did not properly monitor, stop, or report suspicious orders, and pharmacies filled opioid prescriptions that were not written for legitimate medical purposes. It further alleges that as a result, hospitals now must spend additional money and resources to treat opioid-dependent patients and patients with opioid-related conditions that they would not have had to treat otherwise. Defendants deny that they did anything wrong.

No court, jury, or other authority has decided whether Defendants did anything wrong.

Settlements have now been reached with all of the Defendants in this case.

| 2.   WHO ARE THE SETTLING DEFENDANTS? |
| --- |

The Settlement is with defendants David Sackler, Ilene Sackler, Kathe Sackler, Mortimer D.A. Sackler, Richard Sackler, the estate of Beverly Sackler by and through its executors Richard Sackler and David Sackler, the estate of Jonathan Sackler by and through its executor Garrett Lynam, and the estate of Raymond Sackler by and through its executors Richard Sackler and David Sackler (collectively, "Settling Defendants"),

| 3.   WHAT IS A CLASS ACTION? |
| --- |

In a class action, one or more people or entities called "named plaintiffs" or "class representatives" sue(s) on behalf of people and entities with similar claims. Together, these people and entities are called a "Class" or "Class Members." One court resolves the issues for all Class Members, except for those who exclude themselves from the Class. A full list of the class representatives in this case is available in the Settlement Agreement which can be accessed at www.acutecarehospitalsettlement.com.

| 4.   WHY IS THERE A SETTLEMENT? |
| --- |

Neither the Court nor a jury has decided in favor of Plaintiffs or the Defendants. Instead, both sides have agreed to settle. If the Court approves the Settlement, the parties will avoid the costs, delay, and uncertainty of continuing the lawsuit, and Class Members receive the benefits described in this notice. Settlements do not mean that any law was broken or that the Defendant did anything wrong. The parties believe that the Settlement is best for the Class.

| 5.   ARE YOU PART OF THE SETTLEMENT? |
| --- |

You are part of the Class and in the Settlements if you are an Acute Care Hospital in the United States that treated patients diagnosed with opioid use disorder and/or other opioid-related conditions at any time from January 1, 2009, through October 14, 2025 and you are not owned or operated by a federal, state, county, parish, city, or other municipal government.  To be considered an Acute Care Hospital under the Settlements, you must (a) provide medical care and other related services for surgery, acute medical conditions or injuries for a period of treatment time that is, on average, less than 25 days; and (b) either (i) appear as either active or inactive in the American Hospital Directory® as a "short term acute care" hospital or a "critical access" hospital or (ii) have an emergency department that is subject to the Emergency Medical Treatment and Labor Act ("EMTALA").

Questions? Call the Settlement Administrator toll-free at 1-800-000-0000 or visit www.acutecarehospitalsettlement.com. 4 of 12

Case 25-30256   Doc 1924   Filed 08/06/26   Entered 08/06/26 11:05:43   Desc Main
Document   Page 114 of 186

Even if you are part of the Class, you may be excluded from participating in one or more settlements if your claims against a Defendant were released in an earlier settlement.

The Settlement Agreement is available at www.acutecarehospitalsettlement.com.

| **6.   WHAT IF YOU ARE STILL NOT SURE IF YOU ARE INCLUDED?** |
|---|

If you are not sure whether you are included or have any other questions about the Settlements, visit the website, www.acutecarehospitalsettlement.com, or call the toll-free number, 1-800-000-0000. You may also send questions to the Notice and Claims Administrator at Acute Care Hospital Settlement, c/o A.B. Data, Ltd., P.O. Box 0000, Milwaukee, WI 53217.

## THE SETTLEMENT

| **7.   WHAT DOES THE SETTLEMENT PROVIDE?** |
|---|

If the Settlement is approved by the Court and become final, then the settings. Defendants will pay money to settle the lawsuit in exchange for releases of claims against them.

These Settlement Funds (the Settlement Amounts plus interest) will be used to pay money to qualifying Class Members, attorney's fees and expenses, notice and administration costs, claims administration costs and expenses, taxes and tax expenses, and service awards to the class representatives.

More information and the specific released claims are defined in the Settlement Agreements, available at www.acutecarehospitalsettlement.com.

## SETTLEMENT PAYMENTS

| **8.   HOW MUCH WILL YOU RECEIVE FROM THE SETTLEMENT?** |
|---|

You can get a payment from the Settlement Funds if you submit a valid claim. You can choose between two options.

- OPTION 1: You can fill out and submit a Registration Form and choose the "Quick Pay" option. If you select this option and your claim is valid, you do not have to fill out a Claim Form or provide claims data. If you are eligible for the Settlement and it becomes effective, you will get a $5,000 payment. By selecting this option, you agree to be bound by the Settlement.

OR

- OPTION 2: You can fill out and submit a Registration Form, Business Associate and Confidentiality Agreement, and Claim Form with the required supporting documents, information, and claims data. The amount of your total payment will depend on the number of claimants, the amount, types of costs, and where you paid to treat patients with opioid use disorder; the amount of charges that were not reimbursed; the units of morphine milligram equivalents shipped to your service area, pro-rated opioid use disorder rates per state, opioid overdose deaths in your service area, operational impact, the percentage of opioid related patients you had out of your total patients, and how actively you've participated (if at all) in litigation against an opioid manufacturer and/or Defendant. If you select this option, submit a valid claim, and agree to be bound by each Settlement you are eligible to receive funds from, you will get a payment no less than what you would receive under the "Quick Pay" option.

Payments will be made based on a Plan of Allocation approved by the Court. The proposed Plan of Allocation is available at www.acutecarehospitalsettlement.com. The Court may approve or modify the proposed Plan of Allocation without additional notice.

| 9. | HOW CAN YOU GET A PAYMENT FROM THE SETTLEMENT FUNDS? |
|---|---|

To make a claim for a payment from the Settlement Funds, you must fill out a Registration Form and submit it via email to info@acutecarehospitalsettlement.com no later than [**Month 00, 202**_].

If you choose the "Quick Pay" option, you do not need to fill out a Claim Form or provide claims data.

If you do not choose the "Quick Pay" option, the Notice and Claims Administrator will send you a link to a secure file transfer protocol ("SFTP") where you must fill out and submit a Business Associate and Confidentiality Agreement and Claim Form with any applicable supporting documents, information, and claims data no later than [**Month 00, 202**_].

The Registration and Claim Forms include more detailed instructions. Forms are available at www.acutecarehospitalsettlement.com.

If you do not submit a timely claim with the required information and documents, you will not receive a payment from the Settlement Funds. Unless you timely excluded yourself from the Settlement, you will still be bound by the Settlement, the Judgment, and the releases contained in them.

| 10. | IF YOU RECEIVED A PAYMENT IN PREVIOUS BANKRUPTCY CASES, DO YOU NEED TO PROVIDE CLAIMS DATA WITH YOUR CLAIM FORM? |
|---|---|

No.

If you want to make a claim for a payment from the Settlement Funds, you must complete a Registration Form. If you choose the "Quick Pay" option, you do not need to provide claims data with your claim. If you do not choose the "Quick Pay" option, you must fill out and submit a Registration Form, Business Associate and Confidentiality Agreement, and Claim Form.

If you previously filed a claim and received a payment from the Chapter 11 cases *Mallinckrodt plc*, No. 20-12522 in the U. S. Bankruptcy Court for the District of Delaware or *Endo*, No. 22-22549, in the U.S. Bankruptcy Court for the Southern District of New York, you do not need to provide your claims data or the related information again with your Claim Form.

| 11. | WHEN WILL YOU GET A PAYMENT? |
|---|---|

Distributions will be made to qualifying Class Members after the Court has finally approved the Settlement, all claims have been processed, and any appeals are resolved.

| 12. | WHAT HAPPENS IF THERE ARE FUNDS REMAINING AFTER DISTRIBUTION? |
|---|---|

If there are any Settlement Funds remaining after all claims are processed, the funds will be distributed based on the Plan of Allocation or to an organization approved by the Court. No remaining funds will be returned to the Defendants.

| 13. | WHAT WILL YOU GIVE UP IN EXCHANGE FOR THE SETTLEMENT? |
|---|---|

Unless you timely exclude yourself from the Settlement, you can't sue or be part of any other lawsuit against the settling Defendants about the claims in this case. Class Members will be bound by all Court orders and decisions.

More information about the releases, or claims that you give up, may be found in the Settlement Agreements, available at www.acutecarehospitalsettlement.com.

Questions? Call the Settlement Administrator toll-free at 1-800-000-0000 or visit www.acutecarehospitalsettlement.com. 6 of 12

Case 25-30256    Doc 1924    Filed 08/06/26    Entered 08/06/26 11:05:43    Desc Main Document    Page 116 of 186

## THE LAWYERS REPRESENTING THE CLASS

### 14. DO YOU HAVE A LAWYER IN THIS CASE?

The Court appointed the following attorneys to represent you and the other Class Members as "Class Counsel":

| | |
|---|---|
| John W. Barrett<br>Barrett Law Group, P.A.<br>P.O. Box 927<br>404 Court Square North<br>Lexington, MS 39095 | Warren T. Burns<br>Burns Charest LLP<br>900 Jackson Street<br>Suite 500<br>Dallas, TX 75202 |
| Robert A. Clifford<br>Clifford Law Offices PC<br>120 North LaSalle Street<br>36th Floor<br>Chicago, IL 60602 | Steven B. Farmer<br>Farmer, Cline & Campbell, PLLC<br>746 Myrtle Road<br>Charleston, WV 25314 |
| Charles J. LaDuca<br>Cuneo Gilbert & LaDuca LLP<br>4725 Wisconsin Avenue<br>Suite 200<br>Washington, D.C. 20016 | Steven A. Martino<br>Taylor Martino Rowan<br>455 St. Louis Street<br>Suite 2100<br>Mobile, AL 36602 |

You will not be charged for contacting these lawyers. If you want to be represented by another lawyer, you may hire one at your own expense.

### 15. HOW WILL THE LAWYERS BE PAID?

Class Counsel will file a motion for an award of attorneys' fees and expenses that will be considered at the Fairness Hearing. Class Counsel will ask to be reimbursed for litigation expenses and for attorneys' fees of up to 1/3 of the Settlement Funds, plus interest earned on these amounts at the same rate as earned by the Settlement Funds.

If the Court grants the lawyers' requests, these payments will be made from the Settlement Funds. You will not have to pay these lawyers out of your own pocket.

The attorneys' fees and expenses requested will be the only payment to Class Counsel for their considerable time and effort in achieving these Settlements and their risk in undertaking this representation on a wholly contingent basis, including the expenses they advanced without any guarantee of repayment. The Court will decide the amount of fees, expenses, and/or service awards and may award less than the amount requested by Class Counsel.

Class Counsel's motion for attorneys' fees, costs and expenses, and the class representative service awards will be filed with the Court and made available on or before [Month 00, 202_], at www.acutecarehospitalsettlement.com.

| 16. HOW TO OBJECT TO THE SETTLEMENT |
|---|

If you are a Class Member, you may tell the Court what, if anything, you do not like about the Settlement, the Plan of Allocation, and/or Class Counsel's requests for attorneys' fees and expenses and class representative service awards, by filing an objection.

For your objection to be considered, you must file your objection with the Clerk of the Court by [**Month 00, 202_**], at the U. S. District Court for the District of New Mexico, 333 Lomas Blvd. NW, Albuquerque, NM 87102. If your written objection is not filed by that date, you will lose the ability to object to these Settlements.

You must also mail a copy of your objection to Class Counsel and counsel for the Defendants, so it is received by [**Month 00, 202_**], at the addresses below:

| Class Counsel: | |
|---|---|
| John W. Barrett<br>Barrett Law Group, P.A.<br>P.O. Box 927<br>404 Court Square North<br>Lexington, MS 39095<br><br>Warren T. Burns<br>Burns Charest LLP<br>900 Jackson Street<br>Suite 500<br>Dallas, TX 75202<br><br>Robert A. Clifford<br>Clifford Law Offices PC<br>120 North LaSalle Street<br>36th Floor<br>Chicago, IL 60602 | Steven B. Farmer<br>Farmer, Cline & Campbell, PLLC<br>746 Myrtle Road<br>Charleston, WV 25314<br><br>Charles J. LaDuca<br>Cuneo Gilbert & LaDuca LLP<br>4725 Wisconsin Avenue<br>Suite 200<br>Washington, D.C. 20016<br><br>Steven A. Martino<br>Taylor Martino Rowan<br>455 St. Louis Street<br>Suite 2100<br>Mobile, AL 36602 |
| **Settling Defendants' Representatives:** | |
| Garrett Lynam<br>Kokino LLC<br>201 Tressor Boulevard, 3rd Floor<br>Stamford, CT 06901<br><br>Frank S. Vellucci<br>Summer Road LLC<br>207 6th Street<br>West Palm Beach, FL 33401<br><br>Leslie J. Schreyer<br>Norton Rose Fulbright US LLP<br>1301 Avenue of the Americas<br>New York, NY 10019-6022<br><br>Jonathan G. White<br>Inprendra Limited<br>2nd Floor, Eaton House<br>9 Seaton Place<br>St Helier, Jersey JE2 3QL | with a copy (which shall not constitute notice) to:<br><br>Milbank LLP<br>55 Hudson Yards<br>New York, NY 10001<br>email: rkennedy@milbank.com<br><br>and<br><br>Debevoise & Plimpton LLP<br>66 Hudson Boulevard<br>New York, NY 10001<br>email: jball@debevoise.com |

Questions? Call the Settlement Administrator toll-free at 1-800-000-0000 or visit www.acutecarehospitalsettlement.com.    8 of 12

Case 25-30256    Doc 1924    Filed 08/06/26    Entered 08/06/26 11:05:43    Desc Main
Document    Page 118 of 186

- The name, address, and telephone number of the objector;
- A statement that you are objecting to the proposed Settlement, Plan of Allocation, request for attorneys' fees and expenses, and/or request for service awards for the class representatives;
- A statement describing your objections;
- Your reasons for objecting, and any documents or supporting evidence you want to show the Court;
- A statement saying if your objection applies only to you, a part of the Class, or the entire Class;
- A list of all class actions in which you and your lawyer (if you have one) have previously objected;
- Documents showing you are a Class Member (for example, a document showing you are an Acute Care Hospital that treated patients with opioid use disorder);
- A statement of whether you (or your lawyer) intend to seek permission to appear and speak at the Fairness Hearing;
- The name of any lawyers who will seek to appear on your behalf at the Fairness Hearing;
- A statement saying you submit to the jurisdiction of the Court about your objection, request to be heard, the Settlements, and the Settlements' terms; and
- Your signature (you must personally sign the letter).

If your written objection is not filed or received by [**Month 00, 202**_] or does not include the required information, you will lose the ability to object to the proposed Settlement, Plan of Allocation, request for attorneys' fees and expenses, and request for service awards for the class representatives, unless otherwise ordered by the Court.

If you object, you will remain a Class Member, and if you want to request a payment from the Settlement Funds, you also must file a claim by the deadlines, as described above.

## 17. HOW TO OPT OUT OF THE SETTLEMENT

If you do not want the benefits (or a payment) offered by the Settlements, do not want to be legally bound by the terms of the Settlement Agreements, and you want to keep your right to sue all or some of the Defendants about the claims in this case, you must exclude yourself. This is also called "opting out."

If you want to exclude yourself from the Settlement, you must send a written statement with the title "Opt-Out Form." Your request must include:

- Your name, address, telephone number, and email address (if available);
- Your National Provider Identifier (if available) and CMS Certification Number (if available);
- A list of your current and former names, including any and all names under which you do or have done business since January 1, 2009;
- A statement saying you want to be excluded from The Settlement in *San Miguel Hospital Corp., d/b/a Alta Vista Regional Hospital v. David Sackler, et. al*, No. 1:25-cv-_____;
- Documents showing that you would be a Class Member if it did not opt out;
- A statement that you certify, under penalty of perjury, that in accordance with 28 U.S.C. § 1746, you are legally authorized to exclude yourself from the Settlement; and
- Your signature.

You must mail your Opt-Out Form so it is received no later than [**Month 00, 202**_], at the following address:

| Notice and Claims Administrator: |
| --- |
| Acute Care Hospital Settlement |
| EXCLUSIONS |
| P.O. Box 173001 |
| Milwaukee, WI 53217 |

You must also email your Opt-Out Form so it is received by Class Counsel and the Defendants no later than [**Month 00, 202**_], at the following email addresses: OptOuts@acutecarehospitalsettlement.com

## 18. IF YOU EXCLUDE YOURSELF, CAN YOU STILL GET A PAYMENT?

No. You cannot make a claim or get a payment under the Settlement.

## 19. IF YOU DON'T EXCLUDE YOURSELF, CAN YOU SUE THE SETTLING DEFENDANTS FOR THE SAME THING LATER?

No. If the Court approves the proposed Settlements, and you do not exclude yourself, you give up (or "release") all the claims related in any way to the conduct at issue in this lawsuit as against the Defendants and all Released Entities as defined in the Settlement Agreement.

## 20. WHAT IS THE DIFFERENCE BETWEEN OBJECTING AND ASKING TO BE EXCLUDED?

Objecting is simply telling the Court that you do not like something about the Settlement. You can object only if you do not exclude yourself from the Settlement. Excluding yourself is telling the Court that you do not want to be part of the Settlement. If you exclude yourself, you have no basis to object because the Settlement no longer affect you.

If you are a Class Member and you do nothing, you will remain in the Settlement and be bound by all orders in this lawsuit. You will also give up your rights to seek a payment from these Settlement Funds, object to the Settlement, speak at the hearing about the Settlement, or be part of another lawsuit against the Defendants for any and all claims released by the Settlement Agreement. If there are future settlements or judgments, you will be sent a notice with instructions on how to receive a benefit at that time.

### FAIRNESS HEARING

## 21. WHEN IS THE FAIRNESS HEARING?

The Court will hold a Fairness Hearing on [**Month 00, 202**_], at [**X:00**] a.m. Mountain Time, at the U. S. District Court for the District of New Mexico, Pete V. Domenici Courthouse, 333 Lomas Blvd. NW, Albuquerque, NM, 87102, Courtroom [ • ].

At this hearing, the Court will consider whether the Settlements and Plan of Allocation are fair, reasonable, and adequate, if the Settlement should be finally approved; if the Judgment provided under the Settlement Agreement should be entered, and other matters. The Court may also decide whether to award attorneys' fees and expenses and service awards to the class representatives. If there are objections, the Court will consider them and may listen to people who have asked to speak at the hearing. After the hearing, the Court will decide whether to approve the Settlement and the Plan of Allocation. We do not know how long these decisions will take.

The hearing may be moved to a different location or time without additional notice. For updated information about the hearing, you may check www.acutecarehospitalsettlement.com, contact Class Counsel, or access the court docket for this case as described in the "Getting More Information?" section on Page ___.

## 22. DO YOU HAVE TO ATTEND THE FAIRNESS HEARING?

No, you do not have to attend the Fairness Hearing. Class Counsel will answer any questions the Court may have.

Questions? Call the Settlement Administrator toll-free at 1-800-000-0000 or visit www.acutecarehospitalsettlement.com. 10 of 12

Case 25-30256   Doc 1924   Filed 08/06/26   Entered 08/06/26 11:05:43   Desc Main
Document   Page 120 of 186

If you send an objection, you do not have to come to Court to talk about it. As long as you submitted your written objection on time, to the proper addresses, and it meets the requirements in this notice, the Court will consider it.

But if you want to attend, you are welcome to do so at your own expense. You may also hire another lawyer to attend for you, but you will be responsible for paying that lawyer.

## 23. MAY YOU SPEAK AT THE HEARING?

If you object, you may ask the Court for permission to speak at the hearing. Your objection must include a request to speak, be timely submitted, and meet the other requirements in this notice, including those listed in the "Option 2 - Object to the Settlement" section on Pages ____.

Ultimately, the Court will decide who will be allowed to speak at the hearing.

## GETTING MORE INFORMATION

## 24. HOW DO YOU GET MORE INFORMATION?

This notice summarizes the Settlement. The precise terms and conditions of the Settlement are detailed in the Settlement Agreement. If there are any inconsistencies between this notice and the terms of the Settlement Agreement, the Settlement Agreement terms control.

The records in this Action may be examined and copied during regular office hours, and subject to customary copying fees, at the Clerk of the United States District Court for the District of New Mexico. For a fee, all papers filed in this Action are available at www.pacer.gov.

In addition, the Settlement Agreement, this notice, the Registration and Claim Forms, Court orders, and the Plan of Allocation are available at www.acutecarehospitalsettlement.com. You may contact the Notice and Claims Administrator at 1-800-000-0000 if you have any questions about the Action or the Settlements.

***Please do not write or call the Court, the Court Clerk's office, or the settling Defendants with questions about the Settlements or the claims process.***

172316597v5

Questions? Call the Settlement Administrator toll-free at 1-800-000-0000 or visit www.acutecarehospitalsettlement.com. 11 of 12

Case 25-30256   Doc 1924   Filed 08/06/26   Entered 08/06/26 11:05:43   Desc Main
Document   Page 121 of 186

**EXHIBIT G**

**If you are an Acute Care Hospital that treated patients diagnosed with opioid use disorder and/or other opioid-related conditions, you may receive a payment from up to $\_\_\_\_\_ million in  a class action settlement.**

Records show that you may qualify for a payment from the proposed settlement ("Settlement") in a class action lawsuit. The lawsuit alleges, among other things,  that to sell as many prescription opioids as possible, manufacturers misrepresented the risks and safety of prescription opioid use. It further alleges that as a result, acute care hospitals must now spend additional money and resources to treat opioid-dependent patients and patients with opioid-related conditions that they would not have had to treat otherwise. The Settlement totals up to$174,215,320.82 and would resolve all claims with the Defendants. Defendants deny any wrongdoing.

### Who is included?

Generally, you are included if you are an Acute Care Hospital in the United States that (a) treated patients diagnosed with opioid use disorder and/or other opioid-related conditions from January 1, 2009, through October 14, 2025, and (b) are not owned or operated by a federal, state, county, parish, city, or other municipal government.

### What do the Settlements provide?

The Settlement will provide up to $174,215,320.82 to pay money to Qualifying Class Members, Attorney's Fees and Expenses, Notice and Administrative Costs, claims administration costs and expenses, Taxes and Tax Expenses, and Service Awards to the Class Representatives.

### How can I get a payment?

To make a claim for a payment from the Settlement Funds, you must submit a Registration Form and may submit a Claim Form. The deadline to submit these forms is [**Month 00, 202**_]. These forms and the Plan of Allocation are available at www.acutecarehospitalsettlement.com.

### How much will my payment be?

The amount of your payment will be based on the proposed Plan of Allocation and the option you select.

- If you select the "Quick Pay" option: You do not have to fill out a Claim Form or provide claims data, and, after an eligibility determination, you will get a $5,000 payment under the Settlement.

- If you do not select the "Quick Pay" option: You must submit a Business Associate and Confidentiality Agreement, a Claim Form and supporting claims data. You will receive an Allocated Amount for damages based on a formula detailed in the Plan of Allocation. This Allocated Amount will be, at minimum, as much as the Quick Pay amount for which you would be eligible.

### What are my rights?

Even if you do nothing, you will be bound by the Court's decisions. If you want to keep your right to sue the Defendants yourself, you must exclude yourself by [**Month 00, 202**_]. If do not exclude yourself, you may object to the Settlement, the Plan of Allocation, and/or requests for Attorney's Fees and Expenses and Class Representative Service Awards by [**Month 00, 202**_]. Detailed instructions about how to act on your rights are available at www.acutecarehospitalsettlement.com.

The Court will hold a hearing on [**Month 00, 202**_] to consider if it will approve the Settlement, Plan of Allocation, and a request for reimbursement of litigation expenses and for attorneys' fees of up to 1/3 of the Settlement Funds, plus interest earned on these amounts at the same rate as earned by the Settlement Funds. You or your own lawyer may appear and speak at the hearing at your own expense.

**1-800-000-0000**        **www.acutecarehospitalsettlement.com**

172316625v4

## Exhibit H

(*San Miguel Hospital Corp. v. Richard Sackler, et al.*, 25-cv-01010 (D.N.M.))

## Released Parties

"***Released Parties***" shall include all "**Shareholder Released Parties**" and certain "**Released Parties**" in the Plan and means, collectively, (i) the Shareholder Payment Parties;[1] (ii) the Designated Shareholder Released Parties and the Persons identified on Exhibit X to the Master Shareholder Settlement Agreement and the Persons identified on Attachment 2 hereto; (iii) all Persons directly or indirectly owning an equity interest in any Debtor on the date on which such Debtor commenced its Chapter 11 Case; (iv) Sackler Family Members; (v) all trusts for the benefit of any of the Persons identified in the foregoing clause (iv) and the past, present and future trustees (including, without limitation, officers, directors and employees of any such trustees that are corporate or limited liability company trustees and members and managers of trustees that are limited liability company trustees), protectors and beneficiaries thereof, solely in their respective capacities as such; (vi) all Persons (other than the Debtors) to which property or funds of the Persons identified in any of the foregoing clauses (i) through (v) have been or are directly or indirectly transferred (including for charitable or philanthropic purposes), solely in such Persons' capacities as transferees and solely to the extent of any property or funds transferred to them; and (vii) with respect to each Person in the foregoing clauses (i) through (v) and the Debtors, such Person's (A) predecessors, successors, permitted assigns, subsidiaries (other than the Debtors), controlled affiliates, spouses, heirs, executors, estates and nominees, in each case solely in their respective capacities as such, (B) current and former officers and directors, principals, members and employees, in each case, solely in their respective capacities as such, (C) financial advisors, attorneys (including, without limitation, attorneys retained by any director, in his or her capacity as such), accountants, investment bankers (including, without limitation, investment bankers retained by any director, in his or her capacity as such), consultants, experts and other professionals, in each case, solely in their respective capacities as such, and (D) property possessed or owned at any time or the proceeds therefrom; *provided* that notwithstanding anything to the contrary herein, the Debtors and the Excluded Parties identified on the Schedule of Excluded Parties shall not be Shareholder Released Parties. For purposes of this definition of "Shareholder Released Parties," the phrase "solely in their respective capacities as such" means, with respect to a Person, solely to the extent a claim against such Person (x) arises from such Person's conduct or actions taken in such capacity, or from such Person's identified capacity in relation to another specified Shareholder Released Party and not, in either case, from such Person's conduct or actions independent of such capacity, and (y) to the extent such Person's liability depends on or derives from the liability of such other Shareholder Released Party, such claim would be released if asserted against such other Shareholder Released Party. For the avoidance of doubt, any Person that fits within multiple categories above shall be a Shareholder Released Party in all such categories and failure to include any Person that fits within any category above on Exhibit X to the Master Shareholder Settlement Agreement shall not mean that such Person is not a Shareholder Released Party.

***

---

[1] Capitalized terms not otherwise defined in this Exhibit shall have the meaning set forth in the Plan.

For purposes of (ii) above, Exhibit X to the Master Shareholder Agreement is anticipated to include the parties set forth on Attachment 1 to this Exhibit H.  In the event of any inconsistency between Attachment 1to this Exhibit H and the list on Exhibit X to the Master Shareholder Agreement on the Payment Effective Date, Exhibit X to the Master Shareholder Agreement controls.

**Attachment 1 to Exhibit H**

## CERTAIN A-SIDE RELEASE PARTIES[1]

Individual Family Members

1.      Theresa E. Sackler
2.      Ilene Sackler Lefcourt
3.      Kathe A. Sackler
4.      Mortimer D.A. Sackler
5.      Michael Sackler
6.      Marissa Sackler
7.      Sophie Dalrymple
8.      Samantha Hunt
9.      The spouses, children and grandchildren of the above
10.     The assets, businesses and entities owned by the above.
        Trusts, Trustees and Protectors

1.      533 Canal Trust
2.      Alexa M. Saunders
3.      Anthony M. Roncalli
4.      Angonoka Trust
5.      Beacon Trust
6.      Beacon Trust Company Limited
7.      BJSS 2010 Trust
8.      BJSS 2013 Trust
9.      BJSS and JHSS 2012 K Trust
10.     Benjamin Shack Sackler Trust 98
11.     Bowland Company Limited
12.     Canadian Partnership Trust
13.     Charles G. Lubar
14.     Christopher B. Mitchell (and the estate of Christopher B. Mitchell)
15.     Chelsea Trust Company Limited
16.     Christopher M. Reimer
17.     Clover Trust
18.     Cobo Bay Trust
19.     Codan Trust Company Limited
20.     Diagonal Blue Trust
21.     Estera Services (Bermuda) Limited/Ocorian Services (Bermuda) Limited
22.     Fidinc Trust
23.     Flat Creek Fiduciary Management LLC
24.     Flat Creek Purpose Trust
25.     Frontier Directed Fiduciary Services LLC
26.     Gorey Trust

---

[1] For the avoidance of doubt, the inclusion of any person on this list who also fits within a category on this list that is also a category in the release shall not be construed to narrow such category or to support an inference that another person within such category but not on this list is not a released party.

2

27. Glebe Trust II
28. Hagen Trust Company Limited
29. Halm Trust
30. Heatheridge Trust Company Limited
31. Hercules Trust
32. Hermance Schaepman
33. Highland Court Trust
34. Hillside Trust Company Limited
35. Ilene S. Lefcourt Trust 88
36. Ilene S. Lefcourt Trust 96
37. Ilene Sackler Lefcourt Revocable Trust
38. Indian Wells Trust
39. Inholmes Trust
40. ISL 2010 Family Trust
41. ISL 2011 Family Trust
42. ISL JML OSHA Trust
43. ISL LT Children's Trust
44. Jackson River Trust
45. Jeffrey A. Robins
46. JHSS 2010 Trust
47. JHSS 2013 Trust
48. JML 2010 Family Trust
49. JML 2011 Family Trust
50. JML Investment Trust
51. JML OSHA Trust
52. JML Pour-Over Trust
53. Joerg Fischer
54. Jonathan G. White
55. Julia Shack Sackler Trust 98
56. Karen Lefcourt Trust
57. KAS 2010 Family Trust
58. KAS 2011 Family Trust
59. Kathe A. Sackler 2001 Trust
60. Kathe A. Sackler Trust 88
61. Kathe A. Sackler Trust 96
62. Kerry J. Sulkowicz
63. KLT 2010 Family Trust
64. KLT 2011 Family Trust
65. KLT Pour-Over Trust
66. La Coupe Trust
67. La Digue Limited
68. Leslie J. Schreyer
69. LSRR Family Trust
70. Lune River Trust
71. May Trust
72. Maydean Trust Company Limited
73. MDAS 2010 Family Trust

3

74. MDAS 2011 Family Trust
75. MDAS 2012 Children's Trust
76. MDAS Investment Trust
77. Michael D. Sackler 1992 Trust
78. Michael D. Sackler 2002 Trust
79. Michael D. Sackler 2006 Trust
80. MDS Beacon 2010 Trust
81. MDS Beacon 2011 Trust
82. MDS Beacon 2012 Trust
83. MDS Beacon 2013 Trust
84. MDS Family Trust
85. Medichem Trust
86. Meerkat Trust
87. Memphis Pharma Trust
88. MIL Trust
89. Millborne Trust Company Limited
90. Millennium Trust
91. Milton Trust
92. Mondai Trust
93. Mordas Consolidated Purpose Trust
94. Mordas Trust Company Limited
95. Mortimer DA Sackler Trust 1996
96. Mortimer DA Sackler Trust 2002
97. Morvetta Trust
98. MTS 2002 Trust
99. MTS 2006 Trust
100. MTS 2013 Family Trust
101. MTS 2016 Trust
102. MTS Bare Trust
103. MTS Beacon 2010 Trust
104. MTS Beacon 2011 Trust
105. MTS Beacon 2012 Trust
106. MTS Beacon 2013 Trust
107. MTS Beacon 2014 Trust
108. MTS Beacon 2015 Trust
109. MTS Family Trust
110. MTS Trust 2006
111. Mundi Lab Trust
112. Nixie Trust
113. PALP Trust
114. Perelle Bay Trust
115. Peter M. Ward (and the estate of Peter M. Ward)
116. Pickering Trust
117. Racine Trust
118. Reserve Trust
119. Romas Trust 2002
120. Sandiway Trust Company Limited

121. Samantha Hunt 1996 Trust
122. Samantha S. Hunt 2002 Trust
123. SASS 2010 Trust
124. SASS 2013 Trust
125. SDS 1992 Trust
126. SDS 2002 Trust
127. SDS 2006 Trust
128. SDS Bare Trust
129. SDS Beacon 2011 Trust
130. SDS Beacon 2012 Trust
131. SDS Beacon 2014 Trust
132. SDS Family Trust
133. Sheffield Trust
134. Silver Trust
135. Soft River Fiduciary Management LLC
136. Soft River Purpose Trust
137. SS Tanager Trust
138. SSSH 2013 Family Trust
139. SSSH Beacon 2013 Trust
140. Stuart D. Baker
141. Taddeo Fiduciary Management Inc.
142. Taddeo Purpose Trust
143. Taddeo Trust
144. Tayleigh Trust Company Limited
145. Tenzin Trust Company Limited
146. TES Bare Trust
147. TES Beacon 2012 Trust
148. TES Beacon 2013 Trust
149. TES Beacon 2014 Trust
150. Themar Consolidated Purpose Trust
151. Themar Trust Company Limited
152. Theresa E. Sackler 1988 Trust
153. Theresa E. Sackler 2008 Trust
154. Tom & Kelly Trust
155. Trust under Agreement dated the 11th day of May 2005
156. Trust under Agreement dated the 13th day of March 2009
157. Trust Under Declaration dated April 11, 2002
158. Trust Under Declaration of Trust No. 1 dated November 25, 1996
159. Trust Under Declaration of Trust No. 2 dated November 25, 1996
160. Varus Trust
161. The assets, businesses and entities owned by the above.
Purdue Parent Entities

1. Banela Corporation
2. Beacon Company
3. BR Holdings Associates Inc.
4. BR Holdings Associates L.P.

5

5.  Heatheridge Trust Company Limited, as Trustee under Settlement dated 31 December 1993 F.B.O. the issue of Mortimer D. Sackler M.D., Theresa E. Sackler and certain charitable objects
6.  Millborne Trust Company Limited, as Trustee of the Hercules Trust under Declaration of Trust dated 2 March 1999 F.B.O. Theresa E. Sackler, the issue of Mortimer D. Sackler, M.D. and certain charitable objects
7.  Pharmaceutical Research Associates L.P. (formerly Purdue Holdings L.P.)
8.  PLP Associates Holdings Inc.
9.  PLP Associates Holdings L.P.
10. Purdue Pharma Inc.
11. Stanhope Gate Corp.
12. The assets, businesses and entities owned by the above (excluding the Debtors).
    Independent Associated Companies

1.  Accardi B.V.
2.  Accardi S.àr.l.
3.  Alfa Generics B.V.
4.  Arsago B.V.
5.  Bard Pharmaceuticals (1990) Inc.
6.  Bard Pharmaceuticals Limited
7.  Bermag Limited
8.  Boetti Corporation
9.  Boldini Corporation
10. Bradenton Products B.V.
11. Bulla S.àr.l.
12. Clinical Designs Limited
13. Clovio Corporation
14. E.R.G. Realty, Inc.
15. Elvium Life Sciences GP Inc.
16. Elvium Life Sciences Limited Partnership
17. Elvium ULC
18. Euro-Celtique S.A.
19. Evening Star Services Limited
20. Filti S.àr.l.
21. Flira S.àr.l.
22. Hayez Corporation
23. Ind S.àr.l.
24. Irey S.àr.l.
25. Krugmann GmbH
26. Ladenburg B.V.
27. Lake Claire Investments Limited
28. L.P. Clover Limited
29. Lucien Holdings S.àr.l.
30. Lymit Holdings S.àr.l.
31. Maltus Corporation
32. Marnine Holdings Pte. Limited
33. Martone Holdings Pte. Limited
34. Mexcus Corporation

6

35. MN Consulting LLC
36. MNP Consulting Limited
37. Mundibiopharma Limited
38. Mundichemie GmbH
39. Mundipharma (Argentina) S.r.l.
40. Mundipharma (China) Pharmaceutical Company Limited
41. Mundipharma (Colombia) S.A.S.
42. Mundipharma (Hong Kong) Limited
43. Mundipharma (Myanmar) Co., Limited
44. Mundipharma (Proprietary) Limited
45. Mundipharma (Shanghai) International Trade Company Limited
46. Mundipharma (Thailand) Limited
47. Mundipharma A.S.
48. Mundipharma A/S
49. Mundipharma AB
50. Mundipharma AG
51. Mundipharma B.V.
52. Mundipharma Biologics GmbH
53. Mundipharma Biologics Inc.
54. Mundipharma Bradenton B.V.
55. Mundipharma Brasil Productos Médicos e Farmacêuticos Ltda.
56. Mundipharma BV
57. Mundipharma Company
58. Mundipharma Corporation (Ireland) Limited
59. Mundipharma Corporation Limited
60. Mundipharma DC B.V.
61. Mundipharma de Mexico, S. de R.L. de C.V.
62. Mundipharma Deutschland GmbH & Co. KG
63. Mundipharma Development Pte. Limited
64. Mundipharma Distribution GmbH
65. Mundipharma Distribution Limited
66. Mundipharma EDO GmbH
67. Mundipharma Egypt LLC
68. Mundipharma Farmaceutica LDA.
69. Mundipharma FZ-LLC
70. Mundipharma GesmbH
71. Mundipharma GmbH
72. Mundipharma Healthcare Corporation
73. Mundipharma Healthcare LLC
74. Mundipharma Healthcare Pte. Limited
75. Mundipharma Healthcare Pty. Limited
76. Mundipharma Holding AG
77. Mundipharma International Services GmbH
78. Mundipharma International Services Limited
79. Mundipharma International Services S.ar.l.
80. Mundipharma International Corporation Limited
81. Mundipharma International Holdings Limited

7

82.     Mundipharma International Limited
83.     Mundipharma International Services GmbH
84.     Mundipharma International Services Limited
85.     Mundipharma International Services S.àr.l.
86.     Mundipharma International Technical Operations Limited
87.     Mundipharma IT GmbH
88.     Mundipharma IT Services GmbH
89.     Mundipharma IT Services Inc.
90.     Mundipharma IT Services Limited
91.     Mundipharma IT Services Pte. Limited
92.     Mundipharma Kabushiki Kaishe
93.     Mundipharma Korea Limited
94.     Mundipharma Laboratories GmbH
95.     Mundipharma Laboratories Limited
96.     Mundipharma LATAM GmbH
97.     Mundipharma Limited
98.     Mundipharma Ltd.
99.     Mundipharma Management S.ar.l.
100.    Mundipharma Manufacturing Pte. Limited
101.    Mundipharma MEA GmbH
102.    Mundipharma Medical CEE GmbH
103.    Mundipharma Medical Company
104.    Mundipharma Medical Company Limited
105.    Mundipharma Medical GmbH
106.    Mundipharma Medical S.ar.l.
107.    Mundipharma Middle East FZ-LLC
108.    Mundipharma Near East GmbH
109.    Mundipharma New Zealand Limited
110.    Mundipharma Oncology Pty. Limited
111.    Mundipharma Ophthalmology Corporation Limited
112.    Mundipharma Ophthalmology Products Limited
113.    Mundipharma Oy
114.    Mundipharma Pharmaceutical Company
115.    Mundipharma Pharmaceuticals (Chile) Limitada
116.    Mundipharma Pharmaceuticals Argentina S.r.l.
117.    Mundipharma Pharmaceuticals B.V.
118.    Mundipharma Pharmaceuticals Belgium BV
119.    Mundipharma Pharmaceuticals Inc.
120.    Mundipharma Pharmaceuticals Industry and Trade Limited
121.    Mundipharma Pharmaceuticals Limited
122.    Mundipharma Pharmaceuticals Private Limited
123.    Mundipharma Pharmaceuticals S.L.
124.    Mundipharma Pharmaceuticals S.r.l.
125.    Mundipharma Pharmaceuticals Sdn. Bhd.
126.    Mundipharma Polska SP. Z.O.O.
127.    Mundipharma Pte Limited
128.    Mundipharma Pty Limited

8

129. Mundipharma Research Company Limited
130. Mundipharma Research GmbH & Co. KG
131. Mundipharma Research Limited
132. Mundipharma Research Verwaltungs GmbH
133. Mundipharma SAS
134. Scientific Office of Mundipharma MEA GmbH
135. Mundipharma Singapore Holding Pte. Limited
136. Mundipharma TK
137. Mundipharma Verwaltungsgesellschaft mbH
138. Napp Laboratories Limited
139. Napp Pension Trustees Limited
140. Napp Pharmaceutical Group Limited
141. Napp Pharmaceutical Holdings Limited
142. Napp Pharmaceuticals Limited
143. Napp Research Centre Limited
144. Nitid S.àr.l.
145. Nontag S.àr.l.
146. One Stamford Realty L.P.
147. Paineurope Limited
148. Par-La-Ville Properties Limited
149. Porthos S.àr.l.
150. PT. Mundipharma Healthcare Indonesia
151. Purdue BioPharma Inc.
152. Purdue BioPharma L.P.
153. Purdue Frederick Inc.
154. Purdue Pharma Inc. (Canadian Company)
155. Purdue Pharma Technologies Inc.
156. Purdue Pharma Pty. Ltd.
157. Purdue Pharma ULC
158. Qdem Pharmaceuticals Limited
159. Rafa Laboratories Ltd.
160. Sofy S.àr.l.
161. Songol S.àr.l.
162. Sonti S.àr.l.
163. Tacca B.V.
164. Taiwan Mundipharma Pharmaceuticals Limited
165. Technical Scientific Office of Mundipharma Near East GmbH
166. Tenna B.V.
167. The Napp Educational Foundation
168. The Representative Office of Mundipharma Pharmaceuticals Pte Limited in Ho Chi Minh City
169. Vaccaro B.V.
170. Venusti B.V.
171. Win – Healthcare Private Ltd.
172. Win – Medicare Private Ltd.
173. Wuhu Haitong Kanghong Pharmaceutical Trading Co. Ltd.
174. The assets, businesses and entities owned by the above.

**CERTAIN B-SIDE RELEASED PARTIES**

| Certain Shareholder Released Parties | |
|---|---|
| **Shareholder Released Party** | **Relationship to Proceedings** |
| Raymond R. Sackler/Estate of Raymond R. Sackler | Family member; trust beneficiary; current and/or former director, manager and/or officer of II-way entity[1] in Purdue Pharma L.P. chain of ownership; current and/or former trustee |
| Beverly Sackler/Estate of Beverly Sackler | Family member; trust beneficiary; executor of estate; current and/or former director, manager and/or officer of II-way entity in Purdue Pharma L.P. chain of ownership; current and/or former trustee |
| Jonathan D. Sackler/Estate of Jonathan D. Sackler | Family member; trust beneficiary; executor of estate; current and/or former director, manager and/or officer of II-way entity in Purdue Pharma L.P. chain of ownership; current and/or former director, manager and/or officer of RRS I-way[2] entity in Purdue Pharma L.P. chain of ownership; current and/or former director, manager and/or officer of trust company; current and/or former trustee |
| Richard S. Sackler, M.D. | Family member; trust beneficiary; executor of estate; current and/or former director, manager and/or officer of II-way entity in Purdue Pharma L.P. chain of ownership; current and/or former director, manager and/or officer of RRS I-way entity in Purdue Pharma L.P. chain of ownership; current and/or former director, manager and/or officer of trust company; current and/or former trustee |
| Beth Cohen (formerly Sackler) | Family member; trust beneficiary; current and/or former trustee |
| David A. Sackler | Family member; trust beneficiary; current and/or former director, manager and/or officer of II-way entity in Purdue Pharma L.P. chain of ownership; current and/or former director, manager and/or officer of trust company; current and/or former trustee |

---

[1]  A II-way entity is an entity directly or indirectly owned by persons or trusts associated with both the Raymond Sackler Family (the "RRS Family") and the Mortimer Sackler Family (the "MDS Family"), with equal interests associated with each family.

[2]  A I-way entity is an entity directly or indirectly owned by persons or trusts associated solely with either the RRS Family or the MDS Family.

| Children of David Sackler | Family members; trust beneficiaries |
|---|---|
| Jaseleen Ruggles | Family member |
| Marianna Sackler Frame | Family member; trust beneficiary |
| Children of Marianna Sackler Frame | Family members; trust beneficiaries |
| James Frame | Family member |
| Rebecca Sackler | Family member; trust beneficiary; current and/or former trustee |
| Jeffrey Selikoff | Family member; trust beneficiary; current and/or former trustee |
| Mary Corson | Family member; trust beneficiary; current and/or former director, manager and/or officer of trust company; current and/or former trustee |
| Madeleine Sackler | Family member; trust beneficiary |
| Clare E. Sackler | Family member; trust beneficiary |
| Children of Clare E. Sackler | Family members; trust beneficiaries |
| Miles R.C. Sackler | Family member; trust beneficiary |
| Garrett Lynam | Executor of estate; current and/or former director, manager and/or officer of trust company; current and/or former trustee; employee of RRS Family I-way entity |
| Stuart D. Baker | Current and/or former director, manager and/or officer of II-way entity in Purdue Pharma L.P. chain of ownership; current and/or former director, manager and/or officer of trust company; current and/or former trustee |
| Anthony M. Roncalli | Current and/or former director, manager and/or officer of II-way entity in Purdue Pharma L.P. chain of ownership; current and/or former director, manager and/or officer of trust company; current and/or former trustee |
| Philip C. Strassburger | Current and/or former director, manager and/or officer of II-way entity in Purdue Pharma L.P. chain of ownership |
| Edward B. Mahony | Current and/or former director, manager and/or officer of II-way entity in Purdue Pharma L.P. chain of ownership |
| Peter Boer | Current and/or former director, manager and/or officer of II-way entity in Purdue Pharma L.P. chain of ownership |
| Paulo Costa | Current and/or former director, manager and/or officer of II-way entity in Purdue Pharma L.P. chain of ownership |
| Ralph Snyderman | Current and/or former director, manager and/or officer of II-way entity in Purdue Pharma L.P. chain of ownership |

2

19-23649-rdd Doc 3635-1 Filed 08/25/21 Entered 08/25/21 12:43:35 Main Document
Case 25-30256 Doc 1924 Filed 08/06/26 Entered 08/06/26 11:05:43 Desc Main Document

Pg 342 of 685

| William Loomis | Current and/or former director, manager and/or officer of II-way entity in Purdue Pharma L.P. chain of ownership |
| Stephen A. Ives | Current and/or former director, manager and/or officer of RRS I-way entity in Purdue Pharma L.P. chain of ownership; current and/or former director, manager and/or officer of trust company; current and/or former trustee; employee of RRS Family I-way entity |
| Leslie J. Schreyer | Current and/or former director, manager and/or officer of RRS I-way entity in Purdue Pharma L.P. chain of ownership; current and/or former director, manager and/or officer of trust company; current and/or former trustee |
| Danny Parks | Current and/or former director, manager and/or officer of RRS I-way entity in Purdue Pharma L.P. chain of ownership; employee of RRS Family I-way entity |
| Jeffrey A. Robins | Current and/or former director, manager and/or officer of trust company; current and/or former trustee |
| Beatriz V. Iriondo/Betty Andrikopoulos | Current and/or former director, manager and/or officer of trust company |
| Christopher Reimer | Current and/or former director, manager and/or officer of trust company |
| Jared Giddens | Current and/or former director, manager and/or officer of trust company; current and/or former trustee |
| Stephen L. Schreiner | Current and/or former director, manager and/or officer of trust company; current and/or former trustee |
| Frank S. Vellucci | Employee of RRS Family I-way entity |
| Rory Held | Employee of RRS Family I-way entity |
| BRJ Fiduciary Management LLC | Current and/or former trustee |
| Cedar Cliff Fiduciary Management Inc. | Current and/or former trustee |
| Cornice Fiduciary Management LLC | Current and/or former trustee |
| Crystal Fiduciary Company LLC | Current and/or former trustee |
| Data LLC | Current and/or former trustee |
| MCM Fiduciary Management LLC | Current and/or former trustee |
| North Bay Trust Company Inc. | Current and/or former trustee |
| Brian Olson | Current and/or former director, manager and/or officer of trust company; current and/or former trustee; employee of RRS Family I-way entity |
| Elizabeth A. Whalen | Current and/or former trustee |
| Lauren D. Kelly | Current and/or former director, manager and/or officer of trust company; current and/or former trustee |

3

| John N. Irwin III | Current and/or former director, manager and/or officer of trust company; current and/or former trustee |
| John Wilcox/Estate of John Wilcox | Current and/or former trustee |
| Michael Kassen | Current and/or former director, manager and/or officer of trust company; current and/or former trustee |
| Peter M. Ward/Estate of Peter M. Ward | Current and/or former trustee |
| Ruth Edelson | Current and/or former trustee |
| Susan C. Frunzi | Current and/or former trustee |
| Thomas A. Russo | Current and/or former director, manager and/or officer of trust company; current and/or former trustee |
| Janet Pomerantz | Current and/or former trustee |
| Alex Troy | Current and/or former trustee |
| Josephine Hoh | Trust beneficiary |
| Scott Bulua | Family member |
| Molly B. Johnson | Family member |
| Trust U/A 11/5/74 fbo Beverly Sackler | RRS Family trust indirectly owning Purdue |
| Raymond R. Sackler Trust 1 dtd 12/23/89 | RRS Family trust indirectly owning Purdue |
| Raymond R. Sackler Trust 1B dtd 12/23/89 | RRS Family trust indirectly owning Purdue |
| Raymond R. Sackler Trust 2 dtd 12/23/89 | RRS Family trust indirectly owning Purdue |
| Raymond R. Sackler Trust 2B dtd 12/23/89 | RRS Family trust indirectly owning Purdue |
| Trust B U/A 11/5/74 fbo Beverly Sackler | RRS Family trust |
| The 1974 Irrevocable Investment Trust | RRS Family trust |
| 1974 Irrevocable Trust fbo BS and RSS | RRS Family trust |
| 1974 Irrevocable Trust fbo BS and JDS | RRS Family trust |
| AR Irrevocable Trust | RRS Family trust |
| AJ Irrevocable Trust | RRS Family trust |
| Irrevocable Trust under Declaration dated as of September 19, 1995 f/b/o Issue of Jonathan D. Sackler | RRS Family trust |
| Irrevocable Trust under Declaration dated as of September 19, 1995 f/b/o Issue of Richard S. Sackler | RRS Family trust |
| Beverly Sackler Trust 1 f/b/o David Alex Sackler 12/20/1989 | RRS Family trust |
| Beverly Sackler Trust 1 f/b/o Marianna Rose Sackler 12/21/1989 | RRS Family trust |
| Beverly Sackler Trust 1 f/b/o Rebecca Kate Sackler 12/22/1989 | RRS Family trust |
| Beverly Sackler Trust 2 f/b/o David Alex Sackler 12/20/1989 | RRS Family trust |
| Beverly Sackler Trust 2 f/b/o Marianna Rose Sackler 12/21/1989 | RRS Family trust |

4

| | |
|---|---|
| Beverly Sackler Trust 2 f/b/o Rebecca Kate Sackler 12/22/1989 | RRS Family trust |
| Beverly Sackler Trust 3 f/b/o David Alex Sackler 12/20/1989 | RRS Family trust |
| Beverly Sackler Trust 3 f/b/o Marianna Rose Sackler 12/21/1989 | RRS Family trust |
| Beverly Sackler Trust 3 f/b/o Rebecca Kate Sackler 12/22/1989 | RRS Family trust |
| Beverly Sackler Trust 1 f/b/o Madeleine Sackler 12/26/1989 | RRS Family trust |
| Beverly Sackler Trust 1 f/b/o Clare Elizabeth Sackler 12/27/1989 | RRS Family trust |
| Beverly Sackler Trust 1 f/b/o Miles Raymond Sackler 12/29/1989 | RRS Family trust |
| Beverly Sackler Trust 2 f/b/o Madeleine Sackler 12/26/1989 | RRS Family trust |
| Beverly Sackler Trust 2 f/b/o Clare Elizabeth Sackler 12/27/1989 | RRS Family trust |
| Beverly Sackler Trust 2 f/b/o Miles Raymond Sackler 12/30/1989 | RRS Family trust |
| Beverly Sackler Trust 3 f/b/o Madeleine Sackler 12/26/1989 | RRS Family trust |
| Beverly Sackler Trust 3 f/b/o Clare Elizabeth Sackler 12/27/1989 | RRS Family trust |
| Beverly Sackler Trust 3 f/b/o Miles Raymond Sackler 12/28/1989 | RRS Family trust |
| David A. Sackler 2012 Trust | RRS Family trust |
| Marianna R. Sackler 2012 Trust | RRS Family trust |
| Rebecca K. Sackler 2012 Trust | RRS Family trust |
| Madeleine Sackler 2012 Trust | RRS Family trust |
| Clare E. Sackler 2012 Trust | RRS Family trust |
| Miles R.C. Sackler 2012 Trust | RRS Family trust |
| Irrevocable Trust under Declaration dated as of April 25, 1991 | RRS Family trust |
| Trust under Declaration of Trust dated August 23, 1988 f/b/o Richard S. Sackler and Issue of Richard S. Sackler | RRS Family trust |
| Trust under Declaration of Trust dated December 17, 1991 f/b/o Richard S. Sackler and Issue of Richard S. Sackler | RRS Family trust |
| Trust under Declaration of Trust dated August 23, 1988 f/b/o Jonathan D. Sackler and Issue of Jonathan D. Sackler | RRS Family trust |
| Trust under Declaration of Trust dated December 17, 1991 f/b/o Jonathan D. Sackler and Issue of Jonathan D. Sackler | RRS Family trust |
| Trust under agreement dated December 3, 1979 f/b/o Richard S. Sackler | RRS Family trust |
| Trust under agreement dated December 3, 1979 f/b/o Jonathan D. Sackler | RRS Family trust |

5

| Trust under agreement dated June 16, 1980 f/b/o Richard S. Sackler | RRS Family trust |
|---|---|
| Trust under agreement dated June 16, 1980 f/b/o Jonathan D. Sackler | RRS Family trust |
| Trust under agreement dated December 23, 1980 f/b/o Richard S. Sackler | RRS Family trust |
| Trust under agreement dated December 23, 1980 f/b/o Jonathan D. Sackler | RRS Family trust |
| Beth B. Sackler Trust | RRS Family trust |
| Beth Sackler 2013 Trust | RRS Family trust |
| Mary Corson Trust | RRS Family trust |
| Trust Agreement dated August 29, 2003 f/b/o Issue of Richard S. Sackler | RRS Family trust |
| Trust Agreement dated August 29, 2003 f/b/o Mary Corson and Issue of Jonathan D. Sackler | RRS Family trust |
| Irrevocable Trust under Declaration dated as of August 25, 1992 | RRS Family trust |
| Irrevocable Trust under Declaration dated as of December 29, 1992 | RRS Family trust |
| Richard S. Sackler Life Insurance Trust | RRS Family trust |
| Jonathan D. Sackler Life Insurance Trust | RRS Family trust |
| Richard S. Sackler Trust U/A 9/30/04 | RRS Family trust |
| Jonathan D. Sackler Trust U/A 9/30/04 | RRS Family trust |
| Hudson Trust | RRS Family trust |
| Richard S. Sackler Trust f/b/o David A. Sackler 3/8/90 | RRS Family trust |
| Richard S. Sackler Trust f/b/o Marianna R. Sackler 3/8/90 | RRS Family trust |
| Richard S. Sackler Trust f/b/o Rebecca K. Sackler 3/8/90 | RRS Family trust |
| Jonathan D. Sackler Trust f/b/o Clare Elizabeth Sackler 4/11/90 | RRS Family trust |
| Jonathan D. Sackler Trust f/b/o Madeleine Sackler 4/11/90 | RRS Family trust |
| Jonathan D. Sackler Trust f/b/o Miles Raymond Corson Sackler, 4/11/90 | RRS Family trust |
| The RSS 2012 Family Trust | RRS Family trust |
| Marianna R. Sackler Captain Trust | RRS Family trust |
| Rebecca K. Sackler Captain Trust | RRS Family trust |
| RSS Fiduciary Management Trust | RRS Family trust |
| JDS Fiduciary Management Trust | RRS Family trust |
| Crystal Trust | RRS Family trust |
| MCM Fiduciary Management Trust | RRS Family trust |
| Data Trust | RRS Family trust |
| Cornice Trust | RRS Family trust |
| DABB Trust | RRS Family trust |
| Raymond R. Sackler Credit Shelter Trust u/a 3/29/2012 | RRS Family trust |
| Raymond R. Sackler GST Exempt Marital Trust u/a 3/29/2012 | RRS Family trust |
| Raymond R. Sackler Marital Trust u/a 3/29/2012 | RRS Family trust |
| Beverly Sackler Revocable Trust u/a 3/29/12 | RRS Family trust |

6

| RSS Revocable Pourover Trust | RRS Family trust |
|---|---|
| JDS Revocable Pourover Trust | RRS Family trust |
| Cedar Cliff Trust | RRS Family trust |
| Selikoff Family Investment Trust | RRS Family trust |
| 1959 Irrevocable Trust | RRS Family trust (terminated) |
| 1969 Irrevocable Trust | RRS Family trust (terminated) |
| FTA Trust | RRS Family trust (terminated) |
| 1974 Revocable Trust | RRS Family trust (terminated) |
| RSS Pourover Trust | RRS Family trust (terminated) |
| JDS Pourover Trust | RRS Family trust (terminated) |
| RSS 2/2/98 Trust | RRS Family trust (terminated) |
| JDS 2/2/98 Trust | RRS Family trust (terminated) |
| RSS 1992 Insurance Trust | RRS Family trust (terminated) |
| JDS 1992 Insurance Trust | RRS Family trust (terminated) |
| The Richard S. Sackler Revocable Pourover Trust | RRS Family trust (terminated) |
| The Jonathan D. Sackler Revocable Pourover Trust dated 12/12/2010 | RRS Family trust (terminated) |
| Moonstone Holdings LLC [DE] | RRS Family I-way entity in Purdue Pharma L.P. ownership chain |
| Linarite Holdings LLC [DE] | RRS Family I-way entity in Purdue Pharma L.P. ownership chain |
| Perthlite Holdings LLC [DE] | RRS Family I-way entity in Purdue Pharma L.P. ownership chain |
| Roselite Holdings LLC [DE] | RRS Family I-way entity in Purdue Pharma L.P. ownership chain |
| Rosebay Medical Company L.P. [DE] | RRS Family I-way entity in Purdue Pharma L.P. ownership chain |
| Rosebay Medical Company, Inc. [DE] | RRS Family I-way entity in Purdue Pharma L.P. ownership chain |
| BR Holdings Associates Inc. [NY] | II-way entity in Purdue Pharma L.P. ownership chain |
| BR Holdings Associates L.P. [DE] | II-way entity in Purdue Pharma L.P. ownership chain |
| PLP Associates Holdings Inc. [NY] | II-way entity in Purdue Pharma L.P. ownership chain |
| PLP Associates Holdings L.P. [DE] | II-way entity in Purdue Pharma L.P. ownership chain |
| Purdue Pharma Inc. [NY] | II-way entity in Purdue Pharma L.P. ownership chain |
| Pharmaceutical Research Associates L.P. [DE] | II-way entity in Purdue Pharma L.P. ownership chain |
| Purdue Pharma L.P. [DE] | II-way entity in Purdue Pharma L.P. ownership chain |
| Atlantic Laboratories Limited [Bermuda] | RRS Family I-way entity |
| B.L. Carrolton Limited [Bermuda] | RRS Family I-way entity |
| G.H. Carrell Limited [Bermuda] | RRS Family I-way entity |
| Laysan Limited [Bermuda] | RRS Family I-way entity |
| Mallard Limited [Bermuda] | RRS Family I-way entity |
| The Research Foundation Ltd. [Bermuda] | RRS Family I-way entity |

7

| Triangle Industries Ltd. [Bermuda] | RRS Family I-way entity |
|---|---|
| East Hudson Inc. [British Virgin Islands] | RRS Family I-way entity |
| East River Partners Ltd. [British Virgin Islands] | RRS Family I-way entity |
| Hobart Corporation [British Virgin Islands] | RRS Family I-way entity |
| Mauna Kea Limited [British Virgin Islands] | RRS Family I-way entity |
| Menlo Park Investors Inc. [British Virgin Islands] | RRS Family I-way entity |
| Meridian B.V.I. Limited [British Virgin Islands] | RRS Family I-way entity |
| Silk Crest Corp. [British Virgin Islands] | RRS Family I-way entity |
| Cheyenne Canada Limited Partnership [Canada] | RRS Family I-way entity |
| CPC Canada Corporation [Canada] | RRS Family I-way entity |
| CPC Canada Partnership 1 [Canada] | RRS Family I-way entity |
| CPC Canada Partnership 2 [Canada] | RRS Family I-way entity |
| The Raymond And Beverly Sackler Foundation [Canada] | RRS Family I-way entity |
| Boiling Bay S.àr.l. [Luxembourg] | RRS Family I-way entity |
| Neji S.àr.l. [Luxembourg] | RRS Family I-way entity |
| Nerula S.àr.l. [Luxembourg] | RRS Family I-way entity |
| Aquebogue Holdings Corporation [Mauritius] | RRS Family I-way entity |
| Boiling Bay Corporation B.V. [Netherlands] | RRS Family I-way entity |
| The Raymond and Beverly Sackler Foundation [United Kingdom] | RRS Family I-way entity |
| The Raymond and Beverly Sackler 1988 Foundation [United Kingdom] | RRS Family I-way entity |
| 1987 Fund LLC [DE] | RRS Family I-way entity |
| 60 FPC Remainder (J) LLC [CT] | RRS Family I-way entity |
| 60 FPC Residence (J) LLC [CT] | RRS Family I-way entity |
| 95 Percent LLC [NY] | RRS Family I-way entity |
| 1JM LLC [DE] | RRS Family I-way entity |
| 2JM LLC [DE] | RRS Family I-way entity |
| 3JM LLC [DE] | RRS Family I-way entity |
| A5 Atlas LLC [DE] | RRS Family I-way entity |
| Aim High Productions [DE] | RRS Family I-way entity |
| Akutan Bay LLC [AK] | RRS Family I-way entity |
| AJ Managed Holdings LLC [DE] | RRS Family I-way entity |
| Alexander Road Capital LLC [NY] | RRS Family I-way entity |
| Altaa LLC [DE] | RRS Family I-way entity |
| Alta Ridge, LLC [DE] | RRS Family I-way entity |
| Alta Ridge Capital LLC [DE] | RRS Family I-way entity |
| Alta Ridge Investments LLC [DE] | RRS Family I-way entity |
| Ankersea Limited Liability Company [DE] | RRS Family I-way entity |
| Antler LLC [DE] | RRS Family I-way entity |
| Azurite Holdings LLC [DE] | RRS Family I-way entity |
| Bapricot LLC [NY] | RRS Family I-way entity |
| Beryl Holdings LLC [DE] | RRS Family I-way entity |
| Berrybrook LLC [NY] | RRS Family I-way entity |
| BHPH LLC [DE] | RRS Family I-way entity |
| Boiling Bay Corporation [DE] | RRS Family I-way entity |
| Bowford Company [NY General Partnership] | RRS Family I-way entity |
| BRC Special Partners LLC [DE] | RRS Family I-way entity |
| Brook Holdings [NY General Partnership] | RRS Family I-way entity |

8

| | |
|---|---|
| BRJ Fiduciary Management LLC [WY] | RRS Family I-way entity |
| Calhoun Advisors LLC [DE] | RRS Family I-way entity |
| Camelot Hotel Holdings LLC [DE] | RRS Family I-way entity |
| Cap 1 LLC [DE] | RRS Family I-way entity |
| Cap 2 LLC [DE] | RRS Family I-way entity |
| Captain Leasing LLC [DE] | RRS Family I-way entity |
| Cedar Cliff Fiduciary Management Inc. [WY] | RRS Family I-way entity |
| CHBR LLC [DE] | RRS Family I-way entity |
| Cheviot LLC [DE] | RRS Family I-way entity |
| Cheyenne Energy Services LLC [OK] | RRS Family I-way entity |
| Cheyenne International Corporation [OK] | RRS Family I-way entity |
| Cheyenne Petroleum Company [NY Limited Partnership] | RRS Family I-way entity |
| Chez Ellie LLC [DE] | RRS Family I-way entity |
| China Sea Company, Inc. [DE] | RRS Family I-way entity |
| China Sea Company L.P. [DE Limited Partnership] | RRS Family I-way entity |
| Cornice Fiduciary Management LLC [WY] | RRS Family I-way entity |
| CPC 2001 LLC [DE] | RRS Family I-way entity |
| CPT 1A PE-AA LLC [DE] | RRS Family I-way entity |
| Crissaire Corporation [DE] | RRS Family I-way entity |
| Crystal Fiduciary Company LLC [WY] | RRS Family I-way entity |
| Curson Capital L.P. [CA] | RRS Family I-way entity |
| Curson Dev LLC [DE] | RRS Family I-way entity |
| CWC LLC [DE] | RRS Family I-way entity |
| DABB LLC [DE] | RRS Family I-way entity |
| Data LLC [WY] | RRS Family I-way entity |
| Deckstone International Company [CT General Partnership] | RRS Family I-way entity |
| DNKA LLC [DE] | RRS Family I-way entity |
| Dravite Holdings LLC [DE] | RRS Family I-way entity |
| Dolcedo LLC [DE] | RRS Family I-way entity |
| Elbanite Holdings LLC [DE] | RRS Family I-way entity |
| Exmoor Horn LLC [DE] | RRS Family I-way entity |
| Expert Philanthropy LLC [DE] | RRS Family I-way entity |
| Finnest Pharma LLC [DE] | RRS Family I-way entity |
| Foley Properties LLC [DE] | RRS Family I-way entity |
| G3A LLC [DE] | RRS Family I-way entity |
| G3D LLC [DE] | RRS Family I-way entity |
| G3R LLC [DE] | RRS Family I-way entity |
| GGM Company [DE General Partnership] | RRS Family I-way entity |
| Great Curve Films, LLC [DE] | RRS Family I-way entity |
| Golden Gun Capital, LLC [CA] | RRS Family I-way entity |
| Halesworth Corporation [DE] | RRS Family I-way entity |
| Haystacks Investments Partners LLC [DE] | RRS Family I-way entity |
| Haystacks Endure LLC [DE] | RRS Family I-way entity |
| HCRB LLC [NY] | RRS Family I-way entity |
| Hudson River (Delaware) Inc. [DE] | RRS Family I-way entity |
| Hudson River Partners [NY General Partnership] | RRS Family I-way entity |
| Inactive Holdings LLC [DE] | RRS Family I-way entity |
| Interrogation 2008 LLC [NY] | RRS Family I-way entity |

9

| | |
|---|---|
| Intrepidus Holdings LLC [DE] | RRS Family I-way entity |
| IS-BEP LLC [DE] | RRS Family I-way entity |
| JGT One LLC [DE] | RRS Family I-way entity |
| JGT Three LLC [DE] | RRS Family I-way entity |
| JGT Two LLC [DE] | RRS Family I-way entity |
| Jibwind Company [NY] | RRS Family I-way entity |
| JR Learning LLC [DE] | RRS Family I-way entity |
| JV Fuel LLC [DE] | RRS Family I-way entity |
| JWA Holdings LLC [DE] | RRS Family I-way entity |
| K-BEP LP [DE] | RRS Family I-way entity |
| K-BEP III L.P. [DE] | RRS Family I-way entity |
| K-Neptune LLC [DE] | RRS Family I-way entity |
| K-S Medical LLC [DE] | RRS Family I-way entity |
| K-SR Holdings LLC [DE] | RRS Family I-way entity |
| K-SR Performance LLC [DE] | RRS Family I-way entity |
| K-Ventures I LLC [DE] | RRS Family I-way entity |
| KB Managed Holdings LLC [DE] (Formerly Haystacks HH LLC) | RRS Family I-way entity |
| Kernite Holdings LLC [DE] | RRS Family I-way entity |
| Kokino Corporation [DE] | RRS Family I-way entity |
| Kokino LLC [DE] | RRS Family I-way entity |
| Kokino Maj Holdings LLC [DE] | RRS Family I-way entity |
| KRA Associates, Ltd. [CT General Partnership] | RRS Family I-way entity |
| KRA Associates, Ltd. [DE] | RRS Family I-way entity |
| Landings Financial Limited Liability Company [DE] | RRS Family I-way entity |
| LBV Non-Profit, Inc. [DE] | RRS Family I-way entity |
| LBV Inc. [DE] (Formerly Les Bouledogues Vigneronnes Inc.) | RRS Family I-way entity |
| Laramide LLC [DE] | RRS Family I-way entity |
| Level 4 Films LLC [NY] | RRS Family I-way entity |
| Lightship Company [NY General Partnership] | RRS Family I-way entity |
| Little Menlo LLC [DE] | RRS Family I-way entity |
| Llama Bay LLC [DE] | RRS Family I-way entity |
| Lodestone Limited Liability Company [DE] | RRS Family I-way entity |
| Longbrook Corporation [DE] | RRS Family I-way entity |
| M3C Holdings LLC [DE] | RRS Family I-way entity |
| MD60 LLC [DE] | RRS Family I-way entity |
| Meridian International, Ltd. [DE] | RRS Family I-way entity |
| MCM Fiduciary Management LLC [DE] | RRS Family I-way entity |
| Mill Shoals LLC [DE] | RRS Family I-way entity |
| Minimalist Project LLC [NY] | RRS Family I-way entity |
| MKL Haystacks Holdings LLC [DE] | RRS Family I-way entity |
| Moxietec LLC [DE] | RRS Family I-way entity |
| MXE LLC [DE] | RRS Family I-way entity |
| MXE Leasing, LLC [DE] | RRS Family I-way entity |
| NE SOL LLC [DE] | RRS Family I-way entity |
| Newhall & Company, Ltd. [DE] | RRS Family I-way entity |
| North Bay Associates [DE General Partnership] | RRS Family I-way entity |
| North Bay Eagle LLC [DE] | RRS Family I-way entity |

10

| | |
|---|---|
| North Bay Trust Company Inc. [OK] | RRS Family I-way entity |
| OG Film LLC [NY] | RRS Family I-way entity |
| OG Picture Inc. [NY] | RRS Family I-way entity |
| Orchids LLC [DE] | RRS Family I-way entity |
| Orcus Corporation [DE] | RRS Family I-way entity |
| Otavite Holdings LLC [DE] | RRS Family I-way entity |
| Pacific Partners Company [NY] | RRS Family I-way entity |
| Paloma Partners L.P. [DE] | RRS Family I-way entity |
| Park View Properties L.L.C. [DE] | RRS Family I-way entity |
| PBC - AC [NY General Partnership] | RRS Family I-way entity |
| PBC - ABS [NY General Partnership] | RRS Family I-way entity |
| PBC - ABSJS [DE General Partnership] | RRS Family I-way entity |
| PBC-ALF [NY General Partnership] | RRS Family I-way entity |
| PBC - Alternative Investments [NY General Partnership] | RRS Family I-way entity |
| PBC - Bear Stearns Healthcare Value Partners [NY General Partnership] | RRS Family I-way entity |
| PBC - Brook Holdings [NY General Partnership] | RRS Family I-way entity |
| PBC - BSM [NY General Partnership] | RRS Family I-way entity |
| PBC - Centaur [NY General Partnership] | RRS Family I-way entity |
| PBC - Glenhill Capital [NY General Partnership] | RRS Family I-way entity |
| PBC - GCLP [NY General Partnership] | RRS Family I-way entity |
| PBC - Lone Cascade [NY General Partnership] | RRS Family I-way entity |
| PBC – LP [NY General Partnership] | RRS Family I-way entity |
| PBC – LR [NY General Partnership] | RRS Family I-way entity |
| PBC - Marathon Structured Finance Fund [NY General Partnership] | RRS Family I-way entity |
| PBC – PP [NY General Partnership] | RRS Family I-way entity |
| PBC – R Domestic Fund [NY General Partnership] | RRS Family I-way entity |
| PBC-RLCP [NY General Partnership] | RRS Family I-way entity |
| PBC - Seneca Capital [NY General Partnership] | RRS Family I-way entity |
| PBC - Silver Point Capital Fund [NY General Partnership] | RRS Family I-way entity |
| PBC - Swiftcurrent Partners [NY General Partnership] | RRS Family I-way entity |
| PBC - Visium Balanced Fund [NY General Partnership] | RRS Family I-way entity |
| Piton Capital Management LLC [DE] | RRS Family I-way entity |
| Piton Capital Partners LLC [DE] | RRS Family I-way entity |
| Poco Bay Company [DE General Partnership] | RRS Family I-way entity |
| Poco Bay Realty LLC [DE] | RRS Family I-way entity |
| Poco Yield LLC [DE] | RRS Family I-way entity |
| PSART LLC [DE] | RRS Family I-way entity |
| QBEC LLC [DE] | RRS Family I-way entity |
| R Napp Holdings LLC [DE] | RRS Family I-way entity |
| Radstock Corporation [DE] | RRS Family I-way entity |
| RAR Investments LLC [DE] | RRS Family I-way entity |
| Raylodie LLC [NY] | RRS Family I-way entity |
| Raymond and Beverly Sackler Foundation, Inc. [NY] | RRS Family I-way entity; trust beneficiary |
| Raymond and Beverly Sackler Fund for the Arts and Sciences [DE] (Non-Profit) | RRS Family I-way entity; trust beneficiary |
| RBMC Holdings LLC [DE] | RRS Family I-way entity |

11

| RBS Institute LLC [DE] | RRS Family I-way entity |
|---|---|
| Rees Holdings LLC [NY] | RRS Family I-way entity |
| Refocus Foundation Inc. [DE] | RRS Family I-way entity |
| RLC Affiliates LLC [DE] | RRS Family I-way entity |
| RLC Affiliates [NY General Partnership] | RRS Family I-way entity |
| RGT One LLC [DE] | RRS Family I-way entity |
| RGT Three LLC [DE] | RRS Family I-way entity |
| RGT Two LLC [DE] | RRS Family I-way entity |
| Richard Sackler Family Foundation, Inc. [DE] | RRS Family I-way entity |
| Riverside Seven LLC [DE] | RRS Family I-way entity |
| Riviera Outlook LLC [DE] | RRS Family I-way entity |
| RJ Dan LLC [DE] | RRS Family I-way entity |
| Rockpoint Land LLC [CT] | RRS Family I-way entity |
| Rockpoint Residence LLC [CT] | RRS Family I-way entity |
| Rosebay Medical Company LLC [DE] | RRS Family I-way entity |
| RSHRS LLC [DE] | RRS Family I-way entity |
| Runham Corporation [DE] | RRS Family I-way entity |
| RWA Holdings LLC [DE] | RRS Family I-way entity |
| Sarbonne LLC [DE] | RRS Family I-way entity |
| Seabright Partners [DE General Partnership] | RRS Family I-way entity |
| Seadog Partners [DE General Partnership] | RRS Family I-way entity |
| SFP Holdings LLC [DE] | RRS Family I-way entity |
| Smokering LLC [DE] | RRS Family I-way entity |
| SO 32 Mack LLC [DE] | RRS Family I-way entity |
| SO-BFR LLC [DE] | RRS Family I-way entity |
| SO-CCS LLC [DE] | RRS Family I-way entity |
| SO-CSH LLC [DE] | RRS Family I-way entity |
| SO-ESH LLC [DE] | RRS Family I-way entity |
| SO-MSS LLC [DE] | RRS Family I-way entity |
| SO-SHSH LLC [DE] | RRS Family I-way entity |
| SO-WSH LLC [DE] | RRS Family I-way entity |
| SO-WSR LLC [DE] | RRS Family I-way entity |
| Solar SO Ware LLC [DE] | RRS Family I-way entity |
| Solar SO Wotton LLC [DE] | RRS Family I-way entity |
| Somac LLC [DE] | RRS Family I-way entity |
| Southern Alta LLC [DE] | RRS Family I-way entity |
| SR-GA RE LLC [DE] | RRS Family I-way entity |
| SR VC TP LLC [DE] | RRS Family I-way entity |
| SRMS LLC [DE] | RRS Family I-way entity |
| Standard Pharmaceuticals Corporation [DE] | RRS Family I-way entity |
| Stibnite Holdings LLC [DE] | RRS Family I-way entity |
| St. Lawrence Associates [NY General Partnership] | RRS Family I-way entity |
| Summer Road LLC [DE] | RRS Family I-way entity |
| Superior View L.L.C. [DE] | RRS Family I-way entity |
| Swipe Right LLC [DE] | RRS Family I-way entity |
| Tacitus Therapeutics Inc. [DE] | RRS Family I-way entity |
| The Bouncer Foundation, Inc. [DE] | RRS Family I-way entity |
| The Lottery, LLC [DE] | RRS Family I-way entity |

12

| | |
|---|---|
| The Neuroendocrine Tumor Research Foundation [DE] (Non-Profit) | RRS Family I-way entity |
| Temagami LLC [DE] | RRS Family I-way entity |
| TPART LLC [DE] | RRS Family I-way entity |
| Tradewind Company [NY General Partnership] | RRS Family I-way entity |
| Tremolite Holdings LLC [DE] | RRS Family I-way entity |
| TQD 1 LLC [DE] | RRS Family I-way entity |
| TQD 2 LLC [DE] | RRS Family I-way entity |
| Tract SRMS LLC [DE] | RRS Family I-way entity |
| Triangle Holding LLC [DE] | RRS Family I-way entity |
| Tukiewings LLC [DE] | RRS Family I-way entity |
| Twin Springs Holdings [NY General Partnership] | RRS Family I-way entity |
| UNCH Corp. [DE] | RRS Family I-way entity |
| UNCHADA LLC [DE] | RRS Family I-way entity |
| Unstable Elements LLC [DE] | RRS Family I-way entity |
| Valdiva Films LLC [DE] | RRS Family I-way entity |
| Verto Institute LLC [DE] | RRS Family I-way entity |
| VLS LLC [DE] | RRS Family I-way entity |
| WA Canada L.P. [DE] | RRS Family I-way entity |
| Wasatch LLC [DE] | RRS Family I-way entity |
| Westward Home LLC [DE] | RRS Family I-way entity |
| Whilton Corporation [DE] | RRS Family I-way entity |
| WP Leasing LLC [DE] | RRS Family I-way entity |
| Yamashiro Development LLC [DE] | RRS Family I-way entity |
| Mundipharma (Argentina) S.r.l. [Argentina]*[3] | II-way entity |
| Mundipharma Pharmaceuticals Argentina S.r.l. [Argentina]* | II-way entity |
| Mundipharma ANZ Pty. Limited [Australia] | II-way entity |
| Mundipharma Healthcare Pty. Limited [Australia] * | II-way entity |
| Mundipharma Oncology Pty. Limited [Australia] * | II-way entity |
| Mundipharma Pty Limited [Australia] * | II-way entity |
| Mundipharma GesmbH [Austria] * | II-way entity |
| Mundipharma Medical CEE GmbH [Austria]* | II-way entity |
| Bangladesh Beauty Products Private Limited [Bangladesh] | II-way entity |
| Mundipharma Bangladesh Private Limited [Bangladesh] | II-way entity |
| Mundipharma Trading Bangladesh Private Limited [Bangladesh] | II-way entity |
| Mundipharma BV [Belgium]* | II-way entity |
| Mundipharma Pharmaceuticals Belgium BV [Belgium]* | II-way entity |
| Bermag Limited [Bermuda]* | II-way entity |
| L.P. Clover Limited [Bermuda]* | II-way entity |
| MN Consulting LLC [Bermuda] | II-way entity |
| MNB Company [Bermuda] | II-way entity |
| Mundipharma Company [Bermuda] | II-way entity |

---

[3] Persons designated with "*" are IACs, as defined in this Agreement.

13

| | |
|---|---|
| Mundipharma International Corporation Limited [Bermuda]* | II-way entity |
| Mundipharma International Holdings Limited [Bermuda]* | II-way entity |
| Mundipharma International Limited [Bermuda]* | II-way entity |
| Mundipharma Laboratories Limited [Bermuda]* | II-way entity |
| Mundipharma Limited [Bermuda]* | II-way entity |
| Mundipharma Medical Company [Bermuda]* | II-way entity |
| Mundipharma Ophthalmology Corporation Limited [Bermuda]* | II-way entity |
| Mundipharma Ophthalmology Products Limited [Bermuda]* | II-way entity |
| Mundipharma Pharmaceutical Company [Bermuda] | II-way entity |
| Mundipharma Research Company Limited [Bermuda] | II-way entity |
| Par-La-Ville Properties Limited [Bermuda] | II-way entity |
| SICO Ltd. [Bermuda] | II-way entity |
| Transworld Pharma Limited [Bermuda] | II-way entity |
| Mundipharma Brasil Productos Médicos e Farmacêuticos Ltda. [Brazil]* | II-way entity |
| Boetti Corporation [British Virgin Islands] | II-way entity |
| Boldini Corporation [British Virgin Islands] | II-way entity |
| Clovio Corporation [British Virgin Islands] | II-way entity |
| Evening Star Services Limited [British Virgin Islands] | II-way entity |
| Hayez Corporation [British Virgin Islands] | II-way entity |
| IAF Limited [British Virgin Islands]* | II-way entity |
| Lake Claire Investments Limited [British Virgin Islands] | II-way entity |
| Maltus Corporation [British Virgin Islands] | II-way entity |
| Mexcus Corporation [British Virgin Islands] | II-way entity |
| Mundipharma GesmbH (Bulgarian branch of Austrian company) [Bulgaria] | II-way entity |
| Mundipharma Medical S.ar.l. (Bulgaria Branch of Swiss company) [Bulgaria]* | II-way entity |
| Bard Pharmaceuticals (1990) Inc. [Canada]* | II-way entity |
| Elvium Life Sciences GP Inc. [Canada]* | II-way entity |
| Elvium Life Sciences Limited Partnership [Canada]* | II-way entity |
| Elvium ULC [Canada]* | II-way entity |
| Mundipharma International (Canada) Inc. [Canada]* | II-way entity |
| Purdue Frederick Inc. [Canada]* | II-way entity |
| Purdue Pharma [Canada]* | II-way entity |
| Purdue Pharma Inc. [Canada]* | II-way entity |
| Purdue Pharma ULC [Canada] | II-way entity |
| Mundipharma Pharmaceuticals (Chile) Limitada [Chile] | II-way entity |
| Mundipharma (China) Pharmaceutical Company Limited [China]* | II-way entity |
| Mundipharma (Shanghai) International Trade Company Limited [China]* | II-way entity |
| Wuhu Haitong Kanghong Pharmaceutical Trading Co. Ltd. [China]* | II-way entity |
| Mundipharma (Colombia) S.A.S. [Colombia]* | II-way entity |

14

| | |
|---|---|
| Mundipharma Pharmaceuticals Limited [Cyprus]* | II-way entity |
| Mundipharma GesmbH (Czech Republic Branch of Austrian company) [Czech Republic]* | II-way entity |
| Mundipharma A/S [Denmark]* | II-way entity |
| Mundipharma FZ-LLC [Dubai] | II-way entity |
| Mundipharma Middle East FZ-LLC [Dubai]* | II-way entity |
| Mundipharma Egypt LLC [Egypt]* | II-way entity |
| Scientific Office of Mundipharma MEA GmbH [Egypt]* | II-way entity |
| Mundipharma Oy [Finland]* | II-way entity |
| Mundipharma Management S.ar.l. [France] | II-way entity |
| Mundipharma SAS [France]* | II-way entity |
| Krugmann GmbH [Germany]* | II-way entity |
| Mundichemie GmbH [Germany]* | II-way entity |
| Mundipharma Biologics GmbH [Germany]* | II-way entity |
| Mundipharma Deutschland GmbH & Co. KG [Germany]* | II-way entity |
| Mundipharma GmbH [Germany]* | II-way entity |
| Mundipharma Medical GmbH [Germany]* | II-way entity |
| Mundipharma Research GmbH & Co. KG [Germany]* | II-way entity |
| Mundipharma Research Verwaltungs GmbH [Germany]* | II-way entity |
| Mundipharma Verwaltungsgesellschaft mbH [Germany]* | II-way entity |
| Mundipharma (Hong Kong) Limited [Hong Kong]* | II-way entity |
| Mundipharma Medical GmbH (Hungary Branch of Swiss Company) [Hungary]* | II-way entity |
| Modi-Mundipharma Beauty Products Private Limited [India] | II-way entity |
| Modi-Mundipharma Healthcare Private Limited [India] | II-way entity |
| Modi-Mundipharma Private Limited [India] | II-way entity |
| Win-Healthcare Private Limited [India] | II-way entity |
| Win-Medicare Private Limited [India] | II-way entity |
| Mundipharma Laboratories GmbH (Indonesian Branch of Swiss Company) [Indonesia]* | II-way entity |
| PT. Mundipharma Healthcare Indonesia [Indonesia]* | II-way entity |
| Mundipharma Corporation (Ireland) Limited [Ireland]* | II-way entity |
| Mundipharma Pharmaceuticals Limited [Ireland]* | II-way entity |
| Peer Hotzvim Ltd. [Israel] | II-way entity |
| Rafa Laboratories Limited [Israel] | II-way entity |
| Mundipharma Pharmaceuticals S.r.l. [Italy]* | II-way entity |
| Mundipharma Kabushiki Kaishe [Japan]* | II-way entity |
| Mundipharma TK [Japan]* | II-way entity |
| Mundipharma Medical CEE GmbH (Kazakhstan branch of Austrian company merged with Mundipharma GesmbH) [Kazakhstan] | II-way entity |
| Mundipharma Distribution Limited [Korea]* | II-way entity |
| Mundipharma Korea Limited [Korea]* | II-way entity |
| Accardi S.àr.l. [Luxembourg] | II-way entity |
| Bulla S.àr.l. [Luxembourg] | II-way entity |
| Euro-Celtique S.A. [Luxembourg]* | II-way entity |

15

| | |
|---|---|
| Filti S.àr.l. [Luxembourg] | II-way entity |
| Flira S.àr.l. [Luxembourg] | II-way entity |
| Ind S.àr.l. [Luxembourg] | II-way entity |
| Irey S.àr.l. [Luxembourg] | II-way entity |
| Lucien Holdings S.àr.l. [Luxembourg] | II-way entity |
| Lymit Holdings S.àr.l. [Luxembourg] | II-way entity |
| Mundipharma International Services S.ar.l. [Luxembourg]* | II-way entity |
| Nitid S.àr.l. [Luxembourg] | II-way entity |
| Nontag S.àr.l. [Luxembourg] | II-way entity |
| Porthos S.àr.l. [Luxembourg] | II-way entity |
| Sofy S.àr.l. [Luxembourg] | II-way entity |
| Songol S.àr.l. [Luxembourg] | II-way entity |
| Sonti S.àr.l. [Luxembourg] | II-way entity |
| Mundipharma Pharmaceuticals Sdn. Bhd. [Malaysia]* | II-way entity |
| Cutchogue Holdings Limited [Mauritius] | II-way entity |
| Mundipharma Ltd. [Mauritius] | II-way entity |
| Mundipharma de Mexico, S. de R.L. de C.V. [Mexico]* | II-way entity |
| Mundipharma Maroc [Morocco]* | II-way entity |
| Mundipharma (Myanmar) Co., Limited [Myanmar]* | II-way entity |
| Accardi B.V. [Netherlands] | II-way entity |
| Alfa Generics B.V. [Netherlands]* | II-way entity |
| Arsago B.V. [Netherlands] | II-way entity |
| Bradenton Products B.V. [Netherlands]* | II-way entity |
| Ladenburg B.V. [Netherlands]* | II-way entity |
| Mundipharma B.V. [Netherlands]* | II-way entity |
| Mundipharma Bradenton B.V. [Netherlands]* | II-way entity |
| Mundipharma DC B.V. [Netherlands]* | II-way entity |
| Mundipharma Pharmaceuticals B.V. [Netherlands]* | II-way entity |
| Tacca B.V. [Netherlands] | II-way entity |
| Tenna B.V. [Netherlands] | II-way entity |
| Vaccaro B.V. [Netherlands] | II-way entity |
| Venusti B.V. [Netherlands] | II-way entity |
| Mundipharma New Zealand Limited [New Zealand]* | II-way entity |
| Mundipharma A.S. [Norway]* | II-way entity |
| Mundipharma Distribution GmbH (Philippine Branch of Swiss Company) [Philippines]* | II-way entity |
| Mundipharma Polska SP. Z.O.O. [Poland]* | II-way entity |
| Mundipharma Farmaceutica LDA. [Portugal]* | II-way entity |
| Mundipharma GesmbH (Russian Branch of Austrian company) [Russia]* | II-way entity |
| Technical Scientific Office of Mundipharma Near East GmbH [Saudi Arabia]* | II-way entity |
| Marnine Holdings Pte. Limited [Singapore] | II-way entity |
| Martone Holdings Pte. Limited [Singapore] | II-way entity |
| Mundipharma Development Pte. Limited [Singapore] | II-way entity |
| Mundipharma Healthcare Pte. Limited [Singapore]* | II-way entity |
| Mundipharma IT Services Pte. Limited [Singapore]* | II-way entity |
| Mundipharma Manufacturing Pte. Limited [Singapore]* | II-way entity |

16

| Mundipharma Pharmaceuticals Private Limited [Singapore]* | II-way entity |
|---|---|
| Mundipharma Pte Limited [Singapore]* | II-way entity |
| Mundipharma Singapore Holding Pte. Limited [Singapore]* | II-way entity |
| Mundipharma GesmbH (Slovak Republic Branch of Austrian company) [Slovak Republic]* | II-way entity |
| Mundipharma (Proprietary) Limited [South Africa]* | II-way entity |
| Mundipharma Biologics S.L. [Spain]* | II-way entity |
| Mundipharma Pharmaceuticals S.L. [Spain]* | II-way entity |
| Beauty Products Lanka (Private) Limited [Sri Lanka] | II-way entity |
| Mundipharma AB [Sweden]* | II-way entity |
| Mundipharma AG [Switzerland] | II-way entity |
| Mundipharma Distribution GmbH [Switzerland]* | II-way entity |
| Mundipharma EDO GmbH [Switzerland]* | II-way entity |
| Mundipharma Holding AG [Switzerland]* | II-way entity |
| Mundipharma International Services GmbH [Switzerland]* | II-way entity |
| Mundipharma IT GmbH [Switzerland]* | II-way entity |
| Mundipharma IT Services GmbH [Switzerland]* | II-way entity |
| Mundipharma Laboratories GmbH [Switzerland]* | II-way entity |
| Mundipharma LATAM GmbH [Switzerland]* | II-way entity |
| Mundipharma MEA GmbH [Switzerland]* | II-way entity |
| Mundipharma Medical Company (Swiss branch of Mundipharma Medical Company, Bermuda) [Switzerland]* | II-way entity |
| Mundipharma Medical GmbH* | II-way entity |
| Mundipharma Near East GmbH [Switzerland]* | II-way entity |
| Taiwan Mundipharma Pharmaceuticals Limited [Taiwan]* | II-way entity |
| Mundipharma (Thailand) Limited [Thailand]* | II-way entity |
| Mundipharma Pharmaceuticals Industry and Trade Limited [Turkey]* | II-way entity |
| Bard Pharmaceuticals Limited [United Kingdom]* | II-way entity |
| Clinical Designs Limited [United Kingdom]* | II-way entity |
| Mundibiopharma Limited [United Kingdom]* | II-way entity |
| Mundipharma Corporation Limited [United Kingdom]* | II-way entity |
| Mundipharma International Limited [United Kingdom]* | II-way entity |
| Mundipharma International Services Limited [United Kingdom]* | II-way entity |
| Mundipharma International Technical Operations Limited [United Kingdom]* | II-way entity |
| Mundipharma IT Services Limited [United Kingdom]* | II-way entity |
| Mundipharma Limited [United Kingdom] | II-way entity |
| Mundipharma Medical Company Limited [United Kingdom]* | II-way entity |
| Mundipharma Research Limited [United Kingdom]* | II-way entity |
| Napp Laboratories Limited [United Kingdom]* | II-way entity |
| Napp Pension Trustees Limited [United Kingdom] | II-way entity |

17

| | |
|---|---|
| Napp Pharmaceutical Group Limited [United Kingdom]* | II-way entity |
| Napp Pharmaceutical Holdings Limited [United Kingdom]* | II-way entity |
| Napp Pharmaceuticals Limited [United Kingdom]* | II-way entity |
| Napp Research Centre Limited [United Kingdom]* | II-way entity |
| Paineurope Limited [United Kingdom] | II-way entity |
| Private Medical Trustees Limited [United Kingdom] | II-way entity |
| Qdem Pharmaceuticals Limited [United Kingdom]* | II-way entity |
| The Napp Educational Foundation [United Kingdom] | II-way entity |
| Avrio Health Inc. [United States] | II-way entity |
| Caas Leasing, Inc. [United States] | II-way entity |
| Connecticut Avenue Realty Co., Inc. [United States] | II-way entity |
| Coventry Technologies L.P. [United States] | II-way entity |
| E.R.G. Realty, Inc. [United States] | II-way entity |
| HS Holdings Inc. [United States] | II-way entity |
| IAF Corporation [United States] | II-way entity |
| Midvale Chemical Company [United States] | II-way entity |
| MNP Consulting Limited [United States] | II-way entity |
| Mundipharma Biologics Inc. [United States] | II-way entity |
| Mundipharma Biologics L.P. [United States] | II-way entity |
| Mundipharma Healthcare Corporation [United States]* | II-way entity |
| Mundipharma Healthcare LLC [United States]* | II-way entity |
| Mundipharma Inc. [United States] | II-way entity |
| Mundipharma International Limited [United States]* | II-way entity |
| Mundipharma International Technical Operations Limited [United States]* | II-way entity |
| Mundipharma IT Services Inc. [United States]* | II-way entity |
| Mundipharma Ltd. [United States] | II-way entity |
| Mundipharma Pharmaceuticals Inc. [United States]* | II-way entity |
| Nappwood Land Corporation [United States] | II-way entity |
| New Suffolk Holdings LLP [United States] | II-way entity |
| One Stamford Land Inc. [United States] | II-way entity |
| One Stamford Realty L.P. [United States] | II-way entity |
| Pharma Associates Inc. [United States] | II-way entity |
| Pharma Associates L.P. [United States] | II-way entity |
| Pharma Technologies Inc. [United States] | II-way entity |
| Pharmaceutical Research Associates, Inc. [United States] | II-way entity |
| Pharmaceutical Research Associates, Inc. [United States] | II-way entity |
| PRA Holdings, Inc. [United States] | II-way entity |
| Purdue BioPharma Inc. [United States] | II-way entity |
| Purdue BioPharma L.P. [United States] | II-way entity |
| Purdue Healthcare Technologies Inc. [United States] | II-way entity |
| Purdue Healthcare Technologies L.P. [United States] | II-way entity |
| Purdue Pharma Technologies Inc. [United States] | II-way entity |
| Purdue Pharmaceutical Products Inc. [United States] | II-way entity |
| Rhodes Pharmaceuticals Inc. [United States] | II-way entity |
| Rhodes Technologies Inc. [United States] | II-way entity |
| RSJ Company L.P. [United States] | II-way entity |
| Sawwood Land Corporation [United States] | II-way entity |

18

| Signutra Inc. [United States] | II-way entity |
|---|---|
| The P.F. Betadine Products Co. Inc. [United States] | II-way entity |
| The P.F. Laboratories, Inc. [United States] | II-way entity |
| The Purdue Frederick Company Inc. d/b/a The Purdue Frederick Company [United States] | II-way entity |
| The Seven Hundred Realty Corporation [United States] | II-way entity |
| The Terramar Foundation, Inc. [United States] | II-way entity |
| TXP Services Inc. [United States] | II-way entity |
| Vitamerican Chemicals, Inc. [United States] | II-way entity |
| Vitamerican Corporation [United States] | II-way entity |
| The Representative Office of Mundipharma Pharmaceuticals Pte Limited in Ho Chi Minh City [Vietnam]* | II-way entity |
| Norton Rose Fulbright US LLP | Service Provider: legal counsel to Shareholder Released Parties and the Debtors |

19

**Attachment 2 to Exhibit H**

1. Aida Maxsam
2. Amy K. Thompson
3. Andrew T. Stokes
4. Barbara C. Miller
5. Becca Beck Harville
6. Beth Taylor
7. Brandon Hassenfuss
8. Brandon Worley
9. Briann Parson-Barnes
10. Carol Debord
11. Chris Hargrave
12. Craig Landau
13. Damon Storhoff
14. Diana C. Muller
15. Donald Leathers
16. Doug Powers
17. Draupadi Daley
18. Heather Weaver
19. Jaclyn P. Gatling
20. James David Haddox
21. James Speed
22. Jeff Waugh
23. Jeffrey Ward
24. Joe Coggins
25. Joe Read
26. John Stewart
27. LeAvis Sullivan
28. Leigh Varnadore
29. Leslie Roberson
30. Lindsey Bonifacio
31. Lori Fuller
32. Lyndsie Fowler
33. Mark Radcliffe
34. Mark Ross
35. Mark Timney
36. Mark Waldrop
37. Marv Kelly
38. Michael Madden
39. Mitchell "Chip" Fisher
40. Nathan C. Grace
41. Patty Carnes
42. Paul Kitchin
43. Rebecca Sterling
44. Rodney Davis
45. Russell Gasdia
46. Shane Cook
47. Shelli Liston
48. Tammy Heyward
49. Tessa Rios
50. Vanessa Weatherspoon
51. Wendy Kay

STRICTLY CONFIDENTIAL
SUBJECT TO FRE 408 AND ALL STATE EQUIVALENTS

[Milbank Draft 9/15/25]

**Exhibit I[1]**

**Portion of Maximum Settlement Amount Allocated to each Payment Group**

| A-Side Payment Group 1 | A-Side Payment Group 2 | A-Side Payment Group 3 | A-Side Payment Group 4 | A-Side Payment Group 5 | A-Side Payment Group 6 | A-Side Payment Group 7 | A-Side Payment Group 8 | B-Side Payment Group 1 | B-Side Payment Group 2 | *Maximum Settlement Amount (Total)* |
|---|---|---|---|---|---|---|---|---|---|---|
| $10,577,358.76 | $10,577,358.76 | $10,577,358.76 | $10,577,358.76 | $10,577,358.76 | $10,577,358.76 | $10,577,358.76 | $0 | $50,086,904.74 | $50,086,904.74 | *$174,215,320.82* |

Note: All figures shown are the maximum scheduled amounts payable by each Payment Group pursuant to this Agreement (i.e., before applying any deductions in the definition of "Settlement Amount" to determine the amount actually payable).

*Setting Defendants*:

| A-Side Payment Group 1 | A-Side Payment Group 2 | A-Side Payment Group 3 | A-Side Payment Group 4 | A-Side Payment Group 5 | A-Side Payment Group 6 | A-Side Payment Group 7 | A-Side Payment Group 8 | B-Side Payment Group 1 | B-Side Payment Group 2 |
|---|---|---|---|---|---|---|---|---|---|
| None. | Kathe Sackler | Ilene Sackler | Mortimer D.A. Sackler | None. | None. | None. | None. | Estate of Raymond Sackler<br><br>Estate of Beverly Sackler<br><br>Richard Sackler<br><br>David Sackler | Estate of Raymond Sackler<br><br>Estate of Beverly Sackler<br><br>Estate of Jonathan Sackler |

---

[1] [Note to Draft: This comes directly from Exhibit M-2 to the Master Settlement Agreement. To be conformed to final version of Exhibit M-2.]

176474784v1

## Exhibit B- the Claim

*(See attached.)*

## SACKLER PARTIES CLAIM FORM

**Claim Deadline: Wednesday, July 15, 2026**

Please read the instructions carefully before filling out this Claim Form (this "Claim Form"). Capitalized terms not otherwise defined shall have the meanings ascribed to them in the Class Action Settlement Agreement (the "Settlement Agreement") by and between the Settling Defendants and Acute Care Hospitals in *San Miguel Hospital Corp., d/b/a Alta Vista Regional Hospital v. David Sackler, et al.*, Case No. 1:25-cv-01010 (D.N.M.), ECF No. 18-2, available on the settlement website at www.acutecarehospitalsettlement.com. Each entity making a Claim ("Claimant") must submit a separate Claim Form.

To be eligible to make a Claim, the Claimant must fall within the following category: Claimant is an Acute Care Hospital in the United States that (i) treated patients diagnosed with opioid use disorder and/or other opioid-related conditions at any time from January 1, 2009, through March 20, 2026; (ii) is not owned or operated by a federal, state, county, parish, city, or other municipal government; and (iii) is not a physician practice group. To be considered an Acute Care Hospital under the Settlement Agreement, Claimant must (a) provide medical care and other related services for surgery, acute medical conditions or injuries for a period of treatment time that is, on average, less than 25 days; and (b) (i) appear as either active or inactive under its current or former name, including any hospital that has changed its name through merger, acquisition, or any other change to its corporate form, in the American Hospital Directory® as a "short term acute care" hospital or a "critical access" hospital, and (ii) have an emergency department that is subject to the Emergency Medical Treatment and Labor Act ("EMTALA").

A Claimant is ineligible for recovery under the Settlement Agreement if any of its Released Claims were released in any other settlement with the Settling Defendant(s) that are party to the Settlement Agreement.

A Claimant that submits a Registration Form or Claim Form may be contacted by representatives of Class Counsel or by the Notice and Claims Administrators for additional information regarding the Class Member's claims.

The submission of this Claim Form by the Claim Deadline of 5:00 p.m., Central Prevailing Time, on Wednesday, July 15, 2026 (the "Claim Deadline") is a prerequisite to eligibility for an Allocated Amount but does not guarantee that a Class Member will be deemed eligible to receive an Allocated Amount. If a Class Member is deemed eligible to receive an Allocated Amount, the information provided in this Claim Form will be used to determine each such Allocated Amount. Class Members may redact information on this Claim Form or any attached documents as they deem necessary, although redactions may impact the Notice and Claims Administrators' determinations as to eligibility or the Allocated Amount. A Class Member shall only submit through the Secure File Transfer Protocol ("SFTP") link *copies* of any documents that support a Claim and shall not mail or transmit hard copies or original documents; documents submitted may be destroyed after scanning and will not be returned to the Class Member.

A person who files a fraudulent claim on behalf of a Class Member may, at a minimum, be fined up to $500,000.00, imprisoned for up to five years, or both, in accordance with 18 U.S.C. §§ 152, 157. Class Members shall provide the information requested that is, to the best of their knowledge, current and valid as of the date this Claim Form is completed and delivered to the Notice and Claims Administrators.

**Please provide the following information to the Notice and Claims Administrators by delivering this completed Claim Form by SFTP according to the instructions that will be provided to you once you register prior to the Claim Form Deadline set forth on page 1 of this Claim Form.**

**<u>Failure to submit a completed copy of this Claim Form and Requisite Claims Data (as described in Item F.8) herein by the Claim Deadline set forth on page 1 of this Claim Form may disqualify you from receiving an Allocated Amount.</u> Additionally, failure to complete any portion of the Claim Form or to provide <u>Requisite Claims Data (as described herein)</u> may result in a reduced Allocated Amount or disqualification from receiving an Allocated Amount.**

### A. Claimant Information

Please provide the information in Section A.1 for the operating entity that owns one or more hospitals/facilities ("Operating Entity").

### 1. Operating Entity

| | | | |
|---|---|---|---|
| 1. Name of Operating Entity: | | | |
| 2. Address: | Street Address Line 1 | | |
| | Street Address Line 2 | | |
| | City | State | Zip |
| 3. Federal Employer Identification Number of Operating Entity: | ██████████ _____ | | |
| 4. Claim Number: If you received a Claim Number after you completed your Registration Form, please provide that six-digit Claim Number. | _____ | | |

Case 25-30256   Doc 1924   Filed 08/06/26   Entered 08/06/26 11:05:43   Desc Main
Document   Page 159 of 186

## 2. Acute Care Hospital Information

Please provide the information in Section A.2 for the Acute Care Hospital owned and/or operated by the above referenced Claimant in Section A.1 for which the Claim is filed.

| 1. Name of Acute Care Hospital: | | | |
|---|---|---|---|
| 2. Address: | Street Address Line 1 | | |
| | Street Address Line 2 | | |
| | City | State | Zip |
| 3. Number of Staffed Beds[1]: | | | |

## B. Contact Information

Please provide the information in Section B where notices should be sent:

| 1. Contact Name: | | | |
|---|---|---|---|
| 2. Contact Title: | | | |
| 3. Address: | Street Address Line 1 | | |
| | Street Address Line 2 | | |
| | City | State: | Zip: |
| 4. Phone: | | | |
| 5. Email: | | | |
| By filling out this Claim Form, you are deemed to consent to receipt of this notice by email. | | | |

**For promptness and accuracy, we prefer to contact you by email and will do so if possible. Accordingly, please provide your email address. If necessary, we may also contact you by phone or by U.S. mail.**

---

[1] The number of beds reported from a hospital's most recent Medicare cost report (W/S S-3, Part I, line 7 column 2). Cost report instructions define staffed beds as, "the number of beds available for use by patients at the end of the cost reporting period. A bed means an adult bed, pediatric bed, birthing room, or newborn bed maintained in a patient care area for lodging patients in acute, long-term, or domiciliary areas of the hospital. Beds in labor room, birthing room, post-anesthesia, postoperative recovery rooms, outpatient areas, emergency rooms, ancillary departments, nurses' and other staff residences, and other such areas which are regularly maintained and utilized for only a portion of the stay of patients (primarily for special procedures or not for inpatient lodging) are not termed a bed for these purposes."

Page 3

## C. Attorney Information

1. Is your Acute Care Hospital submitting this Claim Form with the assistance of an attorney?

Yes ☐

No ☐

**If yes, please provide the following information:**

| | |
|---|---|
| 1. Attorney Contact Name: | |
| 2. Law Firm Name: | |
| 3. Address: | Street Address Line 1 <br><br> Street Address Line 2 <br><br> City / State / Zip |
| 4. Phone: | |
| 5. Email: | |
| By filling out this Claim Form, you are deemed to consent to receipt of this notice by email. | |

2. Do you want any potential payment mailed to your attorney?

Yes ☐

No ☐

## D.   Aggregator Information

1. Is your Acute Care Hospital submitting this Claim Form with the assistance of an aggregator?

☐ Yes   ☐ No

**If yes, please provide the following information:**

| | |
|---|---|
| 1. Aggregator Contact Name: | |
| 2. Company Name: | |
| 3. Address: | Street Address Line 1 |
| | Street Address Line 2 |
| | City / State / Zip |
| 4. Phone: | |
| 5. Email: | |
| By filling out this Claim Form, you are deemed to consent to receipt of this notice by email. | |

## E.   Payment Information

Payment checks will be mailed to the law firm identified in Section C of this Claim Form if Yes was selected in Section C.2. If working with an aggregator, the check will be mailed to the Operating Entity identified in Section A.1 above. If not working with an attorney or an aggregator, or if No was selected in Section C.2, the check will be mailed to the contact person identified in Section B of this Claim Form.

**F. Additional information for Claimants seeking an Allocated Amount**

**(non-Quick-Pay option)**

If you wish to claim an Allocated Amount on the basis of a calculated amount, and not the Quick-Pay option as defined in the Registration Form and Plan of Allocation, you must complete this Section F, including all of the data identified in Item F.8 below.[2] **Failure to provide claims data for the entire time period from January 1, 2015 through December 31, 2020 may result in a reduction in Operational Impact, as defined in the Plan of Allocation.**

1.  Are you a named plaintiff in any active cause of action against the Settling Defendants, and/or their alleged co-conspirators, as specified in the Complaint? ___ Yes ___ No

    a.  If yes, please provide whether the active cause of action is filed (check one):

        i.  in the Multidistrict Litigation, Case No. 1:17-md-2804: ☐

        ii. in state court: ☐

    b.  If yes, attach a copy of the most recently filed complaint.


2.  Is the hospital/facility listed above an Acute Care Hospital in the United States that treated patients diagnosed with opioid use disorder and/or other opioid-related conditions from January 1, 2009, through March 20, 2026, is not owned or operated by a federal, state, county, parish, city, or other municipal government and not a physician practice group that (i) provides medical care and other related services for surgery, acute medical conditions, or injuries for a period of treatment time that is, on average, less than 25 days; and (ii) (a) appear as active or inactive under its current or former name, including any hospital that has changed its name through merger, acquisition, or any other change to its corporate form, in the American Hospital Directory® as a "short term acute care" hospital or a "critical access" hospital, and (b) includes an emergency department that is subject to the Emergency Medical Treatment and Labor Act ("EMTALA");

    ___ Yes ___ No

3.  Has the Acute Care Hospital listed above hosted experts' visits at the Acute Care Hospital for the purpose of enabling the experts to engage with hospital personnel on the opioid epidemic at the hospital, and to review hospital policies, procedures, and programs regarding opioids? ___ Yes ___ No

---

[2] The Notice and Claims Administrators and the Special Master shall have complete discretion to determine whether a Claimant has complied with this requirement.

Page 6

4. Has the Acute Care Hospital listed above produced claims data (as described in Item 8 below herein) to the Settling Defendants and/or their alleged co-conspirators, as specified in the Complaint, for the cause of action noted in Item 1a) above?
___Yes ___ No

5. Has the Acute Care Hospital listed above actively engaged in discovery, for the cause of action, if any, noted in Item F1.a above? ___ Yes ___ No

If yes, please indicate below those activities in which the Acute Care Hospital has actively engaged[3]:

   a. Responded to interrogatories and requests for production and requests for admissions?

   ___Yes ___ No

   b. Supplied hospital financial documents, policies and procedures, custodial emails, dispensing and discharge prescription data in response to requests by Settling Defendants and/or their alleged co-conspirators, as specified in the Complaint, or orders of a court? ___ Yes ___ No

   c. Provided 30(b)(6) and/or fact witness testimony? ___ Yes ___ No

   d. Propounded discovery to Settling Defendants and/or their alleged co-conspirators, as specified in the Complaint?

   ___ Yes ___ No

   e. Formally disclosed expert opinions consistent with federal and/or state court rules?

   ___ Yes ___ No

   f. Engaged in motion practice before a court and/or a special master?

   ___ Yes ___ No

6. Did the Acute Care Hospital listed above have a court-ordered trial date, for the cause of action, if any, noted in Item F1.a above?

___Yes ___ No

If yes, please enter the court ordered trial date: _____

---

[3] To receive the 5% weight for this participation factor, the Acute Care Hospital must have participated in at least three of the six identified activities.

Case 25-30256   Doc 1924   Filed 08/06/26   Entered 08/06/26 11:05:43   Desc Main
Document      Page 164 of 186

7. Did the Acute Care Hospital listed in Section A.2 timely file a claim to the Notice and Claims Administrators in the *San Miguel Hospital Corp., d/b/a Alta Vista Regional Hospital v. Johnson & Johnson, et al.*, Case No. 1:23-cv-00903-KWR-JFR in the United States District Court for the District of New Mexico?

   ___Yes ___ No

   a. If Yes, to the best of your knowledge, (a) did you provide all of the Requisite Claims Data from January 1, 2015 through December 31, 2020, (b) were you approved for an Allocated Amount, and (c) do you wish to utilize the Requisite Claims Data previously provided for this Claim and the Acute Care Hospital noted in Section A.2 above?

      ___Yes ___ No

      i. If Yes, then proceed to Item F.9.

      ii. If No to Item F.7 or F.7.a, then proceed to Item F.8.

8. For all inpatient and outpatient discharges during the period January 1, 2015 through December 31, 2020, from the Acute Care Hospital listed in Section A.2 above, please provide the following data in CSV (Comma Delimited) Electronic File or Pipe-Delimited Electronic Text File to be used in connection with the determination of the Allocated Amount. **An example of the data formatting is set forth in Exhibit A**. **This data should be in a separate CSV (Comma Delimited) Electronic File or Pipe-Delimited Electronic Text File for each Acute Care Hospital**. Physician office visits and non-acute care visits should **NOT** be included in data provided.

   For the CSV (Comma Delimited) Electronic File or Pipe-Delimited Electronic Text File, please include in the file name the Name of the Acute Care Hospital, City and State where located and Date Range of Data Provided, for example, PhoenixGeneral-Phoenix-AZ-Jan09-Dec12.csv. If more than one file is provided due to size limitations, each file name will be the same with only the date range of the data provided changing (e.g., PhoenixGeneral-Phoenix-AZ-Jan13-Dec20.csv).

   It is important to note, and as further described below, that the following data for each visit/discharge will need to be repeated on each row corresponding to each different ICD diagnosis code (except for ICD diagnosis code, ICD diagnosis code description and ICD diagnosis code priority). The data for the ICD diagnosis codes, ICD diagnosis code descriptions and ICD diagnosis code priority for each visit/discharge will therefore be unique to each row. For example, if a visit has 18 ICD diagnosis codes, there would be 18 rows/lines for that visit/discharge with each line containing a different ICD diagnosis code, ICD diagnosis code description and ICD diagnosis code priority. For all other data fields such as Patient Medical Record Number, Date of Discharge, etc. this data will be the same, and thus repeated, on all 18 rows/lines for that visit/discharge.

Case 25-30256   Doc 1924   Filed 08/06/26   Entered 08/06/26 11:05:43   Desc Main
Document     Page 165 of 186

To the extent the qualifying Acute Care Hospital utilizes a coding system for any columns/data fields, please provide an index to explain the contents of any column/data field to the secure portal provided by the Notice and Claims Administrators.  For example, the Patient Type data provided includes a 1, 2, or 3 and these respective contents are 1=Inpatient, 2=Outpatient, and 3=Emergency.

If sending the requested data in a CSV (Comma Delimited) Electronic File, please also ensure that all columns/data fields that may contain commas are updated so that such  columns/data fields are placed in quotations when populating the CSV or Pipe-Delimited Electronic Text File.    The columns/data fields that often contain commas include, but are not limited to, Attending Physician Name, DRG and ICD Diagnosis Code Descriptions.

Once the CSV (Comma Delimited) or Pipe-Delimited Electronic Text File is prepared, **please review the data VERY CAREFULLY** to confirm the data in each column contains the applicable data for that respective column's data field description.  For example, payment amounts (Total Payments) should not be shown in the DRG Code column/data field or ICD Diagnosis Code column/data field should not be blank or designated null for a patient visit without an explanation, etc.   In conducting your review, this will require that you "reality test" your data before submission to ensure that it does not contain obvious errors and inconsistencies. **After submission of the Registration Form, each Class Member will be provided a secure portal (SFTP) by the Notice and Claims Administrators to upload an executed BAA (as described in Section F.9 of this Claim Form), and then upload this Requisite Claims Data to the SFTP.**

| Column | Data Fields | Definitions and Clarifications |
|---|---|---|
| **a.** | **Name** | Name of hospital/facility for which data is provided. |
| **b.** | **Address** | Address of hospital/facility for which data is provided. |
| **c.** | **City** | City of hospital/facility for which data is provided. |
| **d.** | **State** | State of hospital/facility for which data is provided. |
| **e.** | **Zip Code** | Zip Code of hospital/facility for which data is provided. |
| **f.** | **CMS Certification Number** | Center for Medicare & Medicaid Services Certification Number – Formerly known as the Medicare Provider Number.  This should be a six-digit Medicare certification number for which the data is provided. |
| **g.** | **Patient Medical Record #** | |
| **h.** | **Patient Account #** | |
| **i.** | **Payor Financial Class Description** | e.g., Blue Cross, Medicaid, Private Pay, etc. |

Case 25-30256   Doc 1924   Filed 08/06/26   Entered 08/06/26 11:05:43   Desc Main
Document      Page 166 of 186

| Column | Data Fields | Definitions and Clarifications |
|---|---|---|
| **j.** | **Patient Type** | e.g., Inpatient or Outpatient. Hospital-related clinics or physician office visits should NOT be included in data provided. |
| **k.** | **Custom Patient Type** | e.g., Inpatient Psych, Outpatient Single Visit, Surgery, Lab, etc. Hospital related clinics or physician office visits should NOT be included in data provided. |
| **l.** | **Date of Admission** | Date formats must be consistent within each file provided. |
| **m.** | **Date of Discharge** | Date formats must be consistent within each file provided. |
| **n.** | **Length of Stay (days)** | |
| **o.** | **Admission Type Description** | e.g., Emergency, Reservation, Reference Lab, etc. |
| **p.** | **Discharge Disposition Description** | e.g., Discharge Home, Nursing Home, Expired, etc. |
| **q.** | **Patient Date of Birth** | |
| **r.** | **Patient Age at Discharge** | |
| **s.** | **Patient Gender** | |
| **t.** | **Patient Race** | |
| **u.** | **Patient City** | |
| **v.** | **Patient State** | |
| **w.** | **Patient Zip Code** | |
| **x.** | **Attending Physician Name** | |
| **y.** | **Total Charges** | |
| **z.** | **Total Payments** | Total Payments should only contain actual payments received (e.g., insurance/self-pay). It should NOT include adjustments, bad debt, write-offs or contractual adjustments. |
| **aa.** | **DRG Code** | Diagnosis-Related Group ("DRG") code for each inpatient visit/discharge. |
| **ab.** | **DRG Code Description** | Provide a DRG code description for the above DRG code. |
| **ac.** | **All ICD Diagnosis Codes** | All International Classification of Disease (ICD) diagnosis codes (ICD-9 or ICD-10, as applicable) associated with each patient visit/discharge. Note: In most instances there should be multiple ICD codes for a patient visit/discharge. Each of these ICD Diagnosis Codes related to each patient's visit should NOT be listed in multiple columns but rather |

Case 25-30256   Doc 1924   Filed 08/06/26   Entered 08/06/26 11:05:43   Desc Main
Document    Page 167 of 186

| Column | Data Fields | Definitions and Clarifications |
|---|---|---|
| | | each ICD Code should be listed in the same single column with each ICD Code shown on separate rows within the same single column. See Exhibit A. |
| ad. | **ICD Diagnosis Code Descriptions** | ICD Diagnosis Code descriptions for the above ICD Diagnosis Codes. |
| ae. | **ICD Diagnosis Code Priority** | Indicate whether each ICD Diagnosis Code is a Primary, Secondary, Tertiary, etc. diagnosis. These categories must be expressed in terms of a numerical code such as 1=Primary, 2=Secondary, 3=Tertiary, etc. ADD "Location of Service (LOS) or Place of Service (POS) as i.e. Office, Home, Telehealth, etc. |
| af. | **Mother's MRN (if applicable)** | This field pertains only to Acute Care Hospitals that deliver newborn babies or have a neonatal unit. If this visit/charge is for a birth mother, then this field should be blank as it would be the same MRN as the patient reported in #g above. However, if this visit/charge pertains to a baby, then this field should contain the mother's MRN so that there can be a mother/baby link associated therewith. |
| ag. | **Baby's MRN (if applicable)** | This field pertains only to Acute Care Hospitals that deliver newborn babies or have a neonatal unit. If this visit/charge is for a baby, then this field should be blank as it would be the same MRN as the patient reported in # g. above. However, if this visit/charge pertains to a birth mother, then this field should contain the Baby's MRN so that there can be a mother/baby link associated therewith. |

9. Please execute and submit a Business Associate and Confidentiality Agreement ("BAA") to Cherry Bekaert Advisory, LLC (formerly known as Legier & Company, apac) as attached as Exhibit B and return with this Claim Form for the Operating Entity listed in Section A.1 above. This BAA is not subject to revision or update.

10. Please complete the IRS Form W-9 attached hereto (or IRS Form W-8, if applicable) and return it with this Claim Form for the claimant identified in Section A above. The entity name and the EIN number noted in the W-9 (or W-8, if applicable) must match the Operating Entity Name and EIN noted in Section A.1 above.

Case 25-30256   Doc 1924   Filed 08/06/26   Entered 08/06/26 11:05:43   Desc Main
Document   Page 168 of 186

## G.    Certification

> **I certify that I am authorized to sign this Claim Form and I understand that an authorized signature on this Claim Form serves as an acknowledgement that I have a reasonable belief that the information is true and correct.**
>
> **I certify that the Settlement Class Member has authority to release all Released Claims as identified in the Settlement Agreement on behalf of itself and all other entities who are Releasors by virtue of their relationship or association with it.**
>
> **I certify that the Settlement Class Member I am submitting this Claim Form on behalf of is eligible to receive funds under the Settlement Agreement.**
>
> **I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.**

Your typed signature and submission of this Claim Form will have the same force and effect as if you signed the Claim Form on paper, which you may do alternatively.

Signature: _____

Executed on date (MM/DD/YYYY): _____

Print the name of the person who is completing and signing this Claim.

Name (First Middle Last): _____

Title: _____

Acute Care Hospital: _____

Address: _____

_____

_____

Contact Phone: _____

Email: _____

**Data Request Example**
**EXHIBIT A**

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| | Hospital Name | Hospital Address | Hospital City | Hospital State | Hospital Zip | CMS Certification Number | Patient Medical Record # | Patient Account # | Payor Financial Class Description | Patient Type |
| 2 | ABC Hospital | 123 Main Street | Shelbyville | US State | 12345 | 123456 | 101 | A12345 | Blue Cross | Inpatient |
| 3 | ABC Hospital | 123 Main Street | Shelbyville | US State | 12345 | 123456 | 101 | A12345 | Blue Cross | Inpatient |
| 4 | ABC Hospital | 123 Main Street | Shelbyville | US State | 12345 | 123456 | 101 | A12345 | Blue Cross | Inpatient |
| 5 | ABC Hospital | 123 Main Street | Shelbyville | US State | 12345 | 123456 | 101 | A12346 | Blue Cross | Outpatient |
| 6 | ABC Hospital | 123 Main Street | Shelbyville | US State | 12345 | 123456 | 101 | A12346 | Blue Cross | Outpatient |
| 7 | ABC Hospital | 123 Main Street | Shelbyville | US State | 12345 | 123456 | 999 | A12399 | Blue Cross | Outpatient |
| 8 | ABC Hospital | 123 Main Street | Shelbyville | US State | 12345 | 123456 | 102 | A12356 | Medicare | Inpatient |
| 9 | ABC Hospital | 123 Main Street | Shelbyville | US State | 12345 | 123456 | 102 | A12356 | Medicare | Inpatient |
| 10 | ABC Hospital | 123 Main Street | Shelbyville | US State | 12345 | 123456 | 103 | A12367 | Champus | Inpatient |
| 11 | ABC Hospital | 123 Main Street | Shelbyville | US State | 12345 | 123456 | 103 | A12367 | Champus | Inpatient |
| 12 | ABC Hospital | 123 Main Street | Shelbyville | US State | 12345 | 123456 | 103 | A12367 | Champus | Inpatient |
| 13 | ABC Hospital | 123 Main Street | Shelbyville | US State | 12345 | 123456 | 103 | A12367 | Champus | Inpatient |
| 14 | ABC Hospital | 123 Main Street | Shelbyville | US State | 12345 | 123456 | 103 | A12367 | Champus | Inpatient |
| 15 | ABC Hospital | 123 Main Street | Shelbyville | US State | 12345 | 123456 | 103 | A12368 | Champus | Emergency |

# Data Request Example
## EXHIBIT A

| | K | L | M | N | O | P | Q | R | S |
|---|---|---|---|---|---|---|---|---|---|
| | Custom Patient Type | Date of Admission | Date of Discharge | Length of Stay | Admission Type Description | Discharge Disposition Description | Patient Date of Birth | Patient Age | Patient Gender |
| | Lab | 5/6/2016 | 5/8/2016 | 2 | Transfer | Discharge Home | 4/1/1980 | 36 | Female |
| | Lab | 5/6/2016 | 5/8/2016 | 2 | Transfer | Discharge Home | 4/1/1980 | 36 | Female |
| | Lab | 5/6/2016 | 5/8/2016 | 2 | Transfer | Discharge Home | 4/1/1980 | 36 | Female |
| | OB | 2/28/2017 | 3/1/2017 | 1 | O/P Obersvation | Discharge Home | 4/1/1980 | 36 | Female |
| | OB | 2/28/2017 | 3/1/2017 | 1 | O/P Obersvation | Discharge Home | 4/1/1980 | 36 | Female |
| | Nursery | 2/28/2017 | 2/28/2017 | 1 | O/P Obersvation | Discharge Home | 2/28/2017 | 0 | Female |
| | Lab | 4/15/2016 | 4/18/2016 | 3 | Transfer | Discharge Home | 1/1/1955 | 61 | Male |
| | Lab | 4/15/2016 | 4/18/2016 | 3 | Transfer | Discharge Home | 1/1/1955 | 61 | Male |
| | Lab | 12/7/2016 | 12/10/2016 | 3 | Reservation | Home w/ Health Serv | 2/1/1975 | 41 | Female |
| | Lab | 12/7/2016 | 12/10/2016 | 3 | Reservation | Home w/ Health Serv | 2/1/1975 | 41 | Female |
| | Lab | 12/7/2016 | 12/10/2016 | 3 | Reservation | Home w/ Health Serv | 2/1/1975 | 41 | Female |
| | Lab | 12/7/2016 | 12/10/2016 | 3 | Reservation | Home w/ Health Serv | 2/1/1975 | 41 | Female |
| | Lab | 12/7/2016 | 12/10/2016 | 3 | Reservation | Home w/ Health Serv | 2/1/1975 | 41 | Female |
| | ER | 7/4/2017 | 7/4/2017 | 1 | Emergency | Discharge Home | 2/1/1975 | 42 | Female |

There is only one column for ICD Code. Therefore, each patient stay must be replicated as many times as necessary to provide all of the ICD Codes associated with the stay. For example, a patient stay with five ICD Codes would be listed in five rows (e.g., the 12/10/2016 stay of patient 103).

CLAIM FORM

| | Patient Race | Patient City | Patient State | Patient Zip Code | Attending Physician Name | Total Charges | Total Payments | DRG Code | DRG Code Description | ICD Diagnosis Code |
|---|---|---|---|---|---|---|---|---|---|---|
| | T | U | V | W | X | Y | Z | AA | AB | AC |
| 2 | African American | Shelbyville | US State | 12345 | Smith, Jane | $1,000.00 | $350.00 | 181 | Respiratory Neoplasms w CC | B974 |
| 3 | African American | Shelbyville | US State | 12345 | Smith, Jane | $1,000.00 | $350.00 | 181 | Respiratory Neoplasms w CC | B998 |
| 4 | African American | Shelbyville | US State | 12345 | Smith, Jane | $1,000.00 | $350.00 | 181 | Respiratory Neoplasms w CC | F1110 |
| 5 | African American | Shelbyville | US State | 12345 | Doe, John | $500.00 | $125.00 | | | G459 |
| 6 | African American | Shelbyville | US State | 12345 | Doe, John | $500.00 | $125.00 | | | A419 |
| 7 | African American | Shelbyville | US State | 12345 | Doe, John | $600.00 | $125.00 | 795 | Normal Newborn | L22 |
| 8 | Caucasian | Shelbyville | US State | 12345 | Smith, Jane | $2,000.00 | $725.00 | 603 | Cellulitis w/o MCC | Z431 |
| 9 | Caucasian | Shelbyville | US State | 12345 | Smith, Jane | $2,000.00 | $725.00 | 603 | Cellulitis w/o MCC | T148 |
| 10 | African American | Springfield | US State | 12367 | Smith, Jane | $5,000.00 | $1,500.00 | 539 | Osteomyelitis w MCC | E861 |
| 11 | African American | Springfield | US State | 12367 | Smith, Jane | $5,000.00 | $1,500.00 | 539 | Osteomyelitis w MCC | J209 |
| 12 | African American | Springfield | US State | 12367 | Smith, Jane | $5,000.00 | $1,500.00 | 539 | Osteomyelitis w MCC | Z041 |
| 13 | African American | Springfield | US State | 12367 | Smith, Jane | $5,000.00 | $1,500.00 | 539 | Osteomyelitis w MCC | T1491 |
| 14 | African American | Springfield | US State | 12367 | Smith, Jane | $5,000.00 | $1,500.00 | 539 | Osteomyelitis w MCC | N179 |
| 15 | African American | Springfield | US State | 12367 | Doe, John | $1,000.00 | $200.00 | | | F1199 |

**There is only one column for ICD Code. Therefore, each patient stay must be replicated as many times as necessary to provide all of the ICD Codes associated with the stay. For example, a patient stay with five ICD Codes would be listed in five rows (e.g., the 12/10/2016 stay of patient 103).**

**Data Request Example**
**EXHIBIT A**

| | AD | AE | AF | AG |
|---|---|---|---|---|
| 1 | **ICD Diagnosis Code Description** | **ICD Diagnosis Code Priority** | **Mom's Medical Record #** | **Baby's Medical Record #** |
| 2 | Respiratory syncytial virus as the cause of diseases classified elsewhere | 1 | | 999 |
| 3 | Other infectious disease | 3 | | 999 |
| 4 | Opioid Abuse - Uncomplicated | 2 | | 999 |
| 5 | Transient Cerebral Ischemic Attack - Unspecified | 2 | | 999 |
| 6 | Sepsis - Unspecified Organism | 1 | | 999 |
| 7 | Diaper Dermatitis | 1 | 101 | |
| 8 | Encounter For Attention To Gastrostomy | 1 | | |
| 9 | Other Injury Of Unspecified Body Region | 2 | | |
| 10 | Hypovolemia | 1 | | |
| 11 | Acute Bronchitis - Unspecified | 2 | | |
| 12 | Encounter for examination and observation following transport accident | 3 | | |
| 13 | Suicide attempt | 4 | | |
| 14 | Acute Kidney Failure - Unspecified | 5 | | |
| 15 | Opioid Use - Unspecified With Unspecified Opioid-Induced Disorder | 1 | | |

**The last two fields will only be populated where a facility has a neonatal unit and delivers babies. These two fields link the mother's record to the baby's medical record number (MRN) and vice versa. For example, if Patient 101 is a mother, the baby's MRN would be shown in column AG and column AF would be blank since the record relates to the mother. If the patient is the baby, then the mother's MRN would be shown in column AF and column AG would be blank since the records relates to the baby.**

**EXHIBIT C – the Sackler Parties Claim Registration Form / "Quick Pay" Election Form**

*(See attached.)*

# SACKLER PARTIES CLAIM REGISTRATION FORM / "QUICK PAY" ELECTION FORM

**Claim Registration Form / "Quick Pay" Election Form Deadline (the "Registration Form Deadline"): Wednesday, July 15, 2026**

Please provide the following information to the Notice and Claims Administrators by completing this Claim Registration Form (the "Registration Form") and emailing it to Sacklerinfo@acutecarehospitalsettlement.com prior to completing the Claim Form. Capitalized terms not otherwise defined shall have the meanings ascribed to them in the Class Action Settlement Agreement[1] by and between the Settling Defendants and Acute Care Hospitals (the "Settlement Agreement") in *San Miguel Hospital Corp., d/b/a Alta Vista Regional Hospital v. Sackler Parties, et al.*, Case No. 1:25-cv-01010 (D.N.M.), ECF No. 18-2, available on the settlement website at www.acutecarehospitalsettlement.com. Each entity making a Claim ("Claimant") must submit a separate Registration Form.

To be eligible to make a Claim, the Claimant must fall within the following category: Claimant is an Acute Care Hospital in the United States that (i) treated patients diagnosed with opioid use disorder and/or other opioid-related conditions at any time from January 1, 2009, through March 20, 2026; (ii) is not owned or operated by a federal, state, county, parish, city, or other municipal government; and (iii) is not a physician practice group. To be considered an Acute Care Hospital under the Settlement Agreement, Claimant must (a) provide medical care and other related services for surgery, acute medical conditions or injuries for a period of treatment time that is, on average, less than 25 days; and (b) (i) appear as either active or inactive under its current or former name, including any hospital that has changed its name through merger, acquisition, or any other change to its corporate form, in the American Hospital Directory® as a "short term acute care" hospital or a "critical access" hospital, and (ii) have an emergency department that is subject to the Emergency Medical Treatment and Labor Act ("EMTALA").

A Claimant is ineligible for recovery under the Settlement Agreement if any of its Released Claims were released in any other settlement with the Settling Defendant(s) that are party to the Settlement Agreement.

A Claimant that submits a Registration Form or Claim Form may be contacted by representatives of Class Counsel or by the Notice and Claims Administrators for additional information regarding the Class Member's Claims.

The Claim Deadline is 5:00 p.m. Central Prevailing Time Wednesday, July 15, 2026. **HOWEVER, unless you are electing to receive a "Quick Pay Amount", you should submit this Registration Form in advance of the Registration Form Deadline on Wednesday, July 15, 2026 to allow sufficient time for submission of all other required documents and information required to process your Claim.** Your Claim will be rejected and you will be precluded from receiving an Allocated Amount by the Settlement Agreement if this Registration Form is not received by the Registration Form Deadline. Do not send your Registration Form and Claim Form to the Court or to anyone other than the Notice and Claims Administrators.

---

[1] A complete copy of the Settlement Agreement is available at www.acutecarehospitalsettlement.com.

A person who files a fraudulent Claim on behalf of a Class Member may, at a minimum, be fined up to $500,000.00, imprisoned for up to five years, or both, in accordance with 18 U.S.C. §§ 152, 157. Class Members shall provide the information requested that is, to the best of their knowledge, current and valid as of the date this Registration Form is completed and delivered to the Notice and Claims Administrators.

### A. Claimant Information

Please provide the information in Section A.1 for the operating entity that owns one or more hospitals/facilities ("Operating Entity").

### 1. Operating Entity

| 1. Name of Operating Entity: | | | |
|---|---|---|---|
| 2. Address: | Street Address Line 1 | | |
| | Street Address Line 2 | | |
| | City | State | Zip |
| 3. Federal Employer Identification Number of Operating Entity: | ███████████████ _____ | | |

### 2. Acute Care Hospital Information

Please provide the information in Section A.2 for the Acute Care Hospital owned and/or operated by the above referenced Claimant in Section A.1 for which the Claim is filed.

| 1. Name of Acute Care Hospital: | | |
|---|---|---|
| 2. Address: | Street Address Line 1 | |
| | Street Address Line 2 | |
| | City | State | Zip |
| 3. a) Ownership (Check the one that applies): | Current Owner | Former Owner |
| b) Duration of Ownership: | Date Acquired/Opened | Date Sold/Closed |

Case 25-30256   Doc 1924   Filed 08/06/26   Entered 08/06/26 11:05:43   Desc Main
Document     Page 176 of 186

4. If the Acute Care Hospital listed in Section A.2 timely filed a Claim to the Notice and Claims Administrators in the San Miguel Hospital Corp., d/b/a Alta Vista Regional Hospital v. Johnson & Johnson, et al., Case No. 1:23-cv-00903-KWR-JFR in the United States District Court for the District of New Mexico, please provide that four or five digit Claimant Number:_____

### B. Contact Information

Please provide the information in Section B where notices should be sent:

| | |
|---|---|
| 1. Contact Name: | |
| 2. Contact Title: | |
| 3. Address: | Street Address Line 1 |
| | Street Address Line 2 |
| | City State: Zip: |
| 4. Phone: | |
| 5. Email: | |
| By filling out this Registration Form, you are deemed to consent to receipt of this notice by email. | |

**For promptness and accuracy, we prefer to contact you by email and will do so if possible. Accordingly, please provide your email address. If necessary, we may also contact you by phone or by U.S. mail.**

## C. Attorney Information

1. Is your Acute Care Hospital submitting this Registration Form with the assistance of an attorney?

Yes ☐

No ☐

**If yes, please provide the following information:**

| 1. Attorney Contact Name: | |
|---|---|
| 2. Law Firm Name: | |
| 3. Address: | Street Address Line 1 |
| | Street Address Line 2 |
| | City / State / Zip |
| 4. Phone: | |
| 5. Email: | |
| By filling out this Registration Form, you are deemed to consent to receipt of this notice by email. | |

2. Do you want any potential payment mailed to your attorney?

Yes ☐

No ☐

### D. Aggregator Information

1. Is your Acute Care Hospital submitting this Registration Form with the assistance of an aggregator?

        Yes ☐

        No ☐

**If yes, please provide the following information:**

| | |
|---|---|
| 1. Aggregator Contact Name: | |
| 2. Company Name: | |
| 3. Address: | Street Address Line 1 |
| | Street Address Line 2 |
| | City     State     Zip |
| 4. Phone: | |
| 5. Email: | |
| By filling out this Registration Form, you are deemed to consent to receipt of this notice by email. | |

### E. Calculation of Allocated Amount and Quick Pay Election

The Class Action Settlement Agreement by and between the Settling Defendants and Acute Care Hospitals provides benefits to certain Claimants who can establish "Eligible Damages," and allocates available settlement funds to Qualifying Class Members ("Allocated Amount"). A copy of the Settlement Agreement and Plan of Allocation may be found at www.acutecarehospitalsettlement.com. To determine your Allocated Amount under the Settlement Agreement, you must submit Claims data. For purposes of the Settlement, you, as a Class Member, are eligible for an Allocated Amount if you are a Qualified Class Member that treated patients with OUD and/or other opioid-related conditions and, as a result of that care, you suffered identifiable operational losses reflected in your Claims data, including losses reflected in the charges to payments ratio for various treatment codes.

**If you do not wish to complete a Claim Form and submit the data necessary to calculate an Allocated Amount, you may elect to receive your "Quick Pay Amount" instead.  <u>Subject to the Plan of Allocation, the Quick Pay Amount is $5,000 and will be disbursed as promptly as practicable after the Class Settlement Effective Date</u>. Any eligible Class Member may elect to receive their Quick Pay Amount by answering the questions below:**

1. **Do you agree to be bound by the terms of the Class Action Settlement Agreement and to participate in the Quick Pay option?**

   ☐Yes  ☐No

   **If yes, please sign, verify below and complete the IRS Form W-9 (or IRS Form W-8, if applicable), which is a fillable PDF that can be downloaded from www.acutecarehospitalsettlement.com, and return it with this Registration Form for the Claimant identified in Section A above. The entity name and the EIN number noted in the W-9 (or W-8, if applicable) must match the Operating Entity Name and EIN noted in Section A.1 above:**

   I, _____, am authorized on behalf of _____ , ("Participant") to elect to participate in the "Quick Pay" option under the Plan of Allocation. By completing this "Quick Pay" box and signing my name, I understand that the Participant waives any objection to the Class Action Settlement Agreement, requests payment of the Quick Pay Amount of $5,000, and that the Participant will be ineligible for any further Allocated Amount under the Settlement Agreement.

   ☐I direct and authorize the Notice and Claims Administrators to process the Participant's Claim as a "Quick Pay" for the Participant to receive its Quick Pay Amount under the Plan of Allocation. Payment checks will be mailed to the law firm identified in Section C of this Claim Form if Yes was selected in Section C.2. If not working with an attorney or if No was selected in Section C.2, the check will be mailed to the contact person identified in Section B.

   Signed: _____

   Printed Name:_____

   Printed Title:_____

Case 25-30256   Doc 1924   Filed 08/06/26   Entered 08/06/26 11:05:43   Desc Main
Document    Page 180 of 186

## F.    Supporting Documentation

**<span style="color:red">Important notices regarding submission to the jurisdiction of the Court in New Mexico</span>**

By the filing of this Registration Form, you hereby submit to the jurisdiction of the United States District Court, for the District of New Mexico for the purposes of this Claim.

**<span style="color:red">Verification of Properly Submitted Claim</span>**

The benefits provided by the Class Action Settlement Agreement by and between the Settling Defendants and Acute Care Hospitals are for the operational losses to Class Members resulting from providing treatment to individuals with substance use disorder, opioid use disorder, or other opioid-related conditions.  By submitting this Registration Form, you verify that other than what you disclosed in this Registration Form, you have not otherwise been reimbursed or compensated by the Settling Defendants for the costs and expenses you are seeking.

By submitting this Registration Form, you verify, under oath and penalty of perjury, that, to the best of your knowledge, all the damages for which you seek benefits in this Registration Form relate to your provision of medical treatment in an emergency department, inpatient, or outpatient setting at an Acute Care Hospital.

Case 25-30256   Doc 1924   Filed 08/06/26   Entered 08/06/26 11:05:43   Desc Main
Document    Page 181 of 186

## G. Certification

> **I certify that I am authorized to sign this Registration Form, and I understand that an authorized signature on this Registration Form serves as an acknowledgement that I have a reasonable belief that the information is true and correct.**
>
> **I certify that the Settlement Class Member has authority to release all Released Claims as identified in the Settlement Agreement on behalf of itself and all other entities who are Releasors by virtue of their relationship or association with it.**
>
> **I certify that the Settlement Class Member I am submitting this Registration Form on behalf of is eligible to receive funds under the Settlement Agreement.**
>
> **I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.**

Your typed signature and submission of this Registration Form will have the same force and effect as if you signed the Registration Form on paper, which you may do alternatively.

Signature: _____

Executed on date (MM/DD/YYYY): _____

Print the name of the person who is completing and signing this Claim.

Name (First Middle Last): _____

Title: _____

Acute Care Hospital: _____

Address: _____

_____

_____

Contact Phone: _____

Email: _____

Case 25-30256   Doc 1924   Filed 08/06/26   Entered 08/06/26 11:05:43   Desc Main
Document    Page 182 of 186

## EXHIBIT D – the Proposed Order

*(See attached.)*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re: | Chapter 11 |
| JACKSON HOSPITAL & CLINIC, INC., *et al.*,[1] | Case No. 25-30256 |
| Debtors. | Jointly Administered |

## ORDER GRANTING
## DEBTORS' MOTION FOR APPROVAL OF COMPROMISE AND SETTLEMENT
## PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019

**THIS MATTER** came before the Court on the *Debtors' Motion for Approval of Compromise and Settlement Pursuant to Federal Rule of Bankruptcy Procedure 9019* (the "Motion") [Doc. No. ___]. Upon consideration of the Motion, including the Settlement Agreement (as-defined in the Motion) attached thereto, and pursuant to 11 U.S.C. § 105(a) of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*, (the "Bankruptcy Code"), and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Court hereby finds and holds as-follows:

---

[1] The Debtors in these cases are: Jackson Hospital & Clinic, Inc. and JHC Pharmacy, LLC. *See* [Doc. No. 49].

1.      Upon review and consideration of the Settlement Agreement, the Court finds that the terms included therein are fair, reasonable, and in the best interests of the Debtors and their estates; and

2.      The Settlement Agreement was negotiated at arms-length, in good faith, and without any appearance of collusion; and

3.      Entry in, and consummation of, the Settlement Agreement constitutes a sound exercise of the Debtors' business judgment and is reasonable under the circumstances. Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED THAT** the Motion is **GRANTED**.  The terms and conditions of the Settlement Agreement are incorporated into this Order as if fully set forth herein.

The Debtors are hereby **AUTHORIZED**, but not directed to, execute, deliver, and fully perform any and all obligations, agreements, documents, or instruments, and take any other actions as are necessary and appropriate to implement and effectuate the Settlement Agreement, and to perform any and all obligations contemplated thereby.  Any authorization given in this Order should not be construed as an admission to the validity or truthfulness of any of the allegations in the Litigation, except as otherwise admitted or denied in the Settlement Agreement.

**IT IS FURTHER ORDERED** that the Settlement Agreement and this Order shall be binding upon and shall inure to the benefit of the parties to the Settlement Agreement and their respective successors, assigns, heirs, executors, legal representatives, administrators, and any trustee appointed or elected in these Chapter 11 Cases, including upon conversion of any of the Chapter 11 Cases to a case under any other Chapter of the Bankruptcy Code.

**IT IS FURTHER ORDERED** that the Debtors shall serve a copy of this Order upon all parties who were served with the Motion. Notwithstanding any applicability of Bankruptcy Rules 6004(h), 7062, or 9014, the terms and conditions of this Order are immediately effective and enforceable upon its entry. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## END OF ORDER ##

Prepared By:

Burr & Forman LLP
Derek F. Meek
420 20th Street North, Suite 3400
Birmingham, Alabama 35203
Telephone: (205) 251-3000
E-mail: dmeek@burr.com